Of Counsel:
Law Offices of Richard E. Wilson, LLC

RICHARD E. WILSON   5614
735 Bishop St., Ste. 306
Honolulu, Hawaii 96813
Telephone (808) 545-1311
Facsimile (808) 545-1388

Attorney for Plaintiffs

**Electronically Filed
FIRST CIRCUIT
1CCV-24-0000095
19-JAN-2024
04:04 PM
Dkt. 1 CMPS**

## IN THE CIRCUIT COURT OF THE FIRST CIRCUIT
## STATE OF HAWAII

| | |
|---|---|
| PATRICIA W. BUCKMAN, Individually, and as Trustee of the PATRICIA W. BUCKMAN REVOCABLE TRUST; PATRICIA W. BUCKMAN REVOCABLE TRUST,<br><br>Plaintiffs,<br><br>vs.<br><br>MARK F. BUCKMAN Individually, and as TRUSTEE OF THE MARK F. BUCKMAN TRUST; MARK F. BUCKMAN TRUST; JENNIFER BUCKMAN; JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATIONS 1-10; DOE PARTNERSHIPS 1-10; and DOE GOVERNMENTAL AGENCIES 1-10,<br><br>Defendants. | Civil No. _____<br><br>COMPLAINT; DEMAND FOR JURY TRIAL; SUMMONS |

## COMPLAINT

Plaintiffs Patricia W. Buckman and the Patricia W. Buckman Revocable Trust, by and through her counsel, Law Offices of Richard E. Wilson, LLC, hereby alleges and avers the following complaint against the above-named Defendants as follows:

1. Plaintiff Patricia W. Buckman is a resident of the City and County of Honolulu, and currently resides at 3010 Kaunaoa St., Honolulu, Hawaii 96815. She is the Trustee of the Plaintiff Patricia W. Buckman Revocable Trust (the "2019 Trust").

I do hereby certify that the foregoing is a full, true and correct copy of the official court record of the Courts of the State of Hawai'i. Dated at: Honolulu, Hawai'i 19-JAN-2024, /s/ Lori Ann Okita, Clerk of the First Judicial Circuit, State of Hawai'i 

2. Defendant Mark F. Buckman ("MFB") is a resident of the State of California, and currently resides at 8359 Elk Grove Florin Road, Sacramento, California 95829. MFB is the Trustee of Defendant Mark F. Buckman Trust ("MB Trust").

3. Defendant Jennifer Buckman ("J. Buckman") is also a resident of the State of California, and currently resides at 8359 Elk Grove Florin Road, Sacramento, California 95829. On information and belief J. Buckman is the wife of MFB.

4. Defendants JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATIONS 1-10; DOE PARTNERSHIPS 1-10; and DOE GOVERNMENTAL AGENCIES 1-10 are persons, partnerships, corporations, associations, governmental units, trusts or entities whose names, identities, capacities, activities and/or responsibilities are presently unknown to Plaintiff and his attorneys despite diligent and good-faith efforts to ascertain their true names, identities and capacities, who may be, or are, responsible and/or liable to Plaintiffs (individually or collectively) for the injuries and damages sustained by Plaintiffs by acting in a negligent, wrongful and/or tortious manner presently unknown to Plaintiff which proximately caused and/or contributed to the damages sustained by Plaintiffs. Accordingly, Plaintiffs have sued the unidentified Doe Defendants herein with fictitious names pursuant to Rule 17(d) of the Hawaii Rules of Civil Procedure. Plaintiffs will seek leave of Court to amend this Complaint to allege the true names of the Doe Defendants and describe their activities, responsibilities and/or capacities when the same is ascertained.

5. The Plaintiff is 88 years old and MFB's mother. The Plaintiff has two other children, Natalie Pitre ("Natalie") and Matt Buckman ("Matt"). Matt Buckman has a son, Duke, aka, Manoa ("Manoa").

6. The Plaintiff through the Plaintiff Trust owns real property located at 3010 and 3010A Kaunaoa St., Honolulu, Hawaii 96815 ("Trust Property"). The Trust Property is a two-lot condominium with homes on each lot. The Plaintiff currently resides in the front house 3010 (TMK (1) 3-1-24-43-1). Natalie and her family currently reside in the rear house 3010A (TMK (1) 3-1-34-43-2) in order to care for the Plaintiff.

7. Since approximately 2016, MFB had been essentially estranged from his family. He is living in California, and rarely came to Hawaii or contacted his family.

8. The Plaintiff never intended for MFB to receive any of her real property after her death. In a 2011 amendment to her 2006 Trust, the Trust Property was to be held in favor of

Manoa (the front house) and Matt (the rear house). The remainder of the Trust assets was to be split 1/3 each among Matt, Natalie, and MFB. MFB was to be Trustee upon Plaintiff's death.

9. MFB was unhappy with how the Plaintiff intended to dispose of her estate. As he said in a January 29, 2015 email,

> "Why aren't you dividing things equally, 1/3 to Matt, 1/3 to me, 1/3 to Natalie? I can see I'm getting the short end of the stick. When you depart from equally dividing things, you're playing favorites. That makes me feel bad, but it's your choice."

He ended the email, stating:

> "I'm disappointed by your ignoring my previous advice. I have reached a point in my life that I do not work with people that cannot take advice, it's simply a waste of time for me and them. There are other problems in your proposal, but no sense in my commenting on them if the comments would simply be ignored. Given the circumstances and that you have disregarded my previous advice, I'm unwilling to be the administrator. Please choose a neutral third party, like a trust attorney.

> You might want to hire a good estate attorney and try to take care of the problems before they become a permanent rift in your family."

10. In early 2016, MFB returned to Honolulu, and decided to fix up another property owned by the Plaintiff located at 714 16th Ave. #B for eventual sale. The Plaintiff and MFB neither discussed nor agreed that MFB would be compensated for any of the work or share in any profits from the sale of the property. Plaintiff presumed that MFB was trying to make amends and be a good son. On July 8, 2016, 714 16th Ave. #B went on the market for $1,588,000.00. Six months later it sold for $1,200,000.00, and the sale closed on January 5, 2017.

11. Following the sale, the Plaintiff reimbursed MFB for the money he spent on the remodel. MFB then demanded an additional $100,000.00 compensation for the work he performed. As there was no agreement, the Plaintiff refused. MFB became angry, and refused to communicate further with her.

12. On June 2, 2017, MFB wrote:

> "Family is a word with meeting, it's also a two-way street of helping. Real family just helps each other – as I do my mom... I'll carry on letting my actions speak louder than words... Over and out."

MFB had little further contact with the Plaintiff or his siblings. Although Natalie occasionally communicated with MFB and J. Buckman on family matters, both MFB and J. Buckman told her

they wanted nothing to do with the Hawaii Buckmans, and that they had no intention of being further involved with them.

13. In 2019, the Plaintiff prepared a new Trust (the "2019 Trust"). In the 2019 Trust, the rear house was to be held in trust in favor of Matt. Upon his death or the sale of the rear house, monies were to be distributed to several beneficiaries. If there was anything left, those funds would be split between MFB and J. Buckman on the one hand, and Natalie and her husband on the other. Manoa would still receive the front house upon the Plaintiff's death. MFB was also removed as Trustee and replaced by Natalie.

14. At the beginning of Covid, Natalie decided she and her family should move. After reviewing options, the Plaintiff informed Natalie she would prefer Natalie and her family to live at 3010A Kaunaoa Street (the rear house). Natalie agreed and moved in. Natalie began taking care of the Plaintiff, including feeding her, continuing to assist her with her real estate business, and taking her to doctors' appointments, among other things. Over the years, the Plaintiff appreciated Natalie's care, and reciprocated by offering her and her family front house at 3010 Kaunaoa Street when she passed.

15. In September 2022, the Plaintiff amended the 2019 Trust to reflect her feelings towards Natalie. At this point in time, Natalie had been living next door providing 24-hour care and assistance to the Plaintiff for several years. By this amendment, Manoa would receive the rear house, Natalie would receive the front house upon the Plaintiff's death.

16. On June 19, 2023, Natalie informed MFB and J. Buckman in a text that she would be staying in the back house, and Matt would be staying in the front house. A few days later, Natalie told MFB that the Plaintiff had updated her Trust, and that she would receive the front house upon the Plaintiff's death. MFB was furious that Natalie would be receiving the front house. Upon learning that his only inheritance would be $40,000.00 from a life insurance policy upon the Plaintiff's death, he exclaimed, "Is that all I'm getting?" He demanded a copy of the Plaintiff's updated Trust.

17. On June 27th, MFB again demanded a copy of the Plaintiff's Trust.

18. On July 5th, he reiterated his demand for a copy of the Trust. Since neither the Plaintiff nor Natalie was inclined to provide him with a copy of the Trust, MFB contacted the Plaintiff's attorney, Steven Reese, and asked for a copy of her Trust. Mr. Reese declined to provide him with a copy absent the Plaintiff's consent.

19.  Three days later, Natalie finally agreed to provide MFB with a copy of the Trust. Shortly after receiving the copy, MFB called Natalie, and demanded that she give him half of the front house. Natalie refused.

20.  On Saturday, July 15, 2023, MFB and his daughter arrived in Hawaii. A few days later, MFB called Natalie, and grilled her for over an hour about the amendments to the 2019 Trust.

21.  Over the next several days, MFB repeatedly pestered Natalie. He claimed he was entitled to half of the front house, that he was being treated unfairly, and that he wanted her to agree to split it with him. On August 3, MFB set the following text to Natalie:

> "Hi Natalie, please get back to me by Sunday. That gives you time to think about it [splitting the front house with him] and talk with Carl if you'd like."

On August 7, Natalie responded with a text of her own, telling MFB in part that she was "not in the position to split the house with you."

22.  Angry that Natalie would not "split" the front house with him, MFB and J. Buckman concocted a plan. If they could not acquire the property by agreement, they would get it through deception. They decided to take advantage of the Plaintiff's age, and her trust.

23.  In furtherance of their plan, MFB and J. Buckman would attempt to reengage with the Plaintiff, regain her trust, and separate her from both Natalie and Matt. This would allow MFB to trick the Plaintiff into signing over her property. They also involved their daughter in convincing the Plaintiff that they, the Defendants, had her interests in mind and wanted her to be happy.

## COUNT I – UNDUE INFLUENCE – DEED

24.  Plaintiffs reassert and reallege the allegations set forth in paragraphs 1-23 as though fully set forth herein.

25.  On August 10, 2023, at approximately 7:00 a.m., MFB picked the Plaintiff up at her residence supposedly to take her to physical therapy. However, the Plaintiff had canceled the physical therapy because she was sick with an infection, and wanted to stay home. MFB insisted that he take the Plaintiff out.

26.  MFB knew that because of her age, the Plaintiff tended to get very tired after lunch. For his plan to work, he counted on the Plaintiff being fatigued. He also ensured that he and the Plaintiff would be alone, with no one to help her.

27. On information and belief MFB had prepared well in advance of their outing a warranty deed transferring the rear property from the Plaintiff Trust to his own trust. His plan was to spring these documents on the Plaintiff when she was tired, and would likely ask few questions. He hired a mobile-notary to meet him and the Plaintiff.

28. At the end of their nine-hour outing, MFB told the Plaintiff that she needed to sign some paperwork. He did not tell the Plaintiff what she was signing; he simply insisted that she sign the documents before he would take her home. Since she was tired, feeling ill, at the time had no reason to believe MFB would swindle her, and because she wanted to go home, she signed several documents.

29. After signing the documents, the Plaintiff asked MFB for copies of what she had signed. He refused to provide them to her.

30. The Plaintiff later discovered that one of the documents she had signed was a warranty deed on behalf of her trust, deeding the rear house located at 3010A Kaunaoa St. to MFB. (Exhibit "1") This was contrary to the Plaintiff's 2019 Trust, and as amended in 2022. MFB paid no consideration for the back house property, and did not inform his siblings of the deed. MFB recorded the Warranty Deed on August 11, 2023. The Plaintiffs would only find out about the Deed two months later through an anonymous source.

31. The Plaintiff did not intend to deed the rear house located at 3010A Kaunaoa St. out of her Trust to MFB. It was her intent that the front house would go to Natalie upon her death. Had MFB explained to the Plaintiff what she was signing, she never would have signed the deed. Plaintiff recently discovered that MFB placed a $500,000.00 mortgage on the property.

32. In furtherance of his plan, and as a result of her refusal to give MFB half of the front house upon the Plaintiff's death, on December 2, 2023, MFB sent Natalie a 45-day eviction notice demanding she vacate the back house.

33. As a result of separating the Plaintiff from her family, and exercising undue influence over her, the Plaintiff mistakenly and unintentionally deeded the front house to MFB. The Plaintiffs have been damaged in an amount in excess of the jurisdictional minimum of this Court.

COUNT II – UNDUE INFLUENCE – MORTGAGE

34. Plaintiffs reassert and reallege the allegations set forth in paragraphs 1-33 as though fully set forth herein.

35. Once again on September 24, 2023, MFB succeeded in separating the Plaintiff from her family.

36. As he did on August 10, 2023, he took the Plaintiff on an all-day outing. He had previously prepared the mortgage for the front property, and retained the same mobile-notary. Late in the afternoon, he told the Plaintiff that she had to sign several additional documents. He did not explain what they were for, or inform her of their contents. She signed whatever he demanded her to sign.

37. One of the documents which MFB had the Plaintiff sign was a mortgage on the front house in the amount of $235,695.00. (Exhibit "2") The Plaintiff received no consideration for the mortgage. Although the mortgage references a "note", the Plaintiff does not know whether she executed a note in MFB's favor. He has refused to provide the Plaintiffs with copies of everything she signed.

38. The Plaintiff received no consideration for the mortgage, or the supposed note.

39. MFB took total advantage of the Plaintiff.

40. As a result of separating the Plaintiff from her family, and exercising undue influence over her, the Plaintiff mistakenly and unintentionally executed a mortgage on the front house to MFB. The Plaintiffs have been damaged in an amount in excess of the jurisdictional minimum of this Court.

## COUNT III – FRAUD (FAILURE TO DISCLOSE)

41. Plaintiffs reassert and reallege the allegations set forth in paragraphs 1-40 as though fully set forth herein.

42. Before demanding that the Plaintiff sign the documents, including the mortgage and warranty deed, MFB failed and refused to disclose the contents of those documents. Instead, he simply told the Plaintiff that these documents were "necessary" or word to that effect.

43. MFB had a duty to disclose to, and inform the Plaintiff of the exact nature and effect of the documents which he demanded she execute.

44. MFB knew that had he been honest with the Plaintiff about the nature of the documents, she would not have signed the warranty deed or mortgage, as both were contrary to her wishes set forth in her 2019 Trust, as amended, a copy of which he had already been provided. He also knew that the Plaintiff was unaware of the nature of any of the documents.

45. As a result of the foregoing, Plaintiffs have been damaged in an amount in excess of the jurisdictional minimum of this Court.

## COUNT IV – FRAUD (CONSTRUCTIVE)

46. Plaintiffs reassert and reallege the allegations set forth in paragraphs 1-45 as though fully set forth herein.

47. As the Plaintiff's son, and a licensed attorney, he enjoyed a special/confidential relationship with the Plaintiff.

48. Plaintiff relied on MFB's representations that what she was signing was simply "necessary" for him.

49. Because of his special/confidential relationship with the Plaintiff, MFB was obligated to explain to the Plaintiff the nature and effect of the documents which he was demanding that she sign.

50. MFB used his special/confidential relationship with the Plaintiff to defraud her out of part of her property, as well as having her place a mortgage on the rest of it.

51. As a result of the foregoing, Plaintiffs have been damaged in an amount in excess of the jurisdictional minimum of this Court.

## COUNT V – CONSTRUCTIVE TRUST

52. Plaintiffs reassert and reallege the allegations set forth in paragraphs 1-51 as though fully set forth herein.

53. The property fraudulently deeded and mortgaged to MFB and/or his Trust belongs to the Plaintiff Trust, and was wrongfully taken from it by Defendants. Any money or proceeds generated from the use of the Property was likewise wrongfully taken from the Plaintiff Trust. Defendants are unjustly benefiting and unjustly profiting from their wrongful conduct by retaining title to the Property and via the mortgage.

54. MFB and his Trust hold title to the Property in trust for the Plaintiff Trust. The Plaintiff Trust is entitled to have title to the Property conveyed to it, as well as having the mortgages removed.

## COUNT VI – INJUNCTIVE RELIEF

55. Plaintiffs reassert and reallege the allegations set forth in paragraphs 1-54 as though fully set forth herein

56. The Plaintiffs are entitled to a preliminary and permanent injunction preventing conveyance of title to the Property to a third-party or any liens or encumbrances from attaching to the Property.

57. Plaintiffs are entitled to injunctive relief to enjoin Defendants from engaging in further breaches of their fiduciary duties.

58. Plaintiffs are entitled to a preliminary and permanent injunction relinquishing control of the Property.

59. By reason of the above alleged acts, omissions, or conduct, Defendants acted willfully, wantonly, oppressively, and/or with such malice as to imply a spirit of mischief or criminal indifference to civil obligations, and/or with willful misconduct and/or that entire want of care which would raise a presumption of a conscious indifference to the consequences of their conduct. Defendants are therefore liable to Plaintiffs for punitive damages in an amount to be proven at trial.

WHEREFORE, Plaintiffs demand judgment in their favor against Defendants, jointly and severally, as follows:

A. Awarding Plaintiff compensatory damages against Defendants in an amount to be determined at trial together with prejudgment interest at the maximum rate allowable by law;

B. Awarding Plaintiff punitive damages against Defendants in an amount to be determined at trial; and

C. Enjoining the Defendants from selling, encumbering, or otherwise transferring the Property;

D. Placing the Property into a constructive trust for the benefit of the Plaintiff and her Trust;

E. An order nullifying the deed, reconveying the Property back to the Trust;

F. An order striking and releasing the mortgages; and

G. Granting such other and further relief, legal, equitable and/or declaratory, as this Court may deem just and proper.

DATED: Honolulu, Hawaii, January 19, 2024.

/S/ Richard E. Wilson
RICHARD E. WILSON

Attorneys for Plaintiffs

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAII

| | |
|---|---|
| PATRICIA W. BUCKMAN, Individually, and as Trustee of the PATRICIA W. BUCKMAN REVOCABLE TRUST; PATRICIA W. BUCKMAN REVOCABLE TRUST<br><br>Plaintiffs,<br><br>vs.<br><br>MARK F. BUCKMAN Individually, and as TRUSTEE OF THE MARK F. BUCKMAN TRUST; MARK F. BUCKMAN TRUST; JENNIFER BUCKMAN; JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATIONS 1-10; DOE PARTNERSHIPS 1-10; and DOE GOVERNMENTAL AGENCIES 1-10,<br><br>Defendants. | Civil No. _____<br><br>DEMAND FOR JURY TRIAL |

## DEMAND FOR JURY TRIAL

Plaintiffs Patricia W. Buckman and the Patricia W. Buckman Revocable Trust, by and through their counsel, Law Offices of Richard E. Wilson, LLC, hereby demand a jury trial on all matters so triable.

DATED: Honolulu, Hawaii, January 19, 2024.

                                              /S/ Richard E. Wilson
                                      RICHARD E. WILSON

                                      Attorneys for Plaintiffs