IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| PATRICIA W. BUCKMAN, Individually, and as Trustee of the PATRICIA W. BUCKMAN REVOCABLE TRUST; PATRICIA W. BUCKMAN REVOCABLE TRUST,<br><br>Plaintiffs,<br><br>vs.<br><br>MARK F. BUCKMAN, Individually, and as TRUSTEE OF THE MARK F. BUCKMAN TRUST; MARK F. BUCKMAN TRUST; JENNIFER BUCKMAN; JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATIONS 1-10; DOE PARTNERSHIPS 1-10; and DOE GOVERNMENTAL AGENCIES 1-10,<br><br>Defendants. | Civil No. 24-00129 MWJS-KJM<br><br>ORDER DENYING DEFENDANT MARK F. BUCKMAN'S MOTION TO DISMISS AND GRANTING DEFENDANT JENNIFER BUCKMAN'S MOTION TO DISMISS WITH LEAVE TO AMEND |

## **INTRODUCTION**

The pending motions arise out of a rather sordid set of allegations, to the effect that a son defrauded his ailing mother out of one residential property and into a mortgage on another. Filed originally in Hawaiʻi state court, the lawsuit has been removed to federal court on the ground that the plaintiffs are citizens of a

different state from the defendants.  The defendant son and his wife have now filed motions to dismiss the complaint against them.

The Court concludes that the complaint adequately alleges claims against the son, but not against the wife.  The Court further finds that it is at least possible that the complaint's allegations against the wife could be remedied through amendment.  Accordingly, the Court DENIES one motion to dismiss and GRANTS the other without prejudice and with leave to amend.

## BACKGROUND

1. The aforementioned son and wife are Defendants Mark F. Buckman and Jennifer Buckman, citizens of the State of California.  The Plaintiffs in this action are Patricia W. Buckman—the 88-year-old mother of Mark F. Buckman—and her revocable trust.  For ease of exposition, the Court will at times refer to these individuals by their first names.

According to the complaint, since approximately 2016, Defendant Mark "had been essentially estranged from his family," which includes not only his mother, Plaintiff Patricia, but also his siblings Natalie and Matt.  ECF No. 1-1, at PageID.9 (¶ 7).  This was in part because Defendant Mark and his wife, Defendant Jennifer, lived an ocean away in California, while Plaintiff Patricia and her other two children lived in Hawaiʻi.  It was also, in part, because Defendant Mark "rarely came to Hawaii or contacted his family." *Id.*

One consequence of this estrangement was that Plaintiff Patricia "never intended" for Defendant Mark "to receive any of her real property after her death." *Id.* (¶ 8). Instead, that real property—consisting of a two-lot condominium with homes on each lot, namely, a "Front House" and a "Rear House"—was to be held for Matt and his son Manoa. *Id.* at PageID.9-10 (¶¶ 6, 8). The remainder of the trust assets were to be split in equal thirds among Defendant Mark and his siblings Matt and Natalie. Given that Defendant Mark is an attorney, Plaintiff Patricia appointed him to be trustee upon her death. *Id.* at PageID.10 (¶ 8).

Defendant Mark, however, "was unhappy with how the Plaintiff intended to dispose of her estate." *Id.* (¶ 9). In a January 29, 2015 email, Defendant Mark wrote to his mother:

> Why aren't you dividing things equally, 1/3 to Matt, 1/3 to me, 1/3 to Natalie? I can see I'm getting the short end of the stick. When you depart from equally dividing things, you're playing favorites. That makes me feel bad, but it's your choice.

*Id.* Defendant Mark ended his email by informing his mother that she should choose a "neutral third party, like a trust attorney" to serve as trustee, as he was no longer willing to serve in that role. *Id.*

Sure enough, in 2019, Plaintiff Patricia prepared a new trust, removing Defendant Mark as trustee and naming Natalie in his place. *Id.* at PageID.11 (¶ 13). The houses were still to be held in trust for Matt and his son Manoa. *Id.*

Fast forward to September 2022. For some time, Plaintiff Patricia had been receiving "24-hour care and assistance" from her daughter Natalie, who had moved into the Rear House. *Id.* (¶ 15); *see id.* (¶ 14) (alleging that Natalie "began taking care of the Plaintiff, including feeding her, continuing to assist her with her real estate business, and taking her to doctors' appointments, among other things"). In recognition of her feelings toward Natalie, Plaintiff Patricia amended her trust to provide that upon her death, Natalie would receive the Front House and Matt's son Manoa would receive the Rear House.

In June 2023, Natalie informed Defendant Mark that she was staying at the Rear House and would inherit the Front House. Defendant Mark "was furious," all the more so when he learned "that his only inheritance would be $40,000.00 from a life insurance policy." *Id.* (¶ 16); *see also id.* (alleging that Defendant Mark exclaimed, "Is that all I'm getting?"). He demanded a copy of the updated trust, which Natalie eventually provided him.

"Shortly after receiving the copy," Defendant Mark called Natalie "and demanded that she give him half" of the Front House, to which Natalie refused. *Id.* at PageID.12 (¶ 19). Defendant Mark and his daughter flew to Hawaiʻi on July 15, 2023, and for the "next several days," Defendant Mark "repeatedly pestered" Natalie about the Front House. *Id.* (¶ 21). On August 3, 2023, Defendant Mark sent Natalie the following text: "Hi Natalie, please get back to me by Sunday.

4

That gives you time to think about it," meaning splitting the Front House with him. *Id.* Natalie responded by text that she was "not in the position to split the house with [him]." *Id.*

According to the complaint, at this point, Defendants Mark and Jennifer "concocted a plan. If they could not acquire the property by agreement, they would get it through deception." *Id.* (¶ 22). And in furtherance of this plan, Defendants Mark and Jennifer "would attempt to reengage with the Plaintiff, regain her trust, and separate her from both Natalie and Matt," with the aim of putting Defendant Mark in a position "to trick the Plaintiff into signing over her property." *Id.* (¶ 23).

The complaint goes on to allege how Defendant Mark pulled this off. On August 10, 2023, at approximately 7:00 a.m., Defendant Mark picked up Plaintiff Patricia at her residence with the supposed aim of taking her to physical therapy. *Id.* (¶ 25). "However, the Plaintiff had canceled the physical therapy because she was sick with an infection, and wanted to stay home." *Id.* Defendant Mark nonetheless "insisted that he take the Plaintiff out." *Id.*

The complaint alleges that Defendant Mark "knew that because of her age, the Plaintiff tended to get very tired after lunch." *Id.* (¶ 26). Defendant Mark "counted on the Plaintiff being fatigued," and took steps to "ensure[] that he and the Plaintiff would be alone, with no one to help her." *Id.*

5

The outing lasted an astonishing nine hours. *Id.* at PageID.13 (¶ 28). At the end of the outing, Defendant Mark "told the Plaintiff that she needed to sign some paperwork." *Id.* But "[h]e did not tell the Plaintiff what she was signing; he simply insisted that she sign the documents before he would take her home." *Id.* And since Plaintiff Patricia "was tired, feeling ill," "wanted to go home," and was trusting of Defendant Mark, she signed several documents that Defendant Mark gave her. *Id.* After signing them, she asked for copies, which Defendant Mark refused to provide. *Id.* (¶ 29). At no time did Plaintiff Patricia intend to deed the Rear House to Defendant Mark. *Id.* (¶ 31).

But Plaintiff Patricia later discovered—two months later through an anonymous source—that "one of the documents she had signed was a warranty deed on behalf of her trust," deeding the Rear House to Defendant Mark. *Id.* (¶ 30). Defendant Mark paid no consideration and gave his siblings no notice that he intended to engineer a transfer of the property to himself. *See id.* And on December 2, 2023, Defendant Mark sent his sister Natalie a "45-day eviction notice demanding she vacate" the Rear House. *Id.* (¶ 32).

But before moving to evict his sister from her residence, Defendant Mark took his mother for one more "all-day outing." *Id.* at PageID.14 (¶ 36). On September 24, 2023, Defendant Mark waited until late in the afternoon to tell Plaintiff Patricia that "she had to sign several additional documents. He did not

6

explain what they were for, or inform her of their contents. She signed whatever he demanded her to sign." *Id.* (¶ 37). One of the documents turned out to be a $235,695 mortgage on the Front House. *Id.* Defendant Mark paid no consideration for this mortgage. *Id.* Plaintiff Patricia never intended to execute this mortgage, which was done "mistakenly and unintentionally" (on her part) as a result of Defendant Mark's "exercising undue influence over her." *Id.* (¶ 40).

2. This lawsuit followed. Filed in Hawai'i state court on January 19, 2024, the action was removed to federal court on March 18, 2024. ECF No. 1. Plaintiff Patricia (together with her trust) brings state-law claims of undue influence (Counts 1 and 2) and fraud (Counts 3 and 4), and seeks the imposition of a constructive trust (Count 5) and injunctive relief (Count 6). ECF No. 1-1, at PageID.12-16. Plaintiffs also seek, among other things, compensatory damages and punitive damages. *Id.* at PageID.16.[1]

Defendant Mark and Defendant Jennifer have now filed separate motions to dismiss the complaint. ECF Nos. 8, 9. They contend that the complaint does not

---

[1] In their notice of removal, Defendants Mark and Jennifer allege that they are citizens of California, while Plaintiff Patricia is a citizen of Hawai'i. ECF No. 1, at PageID.4-5 (¶ 4). Defendants further assert that the two trusts named as parties are not separate legal entities, and thus it is the citizenship of their trustees—Plaintiff Patricia and Defendant Mark—that matters. *Id.* They also allege that more than $75,000 is in controversy—the Rear House with an estimated value of over $800,000, and the $235,695 mortgage executed on the Front House. *Id.* at PageID.3 (¶ 3). Accordingly, Defendants have adequately alleged that this Court has diversity jurisdiction over this state-law action under 28 U.S.C. § 1332.

contain sufficient factual allegations to make out plausible claims against them, especially under the heightened pleading standards for allegations of fraud under Rule 9(b) of the Federal Rules of Civil Procedure. Plaintiffs have filed an opposition to the motions, ECF No. 16, to which both Defendants have replied, ECF Nos. 21, 22. The Court elects to decide the motions without a hearing pursuant to Local Rule 7.1(c).

## DISCUSSION

### A. The Legal Standards Governing Rule 12(b)(6) Motions

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must include a "short and plain statement of the claim showing that the pleader is entitled to relief." To show an entitlement to relief, however, it is not enough to allege "labels and conclusion." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, the complaint's factual allegations must be "enough to raise a right to relief above the speculative level." *Id.* Put differently, the complaint must include sufficient "factual enhancement" to cross "the line between possibility and plausibility." *Id.* at 555-56; *see also Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995 (9th Cir. 2014).

In considering whether a complaint's allegations are sufficient, the Court must proceed in two steps. First, the Court must "identif[y] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."

*Eclectic Props. E.*, 751 F.3d at 996 (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Second, the Court must "assume the veracity of well pleaded factual allegations and determine whether they plausibly give rise to an entitlement to relief." *Id.* (cleaned up).

Furthermore, a heightened pleading standard applies to allegations of fraud. Under Rule 9(b) of the Federal Rules of Civil Procedure, the pleading must provide an "account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (internal quotation marks omitted). "To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (internal quotation marks omitted). As a practical matter, this means that "[a] plaintiff must set forth *more* than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted).

//

//

9

## B. The Complaint Alleges a Plausible Claim for Relief Against Defendant Mark F. Buckman But Does Not Allege Such a Claim Against Defendant Jennifer Buckman

Defendant Mark contends that the complaint must survive Rule 9(b)'s heightened pleading standards because it alleges a "unified course of fraudulent conduct" against him. ECF No. 9, at PageID.53. The Court need not resolve that question, because the complaint adequately alleges plausible claims for relief even under the heightened pleading standards. Meanwhile, the complaint does not allege any plausible claim against Defendant Jennifer even under the more general standards of Rule 8(a)(2). For these reasons, explained more fully below, the Court grants Defendant Jennifer's motion to dismiss and denies Defendant Mark's motion to dismiss.

    1. The complaint seeks relief against Defendant Jennifer on all counts. But it is completely bereft of factual allegations against Defendant Jennifer. Indeed, its only allegations against her are conclusory ones: that she and her husband "concocted a plan" and took steps in "furtherance of their plan." ECF No. 1-1, at PageID.12 (¶¶ 22, 23). Under federal pleading standards, a reviewing court must disregard conclusory allegations of this sort. And the complaint contains no other factual allegations that would support any plausible claim against Defendant Jennifer. It follows that Defendant Jennifer's motion to dismiss must be granted, even under the more favorable pleading standards of Rule 8(a)(2).

10

Plaintiff Patricia responds that "it is certainly plausible that a husband and wife would be acting in concert to defraud the Plaintiff." ECF No. 16, at PageID.120. But the Supreme Court has made clear that when a complaint's allegations are "merely consistent with" a finding of unlawful conduct, they are not sufficient to "plausibly suggest[]" that unlawfulness. *Twombly*, 550 U.S. at 557 (finding that complaint's allegations of parallel conduct did not adequately allege an anticompetitive agreement, for such conduct is merely consistent with, and therefore does not plausibly suggest, such an agreement). The complaint's allegations against Defendant Jennifer might well be conceivable, but the complaint has not provided sufficient factual enhancement to "nudge[ its] claims across the line from conceivable to plausible." *Id.* at 570.

Plaintiff Patricia further argues that she has "yet to depose either Defendant, and cannot be expected to know the ins-and-outs of their conspiracy." ECF No. 16, at PageID.120. That is unquestionably correct, but she must still satisfy federal pleading standards to survive a motion to dismiss, and her complaint in its current form has not done so against Defendant Jennifer. Moreover, the Supreme Court has made clear that a court cannot allow a "wholly conclusory statement of claim" to "survive a motion to dismiss" merely because "the pleadings left open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery." *Twombly*, 550 U.S. at 561 (cleaned up).

Because the complaint does not adequately allege any plausible claim against Defendant Jennifer, even under the more generous pleading standards of Rule 8(a)(2), her motion to dismiss is granted.

2.  Matters are different for Defendant Mark.  As to him, the complaint provides detailed factual allegations not only about his conduct, but also about his motivations.  And it describes precisely when and how he allegedly exerted undue influence and defrauded his mother.  The complaint is as striking for how little it says about Defendant Jennifer as it is for how much it says about Defendant Mark and his alleged conduct.

These general observations do not inevitably lead to the denial of Defendant Mark's motion, for each of the complaint's claims must be properly alleged to survive the motion to dismiss.  And, what is more, Defendant Mark contends that Rule 9(b)'s heightened pleading standards apply.  The Court therefore now turns to a consideration of the sufficiency of each of the complaint's counts.  As will be explained, because the Court concludes that each count survives even Rule 9(b)'s heightened standards, the Court need not resolve whether those standards in fact apply.

a. Counts 1 and 2 allege that Defendant Mark exercised undue influence over Plaintiff Patricia.  According to Count 1, this undue influence resulted in Plaintiff Patricia mistakenly and unintentionally deeding the Rear

House to Defendant Mark. According to Count 2, it resulted in Plaintiff Patricia mistakenly and unintentionally executing a mortgage on the Front House to Defendant Mark's benefit.

As to these claims, the complaint amply satisfies Rule 9(b)'s requirement of alleging an "account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz*, 476 F.3d at 764. It alleges the times on which Defendant Mark allegedly exerted undue influence: August 10, 2023 (Count 1) and September 24, 2023 (Count 2). It alleges the place: on Oʻahu, after Defendant Mark had taken his elderly mother on all-day outings. It alleges the specific content of the false representations: Defendant Mark's statements that his mother needed to sign some "paperwork," his intentional failure to explain what those papers were, his reliance on his mother being exhausted after having been on day-long outings with him, and his failure to explain or disclose the serious consequences the "paperwork" would bring about. And it alleges the identities of the parties to the misrepresentations: Defendant Mark, who made the misrepresentations and omissions himself, and his mother, Plaintiff Patricia, who was the victim of them. These allegations are more than sufficient to apprise Defendant Mark of the claims against him and to allow him to defend against the specific allegations of fraud.

13

That is especially so because of the nature of this case. The factual context here is not a complex business transaction or sprawling corporate dispute. Instead, it involves straightforward allegations that Defendant Mark took advantage of his mother. As the "degree of detail required to satisfy [Rule 9(b)] often turns on the substantive context in which the fraud is alleged to have occurred," 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 1298 (4th ed. 2023 Update), the Court has little difficulty concluding that in this context, Rule 9(b)'s heightened pleading standards have been met.

Defendant Mark, for his part, insists that the standard has not been met, and he attempts to make his point with a series of questions that, he says, the complaint's factual allegations do not sufficiently answer. ECF No. 22, at PageID.152-54. But this rejoinder does only so much work, for it is always true that a complaint could, in theory, provide more detail. The question is not whether more detail is possible, but whether what is found in the complaint is sufficient. And Rule 9(b) "does not require omniscience; rather the Rule requires that the circumstances of the fraud be pled with enough specificity to put defendants on notice as to the nature of the claim." *Williams v. Duke Energy Int'l, Inc.*, 681 F.3d 788, 803 (6th Cir. 2012) (internal quotation marks omitted). The Court is satisfied that the complaint accomplishes that task.

The Court also concludes that the complaint adequately pleads each of the elements of these undue influence claims, even under Rule 9(b)'s heightened standards. As Plaintiff Patricia explains, under Hawaiʻi law, the elements of an undue influence claim are "(1) susceptibility to undue influence, (2) opportunity to influence, (3) disposition to influence, and (4) coveted result." ECF No. 16, at PageID.111-12 (quoting *In re Estate of Herbert*, 90 Hawaiʻi 443, 457, 979 P.2d 39, 53 (1999)). The complaint's factual allegations, taken as true, easily establish these requirements. *See id.* at PageID.112-14. Indeed, apart from his more generalized arguments about Rule 9(b), Defendant Mark does not meaningfully dispute that any of these specific elements have been met.

Defendant Mark's motion to dismiss is therefore denied as to Counts 1 and 2 of the complaint.

b. A similar analysis applies to Counts 3 and 4 of the complaint. These counts allege that Defendant Mark committed fraud, both because of a failure to disclose (Count 3) and because he had a special or confidential relationship with Plaintiff Patricia as a licensed attorney and her son (Count 4).

Both counts easily satisfy Rule 9(b)'s heightened pleading standards. The fraud again concerns Defendant Mark's alleged conduct on August 10, 2023, and September 24, 2023. The failure to disclose stems from Defendant Mark's failure to inform his mother about the nature of the documents he insisted she sign, which

resulted in her mistakenly and unintentionally deeding valuable real estate to him and executing a mortgage on his behalf.  The complaint alleges the time, the place, the specific content of the false statements and omissions, and the identity of the parties to the misrepresentations.  Although Defendant Mark is correct that even more detail could have been provided, the complaint, in its current form, provides enough detail to satisfy Rule 9(b).

And the complaint adequately alleges each of the elements of the fraud claims.  As Plaintiff Patricia argues (and Defendant Mark does not dispute), the elements for failure-to-disclose fraud under Hawaiʻi law track the Restatement (Second) of Torts.  ECF No. 16, at PageID.116.  Under these standards, one party to a business transaction "is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated" (a) "matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them" and (b) "facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, . . . would reasonably expect a disclosure of those facts."  *Id.* (quoting Restatement (Second of Torts) § 551 (Am. L. Inst. 1977)); *see also Miyashiro v. Roehrig, Roehrig, Wilson & Hara*, 122 Hawaiʻi 461, 483 n.24, 228 P.3d 341, 363 n.24 (App. 2010) (applying § 551 Restatement standard).  Similarly, the other fraud claim arises from the alleged

breach of a "fiduciary or confidential relationship." ECF No. 16, at PageID.118 (quoting *Yoneji v. Yoneji*, 136 Hawai'i 11, 18-19, 354 P.3d 1160, 1167-68 (App. 2015)).

The complaint's allegations meet these requirements: The complaint adequately alleges that Defendant Mark had a "relation of trust and confidence"—or, relatedly, a "fiduciary or confidential relationship"—with Plaintiff Patricia, both because he is a licensed attorney and because she is his mother. And the complaint adequately alleges that Defendant Mark knew that Plaintiff Patricia was about to sign the documents "under a mistake as to them," and that she would "reasonably expect a disclosure of those facts" because of their relationship—indeed, the complaint alleges in detail that Defendant Mark relied on these expectations to carry out his fraud.

For these reasons, Defendant Mark's motion to dismiss is denied as to Counts 3 and 4 of the complaint.

   c. This leaves Counts 5 and 6. In these counts, Plaintiff Patricia seeks a constructive trust and injunctive relief. Defendant Mark appears to argue that the complaint does not adequately allege a basis for these remedies, but the Court disagrees. Plaintiff Patricia has adequately alleged facts that—if proved—would afford her a basis to seek a constructive trust (to protect the real estate and mortgage proceeds that were fraudulently procured) and injunctive relief (to ensure

no further fraud and no efforts to evade judgment). Accordingly, because the complaint adequately alleges the underlying undue influence and fraud claims, its requested forms of relief (a constructive trust and an injunction) are properly pled. And Defendant Mark offers no reason why Plaintiff Patricia would be legally precluded from obtaining these forms of relief if she were to prevail on her undue influence and fraud claims.

Similarly, to the extent Defendant Mark challenges the complaint's request for punitive damages, that argument is meritless; the complaint's allegations are more than sufficient to allege that in exerting undue influence on, and defrauding, his 88-year-old and ailing mother, Defendant Mark "acted wantonly or oppressively or with such malice as implies a spirit of mischief or criminal indifference to civil obligations." *Masaki v. Gen. Motors Corp.*, 71 Haw. 1, 16-17, 780 P.2d 566, 575 (1989).

Defendant Mark's motion to dismiss is denied as to Counts 5 and 6, and as to the complaint's request for punitive damages.

### C.   Leave to Amend Complaint

Turn back now to Defendant Jennifer. Although the Court has concluded that the complaint does not plausibly allege a claim for relief against Defendant Jennifer in its current form, the Court concludes that Plaintiffs could possibly cure the deficiencies by submitting an amended complaint. Accordingly, the Court

dismisses the complaint as to Defendant Jennifer without prejudice and grants Plaintiffs leave to amend it.

Any amended complaint—which should be titled "First Amended Complaint"—must be filed by June 10, 2024, and must cure the deficiencies identified above; that is, Plaintiffs must provide sufficient facts to plausibly support their claims, under the pleading standards discussed above. Plaintiffs are cautioned that failure to timely file an amended complaint that addresses the deficiencies identified above will result in the dismissal of this action with prejudice as to Defendant Jennifer.

## CONCLUSION

For the foregoing reasons, the Court DENIES Defendant Mark F. Buckman's motion to dismiss and GRANTS Defendant Jennifer Buckman's motion to dismiss without prejudice and with leave to amend.

If Plaintiff Patricia W. Buckman elects to file an amended complaint, she must comply with the following requirements:

(1)  Plaintiffs' deadline to file an amended complaint is June 10, 2024;

(2)  Plaintiffs' amended complaint should be titled "First Amended Complaint"; and

(3)  Plaintiffs must cure the deficiencies identified above.

Plaintiff Patricia is cautioned that failure to timely file an amended complaint that conforms with this Order will result in dismissal of this action with prejudice as to Defendant Jennifer Buckman.

    IT IS SO ORDERED.

    DATED: May 10, 2024, at Honolulu, Hawaiʻi.



/s/ Micah W.J. Smith
_____
Micah W.J. Smith
United States District Judge

Civil No. 24-00129 MWJS-KJM, *Patricia W. Buckman* et al. *v. Mark F. Buckman* et al.; ORDER DENYING DEFENDANT MARK F. BUCKMAN'S MOTION TO DISMISS AND GRANTING DEFENDANT JENNIFER BUCKMAN'S MOTION TO DISMISS WITH LEAVE TO AMEND

20