Mark F. Buckman          SBN 7080
Law Offices of Mark F. Buckman
8359 Elk Grove Florin Rd
Suite 103-320
Sacramento, CA 95829
Telephone:   (916) 442-8300
Markfbuckman@sbcglobal.net
Attorneys for Defendants Jennifer
Buckman and Mark F. Buckman,
individually and as Trustee of the Mark F.
Buckman Trust

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PATRICIA W. BUCKMAN, Individually, and as Trustee of the PATRICIA W. BUCKMAN REVOCABLE TRUST; PATRICIA W. BUCKMAN REVOCABLE TRUST,<br><br>Plaintiffs,<br><br>v.<br><br>MARK F. BUCKMAN Individually, and as TRUSTEE OF THE MARK F. BUCKMAN TRUST; MARK F. BUCKMAN TRUST; JENNIFER BUCKMAN; JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATIONS 1-10; DOE PARTNERSHIPS 1-10; and DOE GOVERNMENTAL AGENCIES 1- 10,<br>Defendants. | Civil No. CV 24-00129 MWJS-KJM<br><br>DEFENDANT JENNIFER BUCKMAN'S NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED (FRCP 12(B)(6))<br><br>Magistrate Judge Kenneth J. Mansfield<br><br>Trial Date: November 3, 2025<br><br>Docket Number 61 |

**NOTICE OF MOTION TO DISMISS PLAINTIFFS'**

**SECOND AMENDED COMPLAINT AGAINST JENNIFER BUCKMAN**

PLEASE TAKE NOTICE that as soon as the matter may be heard in the above-entitled court, in the courtroom of Magistrate Judge Kenneth J. Mansfield, at the United States Courthouse for the District of Hawaii, located at 300 Ala Moana Blvd, Honolulu, Hawaii 96850, with oral argument to be held on a date and time to be designated by the Court, defendant Jennifer Buckman will move the court to dismiss each of the Second Amended Complaint's seven counts against her pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because the First Amended Complaint fails to state a claim upon which relief can be granted, on the grounds that the First Amended Complaint: (1) fails to plead averments of fraud and mistake with particularity and thus fails to meet the requirements of Federal Rule of Civil Procedure 9(b), (2) fails to plead facts sufficient to establish a confidential relationship between J. Buckman and Plaintiff, (3) fails to plead facts sufficient to establish that J. Buckman was the grantee of either the challenged grant deed or mortgage, (4) fails to plead facts sufficient to support the remedy of an injunction, and (5) fails to plead facts sufficient to support a civil conspiracy claim.

\\

\\

\\

The motion will be based on this Notice of Motion, the Memorandum of Points and Authorities filed herewith, any arguments of counsel, the pleadings and papers filed herein, and any other materials properly considered by the Court.

DATED: August 23, 2024         /s/ Mark F. Buckman

Law Offices of Mark F. Buckman
Mark F. Buckman, Esq.
Attorneys for Defendants Jennifer Buckman and Mark F. Buckman, individually and as Trustee of the Mark F. Buckman Trust

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### I.     <u>Introduction and Summary of Relevant Facts</u>

Despite being given two opportunities to amend, Plaintiffs' Second Amended Complaint ("SAC") still fails to allege facts sufficient to state any claim against Defendant Jennifer Buckman ("**J. Buckman**").

The only specific facts alleged to support Plaintiffs' claims against J. Buckman are:

- J. Buckman is an attorney and is Plaintiff's daughter-in-law. ECF #61, ¶¶ 3, 50, 53.

- J. Buckman has been "essentially estranged" from Plaintiff "since approximately 2016." ECF #61, ¶ 7.

- J. Buckman "live[s] in California, and rarely come[s] to Hawaii or contact[s] the Plaintiff." ECF #61, ¶ 7.

- At some unspecified time after August 7, 2023, "MFB and J. Buckman concocted a plan" to "acquire the [front house] . . . through deception" by "tak[ing] advantage of the Plaintiff's age, and her trust." ECF #61, ¶ 22.

- On August 10, 2023, MFB and J. Buckman arrived at Plaintiff's home at "at approximately 8:00 a.m. This was the first time that J. Buckman accompanied MFB to spend time with Plaintiff at her home." ECF #61, ¶ 26.

- That same day, J. Buckman and MFB took Plaintiff to lunch at the Outrigger, where they had a drink with lunch. ECF #61, ¶¶ 26, 27.

- After lunch, J. Buckman and MFB took Plaintiff to Kaiser to have blood work done so she could get her prescriptions refilled. ECF #61, ¶ 29.

- Plaintiff signed the deed transferring the back house out of her trust on the afternoon of August 10, 2023, and J. Buckman was present. ECF #61, ¶ 29, 46.

- "They [MFB and J. Buckman] did not tell the Plaintiff what she was signing. . . ." ECF #61, ¶ 29.[1]

Thus, like its predecessors, the SAC admits that J. Buckman neither said nor did anything to persuade or influence Plaintiff in any way before she signed the contested documents; rather, Plaintiff merely alleges J. Buckman "remained silent."

---

[1] Paragraph 29 of the SAC further alleges "*they* simply insisted that she sign the documents before he would take her home," but this allegation contradicts the pleading of the FAC and the Complaint, which alleged only MFB "insisted." Compare ECF #61, ¶ 29, with ECF # 1-1, ¶ 28 & ECF #33, ¶ 28.   As such, the change from "he" to "they" in an improper attempt to justify a claim against J. Buckman constitutes is a sham pleading and should be disregarded, as explained in Section III.A, below.

(SAC, ECF #61, ¶ 66; *see also id*., ¶¶ 45, 46, 52 [alleging J. Buckman should have disclosed the contents of the documents to Plaintiff]; *see also* FAC, ECF #33, ¶ 63.)

The SAC also contests a Power of Attorney signed on August 25, 2023, the mortgage on the front house signed on September 24, 2023, and a Codicil to the Last Will and Testament of Patricia W. Buckman. The SAC does not allege that J. Buckman made any statements to Plaintiff about any of these documents, nor does it allege that J. Buckman was even present when these documents were signed. Instead, the SAC merely alleges "to the extent J Buckman was present, [she] failed and refused to disclose the contents of [the mortgage, warranty deed, Second Amendment, POA, and Codicil]" to Plaintiffs. ECF #61, ¶ 45. Somewhat inconsistently, the SAC then further alleges "At least with respect to the warranty deed, J. Buckman, who was present when the Plaintiff executed the instrument, had a duty to likewise tell the Plaintiff that she was deeding half of her property to MFB." ECF # 61, ¶ 46.

The only statements J. Buckman is alleged to have made **occurred months after** both the deed and the mortgage were signed. The alleged statements are "Mom, do you want them to come back, or would you…. it's your dear son, don't you want him here?"[2] and "Let's sit down and talk about what actually happened.  I

---

[2] Like the FAC, the SAC inaccurately ascribes the "dear son" statement, which was actually made by Natalie Pitre, to J. Buckman. For purposes of this Motion to Dismiss, J. Buckman treats the allegation in the SAC as if it were true,

think you're confused, we're happy. . . . " SAC, ¶ 67. However, these specific allegations occurred on November 15, 2023, long after all the disputed documents had been signed.

The entire alleged basis of J. Buckman's "confidential relationship with the Plaintiff" stems from (1) her status as Plaintiff's daughter-in-law, and (2) the mere fact that she is a licensed attorney. SAC, ¶¶ 50, 53. Thus, the SAC's allegations to establish a "confidential relationship" with J. Buckman merely allege (1) kinship, and (2) that J. Buckman holds a professional license to practice law - in California. Notably, however, the SAC does not allege (and could not truthfully) that J. Buckman has ever represented Plaintiff in any legal matter, and, as noted above, the SAC alleges that Plaintiff and J. Buckman were estranged from 2016 through 2023 (FAC, ¶ 7), J. Buckman rarely comes to Hawaii or contacts Plaintiff (FAC, ¶ 7), and the first time that J. Buckman "accompanied MFB to spend time with the Plaintiff at her home" was "August 10, 2023" (SAC, ¶ 26) – the same day Plaintiff signed the deed.

As a matter of law, these allegations against J. Buckman – which do not include any specific allegation of any affirmative action by J. Buckman – are insufficient to support the fraud, undue influence, and civil conspiracy claims the

---

although J. Buckman reserves her right to prove, using the videotape of the proceedings that Plaintiff cites in her SAC, that J. Buckman did not make this statement.

SAC purports to state against J. Buckman. The SAC remains fatally defective as to J. Buckman, and the court should grant J. Buckman's motion to dismiss. Further, because Plaintiff has already been given the opportunity to amend her Complaint twice, but it remains fatally defective and the defects cannot be cured, the claims against J. Buckman should be dismissed without granting Plaintiff further leave to amend.

## II.    Procedural History

In its order granting J. Buckman's motion to dismiss the Complaint, the Court directed Plaintiffs as follows:

> Any amended complaint—which should be titled "First Amended Complaint"—must be filed by June 10, 2024, and must cure the deficiencies identified above; that is, Plaintiffs must provide sufficient facts to plausibly support their claims, under the pleading standards discussed above.

ECF # 24.

When plaintiff amended her complaint, J. Buckman again filed a motion to dismiss based on the deficiencies therein. ECF # 36. Plaintiff then filed an ex parte application to amend her complaint for a second time, ECF # 53, which was

8

subsequently granted.   ECF # 59.   Because the SAC is likewise fatally defective, J. Buckman now brings this motion to dismiss the SAC as to the claims against her.

### III.   ARGUMENT

### A.   Plaintiff's Sham Pleadings in the SAC Should Be Disregarded.

The SAC directly contradicts some of the allegations of the Complaint and the FAC. These contradictions violate the sham pleading rule and are properly disregarded by the Court.   "A party cannot amend pleadings to 'directly contradict an earlier assertion made in the same proceeding.'" *Airs Aromatics, LLC v. Op. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014); *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990). Where, as here, "allegations in an amended complaint contradict those in a prior complaint, a district court need not accept the new alleged facts as true, and may, in fact, strike the changed allegations as 'false and sham.'"   *IV Sols., Inc. v. Empire HealthChoice Assurance, Inc.,* No. 2:17-cv-05615-ODW (SKx), 2020 U.S. Dist. LEXIS 179444, at *6 (C.D. Cal. Sep. 29, 2020); *Azadpour v. Sun Microsystems, Inc.*, No. C06-03272 MJJ, 2007 U.S. Dist. LEXIS 55502, 2007 WL 2141079, at *2 n.2 (N.D. Cal. July 23, 2007).

Here, Plaintiff's original Complaint alleged as follows: "On August 10, 2023, at approximately 7:00 a.m., MFB picked the Plaintiff up at her residence supposedly to take her to physical therapy. However, the Plaintiff had canceled the physical

therapy because she was sick with an infection, and wanted to stay home. MFB insisted that he take the Plaintiff out. . . .   [MFB] ensured that he and the Plaintiff would be alone, with no one to help her. [¶] At the end of their nine-hour outing, MFB told the Plaintiff she needed to sign some paperwork. He did not tell the Plaintiff what she was signing; he simply insisted that she sign the documents before he would take her home." Complaint, ECF # 1-1, ¶ 25, 26, 28. Thus, the Complaint alleged that MFB took Plaintiff out alone, kept her out for nine hours, and MFB alone "insisted" she sign documents.

The FAC changed the timing (deleting all references in the Complaint to the supposed "nine-hour outing," which had never actually occurred), added J. Buckman as a participant in the outing, and changed both the activities and the purposes of the outing, all in direct contradiction of the allegations made in the Complaint. Significantly, however, the FAC retained the allegation that MFB acted alone in persuading or influencing Plaintiff to sign the (now-disputed) documents: "On August 10, 2023, MFB and J. Buckman arrived at Plaintiff's home at approximately 8:00 a.m. This was the first time that J. Buckman accompanied MFB to spend time with the Plaintiff at her home. Later in the morning, . . . MFB and J. Buckman took the Plaintiff to the Outrigger for drinks. . .   Later in the afternoon, MFB and J. Buckman took the Plaintiff to the Kaiser clinic for some

bloodwork.  While at the clinic, MFB told the Plaintiff she needed to sign some paperwork.  **He** did not tell the Plaintiff what she was signing; **he** simply insisted that she sign the documents before he would take her home."   ECF #33, ¶¶ 25, 28, emphasis added.

The FAC also contained multiple other allegations that MFB was the only person who took affirmative action.   FAC, ECF #33, ¶ 49 [alleging that J. Buckman was "obligated to explain to the Plaintiff the nature and effect of the documents **which MFB demanded she sign**"], emphasis added; ¶ 62 [alleging J. Buckman "took no steps to stop" MFB]; ¶ 63 [alleging J. Buckman "remained silent"].

Without explanation or any additional facts, and in direct contradiction to the allegations of the FAC and the Complaint that attribute the "insistence" to MFB alone, the SAC expanded the allegations so that they now allege that both J. Buckman and MFB "simply insisted" that Plaintiff sign the documents:   "While at the clinic, MFB told the Plaintiff she needed to sign some paperwork.  **They** did not tell the Plaintiff what she was signing; **they** simply insisted that she sign the documents before he would take her home." ECF #61, ¶ 29, emphasis added. However, this conclusory allegation is contradicted in the SAC itself, which retains the allegations that "**MFB demanded she sign**" the disputed documents. ECF #61, ¶ 49, emphasis added; *see also id.*, ¶ 43 ("MFB had a duty to disclose to, and inform

11

the Plaintiff of[,] the exact nature and effect of the documents **which he demanded**

**she execute**."), emphasis added; *id.*, ¶ 45 (MFB "simply told the Plaintiff that these

documents were necessary, or word[s] to that effect.").

The SAC's conclusory allegations that J. Buckman participated in "insisting"

Plaintiff sign the disputed documents directly contradict the allegations of the

Complaint, the FAC, and even the SAC itself that MFB acted alone. Leave to amend

a complaint does not authorize the plaintiff to make false allegations contradicting

prior pleadings for the sole purpose of withstanding a motion to dismiss; if plaintiff

lacks facts sufficient to state a claim, she cannot simply invent them to serve her own

convenience. Consequently, the Court should strike the changed allegations as "false

and sham," and they should be disregarded for purposes of determining whether

Plaintiff's claims as to J. Buckman survive this motion to dismiss. Cf., *Airs

Aromatics,* 744 F.3d at 600; *Russell*, 893 F.2d at 1037.

B.     **Counts I and II of the Second Amended Complaint Fail to State a
       Claim Against Jennifer Buckman for Undue Influence.**

The Hawai'i Supreme Court has held that there is a fifth element to the normal

four elements of undue influence.   Generally, undue influence is established by

proof of the following elements: "(1) a susceptible party, (2) another's opportunity to

influence the susceptible party, (3) the actual or attempted imposition of improper

12

influence, and (4) a result showing the effect of the improper influence." *Cvitanovich-Dubie v. Dubie*, 125 Hawai'i 128, 160, 254 P.3d 439, 471 (2011).

Hawai`i law, however, expressly requires an additional consideration: "the undue influence must be proved to have operated **as a present constraint** at the very time of making the will[.] [*In re Will of Notley,*] 15 Haw. [435,] at 440 [(1904)]; see also 1 Page on Wills, supra, § 15.10, at 737 ("Undue influence does not render a will invalid unless it operates **at the time that the will is made** and causes its execution."). *In Re Estate of Herbert,* 90 Haw. 443, 458; 979 P.2d 39 (1999), emphases added. Ultimately, "[t]o sustain a claim of undue influence[,] it must appear that the influence exercised amounted to fraud or coercion destroying free agency, or the substitution of another's will for that of the testator [or testatrix] so that the product is not that of the testator [or testatrix]." *Id*., citing *In Re Estate of Heeb*, 26 Haw. 538, 540 (1922) [holding motion for new trial properly granted and citing to *Will of Notley* as "a splendid exposition of the law of wills in respect to their invalidity as a result of undue influence"].

As to J. Buckman, the SAC does not plead any facts to show "opportunity to influence the susceptible party" or "the actual or attempted imposition of improper influence" by J. Buckman. Rather, the SAC alleges J. Buckman had been estranged from Plaintiff from 2016 to 2023 (SAC, ¶ 7), rarely comes to Hawai'i or contacts

13

Plaintiff (SAC, ¶ 7), and arrived at Plaintiff's house for the first time on August 10, 2023, the very day that Plaintiff signed the deed.   SAC, ¶ 25.

The only specific statements J. Buckman is alleged to have made occurred on November 15, 2023, months **after** both the deed and the mortgage were signed. The alleged statements are "Mom, do you want them to come back, or would you…. it's your dear son, don't you want him here?"[3] and "Let's sit down and talk about what actually happened.   I think you're confused, we're happy. . . . " SAC, ¶ 67.

As a matter of law, these factual allegations are not sufficient to show that Defendant J. Buckman had "opportunity to influence" Plaintiff before she signed the documents.   The Hawai'i Supreme Court has indicated that an "opportunity to influence" is present "when a confidential relationship exists where the parties do not deal on equal terms, but, on the one side there is an overmastering influence, or, on the other, weakness, dependence or trust," and a "confidential relationship arises when one party places confidence in the other with a resulting superiority and influence on the other side". *Cvitanovich-Dubie*, 125 Hawai'i at 161-62, 254 P.3d at 472-73.

"Kinship, by itself, is not sufficient to establish a confidential relationship." *Kam Oi Lee v. Fong Wong*, 57 Haw. 137, 140, 552 P.2d 635, 638 (1976), citing 3

---

[3] Like the FAC, the SAC inaccurately ascribes the "dear son" statement, which was actually made by Natalie Pitre, to J. Buckman. (It appears Plaintiff's counsel has not reviewed the videotape that he has cited in the FAC and the SAC.)

Bogert, *Trusts* § 482 (p. 1459); *Light v. Ash*, 174 Neb. 44, 115 N.W.2d 903 (1962).

While the imposition of great trust and the letting down of all guards is natural

among family members, the court cannot find that a confidential relationship exists

absent actual "evidence of intrusting." *Swift v. Swift*, 138 Hawai'i 52, 375 P.3d 1290,

2016 Haw. App. LEXIS 316 at *9 (Ct. App. 2016) (citing *Kam Oi Lee v. Fong

Wong*, 57 Hawai'i 137, 140, 552 P.2d 635, 638 (1976)).   Specifically, the Plaintiff

must show "*the transferor* is in fact accustomed to be guided by the judgment or

advice of the transferee or *is justified in placing confidence in the belief that the

transferee will act in the interest of the transferor*." *Kam Oi Lee*, 57 Haw. at 141,

emphasis in original.

Given that Plaintiff has judicially admitted she and J. Buckman were

estranged dating back to 2016 (SAC, ECF #61, ¶ 7), J. Buckman arrived at

Plaintiff's house for the first time the morning of August 10, 2023, and the deed was

signed later that same day (SAC, ECF #61, ¶ 29), Plaintiff has not, and cannot,

allege any specific facts to show that Plaintiff was "accustomed to be guided by the

judgment or advice" of J. Buckman on August 10, 2023. Nor has Plaintiff alleged

any facts to establish how, between 8:00 AM on August 10, 2023 and the time of the

deed signing that same afternoon, J. Buckman re-established a confidential

relationship with Plaintiff after the alleged 7-year breach.   Likewise, Plaintiff has

15

not pled any specific facts to show how Plaintiff, in the space of less than a day, decided to, and did, "intrust" J. Buckman, despite the previous 7 years of estrangement.   Plaintiff's allegations merely establish kinship, which alone is not sufficient to show a confidential relationship under Hawai'i law.   *Cf.*, *Swift*, 2016 Haw. App. LEXIS 316 at *9; *Kam Oi Lee*, 57 Hawai'i at 140.

The allegation that J. Buckman is an attorney is likewise insufficient to create a confidential relationship between J. Buckman and Plaintiff.   Of course, an attorney has a fiduciary or confidential with her clients; this relationship is one of many "familiar examples in which the principle of fiduciary or confidential relationship applies in its strictest sense."   *Wolfer v. Mut. Life Ins. Co.*, 3 Hawai'i App. 65, 76, 641 P.2d 1349, 1357 (1982).   However, the SAC does not allege that Plaintiff was ever a client of J. Buckman's or that J. Buckman ever represented Plaintiff in any legal matter.   Indeed, the factual allegations of the SAC essentially acknowledge that no such relationship could have, or did, occur, as Plaintiff pleads that she was estranged from, and had limited contact with, J. Buckman.   SAC, ECD #61, ¶ 7.   Obviously, the mere fact that J. Buckman is an attorney is not sufficient to establish a confidential relationship between Plaintiff (a non-client) and J. Buckman: otherwise, an attorney would be deemed to have a confidential relationship with every family member and other person with whom they came into contact.   This is

16

plainly not the law for sound public policy reasons, as such a broad rule would undermine the attorney's ability to protect their confidential relationships with their *actual* clients.

Further, with the exception of the sham allegations in Paragraph 29 discussed above, the SAC admits that J. Buckman said and did *nothing* to influence Plaintiff to sign the warranty deed. SAC, ECF #61, ¶ 46 [alleging that J. Buckman remained silent when she "had a duty to . . . tell the Plaintiff"]; ¶ 52 [alleging that J. Buckman was "obligated to explain to the Plaintiff the nature and effect of the documents"]; ¶ 66 [alleging J. Buckman "could have at any time told her mother-in-law what MFB was planning" but "remained silent"].) As a matter of Hawai'i law, these allegations are not sufficient to establish "the actual or attempted imposition of improper influence." Imposition requires an action, but Plaintiff has alleged no affirmative act of any sort by J. Buckman.

Finally, the November 15 statements are much too late to demonstrate undue influence at the time the deed, mortgage and other documents were signed. The deed and trust amendment were signed on August 10, 2023. ECF #61, ¶¶ 26, 29. By the time the statements that the SAC attributes to J. Buckman were made, the documents had already been signed for several weeks. Post-signing statements cannot, as a matter of law, demonstrate undue influence **at the time that the document was**

17

**signed** that caused its execution as required by *In Re Estate of Herbert,* 90 Haw. 443, 458; 979 P.2d 39 (1999). Because Plaintiff's allegations are insufficient, Count I, for undue influence with respect to the deed, trust, and will amendment, fails against J. Buckman as a matter of law.

Regarding Count II, which claims undue influence related to the signing of the mortgage, the SAC admits that, when that document was signed, MFB "was alone and not accompanied by J. Buckman."  SAC, ECF #61, ¶ 38.  There are no other factual allegations of any conduct by J. Buckman related to Count II.  Thus, Count II also fails against J. Buckman as a matter of law, because Plaintiff did not, and admits she cannot, plead facts to show "the actual or attempted imposition of improper influence" by J. Buckman before the mortgage was signed.

**C.**  **Because the Second Amended Complaint Still Fails to State Facts Sufficient to State a Claim Against Jennifer Buckman for Fraudulent Concealment, Fraud Based on Failure to Disclose, or Constructive Fraud, Counts III, IV, and V Are Also Fatally Infirm.**

To plead fraudulent concealment under Hawai'i law, Plaintiff must allege false representations made by the defendant. *Sung v. Hamilton*, 710 F. Supp. 2d 1036, 1047 (D. Haw. 2010); *Larsen v. Pacesetter Systems, Inc.*, 74 Hawai'i 1, 837 P.2d 1273, 1288 (1992).  Here, though, Plaintiff admits J. Buckman "remained

silent." SAC, ECF #61, ¶ 66; *see also id.*, ¶¶ 46, 52. Thus, Plaintiff cannot state a claim for fraudulent concealment against Defendant J. Buckman.

While fraud can be perpetrated by non-disclosure as well as by affirmative misrepresentation, this occurs only if the defendant is under a duty to the plaintiff to exercise reasonable care to disclose the matter in question. *Sung*, 710 F. Supp. 2d at 1047. In determining whether such a duty exists, the court considers whether "one party to a transaction . . . by concealment or other action intentionally prevents the other from acquiring material information." *Id.* at 1047 (citing Restatement (Second) of Torts § 550); *see also Elliot Megdal & Assocs. v. Hawaii Planing Mill, Ltd.*, 814 F. Supp. 898, 904 (D. Haw. 1993) [under Hawai'i law, liability for fraudulent nondisclosure is governed by the Restatement (Second) of Torts § 551]; *Molokoa Village Development Co., Ltd. v. Kauai Elec. Co., Ltd.*, 60 Hawai'i 582, 593 P.2d 375, 381 (1979), citing the Restatement (Second) of Torts § 551.

As the Court ruled in its Order granting J. Buckman's prior 12(b)(6) motion, Rule 9(b) of the Federal Rules of Civil Procedure requires fraud to be pled with particularity. See ECF # 24, pp. 10 - 12. Regarding Count III, fraud - failure to disclose, the SAC conclusorily pleads that J. Buckman "was present when the Plaintiff executed" the warranty deed and "had a duty to likewise tell the Plaintiff that she was deeding half of her property to MFB." SAC, ECF #61, ¶ 46. But the

19

Court has already ruled that these types of conclusory allegations fail to satisfy the federal pleading standards.   ECF #24, at p. 10 ["Under federal pleading standards, a reviewing court must disregard conclusory allegations of this sort."].

Tellingly – and fatally – though, the SAC does not allege any facts sufficient to establish that J. Buckman was under any duty to her estranged mother-in-law to exercise reasonable care to disclose the matter in question, as shown above. Likewise, the SAC fails to allege any facts that demonstrate that J. Buckman said or did anything to prevent her mother-in-law, a real estate broker with decades of experience and an avid reader, from "acquiring material information" about the deed she signed.   Indeed, as noted above, the SAC does not allege that J. Buckman "substantially" or "intentionally" took any action or said anything to assist MFB's alleged wrongdoing.   *Cf.*, *Television Events Marketing, Inc. V. AMCON Distributing Co.*, 488 F. Supp. 2d at 1071, 1077-1078 (D. Hawai'i 2006).   Under Hawai'i law, these allegations are insufficient to state a claim for "Fraud – Failure to Disclose," and J. Buckman's motion to dismiss Count III should be granted.

Count IV, for constructive fraud, and Count V, for constructive trust, are likewise fatally defective.   "Constructive fraud is characterized by the breach of fiduciary or confidential relationship."   *Yoneji v. Yoneji*, 136 Hawai'i 11, 18-19, 354 P.3d 1160, 1167-68 (2015); *Aames Funding Corp. v. Mores*, 107 Hawai'i 95,

20

104, 110 P.3d 1042, 1051 (2005).   "The basic prerequisites for the application for an 'abuse of confidence' constructive trust" include: (1) a confidential relationship; and (2) conveyance to the grantee based upon, and arising out of, a confidential relationship."   *Kam Oi Lee v. Fong Wong*, 57 Hawai'i 137, 140, 552 P.2d 635, 638 (1976).

As shown above in Section B, under the facts Plaintiff has alleged against J. Buckman, there can be no confidential relationship as a matter of law.   The SAC's conclusory pleading that both MFB and J. Buckman had a "special/confidential relationship with the Plaintiff" (SAC, ECF #61, ¶ 50) is not sufficient to overcome this factual deficiency.   See, Fed. R. Civ. Pro., Rule 9(b); see, also, ECF #24 at p. 10 [holding that conclusory allegations are insufficient under Federal Rules].

Furthermore, Count V, Constructive Trust, cannot be properly brought against J. Buckman when the SAC admits that "MFB and his Trust hold title to the Property."   SAC, ECF# 61, ¶ 57 & Exh. 1.   Since the SAC admits J. Buckman is not a grantee in the documents it challenges, and the documents that are attached to the SAC confirm this (*id*.), Plaintiff cannot allege "conveyance" to J. Buckman, and no cause of action for Constructive Trust will lie against her.

Nor are there any allegations in the SAC regarding any purported misconduct by J. Buckman – to the contrary, as shown above, the SAC admits J. Buckman

21

"remained silent" and **took no action**.   ECF #61, ¶ 66; *see also id*., ¶¶ 45, 46, 52.

Thus, Plaintiff has failed to state with particularity facts sufficient to establish the

required elements of fraudulent concealment, fraud based on failure to disclose,

constructive fraud, and constructive trust against J. Buckman, and J. Buckman's

motion to dismiss should be granted as to Counts III, IV, and V.

**D.      Because Plaintiff Cannot State a Valid Claim Against J. Buckman for**

**Civil Conspiracy, Count VII Likewise Should Be Dismissed.**

Paragraphs 62-70 purport to state a new cause of action for civil conspiracy

against J. Buckman and MFB.   According to the Hawai'i Supreme Court, "the

accepted definition of a [civil] conspiracy is a combination of two or more persons

or entities by concerted action to accomplish a criminal or unlawful purpose, or to

accomplish some purpose not in itself criminal or unlawful by criminal or unlawful

means." *Robert's Hawai'i Sch. Bus, Inc. v. Laupahoehoe Transp. Co.*, 91 Hawai'i

224, 252 n.28, 982 P.2d 853, 881 n.28 (1999) (internal quotation marks, citation, and

brackets in original omitted).   But, as shown above, the SAC is devoid of any

factual allegations to support that J. Buckman had "a criminal or unlawful purpose"

or employed any "criminal or unlawful means."   First, as the Court has already

ruled, the conclusory allegation that J. Buckman "actively participated in defrauding

22

the Plaintiff out of her Property", without any supporting factual allegations, is not sufficient to sustain this claim. *See* ECF #24, p. 10.

The SAC merely alleges that J. Buckman "remained silent" when MFB acted and that MFB's actions were improper. *See* ECF #61, ¶ 66; *see also id*., ¶¶ 45, 46, 52 [alleging J. Buckman should have disclosed the contents of the documents]. As to J. Buckman, these allegations do not establish that J. Buckman had a "criminal or unlawful purpose" or employed "criminal or unlawful means" because, as a matter of law, J. Buckman did not have a duty to the plaintiff to exercise reasonable care to disclose the matter in question, and the SAC does not allege that J. Buckman, "by concealment or other action[,] intentionally prevent[ed] [Plaintiff] from acquiring material information." *Sung*, 710 F. Supp. 2d at 1047 (citing Restatement (Second) of Torts § 550).

If J. Buckman had no legal duty to disclose the contents of the documents to Plaintiff, an avid reader who is not incapacitated despite her age, then J. Buckman's silence is neither criminal or unlawful. Consequently, the allegations against J. Buckman are insufficient as a matter of law to form the basis of a civil conspiracy claim against her.

**E.** **Count VI, for Injunctive Relief, Fails Because The Remedy Is Not Available When the Underlying Claims Are Legally Deficient.**

23

"Injunctive relief is not an independent cause of action but a remedy to other causes of action." *Ramos v. Chase Home Fin.*, 810 F. Supp. 2d 1125, 1132 (D. Haw. 2011); *Greenspon v. Deutsche Bank Nat'l Tr. Co.*, 138 Haw. 52, 375 P.3d 1290 (Ct. App. 2016). As shown above, each of the underlying claims (Counts I through V and Count VII) fails to state a claim against J. Buckman. Accordingly, none of these claims can support the remedy of injunctive relief, and the injunctive relief claim likewise falters as a matter of law.

## CONCLUSION

Based on the foregoing, defendant Jennifer Buckman respectfully requests that this court grant her motion to dismiss the Second Amended Complaint against her without leave to amend.

DATED: August 23, 2024          /s/ Mark F. Buckman
                                Law Offices of Mark F. Buckman
                                Mark F. Buckman, Esq.
                                Attorneys for Defendants Jennifer Buckman
                                and Mark F. Buckman, individually and as
                                Trustee of the Mark F. Buckman Trust

# CERTIFICATE OF SERVICE

I, Mark F. Buckman, hereby certify that, on the dates and by the methods of service noted below, a true and correct copy of the foregoing was served on the following at their last known addresses:

## SERVED ELECTRONICALLY THROUGH CM / ECF

Richard E. Wilson, Esq.          rewilson_law@yahoo.com   August 23, 2024
Law Offices of Richard E. Wilson, LLC
735 Bishop Street, Suite 306
Honolulu, HI 96813


ADDISON D. BONNER          adb@tsbhawaii.com        August 23, 2024
TAMASHIRO SOGI & BONNER
705 S. King Street, Suite 105
Honolulu, Hawaii 96813


Dated:        Elk Grove, CA, August 23, 2024


                        /s/ Mark F. Buckman
                        Law Offices of Mark F. Buckman
                        Mark F. Buckman, Esq.
                        Attorneys for Defendants Jennifer Buckman
                        and Mark F. Buckman, individually and as
                        Trustee of the Mark F. Buckman Trust

25