IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| PATRICIA W. BUCKMAN, Individually, and as Trustee of the PATRICIA W. BUCKMAN REVOCABLE TRUST; PATRICIA W. BUCKMAN REVOCABLE TRUST, <br><br> Plaintiffs, <br><br> vs. <br><br> MARK F. BUCKMAN Individually, and as TRUSTEE OF THE MARK F. BUCKMAN TRUST; MARK F. BUCKMAN TRUST; JENNIFER BUCKMAN; JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATIONS 1-10; DOE PARTNERSHIPS 1-10; and DOE GOVERNMENTAL AGENCIES 1-10, <br><br> Defendants. | Civil No. 24-00129 MWJS-KJM <br><br> ORDER DENYING DEFENDANT MARK F. BUCKMAN'S MOTION TO DISMISS, GRANTING IN PART AND DENYING IN PART DEFENDANT JENNIFER BUCKMAN'S MOTION TO DISMISS, DENYING PLAINTIFFS' MOTION TO DISMISS, AND STRIKING PARAGRAPH SIX OF THE SECOND AMENDED COUNTERCLAIM |

## INTRODUCTION

Before the Court is a new round of motions to dismiss in this family's estate dispute. On one side of the suit is an ailing mother—Plaintiff Patricia W. Buckman— and her revocable trust. Plaintiffs allege that the mother's son and daughter-in-law defrauded her out of one property and into a mortgage on another. On the other side are the son and his wife. The son, Defendant Mark F. Buckman, has counter-sued for

declaratory relief that he is the lawful owner of the first property and has a valid mortgage on the second.

In a prior order, the Court preserved Plaintiffs' claims against Mark,[1] but dismissed the complaint in part for failure to adequately state a claim against his wife, Defendant Jennifer Buckman. Plaintiffs have now amended their complaint in hopes of curing the deficiencies of their claims against Jennifer. In response to the amended complaint, Mark also amended his counterclaims—indeed, he expanded them to encompass not only declaratory relief, but also counter allegations of fraud, breach of contract, and breach of fiduciary duty regarding a separate property.

In three pending motions, Mark, Jennifer, and Plaintiffs have each moved to dismiss the claims and counterclaims against them. For the reasons set forth below, the Court DENIES Mark's motion to dismiss and GRANTS IN PART AND DENIES IN PART Jennifer's motion to dismiss. The Court also DENIES Plaintiffs' motion to dismiss the counterclaims, but it STRIKES certain allegations from them.

## BACKGROUND

### A.    Prior Dismissal of the Original Complaint

Plaintiffs originally brought this suit in state court, and it was removed to this Court on diversity grounds. *See* ECF No. 1. Mark and Jennifer then moved to dismiss

---

[1]    For clarity, the Court generally will refer to members of the Buckman family by their first names.

the original complaint against them, ECF Nos. 8 & 9, and the Court denied Mark's

motion, but granted Jennifer's motion because the initial complaint failed to adequately

state any claim for relief against her, ECF No. 24.  Recognizing the possibility that

Plaintiffs could cure the complaint's deficiencies even as to Jennifer, the Court granted

leave to amend.  *Id.*  Plaintiffs took the Court up on that offer, *see* ECF No. 33 (First Am.

Compl.), and then obtained leave to amend once more, *see* ECF No. 59 (granting motion

for leave to amend).  Currently before the Court is the Second Amended Complaint

(SAC).  ECF No. 61.

> **B.**     **The Second Amended Complaint's Factual Allegations**

The SAC repeats many of the factual allegations laid out in the original

complaint, but with some revamping.  The most essential of those allegations are

repeated here and assumed to be true for purposes of the pending motions to dismiss.

As alleged in the SAC, Patricia is an eighty-nine-year-old woman with three children:

Mark and his two siblings, Natalie Pitre and Matt Buckman.  *Id.* at PageID.572 (¶ 5).  As

part of her estate planning, Patricia placed some of her property into a revocable trust,

including two homes located on a two-lot condominium, known as the "Front House"

and the "Rear House."  *Id.* (¶ 6).  Patricia "never intended" for Mark to receive that

property, as the two have been estranged since 2016.  *Id.* at PageID.573 (¶¶ 7-8).

Instead, the homes were to be passed down to Mark's brother, Matt, and Matt's son,

Manoa.  *Id.* (¶ 8).

3

As Patricia aged, she needed additional care.  Her daughter Natalie moved onto the trust property and fulfilled that need for several years.  *Id.* at PageID.575 (¶¶ 14-15).  To show her gratitude, in 2022, Patricia amended her trust so that upon her death, Natalie would receive one of the trust homes.  *Id.* (¶ 15).  Patricia's grandson Manoa was to remain the beneficiary of the other.  *Id.*

The bad blood arose when Mark heard of that change.  Unlike Natalie and Manoa, who would each receive real property, under the terms of Patricia's new trust, Mark was only to receive an inheritance of $40,000.  *Id.* at PageID.576 (¶ 16).  When Natalie told Mark the news, he began demanding copies of the trust, and he demanded that Natalie give him half of the Front House, but Natalie refused.  *Id.* (¶¶ 16-19).

Thwarted in his efforts, Mark, together with his wife Jennifer, concocted a new plan: "If they could not acquire the property by agreement, they would get it through deception."  *Id.* at PageID.577 (¶ 22).  It is here that the SAC diverges from the initial complaint.  Unlike the original complaint, which—putting aside conclusory assertions—alleged that Mark carried out this plan largely on his own, the SAC sets forth factual allegations that Mark acted in concert with his wife.  And it alleges that they succeeded in fraudulently getting Patricia to sign over not only a warranty deed on the Rear House and a mortgage on the Front House—both in Mark's name—but also a power of attorney and amendments to her trust and will.

Together, Mark and Jennifer, who are both attorneys, prepared each of these documents. *Id.* (¶ 23).  And in the latter half of 2023, they allegedly carried out their plan to fraudulently obtain Patricia's signatures on them.  On August 10, 2023, for the first time ever, Jennifer accompanied Mark to his mother's home.  *Id.* at PageID.578 (¶ 26).  Seeking to tire out Patricia and corner her alone, they took her out for drinks.  *Id.* (¶¶ 26-27).  Mark hired a notary to meet them, and Mark and Jennifer sprung the warranty deed and amendment to the trust on Patricia while at a health clinic with her that afternoon.  *Id.* at PageID.578-79 (¶¶ 28-29).  The pair did not tell Patricia what the documents contained, but they insisted that she sign them, and she did so.  *Id.* at PageID.579 (¶ 29).  Patricia did not discover that she had deeded the Rear House to Mark with one signature, and modified her trust to make Mark and Jennifer the trustees with another, for some time thereafter.  *Id.* at PageID.578-79 (¶¶ 28, 31).

Before Patricia learned of the deception, Mark carried out a few other pieces of the plan on his own.  On August 25, Mark presented his mother with a power of attorney granting him and Jennifer decision-making power on Patricia's behalf, and he directed her to sign it.  *Id.* at PageID.579-80 (¶ 32).  Next, on September 24, Mark took his mother on an all-day outing, even though she was sick.  *Id.* at PageID.581-82 (¶¶ 38-39).  He had prepared in advance a mortgage for the Front House in the amount of $235,695, and late into the afternoon, Mark demanded that she sign the documents before the same notary.  *Id.* (¶¶ 39-40).  Once again, Mark did not explain the contents

5

of any of these documents, and Patricia followed his directions. *Id.* Finally, on October 18, Mark presented his mother with a codicil to her will, appointing him and then Jennifer, in turn, as the personal representative of her estate. *Id.* at PageID.580 (¶ 33).

When Patricia finally discovered her son and daughter-in-law's deception, she was understandably upset. Mark and Jennifer visited Patricia again on November 15, 2023, but Patricia said she "did not want them to come back" because Mark had "tried to take" her houses. *Id.* at PageID.587 (¶ 67). Jennifer told Patricia, "I think you're confused." *Id.* The SAC alleges that this comment was an attempt to cover up Mark and Jennifer's conspiracy by convincing Patricia that she was merely confused about what had happened. *Id.* at PageID.588 (¶ 68).

Arising from these factual allegations, the SAC sets forth the following seven counts: (1) undue influence as to the deed, trust, and will amendment; (2) undue influence as to the mortgage; (3) fraudulent failure to disclose; (4) constructive fraud; (5) constructive trust; (6) injunctive relief; and (7) civil conspiracy.

### C.   The Second Amended Counterclaim's Factual Allegations

Mark answered his mother's claims with allegations of his own. He responded to the original complaint with a counterclaim seeking a declaratory judgment that he is the rightful owner of the Rear House and has a valid mortgage on the Front House. ECF No. 11. And after Patricia amended her complaint, he returned the favor. Without

6

first seeking further leave to amend, he filed a First, ECF No. 38, and then Second

Amended Counterclaim (SACC), ECF No. 71, expanding his counterclaims to include

five other causes of action:  breaches of contract and fiduciary duty, fraud, and

constructive fraud.

Much of Mark's SACC is directed toward his sister Natalie—he believes that she,

and not his mother, is truly behind this lawsuit.  According to Mark's version of events,

it was Natalie who exercised undue influence over Patricia and previously had the trust

fraudulently revised in her favor.  *Id.* at PageID.714-15 (¶ 5).

Moreover, the SACC separately alleges that Patricia owes Mark money related to

the trust property, including rent proceeds from the Rear House, which he was

supposed to receive in exchange for paying bills on his mother's behalf.  *Id.* at

PageID.726 (¶ 20).  Mark's brother Matt lives in that house, and Mark believes that it is

his mother's wishes that Matt not become homeless.  *Id.* at PageID.727 (¶ 22).  Mark

therefore seeks a declaratory judgment that would enable him to use some of the rent

proceeds from the Rear House toward Matt's housing costs.  *Id.*  But Mark insists that

Matt must move out of the Rear House and find housing arrangements elsewhere.  *Id.*

And, for the first time, the amended counterclaim raises several claims related to

a separate property held by Patricia's trust, the 16th Avenue property.  As alleged in the

SACC, Mark invested in and helped build the property, and it was initially titled in his

name alone.  *Id.* at PageID.728 (¶¶ 26-27).  At some point, Mark deeded the property to

Patricia's trust. *Id.* at PageID.729 (¶ 32). But, according to Mark, the parties have always understood that while Patricia would live on the property, Mark remains the forty percent owner of the property. *Id.* When Patricia eventually moved out, Mark remodeled the property and loaned his mother $50,000 for the renovations. *Id.* at PageID.730 (¶ 33). At that time, Patricia asked Mark if she could hold off on paying his forty percent share of the property until she passed. *Id.* (¶ 34). He agreed, but only if Patricia also agreed to pay back the $50,000 loan, as well as $100,000. *Id.*

Mark now alleges that Patricia broke that contract. Moreover, he alleges that her promises to repay the money were false representations and constituted fraud. He also alleges constructive fraud, as according to the SACC, Patricia held the 16th Avenue property as a constructive trustee for his benefit. And he alleges that her false representations to him constituted a breach of Patricia's fiduciary duty to him as his mother and a licensed real estate agent.

### D. The Parties' Motions to Dismiss

Mark, Jennifer, and Plaintiffs now each move to dismiss the claims against them.[2] Mark, for his part, moves to dismiss only Count VII of the SAC, the civil conspiracy

---

[2]       Mark's motion to dismiss was initially brought against the First Amended Complaint, but after Plaintiffs amended their complaint a second time, the Court construed the motion as being brought against the SAC. *See* ECF No. 69. Similarly, Plaintiffs' motion to dismiss was initially brought against the First Amended Counterclaim, but after Mark amended his counterclaim a second time, the Court construed it as against the SACC. *See* ECF No. 72.

claim, which he says was improperly appended without leave to amend that portion of the complaint.  ECF No. 37.  Jennifer, meanwhile, again moves to dismiss the SAC's allegations against her in their entirety, arguing that the SAC still fails to state any claim against her.  ECF No. 70.  Finally, Plaintiffs move to dismiss Mark's SACC, as they contend that he did not have leave to amend it and that it violates the pleading standard of Federal Rule of Civil Procedure 8(a).  ECF No. 60.

The Court elects to decide the three pending motions without a hearing, as authorized by Local Rule 7.1(c).  Because this is a diversity action, in deciding the motions, the Court looks to federal procedural law and Hawai'i state substantive law. *See Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1090 (9th Cir. 2001).

## DISCUSSION

### A.   Defendant Mark Buckman's Motion to Dismiss

Mark moves to dismiss only one of the SAC's claims against him:  the civil conspiracy claim.  He does not address the substance of the claim.  Instead, he seeks its dismissal because he believes that while the Court granted Plaintiffs leave to amend the original complaint, that leave did not encompass the addition of a new claim against him.  Mark points out that the Court's first dismissal order dismissed only the claims against Jennifer, and not those against himself; accordingly, he argues that the Court's grant of leave to amend extended only so far as to cure those deficiencies.  ECF No. 37, at PageID.296-97; *see also* ECF No. 24, at PageID.175-76 ("[T]he Court dismisses the

9

complaint as to Defendant Jennifer without prejudice and grants Plaintiffs leave to amend it.").

Mark cites Federal Rule of Civil Procedure 15(a) for the general rule that a party must request the Court's leave to amend their pleadings. And he notes that "where leave to amend is given to cure deficiencies in certain specified claims, courts have agreed that new claims alleged for the first time in the amended pleading should be dismissed or stricken." *Temple of 1001 Buddhas v. City of Fremont*, No. 21-cv-04661, 2022 WL 1570480, at *5 (N.D. Cal. May 18, 2022).

But Mark's motion falls short under these standards. The Court agrees with Plaintiffs that the civil conspiracy allegation is not a new one; even the original complaint included factual allegations to the effect that Mark and Jennifer conspired to defraud Patricia. *See* ECF No. 1-1, at PageID.12 (¶ 22) ("[Mark] and [Jennifer] Buckman concocted a plan. If they could not acquire the property by agreement, they would get it through deception."); *id.* (¶ 23) ("In furtherance of their plan, [Mark] and [Jennifer] Buckman would attempt to reengage with the Plaintiff to regain her trust, and separate her from both Natalie and Matt."). And in Hawai'i, "civil conspiracy" is not an independent cause of action; rather, it is "derivative of other wrongs." *Beckmann v. Ito*, 430 F. Supp. 3d 655, 686 (D. Haw. 2020) (citing *Chung v. McCabe Hamilton & Renny Co.*, 109 Hawai'i 520, 530-31, 536, 128 P.3d 833, 843-44, 849 (2006); *Weinberg v. Mauch*, 78 Hawai'i 40, 49, 890 P.2d 277, 286 (1995)). For those reasons, it is not materially

significant that the SAC now couches the conspiracy as its own separate count when all along, Mark has had notice of the allegation.  Indeed, he argued as counsel for Jennifer in her first motion to dismiss that the conspiracy allegations, while present, had failed to state a claim.  *See* ECF No. 8, at PageID.38-39.  He cannot now complain that they are advanced for the first time.

Moreover, the motion falls short for another reason:  The conspiracy allegations encompass both Mark *and* Jennifer.  And as Mark concedes, the Court had granted Plaintiffs leave to amend their claims against Jennifer.  Plaintiffs therefore had leave to amend the conspiracy allegations as a potential theory of liability for Jennifer pursuant to Rule 15(a), and those amendments would necessarily involve Mark as well.  For those reasons, Mark's motion to dismiss is DENIED.

## B.     Defendant Jennifer Buckman's Motion to Dismiss

Jennifer separately moves for dismissal, again arguing that the SAC fails to state a claim for relief under Rule 12(b)(6).  Fed. R. Civ. P. 12(b)(6).  She is correct only insofar as the SAC requests that a constructive trust be imposed on her; in all other respects, the SAC now adequately states a claim against her.

In considering this motion, the Court must assess whether the SAC's factual allegations have successfully crossed "the line between possibility and plausibility." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007); *see also Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995 (9th Cir. 2014).  In considering whether a

complaint's allegations are sufficient, the Court must proceed in two steps.  First, the Court must "identif[y] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Eclectic Props. E.*, 751 F.3d at 996 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).  Second, the Court must "assume the veracity of well pleaded factual allegations and determine whether they plausibly give rise to an entitlement to relief." *Id.* (cleaned up).

Furthermore, a heightened pleading standard applies to allegations of fraud. Under Rule 9(b) of the Federal Rules of Civil Procedure, the pleading must provide an "account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (internal quotation marks omitted).  "To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (internal quotation marks omitted).  As a practical matter, this means that "[a] plaintiff must set forth *more* than the neutral facts necessary to identify the transaction.  The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted).

1.   At the outset, Jennifer asks this Court to strike certain allegations in the SAC that she believes are contradictory to the original complaint—namely, its allegations that Jennifer accompanied her husband to his mother's home and that she was present when Patricia signed the warranty deed and amendment to the trust, as well as its allegations regarding the length of that outing.  ECF No. 70, at PageID.666-69.  Put another way, Jennifer urges that leave to amend does not permit a plaintiff to make false allegations contradicting their prior pleadings for the sole purpose of withstanding a motion to dismiss.  And it is true that in *Airs Aromatics, LLC v. Opinion Victoria's Secret Stores Brand Management, Inc.*, the Ninth Circuit explained that a "party cannot amend pleadings to 'directly contradict an earlier assertion made in the same proceeding.'" 744 F.3d 595, 600 (9th Cir. 2014) (cleaned up) (quoting *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990)).  Jennifer therefore seeks to have the allegedly contradictory allegations struck as sham.  Plaintiffs, for their part, do not offer an explanation for these differences.

Nonetheless, the Court declines to strike Plaintiffs' new allegations as sham.  As a threshold matter, it is not entirely clear that Ninth Circuit case law permits a district court to do so at the 12(b)(6) stage.  *See PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 858-60 (9th Cir. 2007) (concluding that striking amended complaint's allegations as "sham" constituted impermissible resolution on the merits); *see also Hernandez v. Schaad*, No. 17-cv-04055, 2017 WL 6731624, at *3 (N.D. Cal. Dec. 29, 2017) (noting an apparent

13

inconsistency between *Airs Aromatics*, 744 F.3d at 600, and *PAE Gov't Servs.*, 514 F.3d at 860).  Jennifer is undoubtedly correct that it is impermissible to amend a complaint's allegations without a good faith basis for doing so or for the sole purpose of withstanding a motion to dismiss.  But to strike certain allegations in the pleadings as inconsistent, it is at least arguable that the Court would first need to follow the procedures of Federal Rule of Civil Procedure 11 and make a finding of bad faith.  *See PAE Gov't Servs.*, 514 F.3d at 860 ("Unless there is a showing that the party acted in bad faith—a showing that can only be made after the party is given an opportunity to respond under the procedures of Rule 11—inconsistent allegations are simply not a basis for striking the pleading.").  The Court will not take up those procedures here absent a Rule 11 request.

In any event, the Court need not resolve the apparent conflict between *Airs Aromatics* and *PAE Government Services*, as the SAC's allegations are not irreconcilably inconsistent with the initial complaint.  The original complaint did not allege, for example, that Jennifer *did not* accompany Mark and Patricia on the August 10 outing; it is therefore possible the SAC simply supplies the missing detail that she did so.  The new allegations in the SAC thus do not "directly contradict an earlier assertion made in the same proceeding," *Airs Aromatics*, 744 F.3d at 600 (cleaned up); they merely expand

14

upon or amplify earlier assertions.[3]  The Court therefore cannot find, on the current

record, that the SAC's allegations on these matters are a sham, even under the *Airs*

*Aromatics* standard.  Accordingly, while she remains free to dispute their truth at a later

stage of these proceedings, the Court must accept their truth for the time being.

That does not spell the end of Jennifer's motion to dismiss, however, for in

addition to challenging the SAC's new allegations as sham, Jennifer contends that they

are insufficient to support any of the seven claims for relief.  The Court takes up that

question now.

2.  The SAC's first and second counts assert claims of undue influence—first,

with respect to the deed, trust, and will amendments, and second, as to the mortgage.

The elements of undue influence are "(1) susceptibility to undue influence,

(2) opportunity to influence, (3) disposition to influence, and (4) coveted result."  *In re*

*Estate of Herbert*, 90 Hawaiʻi 443, 457, 979 P.2d 39, 53 (1999) (cleaned up).  In addition,

Hawaiʻi law requires that the undue influence "operated as a present constraint" at the

time of execution.  *Id.* at 458, 979 P.2d at 54 (cleaned up).

Jennifer insists that the SAC still does not adequately plead two of these

elements:  an opportunity to influence and the actual or attempted imposition of

---

[3]      Jennifer points out a few other differences, such as the time that the August 10 outing began (8:00 a.m. versus 7:00 a.m.).  But these inconsistencies are minor and excluding the new versions of these allegations would not change the outcome under Rule 12(b)(6).

improper influence.  ECF No. 70, at PageID.670.  But as to the deed and trust amendments, the SAC alleges that Jennifer accompanied Mark to meet her mother-in-law on August 10, that together they sought to get her alone and tire her out, that neither of them told Patricia what she was signing, and that "they simply insisted that she sign the documents."  ECF No. 61, at PageID.578-79 (¶¶ 26-29).  These factual allegations, taken as true, tend to show that Jennifer had an opportunity to influence Patricia and that she attempted to impose such influence at the time of execution.  *See, e.g.*, *In re Estate of Herbert*, 90 Hawai'i at 458, 979 P.2d at 54 (appellant's romantic relationship with decedent, drafting of a will for decedent, driving decedent to the bank to execute the will, presence during the execution of the will, and gaining control of decedent's affairs through a power of attorney evidenced opportunity to influence).[4]

Jennifer dwells on the SAC's allegation that she was "silent" at the meeting in which Patricia signed the warranty deed and amendment to the trust, and she says that the SAC does not allege that she made any statements to Patricia until months after the deed and trust amendment were signed, on November 15, 2023.  ECF No. 70, at PageID.674-75.  Jennifer contends that these post-signing statements cannot demonstrate undue influence "at the time" that the documents were signed.  *Id.*  But the

---

[4]     Jennifer appears to conflate the "opportunity to influence" element with having a confidential relationship.  *See* ECF No. 70, at PageID.671-74 (citing *Cvitanovich-Dubie v. Dubie*, 125 Hawai'i 128, 161-62, 254 P.3d 439, 472-73 (2011) (Acoba, J., concurring in part)).  Even if that were the case, as explained below, the SAC sufficiently alleges that Jennifer and Patricia have a confidential relationship.

SAC does allege actual imposition of influence—as well as attempted influence, which is independently sufficient—at the time of execution:  it alleges that Patricia signed the documents "[s]ince she was tired, at the time had no reason to believe [Mark] and his wife would swindle her, and because she wanted to go home."  ECF No. 61, at PageID.579 (¶ 29).  This is enough to plausibly allege Jennifer's undue influence over the deed and trust amendment.

Jennifer also contends that the SAC fails to state a claim for undue influence as to the mortgage in particular because the SAC alleges that Jennifer was not with Mark at the time that document was signed.  While not argued by Jennifer, the same logic would presumably extend to the will codicil as well, which Mark allegedly presented to his mother alone.  But this point fails to account for the conspiracy allegations, under which both persons can be civilly liable for each other's actions taken in furtherance of that conspiracy—even when one of them is not physically present.  *Womble Bond Dickinson (US) LLP v. Kim*, 153 Hawaiʻi 307, 315, 537 P.3d 1154, 1162 (2023) ("[C]ivil co-conspirators, like criminal co-conspirators, act as agents of one other when engaging in acts in furtherance of their conspiracy.").  The question is not whether the SAC adequately alleges that Jennifer participated in every act of the conspiracy, but rather whether it adequately alleges that Jennifer knowingly joined the conspiracy.  As explained below, the Court concludes that it now does.  Accordingly, Counts I and II of the SAC adequately state a claim for undue influence against Jennifer.

3. The SAC further alleges theories of civil fraud: fraudulent failure to disclose and constructive fraud. Those claims, too, are now sufficient as to Jennifer.

For fraudulent failure to disclose, Hawaiʻi law applies the standard found in the Restatement (Second) of Torts § 551. *Sung v. Hamilton*, 710 F. Supp. 2d 1036, 1047 (D. Haw. 2010); *see also Miyashiro v. Roehrig, Roehrig, Wilson & Hara*, 122 Hawaiʻi 461, 483 n.24, 228 P.3d 341, 363 n.24 (App. 2010) (applying § 551). Under that standard, a party may be liable as though they had represented the nonexistence of the matter that they failed to disclose if, and only if, they had a duty to disclose. Restatement (Second) of Torts § 551 (Am. L. Inst. 1977). One party to a business transaction "is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated" (a) "matters known to [them] that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them" and (b) "facts basic to the transaction, if [they] know[] that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, . . . would reasonably expect a disclosure of those facts." *Id.*; *see also* ECF No. 24, at PageID.173 (Order Denying Mark's First Motion to Dismiss and Granting Jennifer's First Motion to Dismiss). Similarly, constructive fraud is "characterized by the breach of fiduciary or confidential relationship." *Aames Funding Corp. v. Mores*, 107 Hawaiʻi 95, 104, 110 P.3d 1042, 1051 (2005).

18

Here, Jennifer disputes whether the SAC sufficiently alleges that she had a relationship of "trust and confidence" or a "fiduciary or confidential relationship" with Patricia.  To that end, she correctly notes that "[k]inship, by itself, is not sufficient to establish a confidential relationship."  *Kam Oi Lee v. Fong Wong*, 57 Haw. 137, 140, 552 P.2d 635, 638 (1976).  And she argues that it was not sufficient here because the SAC acknowledges that she had been estranged from her mother-in-law since 2016.  Hawaiʻi law also recognizes, however, that "when parties are closely related, the imposition of great trust and the letting down of all guards is natural, and the relationship, coupled with evidence as to intrusting, the status of the parties as to health, age, education and dominance, may lead a court to find that a confidential relationship existed."  *Id.*  Contrary to Jennifer's assertion, kinship is not the sole fact alleged here.  The SAC also alleges that Patricia is eighty-nine years old and that Jennifer is an educated attorney.  These facts are enough, at least under the circumstances of this case, to plausibly allege a confidential relationship.  *See id.*; ECF No. 24, at PageID.174 (finding the complaint adequately alleged that Mark had a relationship of trust and confidence with Patricia "both because he is a licensed attorney and because she is his mother").

Anticipating a reliance on her profession, Jennifer rejoins that the mere fact that she is an attorney is similarly insufficient to show a confidential relationship because she is not *Patricia's* attorney, and an attorney cannot be deemed to be in a confidential relationship with everyone whom they come into contact.  ECF No. 70, at PageID.673.

What this argument fails to acknowledge, however, is that Jennifer's education and experience—taken together with her familial relationship with Patricia and Patricia's age—are still relevant to show why the letting down of Patricia's guard with Jennifer when executing the documents would be "natural." *Kam Oi Lee*, 57 Haw. at 140, 552 P.2d at 638.

Once again, Jennifer contends that she cannot be liable for these counts because she "remained silent" and "took no action." ECF No. 70, at PageID.679. But she concedes that fraudulent failure to disclose imposes liability, where there is a duty to disclose, for "non-disclosure as well as by affirmative misrepresentation." *Id.* at PageID.676. And she is incorrect in asserting that the SAC does not allege that she took any action—to the contrary, it affirmatively alleges that she conspired with her husband and took part in the August 10 meeting with Patricia, including by trying to tire her out with a drink and insisting that she sign the documents. Moreover, the SAC meets the heightened pleading standards of Rule 9, for it provides the "time, place, and specific content" of Jennifer's failure to disclose, as well as "the identities of the parties to the misrepresentations." *Swartz*, 476 F.3d at 764 (cleaned up). Put differently, it alleges enough to give Jennifer "notice of the particular misconduct which is alleged to constitute the fraud." *Bly-Magee*, 236 F.3d at 1019 (cleaned up). For these reasons, the SAC now offers sufficient factual allegations to plausibly state a claim—and meet Rule 9's heightened pleading standard—for the fraud counts, Counts III and IV.

4.  The SAC separately asserts a constructive trust in favor of Patricia's trust.  A constructive trust is a remedy imposed "where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it."  *Kam Oi Lee*, 57 Haw. at 139, 552 P.2d at 637; *see also Maria v. Freitas,* 73 Haw. 266, 274, 832 P.2d 259, 264 (1992).  In Jennifer's case, however, she correctly points out that none of the property was transferred to her; instead, the SAC alleges it was deeded to Mark alone.  Accordingly, the SAC does not adequately allege that a constructive trust could be imposed on any property to which Jennifer holds title.  For this count alone, the conspiracy allegation would not address this deficiency because a constructive trust is merely a remedy, and that remedy could not be obtained through Jennifer.  The SAC's constructive trust count, Count V, is therefore DISMISSED to the extent that it is brought against Jennifer.

5.  As noted above, the SAC also advances a civil conspiracy.  A conspiracy is "a combination of two or more persons . . . by concerted action to accomplish a criminal or unlawful purpose, or to accomplish some purpose not in itself criminal or unlawful by criminal or unlawful means."  *Robert's Haw. Sch. Bus, Inc. v. Laupahoehoe Transp. Co.,* 91 Hawai'i 224, 252 n.28, 982 P.2d 853, 881 n.28 (1999).  Like a constructive trust, a civil conspiracy is not a freestanding cause of action, but requires an underlying actionable claim.  *Pro Flexx LLC v. Yoshida*, Civ. No. 20-00512, 2021 WL 297126, at *9 (D. Haw. Jan. 28, 2021) (citing *Robert's Haw. Sch. Bus*, 91 Hawai'i at 260 n.44, 982 P.2d at 889 n.44).

21

A civil conspiracy to defraud "has three elements:  (1) the formation of a conspiracy; (2) wrongful conduct in furtherance of the conspiracy, i.e., an actionable claim based upon deceit; and (3) damage."  *Id.* (internal quotation marks omitted).  While the original complaint offered only conclusory allegations on this point, *see* ECF No 1-1, at PageID.12 (¶¶ 22-23) (alleging that Jennifer and her husband "concocted a plan" and took steps in "furtherance of their plan"), as laid out above, the SAC now offers specific factual allegations to back up those assertions.  It alleges, for instance, Jennifer's collaboration with Mark in preparing for and carrying out the August 10 meeting with Patricia with the purpose of wrongfully obtaining her signature on the deed and trust amendment.  Moreover, it alleges that Plaintiffs have suffered a loss of property, amongst other damages, through that wrongful conduct.  For these reasons, the SAC now sufficiently alleges a civil conspiracy between Jennifer and Mark in Count VII.

     6.  Finally, because the underlying claims are nearly all adequately alleged, the Court also declines to dismiss Count VI of the SAC, which requests injunctive relief.  *See* ECF No. 70, at PageID.681 (contending that because the underlying claims fail to state a claim, they do not "support the remedy of injunctive relief").

     To recap, because the SAC does not allege that Jennifer holds title to any of the disputed property, her motion to dismiss is GRANTED IN PART to the sole extent that the constructive trust claim, Count V, is dismissed as to Jennifer.  In all other respects, however, her motion to dismiss is DENIED.

C.       **Plaintiffs' Motion to Dismiss**

Finally, Plaintiffs filed a motion to dismiss of their own.  They seeks to dismiss

Mark's SACC on two grounds:  (1) he did not seek leave to file an amended

counterclaim as required by the Court's rules, and (2) the SACC violates Rule 8(a) of the

Federal Rules of Civil Procedure's requirement that it contain a "short and plain"

statement of its claims for relief.  The Court declines to dismiss the counterclaim on

either of those grounds, but it strikes one paragraph from the SACC.

1.  As Mark argued in his own motion to dismiss, pursuant to Federal Rule of

Civil Procedure 15(a), after the time for amending a pleading as a matter of course has

passed, a party must request the Court's leave to amend their pleading.  The parties

dispute to what extent that rule barred Mark's filing of his amended counterclaims here,

for they agree on one point:  the law is not clear on the extent to which a

counterclaimant must request leave to amend their counterclaim after the filing of an

amended complaint.  *See* ECF No. 60-1, at PageID.558-61 (Pls.' Mot. to Dismiss)

(discussing three different approaches); ECF No. 74, at PageID.756 (Def.'s Opp'n) ("As

[Patricia] admits, the law is uncertain regarding seeking leave to amend a counterclaim

filed in response to an amended complaint.").  The Court need not resolve that

question, however, for given the liberal pleading standards, it declines to dismiss the

SACC on that basis.  A court should "freely give leave when justice so requires."  Fed.

R. Civ. P. 15(a)(2).  To promote efficiency, the Court exercises its discretion here to

retroactively permit Mark leave to amend his counterclaim.  Mark is cautioned that he

is required to comply with all Court rules, and that if he purports to further amend his

pleading without leave of Court, a future motion to dismiss may be granted.

2.  Plaintiffs offer only one other possible ground for dismissal.[5]  Under Rule

8(a)(2) of the Federal Rules of Civil Procedure, a complaint must include a "short and

plain statement of the claim showing that the pleader is entitled to relief."  A district

court has discretion to dismiss a complaint that is needlessly long or confusing in

violation of Rule 8.  *See generally* Benjamin Spencer, 5 *Federal Practice and Procedure*

§ 1217 (Wright & Miller 4th ed. 2024).  Plaintiffs correctly point out that a substantial

portion of the SACC is spent throwing daggers at Mark's sister, Natalie, who is not a

party to this lawsuit.  As a remedy, Plaintiffs request that the SACC be dismissed in its

entirety.  But while Mark will not be able to recover from a non-party to this suit, the

SACC is not inordinately long nor incomprehensible as to its allegations against

Plaintiffs.  The Court therefore declines to dismiss the SACC on that basis.  *See, e.g.*,

*Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124, 1132 (9th Cir. 2008) (abuse of

discretion to dismiss complaint with prejudice where it set out more factual detail than

necessary, but was not "replete with redundancy and largely irrelevant" or "confusing

and conclusory"); *McHenry v. Renne*, 84 F.3d 1172, 1176-80 (9th Cir. 1996) (dismissal of

---

[5]      The Court will not consider any grounds raised for the first time in Plaintiffs'
reply brief.  *See* LR7.2 ("Any argument raised for the first time in the reply shall be
disregarded.").

complaint with "narrative ramblings" that did not provide defendants notice of what legal claims were asserted against which defendants was not an abuse of discretion).

Because Plaintiffs have not offered a persuasive reason to dismiss the SACC, their motion to dismiss is DENIED.

3.  There is another available remedy for a violation of Rule 8, however.  The Court may sua sponte strike from the counterclaim "any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f); *see also Hearns*, 530 F.3d at 1132 (noting that instead of dismissing the amended complaint outright, the district court could have used its remedial authority to relieve the defendant from responding to the superfluous parts of the amended complaint by striking those paragraphs).  Here, the Court finds that remedy to be appropriate, as Plaintiffs should not be compelled to respond to irrelevant or impertinent allegations against Natalie that do not directly implicate Patricia's own dealings with Mark.  The Court finds that paragraph six of the SACC in particular lays out "extensive misconduct" that Mark believes Natalie has engaged in over the years, but that does not directly bear on his counterclaims against Patricia and her trust.  ECF No. 71, at PageID.715-21 (¶ 6).  At the very least—even if the information eventually becomes relevant to prove one point or another—it does not meet the "short and plain statement of the claim" standard laid out by Rule 8.  Fed. R. Civ. P. 8(a)(2).  Accordingly, paragraph six of the SACC is STRICKEN.

D.      **No Leave to Amend**

Further amendment would not cure the identified deficiencies, and so further

leave to amend is not warranted.  *See Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048,

1052 (9th Cir. 2003).

<u>**CONCLUSION**</u>

For the foregoing reasons, the Court:

(1) DENIES Defendant Mark F. Buckman's motion to dismiss, ECF No. 37;

(2) GRANTS IN PART AND DENIES IN PART Defendant Jennifer Buckman's

motion to dismiss, ECF No. 70, namely, it GRANTS the motion as to the constructive

trust claim, and DENIES the motion in all other respects;

(3) DENIES Plaintiffs' motion to dismiss, ECF No. 60; and

(4) STRIKES paragraph six of the Second Amended Counterclaim, ECF No. 71.

Further leave to amend is not granted at this time.

IT IS SO ORDERED.

DATED:  October 30, 2024, at Honolulu, Hawaiʻi.



/s/ Micah W.J. Smith

Micah W.J. Smith
United States District Judge

Civil No. 24-00129 MWJS-KJM, *Patricia W. Buckman*, et al. *v. Mark F. Buckman*, et al.;
ORDER DENYING DEFENDANT MARK F. BUCKMAN'S MOTION TO DISMISS,
GRANTING IN PART AND DENYING IN PART DEFENDANT JENNIFER
BUCKMAN'S MOTION TO DISMISS, DENYING PLAINTIFFS' MOTION TO DISMISS,
AND STRIKING PARAGRAPH SIX OF THE SECOND AMENDED COUNTERCLAIM