Mark F. Buckman     SBN 7080
Law Offices of Mark F. Buckman
8359 Elk Grove Florin Rd
Suite 103-320
Sacramento, CA 95829
Telephone:  (916) 442-8300
Markfbuckman@sbcglobal.net
Attorneys for Jennifer Buckman and
Mark F. Buckman

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PATRICIA W. BUCKMAN,<br><br>Plaintiffs,<br><br>VS.<br><br>MARK F. BUCKMAN, et al.,<br><br>Defendants.<br><br>And Related Cross-Action | Civil No. CV 24-00129 MWJS-KJM<br><br>Magistrate Judge Kenneth J. Mansfield<br><br>DECLARATION OF MARK F. BUCKMAN IN SUPPORT OF EX PARTE APPLICATION FOR AN ORDER TO SHOW TO CAUSE WHY MATTHEW BUCKMAN SHOULD NOT BE HELD IN CONTEMPT OF COURT FOR FAILING TO OBEY A SUBPOENA TO TESTIFY AT A DEPOSITIN IN A CIVIL ACTION<br><br>Fed. R. Civ. P. 45(g), LR 7.10<br><br>Trial Date: November 3, 2025<br><br>ECF # 110, 110.1 |

## DECLARATION OF MARK F. BUCKMAN

I, Mark F. Buckman, declare as follows:

1.      I am an attorney licensed to practice law before the Courts of the State of

Hawai'i. I am counsel of record for Defendant Jennifer Buckman in these

proceedings. I am also a Defendant and Cross-Complainant in these

proceedings.

2.      I am over the age of 18.  I have personal knowledge of the facts recited in

this Declaration.  If called as a witness in these proceedings, I could and

would testify competently to these facts.

3.      It is not possible to submit a stipulation to address this matter because the

matter concerns the failure of a non-party witness to comply with a

deposition subpoena.  I am submitting an ex parte application for an Order to

Show Cause Regarding Contempt, rather than a motion, because this is a

proceeding under Rule 45, and the courts in the Ninth Circuit indicate that a

party seeking to enforce a deposition subpoena against a non-party who

failed to comply should apply for an Order to Show Cause.

4.      Before filing this ex parte application, I notified opposing counsel, Rich

Wilson, that I intended to file it and asked if his clients had a position on it.

1

Mr. Wilson indicated that he had no position at that time since he had not seen the papers I intended to file.

5. I caused the Subpoena To Testify at a Deposition in a Civil Action and a check for witness fees to be personally served on Matthew Buckman (hereafter Matthew) on March 17, 2025, as shown in ECF 110.

Previously, I had Matthew served in February with a Subpoena that required him to testify on February 26. Before that deposition, I texted Matt on February 20,

"Hi Matt, I want to confirm your deposition for next week Wednesday. If Thursday, Friday, or Monday works better, please let me know ASAP. I would also like to talk with you about resolution. Aloha"

Although I received no response to that text, Matthew's former wife, Kimberly Buckman, emailed me that day, stating "Be advised that none of the three of us (Matthew, Kimberly, and Manoa) will be appearing at any deposition . . ." So, I emailed Matthew to follow up about his deposition, and he responded that he was not free until the first [of March]. So, I rescheduled Matthews's deposition, but unfortunately Matthew then, according to the process server (ECF 110), evaded service for a while as we

2

tried to get him the new Subpoena that was necessary to accommodate his schedule.

6.   The Subpoena directed Matthew to appear to testify on March 28, 2025, and to produce certain documents, including, among other things, communications and agreements with other identified witnesses, regarding the disputed real estate, regarding the claims of duress and undue influence, agreements between Defendant Mark Buckman and Matthew, and possession, ownership, or interests in the disputed real estate, as Matthew has claimed an interest in the "back" house, the ownership of which is at issue in this action.

7.   Matthew is identified on Plaintiff's Initial Disclosures as a potential witness in this case.  Matthew is not a party to this case.  Consequently, I issued a Subpoena to him under Rule 45 of the Federal Rules of Civil Procedure.

8.   On March 26, I contacted Matthew via both email and text to remind him that he was required to attend his deposition.  Matthew did not respond to either the email or the text.  (I had previously written Matthew regarding moving his deposition from March 28 to March 27 to accommodate a conflict in Plaintiff's counsel's Rich Wilson's schedule, to which Matt did not object.  In an abundance of caution, I offered Matt to do the deposition

either on the 27th or 28th, but, as explained below, he simply refused to sit for deposition or produce documents, regardless of date.

9. Both Manoa Buckman and Kimberly Buckman failed to attend their depositions on March 26 – even though Kimberly confirmed earlier in the day of her deposition that she would be there. After waiting more than an hour at the deposition reporter's office for Kimi to show up, and texting her to see if she was on her way, Kimi emailed me, stating, in effect, that neither she nor Matthew would be sitting for deposition.

I then wrote to Matthew to ask about his intent to appear, and stated that unless I heard otherwise, I understood that he was not going to appear. Matt texted me requesting that I call him. However, I was unable to reach him by phone (his voice mail was full and not taking further messages) so I texted him about that, and asked him to call me, but Matthew never called me. In either case, Matthew did not serve any objections to the subpoena, nor did he seek a Court order to quash or modify it or for other relief.

10. Matthew's failure to comply with the subpoena inconvenienced me, since I had traveled to Hawai'i to take this deposition (along with other potential witnesses identified by Plaintiff in her Initial Disclosures). It also inconvenienced Richard Wilson, who had blocked off time for the

4

deposition.  It also caused my client to incur fees and cost to travel to and stay in Hawaii, as well as my time and travel expenses.

11.   Matthew's failure to comply with the subpoena is impeding the discovery process, causing unnecessary delay and prejudice to Defendants as we seek to discover information from the witnesses Plaintiff has identified.

12.   To date, Defendant has attempted to obtain discovery from 7 of the 21 witnesses that Plaintiff identified in her Initial Disclosures.  One witness, Tamara Buchwald, has been persistently evading service of process, according to the process servers.  Thus far, 12 attempts have been made to serve Ms. Buchwald at her home, to no avail, even though persons are in the residence, the process server has reported hearing voices, and one time a woman that seemed to match the description of Ms. Buchwald yelled at the process server to "go away."  (This is based on the process server's reports back to me.)

13.   Of the 6 other witnesses identified by Plaintiff from whom Defendant has attempted to obtain discovery, attorney Steven Reese is the only one who agreed to, and did, appear for his deposition session, but informed counsel he could only stay for a couple of hours, so we still need to complete his deposition.  As to the other 5 witnesses (Manoa Buckman, Matthew

Buckman, Kimberly Buckman, Natalie Pitre, and Carl Pitre), as of the date of this Application, <u>none</u> of them has complied with the subpoenas that were served upon them, and several of them attempted to evade service of process, or stated they were unavailable, requiring multiple attempts before they were served, as reported by the process server.  (ECF 110)

14.   On the afternoon of March 26, 2025, after Manoa and Kimberly failed to appear for their depositions and failed to produce documents in compliance with the Subpoenas, I attempted to resolve this matter in good faith by again contacting Matthew and Kimi via text and email.  My text to Matthew stated:

"Hi Matt, I'm writing to check on whether you [intend] to appear at your deposition this week. Both Manoa and Kimi did not show up for their depositions today.  So I will have to go to court to deal with that.  Kimi just wrote me an email saying that you and she will not be showing up for depositions until the Court decides something or other.  I don't agree with her position, but I wanted to check with you. Unless you tell me otherwise, I understand you will not be appearing for your deposition tomorrow or Friday.  If you could confirm, because otherwise both mom's attorney has to show up and that costs her money, and the court reporter has to show up and that cost money and they also have the conference room, which is another waste of money."  Matthew did not respond.

My email that same day to Matthew and Kimberly stated:

Kimi and Matt,

6

I set your depositions in case 24–129 (PWB v. Mark & Jeni), as stated in the subpoenas served upon you folks. Those subpoenas are court orders. There's no legal reason for you folks to not attend your depositions, especially when you confirmed you would be there earlier today.

I will have to seek a court order for your folks failure to obey the subpoena and attend your depositions unless you and Matt agree to, and actually appear at, your depositions tomorrow and Friday, starting at 9:00 am. We have deadlines, you were served with subpoenas, and you were obligated to appear.

Please get back to me before close of business today (4:45 pm) whether you will or will not attend your depositions tomorrow and Friday so that I can inform the court reporter and mom's attorney regarding same.

Thank you for your prompt attention to this matter.
Mark Buckman"

15. Matthew has other relevant information, as he and I reached an agreement regarding the disputed "back" house, which preceded my mother deeding the back house to me pursuant to our agreement, as set forth in my counterclaim. This obviously impacts Jennifer as well, as she is accused of exercising undue influence regarding that deed. Matthew also lived in Plaintiff's house for over a year and witnessed interactions between Plaintiff and Natalie Pitre, which he described as including Natalie Pitre "brain-washing" Plaintiff regarding the disputed front and back houses as well as other coercive and controlling conduct by Ms. Pitre. Manoa also told me that he and Matthew reached an agreement with Tutu, after she deeded the house to

7

me, that is counter to my agreement with Plaintiff and Matthew, so Matthew would be a witness to that.  Matthew also told me that Natalie Pitre, who rented the back house from Plaintiff, had not been paying Plaintiff rent.  Matthew also knew and informed Plaintiff about Natalie's problems with the real estate commission.  Both these facts concerned Plaintiff as Natalie was supposed to be the "property manager" of the back house under Plaintiff's trust documents, and Plaintiff was concerned because Natalie had gotten in trouble for property management, violated fiduciary duties to a client, and had not been paying rent to Plaintiff.  Matthew has also claimed an interest in the back house, which is involved in this litigation.  Matthew has also stated that Natalie Pitre has exercised improper control over his medical and financial matters, as well as applied improper pressure on Matthew to support Natalie's position in this and related litigation.

16.    The documents sought from Matthew, to which no objection was made, are relevant to the following issues in this case:  (i) agreement and communications with defendants and other witnesses in this case, (ii) an apparently new agreement with Plaintiff regarding the back house, (iii) unwritten agreements or understandings of Plaintiff's estate intent, which are not included in Plaintiff's written 2022 trust amendment (Matthew, Plaintiff,

8

and Ms. Pitre all told me that the amendment does not actually contain the real agreement and Plaintiff's intent), (iv) the changes to Plaintiff's trust in 2022, as Matthew witnessed some coercion and "brain-washing" before the changes and then was at Plaintiff's estate attorney's office when the document was signed (Plaintiff's estate attorney, Steve Reese, has testified he shredded his notes from meetings and other matters before turning over Plaintiff's file, making third-party witnesses more important), (v) agreements between Plaintiff and Natalie Pitre (No. 11), Mark and Jennifer Buckman (No. 12), and Matt Buckman's and Manoa's claimed rights to the disputed back house (No. 13), Plaintiff's estate plans or ownership of property that is the basis of disputed mortgage in this case (Nos. 15-17, 20-22, 29), the agreement between Mark Buckman and Matt Buckman (and Manoa) concerning the back house (Nos. 18, 19, and 22), disputed documents and duress and undue influence (Nos. 24 and 25), Natalie Pitre impersonating Plaintiff, not paying plaintiff rent on the disputed back house, and Ms. Pitre's real estate violations (Nos. 26, 27), loans, debts, and agreements between Plaintiff and other involved family members (Nos. 30-33), claims to possession or ownership of the disputed back house, which Matthew Buckman, Kimberly Buckman, and I believe Manoa Buckman all

9

occupy (No. 34), and audio, video or other documents concerning the claims or allegations made in this matter.  (Nos. 35-39).

I declare under penalty of perjury under the laws of the United States that the facts recited above are true and correct.

Executed this 30th day of March, 2025, at Honolulu, Hawaii.

__/s/ Mark F. Buckman_____
Mark F. Buckman

## CERTIFICATE OF SERVICE

I, Mark F. Buckman, hereby certify that, on the dates and by the methods of service noted below, a true and correct copy of the foregoing was served on the following at their last known addresses:

**SERVED ELECTRONICALLY THROUGH CM / ECF:**

Richard E. Wilson, Esq.rewilson_law@yahoo.com          March 30, 2025
Law Offices of Richard E. Wilson, LLC
735 Bishop Street, Suite 306
Honolulu, HI 96813

**SERVED BY FIRST-CLASS MAIL:**

**SERVED BY HAND DELIVERY:**

Dated:          Honolulu, Hawaii, March 30, 2025

                    /s/ Mark F. Buckman
                    Law Offices of Mark F. Buckman
                    Mark F. Buckman, Esq.
                    Attorneys for Jennifer Buckman and Mark
                    F. Buckman

11