LOUISE K.Y. ING        2394
TIM PARTELOW        10218

**DENTONS US LLP**
1001 Bishop Street, Suite 1800
Honolulu, HI  96813
Telephone: (808) 524-1800
Facsimile: (808) 524-4591
Email:    louise.ing@dentons.com
              tim.partelow@dentons.com

Attorneys for Defendants
MARK F. BUCKMAN, individually
and as Trustee of the
MARK F. BUCKMAN TRUST, and
JENNIFER BUCKMAN

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| PATRICIA W. BUCKMAN, PATRICIA W. BUCKMAN REVOCABLE TRUST,<br><br>                    Plaintiffs,<br><br>      v.<br><br>MARK F. BUCKMAN, MARK F. BUCKMAN TRUST, JENNIFER BUCKMAN, JOHN DOES 1-10, JANE DOES 1-10, DOE CORPORATIONS 1-10, DOE PARTNERSHIPS 1-10, DOE GOVERNMENTAL AGENCIES 1-10,<br><br>                    Defendants. | Civil No. 1:24-CV-00129-MWJS-KJM<br><br>**DEFENDANTS' JENNIFER BUCKMAN AND MARK F. BUCKMAN, individually and as Trustee of the MARK F. BUCKMAN TRUST, MOTION FOR SUMMARY JUDGMENT**<br><br>Trial Date: November 3, 2025<br>Judge: Hon. Micah Smith |

i

# TABLE OF CONTENTS

I.    INTRODUCTION..................................................................................3

II.   STATEMENT OF FACTS ....................................................................5

    A. In 2023, Defendants Investigated Plaintiff's Estate Documents and Finances and Discovered Numerous Problems. ........................................................5

    B. Mark Helped Plaintiff Align Her Estate Documents with Her Intent as She Expressed It in July to October 2023. ..........................................................6

    C. In September 2023, Plaintiff Also Agreed to Make Good on Her Promise to Repay Mark for His 40% Ownership Interest in a Property They Had Jointly Owned on 16th Avenue. ...............................................................................8

    D. Due to Her Failing Memory, Plaintiff Does Not Recall the Facts Related to the 2023 Transactions Challenged in the Complaint..................................10

    E. Although She Is the Plaintiff, Plaintiff Has Been Curiously Reticent to Provide Discovery, and She Failed to Respond to Two Sets of Requests for Admission Served by Defendant Mark Buckman. .........................................11

III.   STANDARD OF JUDICIAL REVIEW........................................................12

IV.   ARGUMENT.......................................................................................14

    A. PLAINTIFF'S FIRST AND SECOND COUNTS FAIL BECAUSE THE UNDISPUTED FACTS DO NOT ESTABLISH ANY UNDUE INFLUENCE BY DEFENDANTS ...............................................................14

        1.  Since Plaintiff Exercised Her Own Free Will When She Executed the Second Amendment to the Trust, the Warranty Deed, the Power of Attorney, and the Codicil to Will, Plaintiff Cannot Show Undue Influence. ..............................................................................14

        2.  Plaintiff Exercised Her Free Will to Resolve Her Debt to Mark Through the Repayment Documents, Thus Precluding Her Second Count for Undue Influence. ............................................................................20

    B. THE UNDISPUTED FACTS DO NOT SUPPORT PLAINTIFF'S THIRD COUNT FOR FRAUD BASED ON FAILURE TO DISCLOSE.................23

    C. GIVEN PLAINTIFF'S ADMISSION THAT SHE DID NOT TRUST DEFENDANTS IN 2023, HER UNDUE INFLUENCE, CONSTRUCTIVE FRAUD AND CONSTRUCTIVE TRUST COUNTS ALL FAIL..............25

    D. PLAINTIFF'S CONSPIRACY CLAIM IS FATALLY DEFECTIVE. ........27

    E. PLAINTIFF'S COUNT FOR INJUNCTIVE RELIEF CANNOT STAND WITHOUT AN UNDERLYING CAUSE OF ACTION. ..........................30

F.  BECAUSE PLAINTIFF ADMITTED THAT THE PROMISSORY NOTE
IS ENFORCEABLE TO ITS TERMS, AND CANNOT PROVIDE FACTS
AS TO UNENFORCEABILITY, ALL CAUSES OF ACTION THAT
CONCERN THE REPAYMENT DOCUMENTS NECESSARILY FAIL .30

V. CONCLUSION.......................................................................................31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aloha Petroglyph v. Alexander & Baldwin, Inc.*, 1 Haw. App. 353, 354 (1980)....13

*Au v. Au*, 63 Haw. 210, 215 (1981)...................................................................24

*Balogh v. Balogh*, 332 P.3d 631, 647 (Haw. 2014)...................................................14

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)........................................ 12, 13

*Conlon v. United States*, 474 F.3d 616, 621 (9th Cir. 2007)....................................14

*Cvitanovich-Dubie v. Dubie*, 125 Hawai'i 128, 160 (2011) ....................... 14, 15, 26

*Estate of Heeb*, 26 Haw. 538, 540 (1922)................................................................15

*Estate of Herbert*, 90 Hawai'i 443, 457 (1999)................................................. 15, 26

*In Re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) .................. 12, 13

*Kam Oi Lee v. Fong Wong*, 57 Haw. 137, 140 (1976) .............................................26

*Layton v. Int'l Ass'n of Machinists & Aero. Workers*, 285 F. App'x 340, 341
   (9th Cir. 2008) ...................................................................................................13

*Noah v. Enesco Corp.*, 911 F. Supp. 305, 307 (N.D. Ill. 1995)...............................28

*Schmidt v. HSC, Inc.*, 358 P.3d 727, 743 (Haw. Ct. App. 2015)............................24

*Sung v. Hamilton*, 710 F. Supp. 2d 1036, 1047 (D. Haw. 2010)............................24

*Swift v. Swift*, 138 Hawai'i 52, 375 P.3d 1290, 2016 Haw. App. LEXIS 316 at *9
   (Ct. App. 2016)..................................................................................................26

*TSA Int'l Ltd. v. Shimizu Corp.*, 990 P.2d 713, 730 (Haw. 1999)...........................24

*Wagner v. Prof'l Eng'rs in Cal. Gov't*, 354 F.3d 1036, 1044 (9th Cir. 2004)..........27

*Yoneji v. Yoneji*, 136 Hawai'i 11, 18-19 (2015) ....................................................26

**Rules**

Federal Rule of Civil Procedure 56 ................................................................. 12, 13

**Treatises**

Restatement (Second) of Torts § 551............................................................... 23, 27

Restatement (Second) of Torts, § 550 ....................................................................24

## MOTION

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendants Jennifer Buckman and Mark F. Buckman, individually and as Trustee of the Mark F. Buckman Trust, by and through their undersigned counsel, move this Court for an order granting summary judgment in their favor on all seven counts asserted in Plaintiffs' Second Amended Complaint, or summary adjudication of each individual claim.

This motion is based upon the attached Memorandum of Law in Support of Motion for Summary Judgment, the Concise Statement of Undisputed Material Facts, the Declarations of Mark F. Buckman, Jennifer T. Buckman, and Louise K.Y. Ing, with supporting exhibits, all pleadings and records on file in this action, and any oral argument the Court may permit.

The grounds for this motion are that there is no genuine dispute as to any material fact and Defendants are entitled to judgment as a matter of law because Plaintiff cannot meet her burden of proof, and the undisputed evidence confirms Defendants' claims and refutes Plaintiffs'.

This Motion is made following the conference of counsel pursuant to LR7.8, which took place on June 2, 2025, between Richard Wilson on behalf of Plaintiff, and Louise Ing on behalf of Defendants and Mark Buckman on behalf of Defendant Jennifer Buckman. Defendants' counsel shared with Mr. Wilson an

1

outline of the grounds for the motion the preceding week. After Mr. Wilson's

review of the outline and brief discussion, the parties agreed to disagree on the

grounds for the motion, necessitating its filing.

                /s/ *Louise K.Y. Ing*
                LOUISE K.Y. ING
                TIMOTHY C. PARTELOW

                Attorneys for Defendants
                MARK F. BUCKMAN, individually and as
                Trustee of the MARK F. BUCKMAN
                TRUST, and JENNIFER BUCKMAN

                /s/ Mark F. Buckman
                MARK F. BUCKMAN

                Attorney for Defendant
                JENNIFER BUCKMAN

## MEMORANDUM OF LAW

### I.      <u>INTRODUCTION</u>

Defendants seek summary judgment on all seven counts of Second Amended Complaint because the undisputed facts demonstrate Plaintiff cannot meet her burden of proof.

Plaintiff's Complaint centers on two transactions related to two houses in Kapahulu, 3010A ("the Back House") and 3010 Kauna'oa Street ("the Front House"). After learning in July 2023 that Plaintiff had made changes to her Trust that resulted in her son Matt Buckman having no interest in the Back House, Defendant Mark Buckman asked Plaintiff if she intended that result. Plaintiff indicated she did not, and reiterated her concern that Matt Buckman "not end up homeless." This led to discussions and an agreement between Matt and Mark, based on which Plaintiff deeded the Back House to Mark on August 10, 2023. That same day, Plaintiff signed the Second Amendment to her 2019 Trust, but only after deleting one of the provisions in the draft document.

The second transaction took place on September 25, 2023, when Plaintiff signed a Promissory Note, an Agreement Regarding Note and Mortgage, and a Mortgage (the "Repayment Documents") on the Front House. This transaction occurred after Plaintiff and Mark negotiated how she would repay him for his share of the sale proceeds on a house on 16th Avenue – which Plaintiff admits they had

3

jointly owned together. The Repayment Documents reflect the provisions Plaintiff bargained for.

All seven counts Plaintiff alleges fail because Plaintiff has no competent evidence to support them. In her interrogatory responses served in May – at the end of discovery – Plaintiff admits she does not remember either of these transactions and cannot identify any facts to support her claims related to them. Indeed, Plaintiff testified in her deposition that she had "no idea" where the facts alleged in her Complaint came from. (UMF 1.)

Nor do such facts exist. Rather, the undisputed evidence confirms Defendants did not employ any undue influence, and Plaintiff exercised her own free will signing each document, thereby defeating Plaintiff's first two counts. Plaintiff's third count, fraud based on failure to disclose, falters because Plaintiff cannot identify any information Defendants concealed or intentionally prevented her from acquiring – and Plaintiff was able to read each of the documents in its entirety before signing. The counts for constructive fraud, constructive trust, and undue influence all falter because each requires proof of a confidential relationship, and Plaintiff testified that she did not trust Mark or Jennifer in 2023. Finally, Plaintiff's counts for conspiracy and injunctive relief fail because they are predicated upon her other claims and allegations, which are defective.

## II.    STATEMENT OF FACTS

### A.    In 2023, Defendants Investigated Plaintiff's Estate Documents and Finances and Discovered Numerous Problems.

In June 2023, Plaintiff's daughter Natalie sent Defendants a text complaining about her brother Matt; proposing that her family, rather than Matt, live in the Back House after Plaintiff's death; indicating she would allow Matt to stay in the "small third bedroom/home office" of the Front House after she inherited it; and inviting Defendants to come to Hawai'i and "check it all out while [Plaintiff]'s still alive" before "the battle comes." (Concise Statement of Undisputed Material Facts ("UMF"), 16.) Defendants accepted this invitation and did come to Hawai'i to visit Plaintiff and other family in July and August 2023. What they learned was very concerning.

Among other things, Defendants discovered: (1) Plaintiff resigned as Trustee of her trust in 2019 and Natalie assumed that role (Declaration of M. Buckman ("MFB Decl."), Exh. 2, Exh 3, N. Pitre CA Deposition ("NBP CA Depo.") 48:15-17); (2) Natalie had been sending emails to Plaintiff's estate lawyer, Steven Reese, from Plaintiff's email account, without indicating she (not her mother) had drafted these emails (UMF 10); (3) Natalie had taken thousands of dollars from Plaintiff's bank account and had not been providing account statements to Plaintiff (*Id.*, Exh. 3, NBP CA Depo., 51:15-53:9, 163:2-7, 167:16-168:1); (4) Natalie was not paying Plaintiff rent she owed, causing Plaintiff's mortgage payment to bounce at least

once (MFB Decl., Exh. 4, NBP HI Depo., 27:22-28:4, 29:24-30:9, 31:21-25, 36:9-11; Case 1:25-cv-00010, ECF #26, ¶ 13); and (5) although Plaintiff's Trust had left the Back House to Matt Buckman and the Front House to Duke Manoa Buckman ("Manoa") since its inception in 2006 (UMF 6, 7), the 2022 Amendment removed Matt, gave the Back House to Manoa, and gave the Front House to Natalie and Carl Pitre. (UMF 13.) Thus, under the 2019 Trust, as amended, Matt had no interest in the Back House. (UMF 13, MFB Decl., Exh. 19 & Exh. 3, NBP CA Depo., 212:18-213:5 ["Manoa was going to inherit the Back House rather than Matt."].)

While the Trust had been changed, the benefit Plaintiff intended Matt to receive had not: " I don't think my intent ever changed. I wanted Matt not to be homeless." (UMF 8, 9.) Plaintiff does not recall Natalie writing an email to Plaintiff's estate attorney, Steve Reese, in 2022, asking him to change the 2019 Trust, nor does she remember any reason why she wanted to change her trust in 2022. (MFB Decl., Exh. 15, v. 5, 10:18-23.) Plaintiff did not want "to take Matt off as a beneficiary of the Back House" in 2022. (MFB Decl., Exh. 15, v. 5, 11:5-7.)

B.    **Mark Helped Plaintiff Align Her Estate Documents with Her Intent as She Expressed It in July to October 2023.**

In July 2023, after he received the 2022 Trust Amendment, Mark learned it did not reflect Plaintiff's longstanding intent to provide housing for Matt. (MFB Decl., ¶ 9.) Mark discussed this issue with both Plaintiff and Matt. (MFB Decl.,

6

¶ 10 & Exh. 3, NBP CA Depo., 62:1-4 [after Natalie told Mark about the change in the trust, Mark "showed up, about -- I don't know -- a week or a month later . . . and went and talked to Mom."].)

Before Plaintiff signed the Deed on August 10, 2023, Matt and Mark agreed Mark would take title to the Back House and ensure that expenses were paid, the house was insured and maintained, and Matt would be able to occupy, or receive the benefit of, the Back House during his lifetime. (MFB Decl., Exh. 6.) Matt asked Plaintiff to deed 3010A Kauna'oa Street to Mark pursuant to Matt and Mark's agreement. (MFB Decl., Exh. 7, RFA #8.) Plaintiff communicated to Mark that she would be signing the "Warranty Deed" in furtherance of Matt and Mark's agreement (*Ibid.*, RFA #11), that Matt would be "taken care of by you and by me with small house," (MFB Decl., Exh. 9) and that she wanted Mark to be his "brother's keeper" and to make sure that Matt does not end up homeless. (MFB Decl., Exh. 7, RFA #10, RFA #23; UMF 18 ["thanks so much for stepping up to be your brother's keeper!!!!"]) Plaintiff discussed her intended action with Matt and he agreed with Plaintiff deeding 3010A Kauna'oa Street to Mark. (MFB Decl., Exh. 8, RFA #59.)

Plaintiff also told Mark she was concerned about the distribution of proceeds from her life insurance policy. (MFB Decl., ¶ 15 & Exh. 9.) Plaintiff did not want Matt's share to be given to him all at once because "as u and I both know Matt is a

7

very poor $$$$$manager." (MFB Decl., Exh. 9.) Plaintiff texted Mark "[Matt] would ♥ to be in charge of his small life ins. But we both know he would quickly blow it!" (*Ibid.*) So, Plaintiff wanted Mark to supervise Matt's life insurance distribution to make certain Matt did not "quickly blow it." (MFB Decl., ¶ 15 & Exh. 9.) Mark agreed and asked Plaintiff to sign a Power of Attorney (POA) so he could change the designees on her policy, which he then did. (MFB Decl., ¶ 16-17.) Mark has not utilized the POA for any other purpose, except to assist Plaintiff with banking, at no benefit to himself. (MFB Decl., ¶ 18.)

Plaintiff and Mark also discussed a Codicil to Plaintiff's Will, which changed the administrator from Tamara Buchwald to Mark. (MFB Decl., ¶ 28; ECF #61, pp. 36-37.) When the Codicil was signed and notarized, Plaintiff and Mark had agreed that Mark would be serving as Trustee and would be helping Plaintiff with her finances. (UMF 38.)

> **C.    In September 2023, Plaintiff Agreed to Repay Mark for His 40% Ownership Interest in a Property They Had Jointly Owned on 16th Avenue.**

In 1991, Plaintiff and Mark had made an agreement under which they jointly owned a home located at 714 16th Avenue. From the outset of this case, Plaintiff has admitted that Mark invested money into the 16th Avenue property. (ECF #86, ¶ 10; *see also* MFB Decl., Exh. 13, v.3, 32:11-13.)

Plaintiff sold the 16th Avenue property in 2017 (after Mark spent months remodeling it in 2016), but Plaintiff and Mark agreed that she could defer paying

8

him his 40% of the proceeds until later, with the first $50,000 increment due when Mark's daughter would start college. (MFB Decl., ¶ 23.) However, in September 2018, Plaintiff did not pay the first $50,000 increment as previously agreed. (MFB Decl., ¶ 24.) In summer 2023, Mark realized that Plaintiff, due to her failing memory, had forgotten the details about their deal regarding his share of the proceeds from the sale of 16th Avenue. (MFB Decl., ¶ 19.)

Plaintiff signed the "Promissory Note" on September 24, 2023 to pay Mark for his interest in 714 16th Avenue. (UMF 26.) Several days before Plaintiff signed the "Promissory Note" on September 24, 2023, Plaintiff, Mark, and Natalie discussed the debt that Plaintiff owed Mark from the 16th Avenue Property, to which neither Plaintiff nor Natalie objected. (MFB Decl., Exh. 7, RFA #16.)

Before Plaintiff signed the Repayment Documents, Plaintiff negotiated the terms with Mark. (MFB Decl., ¶ 25.) Plaintiff discussed Mark's ownership interest in 714 16th Avenue with Mark at least 3 times before she signed the Note. (MFB Decl., Exh. 8, RFA #55.) Plaintiff asked Mark to allow Natalie and Carl Pitre additional time to pay off that debt after her passing such that they could continue to own the Front House. (MFB Decl., Exh. 7, RFA #13.) Plaintiff also asked Mark to agree to loan Plaintiff up to an additional $50,000.00 for her personal needs. (MFB Decl., Exh. 7, RFA # 14.) Mark agreed to these terms. (MFB Decl., ¶ 25.)

9

**D.    Due to Her Failing Memory, Plaintiff Does Not Recall the Facts Related to the 2023 Transactions Challenged in the Complaint.**

Plaintiff does not recall signing the Back House Deed on August 10, 2023 (UMF 30), and she "does not know what, if anything" Mark told her about Mark's agreement with Matt before she signed the Back House Deed. (UMF 31.) Likewise, Plaintiff has "no recollection" of any facts related to her August 10, 2023 signing of the "Second Amendment to Declaration of Revocable Trust of Patricia W. Buckman." (*Ibid.,* Response #15.)

Plaintiff does not recall reaching an agreement with Mark for him to take charge of Matt's $40,000.00 share of Plaintiff's life insurance proceeds. (*Id.*, Response #16.)

Plaintiff does not recall signing the Repayment Documents on September 24, 2023. (*Id.,* Responses #8, #9.) Plaintiff admits she is unable to identify anything Mark told her about the "Promissory Note" and "Agreement Regarding Note and Mortgage" before she signed them on September 24, 2023. (*Id.,* Response #10 ["I don't know what he told me, if anything"].) Plaintiff admits that Mark "was going to or offered to help me with finances," but she does not recall what their agreement was. (*Id.,* Response #17.) Plaintiff is unable to identify any factual inaccuracy in the "Agreement Regarding Note and Mortgage." (*Id.,* Response #8.) Significantly, Plaintiff could not provide facts to support her

contention that the Promissory Note she signed and notarized is unenforceable.

(*Id.*, Response #9.)

In deposition, Plaintiff testified she had "no idea" where the facts alleged in her Complaint came from (UMF 1), and she was never asked to produce any documents supporting those claims. (MFB Decl., Exh. 12, v. 2, 15:2-15, 16:5-11.)

E.  **Plaintiff, Curiously Reticent to Provide Discovery, Has Failed to Respond to Two Sets of Requests for Admission Served by Defendant Mark Buckman.**

On February 6, 2025, Mark served on Plaintiff his Requests for Admission, Set #1 (MFB RFA #1) and two other sets of discovery. (MFB Decl., ¶ 40 & Exh. 7.) On March 30, 2025, Defendant's counsel emailed Plaintiff's counsel to inquire about the overdue responses. (MFB Decl., ¶ 41 & Exh. 10.) On April 1, Plaintiff's counsel responded and acknowledged, "They fell through the cracks." (MFB Decl., ¶ 41 & Exh. 10.) On April 3, 2025, Defendant's counsel emailed Plaintiff's counsel a courtesy copy of all 3 sets of discovery, including MFB RFA #1. (M. Buckman Decl., ¶ 42.)

On April 5, 2025, Mark served on Plaintiff his Requests for Admission, Set #2 (MFB RFA #2). (MFB Decl., ¶ 43 & Exh. 8.) On April 30, 2025, before the responses to MFB RFA #2 were due, counsel appeared before the Magistrate Judge, during which Plaintiff's counsel acknowledged that Mark had served RFAs and stated his opinion that they were "improper" and Plaintiff should be able to obtain a protective order, as she had for some of the RFAs Jennifer served. (Ing

11

Decl., ¶ 3.) The Magistrate Judge declined to agree that all the RFAs were improper. (Ing Decl., ¶ 4.)

Plaintiff did not seek a protective order for either set of Mark's RFAs. To date, Plaintiff has not served any responses to either set. (MFB Decl., ¶ 44.) Thus, the statements in these RFAs are deemed admitted and considered binding on Plaintiff. Fed. R. Civ. Pro. 36; *F. T. C. v. Medicor LLC*, 217 F. Supp. 2d 1048, 1053 (C.D. Cal. 2002) [discussing self-executing nature of Rule 36].

Pursuant to the Court's Scheduling Order, all discovery motions were required to be filed by May 7, 2025. ECF #63, at 1. Before the May 7 cutoff, Plaintiff did not file a timely motion under Rule 36(b) to Withdraw or Amend Deemed Admissions.

## III.    STANDARD OF JUDICIAL REVIEW

Under Federal Rule of Civil Procedure 56, the party moving for summary judgment initially bears the burden of proving the absence of a genuine issue of material fact. *In Re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Because Defendants do not bear the burden of proof at trial, their motion for summary judgment need only prove that there is an absence of evidence to support Plaintiff's case. *Oracle Corp. Sec. Litig.*, 627 F.3d at 387; *Celotex*, 477 U.S. at 325.

The burden then shifts to Plaintiff to designate specific facts demonstrating the existence of genuine issues for trial. *Celotex*, 477 U.S. at 324. This burden is

12

not a light one. *Oracle Corp. Sec. Litig.*, 627 F.3d at 387. "The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

For example, with respect to her two fraud claims, the plaintiff cannot rely solely upon the hope that the jury will not trust the credibility of opposing witnesses to establish her case.[1] Rather, she must adduce some affirmative evidence that defendants possessed fraudulent intent. *Aloha Petroglyph v. Alexander & Baldwin, Inc.*, 1 Haw. App. 353, 354 (1980). "Otherwise, a case could be made for any proposition in the world by the simple process of calling one's adversary and arguing to the jury that he was not to be believed." *Ibid.*

In considering Defendants' motion for summary judgment, the District Court properly relies on Plaintiff's deemed admissions. *Layton v. Int'l Ass'n of Machinists & Aero. Workers*, 285 F. App'x 340, 341 (9th Cir. 2008) [party's failure to timely respond to RFAs results in facts being deemed admitted; admissions need not be disregarded to "promote the presentation of the merits of the action" when the admitting party never made a timely motion for withdrawal]; *Conlon v. United States*, 474 F.3d 616, 621 (9th Cir. 2007).

---

[1] Plaintiff never served any written discovery on Jennifer. (JTB Decl., ¶ 3.)

13

In addition to the facts deemed admitted, Plaintiff has admitted in her deposition testimony that she cannot remember any facts to support the allegations in her Complaint. Moreover, the undisputed facts preclude her claims. Consequently, as shown below, Plaintiff cannot meet the standard for her Second Amended Complaint to survive Defendants' Motion for Summary Judgment.

## IV.    ARGUMENT

### A.    PLAINTIFF'S FIRST AND SECOND COUNTS FAIL BECAUSE THE UNDISPUTED FACTS DO NOT ESTABLISH ANY UNDUE INFLUENCE BY DEFENDANTS

#### 1.    Since Plaintiff Exercised Her Own Free Will When She Executed the Second Amendment to the Trust, the Warranty Deed, the Power of Attorney, and the Codicil to Will, Plaintiff Cannot Show Undue Influence.

Undue influence is shown when "[t]he improper use of power or trust . . . deprives a person of free will and substitutes another's objective." *Cvitanovich-Dubie v. Dubie*, 125 Hawai'i 128, 160 (2011); *Balogh v. Balogh*, 332 P.3d 631, 647 (Haw. 2014) [no evidence of undue influence in MOU allocating the division of marital property when husband was well-educated, and the record contained no evidence indicating the husband acted involuntarily or lacked free will when he signed the agreement]. To sustain a claim of undue influence, the plaintiff must prove "that the influence exercised amounted to fraud or coercion destroying free agency, or the substitution of another's will for that of the testator so that the product is not that of the testator." *Cvitanovich-Dubie*, 125 Hawai'i at 160, *citing*

14

*Estate of Heeb*, 26 Haw. 538, 540 (1922); *see also Estate of Herbert*, 90 Hawai'i 443, 457 (1999).

Furthermore, in Hawai'i, "undue influence must be proved to have operated as a present constraint at the very time of making" the disputed transactions. *Estate of Herbert*, 90 Haw. at 458. Thus, the key evidentiary question is whether the signer exercised free agency *at the time of the signing. Ibid.* Evidence of a subsequent change of heart is irrelevant; the pertinent fact is whether the signer acted voluntarily when the document was signed.

Plaintiff's first count claims Defendants exercised undue influence related to: (1) the August 10, 2023 signing of the Second Amendment to Trust and the Warranty Deed, (2) the August 25, 2023 signing of the Power of Attorney, and (3) the October 18, 2023 signing of the Codicil to the Last Will and Testament. This count fails because Plaintiff has no competent evidence to prove Defendants dominated her and overcame her will. In fact, when she executed the documents, Plaintiff had sufficient mental capacity to know the nature and extent of her property, and she read the documents in their entirety and made revisions to them consistent with her desire to keep her son Matt housed.

The undisputed facts confirm that Plaintiff signed these documents voluntarily, and they reflect her own free will. Plaintiff requested and obtained specific changes to the 2023 Second Amendment before she signed it. (UMF 23.)

Plaintiff rejected Mark's suggested change to Section 5.01 of her Trust, which would have removed Natalie Pitre from having discretion to distribute Plaintiff's personal and household effects. Plaintiff, who admits she has "excellent" reading comprehension (*Id.*, Exh. 11, v. 1, 15:5-9), read all the documents that were presented to her on August 10, 2023, line-by-line. (MFB Decl., Exh. 16, JTB Depo. 104:11-25; 105:1-2; 121:18-25; 154:1-10; 155-156:1; 159:1-9; 162:19-25; 163:1-14; *see also* MFB Decl., Exh. 12, v 2, 60:13-16 [Plaintiff admits she reads documents carefully].) Plaintiff does not recall ever signing and notarizing a document for Mark without carefully reviewing it. (MFB Decl., Exh. 11, v. 1, 61:2-5.)

Plaintiff refused to sign the first version of the Second Amendment, which contained a clause deleting and replacing Section 5.01(a). (MFB Decl., Exh. 7, RFA #17; Exh. 16, JTB Depo. 154:7-157:5; 158:4-13.) The new Section 5.01 would have charged the Trustee with distributing Plaintiff's personal property. Plaintiff did not want to make that change, so she asked Mark Buckman to revise the Second Amendment. (MFB Decl., Exh. 16, JTB Depo 154:7-157:5; 158:4-13.) Plaintiff only agreed to and signed the "Second Amendment" after Mark Buckman deleted, at Plaintiff's request, that clause [Section 5.01(a)], which would have removed Natalie Pitre from having discretion to distribute Plaintiff's personal and household effects. (MFB Decl., Exh. 7, RFA #19, Exh. 8, RFA #60, Exh. 16, JTB

16

Depo. 154:7-157:5; 162:19-25; 163:1.) Plaintiff's rejection of Mark's suggestion for Section 5.01 confirms that she read the documents and understood their effect, that she exercised her free will in signing the Second Amendment, and that she ensured that the Amendment reflected her own intent at the time of execution, not one imposed by Defendants.

The undisputed evidence also confirms Plaintiff acted voluntarily and of her own free will when she signed the Warranty Deed (which was signed at the same time as the Trust Amendment), in order to carry out her longstanding intent of ensuring her son Matt would have housing. Plaintiff admits that she has always had this intent for her Trust: "I don't think my intent ever changed. I wanted Matt not to be homeless." (MFB Decl., Exh. 5, Response # 19.) However, the 2022 Trust Amendment had removed the provision of the 2019 Trust that left the Back House to Matt. (MFB Decl., Exh. 17, 18.) The 2022 Trust Amendment did not leave Matt any interest, life estate or otherwise, in the Back House. (*Ibid*., Exh. 18.)

Before Plaintiff signed the Warranty Deed on August 10, 2023, Matt and Mark had reached an agreement under which Mark would be put on title to the Back House and would ensure that the property was insured and maintained and its expenses were paid, and Matt would be able to occupy, or receive the benefit of, the Back House during Matt's lifetime. (MFB Decl., Exh. 6.)

17

Before August 10, Matt had asked Plaintiff to deed 3010A Kauna'oa Street to Mark pursuant to Matt and Mark's agreement. (MFB Decl., Exh. 7, RFA #8.) Also before August 10, Plaintiff communicated to Mark that she would be signing the "Warranty Deed" in furtherance of Matt and Mark's agreement. (MFB Decl., Exh. 7, RFA #11.) Plaintiff communicated to Mark that she wanted him to be his "brother's keeper," that Mark "needs to make sure that Matt does not end up homeless," (MFB Decl., Exh. 7, RFA #23; Exh. 9.) and that she intended to deed 3010A Kauna'oa Street to Mark so that Mark could be "his brother's keeper." (MFB Decl., Exh. 7, RFA #10; Exh. 9.) Plaintiff discussed her intended action with Matt Buckman and he was in agreement with Plaintiff deeding 3010A Kauna'oa to Mark Buckman. (MFB Decl., Exh. 8, RFA #59.) Thus, Plaintiff's admissions confirm that she exercised her free will and carried out her own intent on August 10, 2023 when she signed the Deed. This evidence is consistent with her unwavering intent to ensure housing for her son Matt.

Although Plaintiff does not recall reaching an agreement with Mark for him to be in charge of Matt's $40,000.00 share of Plaintiff's life insurance proceeds (UMF 24), Plaintiff did ask Mark several times, and Mark did agree to take on this uncompensated task. (MFB Decl., ¶ 16.) Plaintiff signed the POA so that Mark would be able to change the designation of beneficiaries on her life insurance

policy to carry out this agreement. (UMF 25.) Plaintiff signed the POA of her own free will to carry out her intent. (MFB Decl., ¶ 18.)

Further, Plaintiff has "no recollection" of any facts related to the August 10, 2023 signing of the "Second Amendment to Declaration of Revocable Trust of Patricia W. Buckman" and the Warranty Deed. (MFB Decl., Exh. 5, Responses #12, #15.) Plaintiff does not recall any conversation with Mark about the Deed and "do[es] not recall a single word" Jennifer said to her regarding the documents. (UMF 32.) Likewise, Plaintiff does not remember, and cannot testify to: any pressure that Mark or Jennifer put on her to sign the Warranty Deed or Second Amendment; any way that Mark or Jennifer intimidated or tricked her; or any way that Mark or Jennifer rushed her or prevented her from reading the documents. (*Ibid.*, Exh. 11, v. 1, 57:19-58:6, 68:6-17, Exh. 12, v. 2, 59:10-16, 60:6-19.) Plaintiff has provided no evidence that her free will was ever overcome by Defendants who do not live with her and do not exercise control over her person or finances.

The undisputed evidence also shows that Plaintiff exercised her free will in signing the Codicil. Plaintiff and Mark discussed the Codicil, which changed the administrator from Tamara Buchwald to Mark, but did not change any disposition under the will. (M. Buckman Decl., ¶ 28; *see also* ECF #61, pp. 36-37.) Plaintiff and Mark agreed that it would make sense and be more efficient for him to be the

19

administrator since Tamara lives on the East Coast, and Mark would be serving as the Trustee and helping Mom with her finances. (MFB Decl., ¶¶ 28-29.) Plaintiff signed the Codicil of her own free will to carry out her intent. (MFB Decl., ¶ 30.)

Because the undisputed evidence verifies Plaintiff voluntarily signed each of these documents, and they each reflect her own free will at the time of the signing, Plaintiff's first count fails.

### 2. Plaintiff Exercised Her Free Will to Resolve Her Debt to Mark Through the Repayment Documents, Thus Precluding Her Second Count for Undue Influence.

The undisputed facts show Plaintiff knowingly and voluntarily signed and notarized the Repayment Documents to resolve her debt to Mark related to the 16th Ave. property, after negotiating the terms of the resolution to her satisfaction. Consequently, Plaintiff's Second Count, for Undue Influence based on execution of the Repayment Documents, also fails.

Just as with the Warranty Deed and Second Amendment, Plaintiff does not remember, and cannot competently testify to, what occurred when she signed the Repayment Documents. Plaintiff cannot identify any pressure that Mark put on her to sign the Agreement Regarding Note and Mortgage or any way that Mark tricked her. (MFB Decl., Exh. 11, v. 1, 68:9-14; Exh. 5, Response #10 [Plaintiff is unable to identify anything Mark told her about the Repayment Documents before she signed them].) Jennifer was not present when these documents were signed. (ECF #61, ¶ 38.)

20

Contrary to the allegations, the undisputed evidence indicates the main reason Plaintiff signed the "Promissory Note" on September 24, 2023 was to pay Mark for his interest in 714 16th Avenue. (MFB Decl., Exh. 8, RFA #54.) Mark obtained the financing for and was the sole record owner when he acquired 714 16th Avenue in 1911. (UMF 2.) Plaintiff had sold the 16th Avenue property in 2017, but Plaintiff and Mark agreed that she could defer paying him his 40% of the proceeds from that sale until later, with the first payment due in fall 2018. (MFB Decl., ¶ 23.)

Plaintiff admits that Mark had invested money in the 16th Avenue property (UMF 3); admits she does not now remember the deal that she had with Mark regarding the ownership of 16th Avenue (MFB Decl., Exh. 5, Response #1); and admits that a document written in her own handwriting states that Mark Buckman is to get "40% of the [16th Avenue] house which he earned in construction" and that the document was true when it was written. (UMF 4; Exh. 22.)

Before Plaintiff signed the Promissory Note, Plaintiff discussed the terms of the Note with Mark and asked for specific revisions. (UMF 27.) Plaintiff discussed Mark's ownership interest with him at least 3 times before she signed the "Promissory Note" on September 24, 2023. (MFB Decl., Exh. 8, RFA #55.) Before Plaintiff signed the Repayment Documents: (1) Plaintiff, Mark, and Natalie discussed the debt that Plaintiff owed Mark Buckman from the 16th Avenue

Property, and neither Plaintiff nor Natalie objected to that debt; (2) Plaintiff asked Mark to allow Natalie and Carl Pitre additional time to pay off that debt after her passing such that they could continue to own the Front House; (3) Plaintiff asked Mark to agree to loan Plaintiff up to an additional $50,000.00 for her personal needs, and (4) Plaintiff and Mark negotiated, and ultimately agreed, on a discounted principal amount and a lowered rate of interest. (MFB Decl., Exh. 7, RFA #16, #13, #14; *ibid.*, ¶ 25.) Mark agreed to Plaintiff's requested terms, and they are part of the agreement – under which Mark has advanced over $10,000 to pay for Plaintiff's care, including after this case was filed. (M. Buckman Decl., ¶ 27.)

Plaintiff admitted she could read and understand the Agreement Regarding Note and Mortgage. (UMF 28.) Plaintiff is unable to identify any factual inaccuracy in the "Agreement Regarding Note and Mortgage." (MFB Decl., Exh. 5, Response #8.) Plaintiff admitted the Agreement Regarding Note and Mortgage "seems to be correct." (UMF 29.) Plaintiff could not recall any fact to support her contention that "Mark Buckman was not the 40% owner of 714 16th Avenue at all times from December 16, 1991 to January 4, 2017." (UMF 34.)[2]

---

[2] In contrast, Plaintiff testified she "never intended to be unfair to Mark" and that it "seems so [fair]" that Mark should get his share of 16th Avenue if Mark put money into 16th Avenue and built and financed the property. (MFB Decl., Exh. 13, v. 3, 48:15-23.)

22

This undisputed evidence shows Plaintiff exercised her own free will and voluntarily signed the Repayment Documents on September 23, 2023, after negotiating the terms, to resolve her debt to Mark. Therefore, Plaintiff's second count, for undue influence, fails – and, as Plaintiff admits, the "Promissory Note" to Mark Buckman that Plaintiff signed on September 24, 2023 is fully enforceable pursuant to its terms. (UMF 40.)

### B.    THE UNDISPUTED FACTS DO NOT SUPPORT PLAINTIFF'S THIRD COUNT FOR FRAUD BASED ON FAILURE TO DISCLOSE.

Plaintiff cannot show Defendants committed fraud based on failure to disclose because the undisputed facts confirm: (1) Plaintiff has no competent evidence and cannot meet her burden of proving that Defendants failed to disclose any material fact, and (2) Defendants did not conceal any information or intentionally prevent Plaintiff from acquiring the information she needed to understand the transactions.

Under Hawai'i law, liability for fraudulent nondisclosure is governed by the Restatement (Second) of Torts § 551. *Sung v. Hamilton*, 710 F. Supp. 2d 1036, 1047 (D. Haw. 2010). Under the standard set forth in § 550 of the Restatement, "[o]ne party to a transaction who by concealment or other action intentionally prevents the other from acquiring material information is subject to the same liability. . . as though he had stated the nonexistence of the matter that the other

party was thus prevented from discovering." *Sung*, 710 F. Supp. 2d at 1047, citing Restatement (Second) of Torts, § 550.

Thus, "fraudulent concealment requires an affirmative act of active concealment, rather than a failure to proactively disclose." *Schmidt v. HSC, Inc.*, 358 P.3d 727, 743 (Haw. Ct. App. 2015); *Au v. Au*, 63 Haw. 210, 215 (1981). Absent evidence that defendant actively concealed or intentionally prevented plaintiff from acquiring material information, no cause of action for fraudulent concealment will lie. *Sung*, 710 F. Supp. 2d at 1047; *TSA Int'l Ltd. v. Shimizu Corp.*, 990 P.2d 713, 730 (Haw. 1999).

Plaintiff has not, and cannot, produce any evidence that Mark or Jennifer actively concealed any facts or intentionally prevented Plaintiff from acquiring material information prior to signing any document in 2023. (MFB Decl., Exh. 12, v. 2, 58:9-17 [Plaintiff does not recall a single word Jennifer said to her regarding the Warranty Deed or Second Amendment]; Exh. 11, v. 1, 68:6-17, 57:19-58:6; Exh. 12, v. 2, 60:6-19 [Plaintiff does not remember any way that Mark or Jennifer rushed her or prevented her from reading the documents]; Exh. 11, v. 1, 68:15-17 [admitting Jennifer did not "trick or intimidate [her] or anything"]; Exh. 11, v. 1, 68:9-14 [Plaintiff does not remember Mark putting any pressure on her to sign or tricking her into signing the Agreement Regarding Note and Mortgage].) Plaintiff has failed to identify any competent evidence to support any element of her claim.

24

Further, Defendants did not misrepresent any fact related to the now-disputed documents to Plaintiff, nor did they actively conceal facts or intentionally prevent Plaintiff from acquiring any material information before she signed. (J. Buckman Decl., ¶ 4; M. Buckman Decl., ¶ 31.) The undisputed evidence confirms that Plaintiff read the documents before signing them. (MFB Decl., Exh. 16, JTB Depo. 104:11-25; 105:1-2; 121:18-25; 154:1-10; 155-156:1; 159:1-9; 162:19-25; 163:1-14; M. Buckman Decl., ¶ 26 [Plaintiff did not sign the Repayment Documents until she had read them in their entirety], ¶ 18 [Plaintiff did not sign the POA until she had read it in its entirety]; ¶ 30 [Plaintiff did not sign the Codicil until she had read it in its entirety].) Plaintiff does not recall ever signing and notarizing a document for Mark Buckman without carefully reviewing it. (UMF 37.) Thus, there is no competent evidence to support Plaintiff's claims that Defendants concealed any facts related to the documents she signed.

C.    **GIVEN PLAINTIFF'S ADMISSION THAT SHE DID NOT TRUST DEFENDANTS IN 2023, HER UNDUE INFLUENCE, CONSTRUCTIVE FRAUD AND CONSTRUCTIVE TRUST COUNTS ALL FAIL.**

To prove her counts for undue influence, Plaintiff must establish she placed confidence in Defendants at the time of signing. *See Cvitanovich-Dubie*, 125 Hawai'i at 161-62; *Estate of Herbert*, 90 Haw. at 458. A confidential relationship cannot be presumed, even from kinship; it requires actual "evidence of intrusting."

25

*Swift v. Swift*, 138 Hawai'i 52, 375 P.3d 1290, 2016 Haw. App. LEXIS 316 at *9 (Ct. App. 2016), citing *Kam Oi Lee v. Fong Wong*, 57 Haw. 137, 140 (1976).

Constructive fraud likewise is premised on breach of a fiduciary or confidential relationship, *Yoneji v. Yoneji*, 136 Hawai'i 11, 18-19 (2015), both of which require "a relationship of trust and confidence." *Swift*, 2016 Haw. App. LEXIS 316 at *9, *13-*14.

Similarly, an "abuse of confidence" constructive trust requires clear and convincing evidence of a confidential relationship, and action based thereon. *Kam Oi Lee*, 57 Haw. at 140.

However, during a deposition with her legal counsel and Natalie present, Plaintiff testified she did not trust Jennifer or Mark in 2023, she "would not just believe what they said," "would not trust what Jennifer or Mark told her without looking into it herself" and would not trust Mark "on legal matters or on reviewing or signing documents.[3] (UMF 39.)

---

[3] Plaintiff cannot disavow these admissions, even if they were ill-considered or inaccurate. *See Wagner v. Prof'l Eng'rs in Cal. Gov't*, 354 F.3d 1036, 1044 (9th Cir. 2004) [judicial estoppel precludes a party from taking inconsistent positions to gain a litigation advantage]. Application of estoppel is appropriate here, where the 2024 testimony reaffirms the allegations of the Complaint, which alleges, "Since approximately 2016, MFB and J. Buckman have been essentially estranged from MFB's family." ECF #61, ¶ 7. Under the Restatement (Second) of Torts, § 551, which Hawai'i follows, no fiduciary or confidential relationship exists between estranged family members. *Id.* at Cmt. on Subs. (2), Cl. (a), comment f ["Members of the same family normally stand in a fiduciary relation to one another, although it is of course obvious that the fact that two men are brothers does not establish

Thus, Plaintiff has no "actual evidence of intrusting" to substantiate her Undue Influence counts. This not only provides a separate basis for granting Defendants summary judgment on those counts, but also defeats her constructive fraud and constructive trust counts.

### D.   PLAINTIFF'S CONSPIRACY CLAIM IS FATALLY DEFECTIVE.

Plaintiff's Second Amended Complaint alleges that Defendants were in a conspiracy "to trick the Plaintiff into deeding over to MFB' s Trust one half of the Property, allowing MFB to place a mortgage on the other half, and executing the Second Amendment, Codicil, and POA." (ECF #61, ¶ 63.) The entire Conspiracy count is predicated on Plaintiff's allegation that Jennifer "actively participated in defrauding the Plaintiff out of her Property." (ECF #61, ¶ 64.)

Here, as shown above in Sections IV.A-C, Plaintiff's fraud (and undue influence) claims are all fatally deficient. Under the undisputed facts, then, Plaintiff's conspiracy count likewise fails.

### E.   PLAINTIFF'S COUNT FOR INJUNCTIVE RELIEF CANNOT STAND WITHOUT AN UNDERLYING CAUSE OF ACTION.

Plaintiffs' sixth count alleges that Plaintiffs are entitled to injunctive relief on their claims. (ECF #61, ¶¶ 58-61.) An injunction is a remedy, not a cause of action. *Noah v. Enesco Corp.*, 911 F. Supp. 305, 307 (N.D. Ill. 1995). Absent a claim that

relation of trust and confidence when they have become estranged and have not spoken to one another for many years."].

27

entitles the plaintiff to a remedy, a claim for injunctive relief must be rejected. *Ibid.* [after resolving the parties' motions, court granted defendants' motion for summary judgment on the injunctive relief claim because there was no claim remaining upon which injunctive or any other type of relief could be granted].

> **F.    BECAUSE PLAINTIFF ADMITTED THAT THE PROMISSORY NOTE IS ENFORCEABLE TO ITS TERMS, AND CANNOT PROVIDE FACTS AS TO UNENFORCEABILITY, ALL CAUSES OF ACTION THAT CONCERN THE REPAYMENT DOCUMENTS NECESSARILY FAIL**

Plaintiff acknowledged not only that she could provide no facts as to how the Promissory Note is unenforceable, and instead admitted that it is enforceable according to its terms, all of her causes of action concerning the Repayment Documents necessarily fail.  (UMF 40.)

## V.    CONCLUSION

For all the reasons set forth above, Defendants respectfully ask the Court to grant their Motion for Summary Judgment.

DATED:  Honolulu, Hawai`i & Elk Grove, California, June 6, 2025.

 /s/ *Louise K.Y. Ing*
LOUISE K.Y. ING
TIMOTHY C. PARTELOW

Attorneys for Defendants
MARK F. BUCKMAN, individually and as Trustee of the MARK F. BUCKMAN TRUST, and JENNIFER BUCKMAN

28

_/s/ Mark F. Buckman_____
MARK F. BUCKMAN

Attorney for Defendant
JENNIFER BUCKMAN

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| PATRICIA W. BUCKMAN, PATRICIA W. BUCKMAN REVOCABLE TRUST, <br><br> Plaintiffs, <br><br> v. <br><br> MARK F. BUCKMAN, ET AL, <br><br> Defendants. | Civil No. 1:24-CV-00129-MWJS-KJM <br><br> **CERTIFICATE OF COMPLIANCE** |

**CERTIFICATE OF COMPLIANCE**

In accordance with Rule 7.4(e) of the Local Rules of the U.S. District Court for the District of Hawai`i, the undersigned hereby certifies that *Defendants' Motion for Summary Judgment* was typed using 14-point, Times New Roman and contains 6,246 words (according to the Word Count function of Microsoft Word), exclusive of the case caption and signature lines.

DATED:  Honolulu, Hawai`i and Elk Grove, California, on June 6, 2025.

 */s/ Louise K.Y. Ing*
LOUISE K.Y. ING
TIMOTHY C. PARTELOW
Attorneys for Defendants
MARK F. BUCKMAN, individually and as
Trustee of the MARK F. BUCKMAN
TRUST, and JENNIFER BUCKMAN

 /s/ Mark F. Buckman
MARK F. BUCKMAN
Attorney for Defendant
JENNIFER BUCKMAN