LOUISE K.Y. ING     2394
TIM PARTELOW     10218
DENTONS US LLP
1001 Bishop Street, Suite 1800
Honolulu, HI 96813
Telephone: (808) 524-1800
Facsimile: (808) 524-4591
Email:   louise.ing@dentons.com
        tim.partelow@dentons.com

Attorneys for Defendants
MARK F. BUCKMAN, individually
and as Trustee of the MARK F. BUCKMAN
TRUST, and JENNIFER BUCKMAN

MARK F. BUCKMAN   SBN 7080
Law Offices of Mark F. Buckman
8359 Elk Grove Florin Rd., Suite 103-320
Sacramento, CA 95829
Email: markfbuckman@sbcglobal.net

Attorney for Defendant
JENNIFER BUCKMAN

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| PATRICIA W. BUCKMAN, PATRICIA W. BUCKMAN REVOCABLE TRUST,<br><br>           Plaintiffs,<br><br>  v.<br><br>MARK F. BUCKMAN, ET AL.,<br><br>           Defendants. | Civil No. 1:24-CV-00129-MWJS-KJM<br><br>**DEFENDANTS' CONCISE STATEMENT OF FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT;** DECLARATION OF MARK F. BUCKMAN; EXHIBITS "1" – "21"; DECLARATION OF JENNIFER T. BUCKMAN; DECLARATION OF LOUISE K.Y. ING; CERTIFICATE OF WORD COUNT<br><br>Trial Date: November 3, 2025<br>Judge: Hon. Micah Smith |

## DEFENDANTS' CONCISE STATEMENT OF FACTS IN
## SUPPORT OF MOTION FOR SUMMARY JUDGMENT

|   | Statement of Facts | Citation |
|---|---|---|
| 1. | Plaintiff testified that she had "no idea" where the facts alleged in her Complaint came from. | Declaration of M. Buckman ("MFB Decl."), Exh. 12, Plaintiff's Depo., v. 2, 16:5-17:3. [Question:  Do you remember reading the complaint that is, like, the lawsuit paperwork that's been filed in this case? Answer: No. Question: Do you know where the facts in the complaint came from? Answer: No idea. Question: Do you know if Natalie provided the facts for the complaint? Answer: No idea. I just told you no idea.] |
| 2. | Mark obtained the financing for and was the sole record owner when he acquired 714 16th Avenue in 1991. | MFB Decl. 21.,  Exh. 19 Deed, Pg.. 1, Exh. 20 Mortgage, Pg. 1 |
| 3. | Plaintiff admits Mark invested money into the 16th Avenue property. | ECF #86, ¶ 10. |
| 4. | Plaintiff testified in deposition that she signed a document in 2003, containing her own hand-written corrections, that states that Mark Buckman is to get "40% of the [16th Avenue] house which he earned in construction" and that the document was true when it was written. | MFB Decl., Exh. 11, Plaintiff's Depo., v. 1, 48:25-49:11; Exh. 13, Plaintiff's Depo., v. 3, 41:14–42:1; 36:17-37:16; 40:7-18; Exh. 1; |
| 5. | Plaintiff's first trust documents were signed in 2006 and they had Mark receiving 40%, of 714 16th Avenue. | Mark Decl.22, Exh. 21, 2006 Trust, Pages 1, 5-1, and 5-2 |
| 6. | Plaintiff's trust documents from 2006 until the Amendment in 2022 had Manoa as the main beneficiary of the Front House | Mark Decl.22, Exhibit 21, Pages 1, 5-1, and 5-2;  Exh 17, 2019 Trust, Pages 1-1, V-2, V-3; |

1

| | Statement of Facts | Citation |
|---|---|---|
| 7. | Plaintiff's trust documents from 2006 until the Amendment in 2022 had Matt as the main beneficiary of the Back House | Mark Decl.22, Exhibit 21, Pages 1, 5-1, and 5-2;  Exh 17, 2019 Trust, Pages 1-1, V-2, V-3; |
| 8. | Plaintiff acknowledges the "benefit [she] intended Matt Buckman to receive with regards to the Back House" has "never changed." | MFB Decl.5, Exh. 5, Response #19; Exh. 15, Plaintiff's Depo., v. 5, 11:5-7 [Plaintiff did not want "to take Matt off as a beneficiary of the Back House" in 2022], 10:18-23. |
| 9. | Plaintiff admits the "benefit [she] intended Matt Buckman to receive with regards to the Back House" was for "Matt not to be homeless." | MFB Decl.5, Exh. 5, Response #19. Exh. 7, RFA #23 |
| 10. | Natalie Pitre sent emails under Plaintiff's name to Plaintiff's estate attorney Steven Reese without identifying herself as the sender of those emails | MFB Decl.39, Exh. 3, NBP CA Depo., 32:1-9. |
| 11. | Plaintiff does not recall "Natalie writing an email to Steve Reese, in 2022, asking to change [her] trust" and does not remember "any reason why [she] wanted to change [her] trust in 2022." | MFB Decl.38, Exh. 15, Plaintiff's Depo., v. 5, 10:18-23. |
| 12. | Plaintiff's Trust was amended in 2022. | MFB Decl.8, Exh. 3, NBP CA Depo., 212:18-213:5, Exh. R. |
| 13. | The 2022 Trust Amendment  removed the provisions that Matt and Manoa were  to be the main beneficiaries of the Back House and Front House, respectively | MFB Decl., Exh. 17, 18; Exh. 3, NBP CA Depo., 32:1-9, 212:18-213:5; Exh. 18, pg. V-1 5.01(b/c) |
| 14. | The 2022 Trust Amendment  made Natalie and Carl Pitre the main beneficiaries of the Front House. | Mark Decl. 8, Exh 18, pg. V-1, section 5.01(c) |
| 15. | On May 27, 2023, Natalie  sent a text message to Mark and Jennifer about problems in the family and stating that "Matt, Kimi, and Manoa are colossal fuckups." | MFB Decl.5, Exh. 1; Cross Defendant N. Pitre and C. Pitre Answer to FAC, Case No. 1:25-cv-00010, ECF #26, ¶ 13. |
| 16. | On June 19, 2023, Natalie  sent a text message to Mark and Jennifer inviting them to come to Hawai'i "so that [they] could check it all out while [Plaintiff's] still | MFB Decl.5, Exh. 1; Cross Defendant N. Pitre and C. Pitre Answer to FAC, Case No. 1:25-cv-00010, ECF #26, ¶ 13. |

2

| | Statement of Facts | Citation |
|---|---|---|
| | alive and things are still OK so that when [Plaintiff] dies and the battle comes, we're on the same page." | |
| 17. | Natalie Pitre "finally . . provided MFB with a copy of the [2019] Trust [documents]" in July 2023. | MFB Decl.6; Second Amended Complaint, ECF #61, ¶ 19. |
| 18. | On August 9, 2023, Plaintiff sent Mark a text stating: "Now I have Matt taken care of by u and by me with the small back house. Thanks so much for stepping up to be your brother's keeper!!!!" | MFB Decl.14, Exh. 9. Exh. 7, RFA #23 |
| 19. | Before August 10, 2023, Matt asked Plaintiff to deed 3010A Kauna'oa Street (the Back House) to Mark pursuant to Matt and Mark's agreement. | MFB Decl.40, Exh. 7, RFA #8. |
| 20. | Before August 10, 2023, Plaintiff communicated to Mark that she would sign the "Warranty Deed" in furtherance of Matt and Mark's agreement. | MFB Decl., Exh. 7, RFA #11; Exh. 9. |
| 21. | Plaintiff admits that she asked her son Mark to be "his brother's [Matt's] keeper" | MFB Decl., Exh. 7, RFA #23, #10; Exh. 9; see RFA #40; RFA #52-53. |
| 22. | When Plaintiff signed the documents on August 10, she reviewed "every page of that [S]econd [A]mendment" to her trust "along with the [F]irst [A]mendment" as well as the Deed. | JTB Depo., 104:4-7, 105:1-2, 162:7-18, 21-24. |
| 23. | Plaintiff requested and obtained specific changes to the 2023 Trust amendment before she signed it. | MFB Decl.40, Exh. 7, RFA #17, #19, Exh. 8, RFA #60, Exh. 16, JTB Depo. 154:21-25; 155-156; 157:1-5; 162:19-25; 163:1. |
| 24. | Plaintiff asked Mark to be in charge of Matt's $40,000.00 share of Plaintiff's life insurance proceeds. | MFB Decl., ¶ 15, 16 & Exh. 9; RFA #40 |
| 25. | Plaintiff signed a Power of Attorney so that Mark could change the beneficiaries on her life insurance policy. | MFB Decl., ¶ 17 see Exh. 8 RFA #40; RFA #52-53. |
| 26. | Plaintiff signed the "Promissory Note" on September 24, 2023 to pay Mark for his interest in 714 16th Avenue. | MFB Decl.25, Exh. 8, RFA #54. |

| | Statement of Facts | Citation |
|---|---|---|
| 27. | Plaintiff discussed the terms of the Note with Mark and asked for specific revisions. | MFB Decl.25, Exh.7, RFA #12, #13, #14, #16, Exh. 8, RFA #54, #55. |
| 28. | Plaintiff admitted she could read and understand the Agreement for the Note and Mortgage. | MFB Decl.25, Exh. 13, Plaintiff's Depo., v. 3, 58:14-23. |
| 29. | Plaintiff admitted the Agreement "seems to be correct." | MFB Decl., Exh. 13, Plaintiff's Depo., v. 3, 56:17-19, 56:20-57:7. |
| 30. | Plaintiff "do[es] not recall signing the [B]ack [H]ouse deed" and has "no recollection" of any facts related to the signing of the "Second Amendment to Declaration of Revocable Trust of Patricia W. Buckman" or the Deed. | MFB Decl.45, Exh. 5, Responses #12, 13, 14, 15. |
| 31. | Plaintiff "does not know what, if anything" Mark told her about Mark's agreement with Matt before she signed the Back House Deed. | MFB Decl.45, Exh. 5, Response #11. |
| 32. | Plaintiff does not recall any conversation with Mark about the Deed and "do[es] not recall a single word" Jennifer said to her regarding the documents. | MFB Decl.45, Exh. 5, Response #13; Exh. 11, Plaintiff's Depo., v. 1, 57:19-58:6, 68:6-17, Exh. 12, Plaintiff's Depo. v. 2, 58:9-17, 59:10-16, 60:6-19. |
| 33. | Plaintiff "do[es] not recall any specific agreement with [Mark]" regarding his investment in 16th Ave. | MFB Decl.45, Exh. 5, Responses #1, 6. |
| 34. | Plaintiff could not recall any fact to support her contention "Mark Buckman was not the 40% owner of 714 16th Avenue at all times from December 16, 1991 to January 4, 2017." | MFB Decl.45, Exh. 5, Response #2 ["The fact is he was not."] |
| 35. | Plaintiff "do[es] not recall having this agreement with Mark" for him to be in charge of Matt's $40,000.00 share of Plaintiff's life insurance proceeds. | MFB Decl., Exh. 5, Response #16. |

| | Statement of Facts | Citation |
|---|---|---|
| 36. | Plaintiff conceded she "do[es not] know what, if anything" Mark told her about the "Promissory Note" and "Agreement Regarding Note and Mortgage" before she signed them. | MFB Decl.45, Exh. 5, Response #10. |
| 37. | Plaintiff does not recall ever signing and notarizing a document for Mark without carefully reviewing it. | MFB Decl.35, Exh. 12, Plaintiff's Depo., v. 2, 61:2-5. |
| 38. | When the Codicil was signed and notarized, Plaintiff and Mark had agreed Mark would be serving as the Trustee and would be helping Plaintiff with her finances. | MFB Decl., ¶ 28, 29 & Exh. 5, Response #17 [Plaintiff admits Mark "was going to or offered to help me with finances," but she does not recall what their agreement was]; ECF #61, pp. 28-29 [Second Amendment names Mark as Trustee]. |
| 39. | Plaintiff testified she did not trust Jennifer or Mark in 2023, she "would not just believe what they said," "would not trust what Jennifer or Mark told her without looking into it herself," and would not trust Mark "on legal matters or on reviewing or signing legal documents." | MFB Decl.38, Exh. 15, Plaintiff's Depo., v. 5, 32:14-17, 33:25-34:4; Exh. 14, Plaintiff's Depo., v. 4, 9:17-25, 10:13-11:13. |
| 40. | Plaintiff admitted the "Promissory Note" to Mark Buckman that Plaintiff signed on September 24, 2023 is fully enforceable pursuant to its terms. | MFB Decl., Exh. 7, RFA #12, Exh. 5, Response #9. |

\\

\\

\\

\\

\\

\\

DATED:  Honolulu, Hawai'i and Elk Grove, California, June 6, 2025.

/s/ Louise K.Y. Ing
LOUISE K.Y. ING
TIMOTHY C. PARTELOW

Attorneys for Defendants
MARK F. BUCKMAN, individually
and as Trustee of the MARK F.
BUCKMAN TRUST, and
JENNIFER BUCKMAN

/s/ Mark F. Buckman
MARK F. BUCKMAN
Attorney for Defendant
JENNIFER BUCKMAN

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| PATRICIA W. BUCKMAN, PATRICIA W. BUCKMAN REVOCABLE TRUST, <br><br> Plaintiffs, <br><br> v. <br><br> MARK F. BUCKMAN, ET AL., <br><br> Defendants. | Civil No. 1:24-CV-00129-MWJS-KJM <br><br> **DECLARATION OF MARK F. BUCKMAN** |

**DECLARATION OF MARK F. BUCKMAN**

I, MARK F. BUCKMAN, declare that the following is true and correct:

1.      I am an attorney with the Law Offices of Mark F. Buckman, which serves as co-counsel of record for Defendant Jennifer Buckman in these proceedings.

2.      Unless otherwise indicated, I make this Declaration based on my personal knowledge and am competent to testify concerning the matters set forth below.

3.      I make this Declaration in support of *Defendants' Motion for Summary Judgment*.

4.      The nominal Plaintiffs in this case are Patricia Buckman, my mother, and her trust. To maintain a clean record, I have tried to refer to Plaintiff as Patricia consistently in this litigation. However, in some of my written communications

that were made before the case was filed, she is referred to as "Mom," "Mama-san," or "Tutu."

5.     On May 27, 2023 and June 19, 2023, my wife Jennifer and I received text messages from my sister, Natalie Pitre. In the second message, Natalie complained about our brother Matt, who was living in the Front House with our mother at that time; Natalie and her family were living in the Back House, which Patricia had always intended for Matt. Natalie's June 19 text proposed that her family, rather than Matt, live in the Back House after Plaintiff's death; indicated she would allow Matt to stay in the "small third bedroom/home office" of the Front House after she inherited it; and invited Jennifer and me to come to Hawai'i and "check it all out while [Patricia]'s still alive" before "the battle comes." Attached hereto as Exhibit "1" is a true and correct copy of the text messages from Natalie Pitre dated May 27, 2023 and June 19, 2023.

6.     Natalie's proposal was contrary to what I knew to be my mother's intent and this was the first time that I was informed that there had been a 2022 Trust Amendment. After receiving this text in June, I asked my sister for a copy of the 2022 Trust Amendment, which she delayed giving me for a couple of weeks.

7.     We accepted Natalie's invitation and did come to Hawai'i and visit Patricia and other family in July and August 2023. What we learned was very concerning.

\\

2

8.    The First Amendment to Declaration of Revocable Trust of Patricia W. Buckman had been executed by Patricia Buckman before a notary on September 7, 2022. Attached hereto as "Exhibit 18" is a true and correct copy of the First Amendment to Declaration of Revocable Trust of Patricia W. Buckman.

9.    I first received a copy of the 2022 Trust Amendment from Natalie in July 2023, after asking her for it for over two weeks. When I reviewed it, I realized it did not reflect Patricia Buckman's longstanding intent to provide housing for my brother Matt. At around the same time, I discussed this issue with Patricia and Matt.

10.    Matt and I discussed this issue several times, and we reached an agreement on August 8. The agreement generally provided that I would be put on title to the Back House and would ensure that the property was insured and maintained and its expenses were paid, and Matt would be able to occupy, or receive the benefit of, the Back House during his lifetime. I have helped my brother many times throughout his life, loaned him money, done tens of thousands of dollars of free work for him, and he at first offered to give me part of the Front House for helping him, but I told him he had no legal rights to the Front House, so we talked and he agreed that I would own the Back House, subject to him receiving the benefit of either living in the Back House or receiving the net rent from the Back House from the time of our mother passing for the rest of his life.

\\

3

11. On August 9, Matt and I met and discussed and wrote down the terms of the agreement. Attached hereto as "Exhibit 6" is a true and correct copy of the terms of that agreement as I wrote it up at about that time at the request of my nephew Manoa.

12. Matt asked Patricia to deed the Back House to me pursuant to the agreement he and I had reached. Patricia indicated she would do so. Patricia told me she wanted me to be my "brother's keeper," that I "need to make sure that Matt does not end up homeless." As I understood it, the agreement between Matt and I was what convinced Patricia to sign the Warranty Deed and the Second Amendment to Trust on August 10, 2023.

13. One of the things I learned in summer 2023 related to Patricia's role under the Trust. I understood that on September 24, 2020, Patricia Buckman resigned as Trustee of the Patricia W. Buckman Revocable Trust dated July 25, 2019, and my sister Natalie Pitre accepted the appointment as Trustee. Attached hereto as Exhibit "2" is a true and correct copy of Patricia Buckman's executed and notarized Trustee Resignation, and a true and correct copy of Natalie Pitre's executed and notarized Acceptance of Trustee.

14. Patricia and I were in fairly regular contact during summer 2023. Beginning on July 24, 2023 and going through August 23, 2023, Patricia Buckman and I engaged in a text message conversation. Attached hereto as "Exhibit 9" is a true and correct copy of these text messages.

4

15.     In the course of these text messages, Patricia told me that she was concerned about the potential distribution of proceeds from her life insurance policy and wanting to make sure it was not paid out in a lump sum to Matt. Patricia wanted me to supervise Matt's life insurance distribution to make certain Matt did not "quickly blow it."

16.     Although Patricia Buckman does not recall reaching an agreement with me for me to manage Matt Buckman's $40,000.00 share of Patricia's life insurance proceeds, we did discuss this multiple times and I agreed to take this task on without any compensation or consideration for myself.

17.     I asked Patricia Buckman to execute a "Power of Attorney" (POA) so I could change the designees on her policy to carry out this agreement. Patricia signed the Power of Attorney so that I would be able to do so.

18.     Patricia signed the POA of her own free will to carry out her intent. Patricia did not sign the POA until she had read through the entire document. She then signed it willingly, and I made the changes with the life insurance policy. The only other purpose for which I utilized the POA has been to assist Patricia with banking needs. I have not benefitted from the POA.

19.     In summer 2023, I realized Patricia had forgotten the details about our deal regarding my share of the proceeds from the sale of the 16th Ave. property that we had jointly owned.  Patricia's memory was failing.

\\

5

20.    In 1991, Patricia and I had an agreement under which we jointly owned a property at 714 16th Avenue. I owned 40% of the property, which I earned by investing over $50,000, performing labor and managing subcontractors to construct it, and obtaining the financing to buy the house; and Patricia owned 60% of the property. I also had to sell a condo I owned in Marino Palms to be able to get the financing to acquire the property.

21.    I obtained the financing for and was the sole record owner when I acquired 714 16th Avenue in 1991. Attached to this Declaration as Exhibit 19 is a true and correct copy of a deed for the property at 714 16th Avenue from December 1991 showing that I am the sole owner of record of the property. Attached to this Declaration as Exhibit 20 is a true and correct copy of a mortgage I obtained and signed in December 1991 with Bank of Hawai'i for the property at 714 16th Avenue, which was recorded the same date at the deed under which I took title.

22.    Patricia first made a trust in 2006. A true and correct copy of Patricia's 2006 Trust is attached hereto as Exhibit 21. The 2006 Trust reflected that I would get 40% of the proceeds from the sale of 16th Avenue, which was consistent with my ownership share.

23.    In 2017, Patricia had sold the 16th Avenue property, but she and I agreed at that time that she could defer paying me my 40% of the proceeds from that sale until later; we ultimately agreed that she would repay me for money I spent on remodeling the property before it sold, approximately $55,000, and she

6

would pay $100,000 of my proceeds towards my children's college tuition when they went to college, with the first increment due in fall 2018, when my daughter would start college.

24. However, in September 2018, Plaintiff did not pay the $50,000 for my daughter's college as previously agreed. Though Patricia and I discussed the matter several times, this debt remained outstanding from September 2018 until September 2023.

25. In September 2023, Patricia, Natalie Pitre, and I discussed my ownership interest in the 16th Avenue property. Patricia negotiated a Promissory Note with me to allow the proceeds to be paid over a longer period of time, which included additional time for Natalie Pitre and Carl Pitre to pay the 16th Avenue property proceed debt after Patricia's passing so they could continue to own the Front House. As part of this Promissory Note, Patricia also negotiated another loan from me for $50,000.00 for her personal needs, as well as a discounted principal amount, and a lowered rate of interest. I agreed to these terms, and Patricia signed the Promissory Note on September 24, 2023.

26. Patricia Buckman carefully reviewed all the Repayment Documents (the Promissory Note, Agreement Regarding Note and Mortgage, and Mortgage) before she signed them. Patricia did not sign the Repayment Documents until she had read them in their entirety.

\\

7

27. Pursuant to this agreement between Patricia and me, I have advanced over $10,000.00 to pay for Patricia's care, including costs incurred after this case was filed.

28. In late summer and fall 2023, I also discussed a Codicil to Patricia Buckman's Will with Patricia. The intent was to change the administrator from Tamara Buchwald to me, but not change any disposition. Ms. Buchwald lives on the East Coast; I live in California and would also be serving as a Trustee and helping Patricia with her finances. This arrangement was more efficient and logical.

29. Patricia and I discussed the Codicil, and we agreed that it would make sense and be more efficient for me to be the administrator since Tamara lives on the East Coast, and I would be serving as the Trustee and helping Patricia with her finances. Patricia asked me to prepare the Codicil to make this change.

30. Patricia did not sign the Codicil until she had read it in its entirety. Following a thorough review, Patricia executed the Codicil of her own will to carry out her intent.

31. I have not misrepresented to, nor have I concealed any facts from, Patricia Buckman regarding the now-disputed documents, i.e., the Warranty Deed, the Second Amendment to the 2019 Trust, the Promissory Note and Agreement Regarding Note and Mortgage, the Mortgage, the Power of Attorney, or the

\\

8

Codicil to Will. Further, I have not made any attempts to prevent Patricia Buckman from acquiring any material information before she signed any of these documents.

32.    I answered all Patricia's questions about the documents, and told her in each case that it was her choice to sign or not. I never pressured or rushed her or did anything to try to fool her into signing. I thought the documents reflected her intent, and she said so at the time. I also told her several times that I was not her lawyer and could not be the lawyer for anyone in the family in these matters, and she understood and acknowledged that.

33.    My intent was to try to fix the problems Natalie had caused with the 2022 Trust Amendment. Both my brother and my nephew expressed concern that my mother had been "brainwashed" into signing that amendment.

34.    On August 15, 2024, Patricia Buckman's extended deposition began. Because Mr. Wilson limited her testimony each day to one hour, Ms. Buckman's deposition has been taken over multiple days (and remains incomplete).  Attached hereto as "Exhibit 11" is a true and correct copy of excerpts of Volume I.

35.    On August 16, 2024, Patricia Buckman's deposition continued. Attached hereto as "Exhibit 12" is a true and correct copy of excerpts of Volume II.

36.    On September 18, 2024, Patricia Buckman's deposition continued. Attached hereto as "Exhibit 13" is a true and correct copy of excerpts of Volume III.

37.    On September 19, 2024, Patricia Buckman's deposition continued. Attached hereto as "Exhibit 14" is a true and correct copy of excerpts of Volume IV.

38.    On September 20, 2024, Patricia Buckman's deposition continued. Attached hereto as "Exhibit 15" is a true and correct copy of excerpts of Volume VI.

39.    On January 27, 2025, Natalie Pitre was deposed in relation to a related defamation lawsuit pending in California Superior Court, Mark F. Buckman v. Natalie B. Pitre, et al., Placer County Case No. SCV 0051637. Attached hereto as Exhibit "3" is a true and correct copy of excerpts from Ms. Pitre's January 27, 2025 deposition in that matter.

40.    On February 6, 2025, my Requests for Admission to Patricia W. Buckman, Set 1, were served, along with two additional sets of discovery. Attached hereto as "Exhibit 7" is a true and correct copy of excerpts of the Requests for Admission, Set 1. I had an agreement with Mr. Wilson for email service in this case.

41.    On March 30, 2025, I emailed Richard Wilson, counsel for Patricia Buckman. Attached hereto as "Exhibit 10" is a true and correct copy of that email and a true and correct copy of the email I received from Richard Wilson in response on April 1, 2025.

\\

10

42. On April 3, 2025, I emailed Mr. Wilson a courtesy copy of the 3 sets of discovery that had been previously served on February 6, 2025, including Mark Buckman's First Set of Requests for Admissions.

43. On April 5, 2025, my Requests for Admission to Patricia W. Buckman, Set 2, were served. Attached hereto as "Exhibit 8" is a true and correct copy of excerpts of the Requests for Admission, Set 2.

44. Plaintiff did not seek a protective order for either set of these RFAs. To date, Plaintiff has not served any responses to either MFB RFA #1 or MFB RFA #2, nor has she responded to Defendants' Second Set of Interrogatories or Requests for Production of Electronic Discovery.

45. On May 2, 2025, Patricia Buckman served her Responses to my Request for Interrogatories. Attached hereto as "Exhibit 5" is a true and correct copy of her Responses.

46. On April 25, 2025, Jennifer Buckman was deposed. Attached hereto as "Exhibit 16" is a true and correct copy of excerpts from her deposition.

\\

\\

\\

\\

\\

\\

11

47.    On May 23, 2025, Natalie Pitre was deposed in relation to the instant matter. Attached hereto as "Exhibit 4" is a true and correct copy of excerpts from Ms. Pitre's May 23, 2025 deposition.

*I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.*

Executed in Elk Grove, California, June 6, 2025.

/s/ *Mark F. Buckman*
MARK F. BUCKMAN

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| PATRICIA W. BUCKMAN, PATRICIA W. BUCKMAN REVOCABLE TRUST, | Civil No. 1:24-CV-00129-MWJS-KJM |
| Plaintiffs, | **DECLARATION OF JENNIFER T. BUCKMAN** |
| v. | |
| MARK F. BUCKMAN, ET AL., | |
| Defendants. | |

### DECLARATION OF JENNIFER T. BUCKMAN

I, JENNIFER T. BUCKMAN, declare that the following is true and correct:

1.      I am a Defendant in this action. I make this Declaration based on my personal knowledge and am competent to testify concerning the matters set forth below.

2.      I make this Declaration in support of Defendants' Motion for Summary Judgment.

3.      Plaintiff never served any written discovery on me in this case.

4.      I have not misrepresented to, nor have I concealed any facts from, Patricia Buckman regarding the now-disputed documents, i.e., the Warranty Deed, the Second Amendment to the 2019 Trust, the Promissory Note and Agreement Regarding Note and Mortgage, the Mortgage, the Power of Attorney, or the

\\

Codicil to Will. Further, I have not made any attempts to prevent Patricia Buckman from acquiring any material information before she signed any of these documents.

5.    I was not present when Patricia signed the Promissory Note and Agreement Regarding Note and Mortgage, the Power of Attorney, or the Codicil to Will.

*I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.*

Executed in Elk Grove, California, June 6, 2025.

/s/ Jennifer Buckman
JENNIFER BUCKMAN

2

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| PATRICIA W. BUCKMAN, PATRICIA W. BUCKMAN REVOCABLE TRUST, <br><br> Plaintiffs, <br><br> v. <br><br> MARK F. BUCKMAN, ET AL., <br><br> Defendants. | Civil No. 1:24-CV-00129-MWJS-KJM <br><br> **CERTIFICATE OF WORD COUNT** |

**CERTIFICATE OF WORD COUNT**

Pursuant to Local Rule 7.4(b) and LR 56.1(c), I hereby certify that

*Defendants Concise Statement of Facts in Support of Motion for Summary*

*Judgment* was typed using 14-point, Times New Roman and contains 1,450 words,

exclusive of case caption, signature line, and supporting declarations.

DATED:  Honolulu, Hawai`I & Elk Grove, California, June 6, 2025.

/s/ Louise K.Y. Ing
LOUISE K.Y. ING
TIMOTHY C. PARTELOW
Attorneys for Defendants
MARK F. BUCKMAN, individually
and as Trustee of the MARK F.
BUCKMAN TRUST, and
JENNIFER BUCKMAN

/s/ Mark F. Buckman
MARK F. BUCKMAN
Attorney for Defendant
JENNIFER BUCKMAN

1