26

**91-172737**

STATE OF HAWAII
BUREAU OF CONVEYANCES
RECORDED

'91 DEC 16 AM 8 01

S. FURUKAWA, REGISTRAR

Return by mail (X) pickup ( ) to:
Bank of Hawaii
Residential Loan Services #364
P.O. Box 2900
Honolulu, Hawaii 96846
Loan #0395978

TG333695
TGES 911012047
GLEN Y AJIMINE/JAS

RS
(5)

## MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on _____ NOV 2 6 1991 _____. The mortgagor is

MARK FRANK BUCKMAN, unmarried, whose address is 714-B 16th Avenue, #B, Honolulu, Hawaii 96816

("Borrower"). This Security Instrument is given to

BANK OF HAWAII, a Hawaii corporation, whose address is P.O. Box 2900, Honolulu, Hawaii 96846

("Lender"). Borrower owes Lender the principal sum of

TWO HUNDRED EIGHTY-SIX THOUSAND AND NO/100 DOLLARS ($286,000.00)

This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on _____. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, with power of sale, the Property described in the attached Exhibit "A", which has the following address ("Property Address"):

714-B 16th Avenue, #B, Honolulu, Hawaii 96816.

TOGETHER WITH all the improvements now or hereafter erected on the Property, and all easements, appurtenances, and fixtures now or hereafter a part of the Property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

HAWAII-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3012  9/90

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a Lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Sec. 2601 *et seq.* ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the

Page 2

insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not

Page 3

operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this

Page 4

paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**21. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall give Borrower notice of sale in the manner provided in paragraph 14. Lender shall publish a notice of sale and shall sell the Property at the time and place and under the terms specified in the notice of sale. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**22. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**23. Waivers.** Borrower relinquishes all right of dower and curtesy in the Property.

**24. Hawaii Freedom of Choice of Insurance Notice.** Lender may not make the granting of the loan contingent on the procuring of any insurance policy required by this Security Instrument from an insurance company designated by Lender.

**25. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

```
          Adjustable Rate Rider
          Fixed Rate Conversion Rider
          Condominium Rider
          Supplemental Condo/PUD Rider
```

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____ 11-26-91

MARK FRANK BUCKMAN

                                                    Borrower

```
State of Hawaii               )
City and County of Honolulu ) SS:
```

On _____ NOV 2 6 1991 _____, MARK FRANK BUCKMAN, whom I know, appeared and acknowledged that the attached instrument was voluntarily signed.

_____
Notary Public
My commission expires: 11-1-92

EXHIBIT "A"

FIRST:  Dwelling No. B as shown on Condominium Map No. 1313, of the "714 16TH AVENUE" Condominium Property Regime (the "project"), which consists of the land and improvements described in the Declaration of Condominium Property Regime dated April 3, 1990, recorded in the Bureau of Conveyances of the State of Hawaii as Document No. 90-050436, and the By-Laws of the project recorded as Document No. 90-050437, as either has been amended (together the "Declaration").

TOGETHER WITH appurtenant easements as follows:

(a)  An exclusive easement to use the Dwelling Lot having the same letter as the Apartment as designated on the Condominium Map.

(b)  Non-exclusive easements in the common elements designed for such purposes for ingress to, egress from, utility services for and support of the apartment; in the other common elements for use according to their respective purposes.

(c)  Exclusive easements to use other limited common elements appurtenant thereto designated for its exclusive use by the Declaration.

SECOND:  An undivided 50 percent interest in all common elements of the project as established for the apartment by the Declaration, or such other interest as hereinafter established for the apartment by any amendment of the Declaration, as tenant in common with the other owners and tenants thereof.

BEING the property conveyed to MARK FRANK BUCKMAN, unmarried, by Apartment Deed recorded before this instrument.

SUBJECT to the provisions, easements and encumbrances in the Declaration, the Condominium Map, and the Apartment Deed.

END OF EXHIBIT "A"

1690C/0149C/102591/TG

# ADJUSTABLE RATE RIDER

THIS ADJUSTABLE RATE RIDER is made on _____NOV 2 6 1991_____, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note to **Bank of Hawaii**, a Hawaii corporation, (the "Lender") of the same date (the "Note") and covering the property described in the Security Instrument and located at:

714-B 16th Avenue, #B, Honolulu, Hawaii 96816

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE. IF THE INTEREST RATE INCREASES, THE BORROWER'S MONTHLY PAYMENTS WILL BE HIGHER. IF THE INTEREST RATE DECREASES, THE BORROWER'S MONTHLY PAYMENTS WILL BE LOWER.**

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of __6500__ %.
Section 4 of the Note provides for changes in the interest rate and the monthly payments, as follows:
**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
(A) **Change Dates**
The interest rate I will pay may change on the first day of _____, and on that day of the month every twelve (12) months thereafter. Each date on which my interest rate could change is called a "Change Date."
(B) **The Index**
Beginning with the first Change Date, my interest rate will be based on an "Index." The Index is the weekly average yield on United States Treasury securities adjusted to a constant maturity of one (1) year, as made available by the Federal Reserve Board. The most recent Index figure available as of 45 days before each Change Date is called the "Current Index."
If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of its choice.
(C) **Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest by adding __two and one-half__ percentage points (__2.5__%) to the Current Index. The sum (rounded to the nearest 1/8th of 1%) will be my new interest rate, provided that for each change in my interest rate the new interest rate will not increase by more than two percentage points (2.0%) above the rate in effect prior to the Change Date nor decrease by more than two percentage points (2.0%) below the rate in effect prior to the Change Date, and also provided that at no time will my interest rate be greater than five percentage points (5.0%) above my initial interest rate set forth in paragraph 2 of said Note.
The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay in full the principal I am expected to owe on the Change Date in substantially equal payments by the maturity date at my new interest rate. The result of this calculation will be the new amount of my monthly payment.
(D) **Effective Date of Changes**
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.
(E) **Notice of Changes**
The Note Holder will mail or deliver to me a notice before each Change Date. The notice will advise me of:
(i) the new interest rate on my loan as of the Change Date;
(ii) the amount of my monthly payment following the Change Date;
(iii) any additional matters which the Note Holder is required to disclose; and
(iv) the title and telephone number of a person who will answer any question I may have regarding the notice.
**B. CHARGES; LIENS**
Uniform Covenant 4 of the Security Instrument is amended to read as follows:
4. **Charges; Liens.** Borrower shall pay all taxes, assessments, and other charges, fines and impositions attributable to the Property which may attain a priority over this Security Instrument, and leasehold payments or ground rents, if any, in the manner provided under paragraph 2 hereof or, if not paid in such manner, by Borrower making payment, when due, directly to the payee thereof. Borrower shall promptly furnish to Lender all notices of amounts due under this paragraph, and in the event Borrower shall make payment directly, Borrower shall promptly furnish to Lender receipts evidencing such payments. Borrower shall promptly discharge any lien which has priority over this Security Instrument; however, Borrower shall not be required to discharge any such lien so long as Borrower: (a) shall agree in writing to the payment of the obligation secured by such lien in a manner acceptable to Lender; (b) shall in good faith contest such lien by, or defend against enforcement of such lien in, legal proceedings which in the opinion of Lender operate to prevent the enforcement of the lien or forfeiture of the Property or any part thereof; or (c) shall secure from the holder of such lien an agreement in a form satisfactory to Lender subordinating such lien to this Security Instrument.
If Lender determines that all or any part of the Property is subject to a lien which may attain a priority over this Security Instrument, Lender shall give Borrower a notice identifying such lien. Borrower shall satisfy such lien or take one or more of the actions set forth above within ten days of the giving of the notice.

FHLMC UNIFORM ADJUSTABLE RATE LOAN - (Treasury Index)                    ARM 3-1B   4/91

**C. NOTICE**

Uniform Covenant 14 of the Security Instrument is amended to read as follows:

**14. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by first class mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**D. UNIFORM SECURITY INSTRUMENT; GOVERNING LAW; SEVERABILITY**

Uniform Covenant 15 of the Security Instrument is amended to read as follows:

**15. Uniform Security Instrument; Governing Law; Severability.** This form of Security Instrument combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property. This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Security Instrument and the Note are declared to be severable.

**E. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 17 of the Security Instrument is amended to read as follows:

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or an interest therein is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at Lender's option, declare all the sums secured by this Security Instrument to be immediately due and payable. However, this option shall not be exercised by Lender if exercise is not authorized by Federal law.

If Lender exercises such option to accelerate, Lender shall mail Borrower notice of acceleration in accordance with paragraph 14 hereof. Such notice shall provide a period of not less than 30 days from the date the notice is mailed within which Borrower may pay the sums declared due. If Borrower fails to pay such sums prior to the expiration of such period, Lender may, without further notice or demand on Borrower, invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Notwithstanding a sale or transfer, Borrower will continue to be obligated under the Note and this Security Instrument unless Lender has released Borrower in writing.

**F. LOAN CHARGES**

If the loan secured by the Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits; then: (1) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (2) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment under the Note.

IN WITNESS WHEREOF, Borrower has executed this Adjustable Rate Rider.

_____ 11-26-91

MARK FRANK BUCKMAN

Page 2                                    ARM 3-1B    4/91

# FIXED RATE CONVERSION RIDER

This Rider is part of and supplements the attached Security Instrument.  Borrower and Lender further agree:

1.  At any time during the four year period beginning one year after the date of the Security Instrument, Borrower may submit an application to Lender to convert the Note to a fixed rate of interest as provided in this Rider.  If Borrower's application is not approved, Borrower may re-apply during that period.  Otherwise, only one application may be submitted under this Rider.

2.  **LENDER WILL NOT BE UNDER ANY OBLIGATION TO CONVERT THE NOTE TO A FIXED INTEREST RATE.** In acting on Borrower's application, Lender may consider all of its underwriting standards and any other matters Lender considers relevant, including Borrower's current employment, credit and payment history, the condition and value of the Property and the current market conditions affecting mortgage lending.

3.  If Lender approves Borrower's application, the interest rate payable on the Note will change to the fixed interest rate Lender is then charging on similar fixed rate mortgage loans and the loan will be subject to all documentation, closing requirements and terms and conditions then applicable to Lender's similar fixed rate mortgage loans except that:

A.  The fixed interest rate on the converted Note will not exceed eighteen percent (18%) per annum; and

B.  In lieu of paying a loan origination fee or any similar "points" that would normally be payable on new fixed-rate mortgage loans, Borrower will pay a conversion fee of one percent (1%) of the principal balance of the Note.  Borrower will, however, have to pay all other fees and costs normally associated with Lender's mortgage loans, such as application fees, document preparation fees, title insurance premiums, recording fees, etc.

EXECUTED by the Borrower contemporaneously with the Security Instrument.

11-26-91

MARK FRANK BUCKMAN

Bank of Hawaii                                                                                                  7/90

# CONDOMINIUM RIDER

**THIS CONDOMINIUM RIDER** is made on _____**NOV 2 6 1991**_____, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to

## BANK OF HAWAII

the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

### 714-B 16th Avenue, #B, Honolulu, Hawaii 96816

[Property Address]

The property includes a unit in, together with an undivided interest in the common elements of, a condominium project known as:

### 714 16TH AVENUE

[Name of Condominium Project]

(the "Condominium Project"). If the owners association or other entity which acts for the Condominium Project (the "Owners Association") holds title to property for the benefit or use of its members or shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of Borrower's interest.

**CONDOMINIUM COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. Condominium Obligations.** Borrower shall perform all of Borrower's obligations under the Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i) Declaration or any other document which creates the Condominium Project; (ii) by-laws; (iii) code of regulations; and (iv) other equivalent documents. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Hazard Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which is satisfactory to Lender and which provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," then:

(i) Lender waives the provision in Uniform Covenant 2 for the monthly payment to Lender of one-twelfth of the yearly premium installments for hazard insurance on the Property; and

(ii) Borrower's obligation under Uniform Covenant 5 to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage.

In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, with any excess paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Uniform Covenant 10.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to:

(i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain;

(ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender;

(iii) termination of professional management and assumption of self-management of the Owners Association; or

(iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Condominium Rider.

_____ 11-26-91

MARK FRANK BUCKMAN

MULTISTATE CONDOMINIUM RIDER-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3140  9/90

## SUPPLEMENTAL CONDO/PUD RIDER

It is hereby agreed that the Mortgage (herein "Security Instrument") to which this Rider is attached is hereby amended and supplemented as follows:

(a) That if the Property or any portion thereof constitutes an apartment in a Condominium Property Regime or a unit in a Planned Unit Development, the Borrower will pay all assessments against his apartment or unit by the Association of Apartment Owners or Community Association and/or the Board of Directors thereof and will observe and perform all of the covenants and conditions contained in any Declaration of Condominium Property Regime or Declaration of Covenants, Conditions and Restrictions applicable thereto and on the part of the Borrower to be observed and performed and will indemnify and keep indemnified the Lender and its successors and assigns against all claims, demands, costs, damages, attorneys' fees and expenses by reason of any failure to pay said assessments or breach of any covenant or condition therein contained or of this covenant.

(b) That if the Property or any portion thereof constitutes an apartment in a Condominium Property Regime, or a unit in a Planned Unit Development, and the Declaration of Condominium Property Regime or By-Laws or Declaration of Covenants, Conditions and Restrictions applicable thereto provides that the Association of Apartment or Unit Owners keep all buildings of the project or Planned Unit Development insured against loss or damage by fire with extended coverage, paragraph 5 pertaining to hazard insurance is hereby deleted in its entirety and the following paragraph is hereby inserted in lieu thereof:

That the Association of Apartment Owners established by the Declaration of Condominium Property Regime herein mentioned or the Community Association of said Planned Unit Development (either such Association, as applicable, herein referred to as the "Association"), will at all times, while any of the indebtedness secured hereby remains unpaid keep or cause to be kept insured all buildings and improvements now or hereafter constituting the said project or Planned Unit Development (hereinafter called "PUD") against such hazards and in such amounts, in such form or forms of policies and with such endorsements thereon, all as specified in the Declaration and By-Laws, or Declaration of Covenants, Conditions and Restrictions, and in companies selected by the Association, authorized to do business in the State of Hawaii, and will pay or cause to be paid the premiums thereon at the time and place the same are payable; and true copies of such policies shall be deposited with the Lender, renewal copies of such policies to be deposited not less than ten (10) days prior to the expiration of the old policies.  In the event of loss or damage to the insured premises or any part thereof, the Borrower will give immediate written notice to the Lender, who may make proof of loss if not made promptly by the Association.  The proceeds of any such insurance shall be applied, subject to and in pursuance of the provisions of the Declaration and By-Laws, or Declaration of Covenants, Conditions and Restrictions, (and of any lease described above, if this Security Instrument is on a leasehold) on account of the cost of rebuilding or repairing any buildings or improvements damaged or destroyed. Notwithstanding the foregoing provisions of this paragraph concerning the disposition of the proceeds of any such insurance, nothing herein contained shall imply any permission to the Borrower or the Association not to observe and comply at all times with the provisions of the said lease, if any.  If the Borrower obtains insurance without the Standard Mortgagee Clause attached, the Borrower agrees that such insurance shall be payable to an Insurance Trustee for the benefit of the Borrower, the Association and the Lender, (and the Lessor under the said lease, if applicable) as their interests may appear, or that such insurance will be in the joint names of the Borrower and the Lender, the Insurance Trustee and the Lender (and Lessor, if applicable) without contribution, as their interests may appear, and furthermore that such insurance policies shall provide that they shall not be cancelled without at least thirty (30) days' prior written notice to the Lender.  If the Borrower shall procure any other insurance of the kind herein described, the same shall, even though not required hereunder be carried by the Borrower, be made payable to and claimable only by the Lender and whether so made payable or not, may be recovered by the Lender in any appropriate proceeding and be so similarly applied.  In the event of foreclosure of this Security Instrument or other transfer of title to the Property in extinguishment of the debt secured hereby, all right, title and interest of the Borrower in and to any insurance policies then in force shall pass to the purchaser, grantee, or assignee.

(c) Paragraph 18 pertaining to Borrower's right to reinstate is hereby deleted in its entirety.

(d) Paragraph 21 pertaining to "Acceleration; Remedies" is hereby amended to read as follows:

**21. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise).  The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property.  If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and cost of title evidence.

If Lender invokes the power of sale, Lender shall give Borrower notice of sale in the manner provided in paragraph 14.  Lender shall publish a notice of sale and shall sell the Property at the time and place and under the terms specified in the notice of sale.  Lender or its designee may purchase the Property at any sale.  The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**BANK OF HAWAII**                                                                                       ML-103   4/91

(e)  That if the Property or any portion thereof constitutes an apartment in a Condominium Property Regime or a unit in a Planned Unit Development, the Borrower shall keep and perform each and every covenant, agreement and provision in the Declaration, the By-Laws, and the House Rules and Regulations or the Declaration of Covenants, Conditions and Restrictions, and any resolution adopted pursuant to the Declaration or By-Laws, or the Declaration of Covenants, Conditions, and Restrictions, on the part of the apartment or unit owner to be kept and performed, and in the event of failure of the Borrower so to do the Lender may (but shall not be obligated to) cure or remedy any such default (the Borrower hereby authorizing the Lender to enter the Property as may be necessary for such purposes), and may recover upon demand all sums and expenses paid or incurred including attorneys' fees, in so doing, together with interest thereon to the date of payment at the highest rate permitted by applicable State law, and the same shall be secured hereby.  Without limiting the generality of the foregoing provisions of this paragraph, the Borrower shall pay and discharge as they become due and payable all sums and charges assessed by the Association for the share of the common expenses, both general and special, against or chargeable to the Property and all other sums assessed to the Borrower in accordance with the Declaration, By-Laws, or the Declaration of Covenants, Conditions and Restrictions, or applicable statutory provisions or any resolution adopted pursuant thereto and shall, upon request of the Lender, exhibit to the Lender receipts for the payment of all sums specified herein within thirty (30) days from the date the same are first due and payable.  The Borrower shall promptly upon receipt thereof, deliver to the Lender a true and full copy of each and every notice of default or of non-compliance received by the Borrower with respect to any obligations of the Borrower under the Declaration, the By-Laws, or the House Rules and Regulations, or the Declaration of Covenants, Conditions and Restrictions, or any resolution adopted by the Association pursuant to the Declaration or By-Laws, or the Declaration of Covenants, Conditions and Restrictions.  .

(f)  That, if the Property, or any portion thereof constitutes an apartment in a Condominium Property Regime, or a unit in a Planned Unit Development, the following shall be inserted in the Security Instrument immediately following the second sentence in the second full paragraph on page 1 of the Security Instrument:

TOGETHER ALSO with all rights and options and voting rights accruing to the Borrower under the terms of the Declaration and By-Laws, or the Declaration of Covenants, Conditions, and Restrictions, and other documents applicable to the Property, including the Apartment or Unit Lease hereinabove mentioned, if any, agreed and understood that at the option of the Lender in all cases where the Borrower has the right to exercise any options or rights, as among the apartment or unit owners, the decision in the exercise of such rights and options shall be made solely by the Lender, and the Borrower, in addition to the foregoing, hereby nominates and appoints the Lender (irrevocably so long as this Security Instrument remains in effect) the Borrower's proxy to vote, and the Borrower's agent to act, pursuant to the Declaration, By-Laws, or the said Declaration of Covenants, Conditions and Restrictions, and other documents applicable to the Property; failure of the Lender to exercise the said rights and options and voting rights shall not be construed as a waiver of the right to exercise such rights, options, or voting rights; PROVIDED, HOWEVER, that until notice from the Lender to the contrary, the Borrower shall exercise all such rights, options and votes, excepting rights, options and votes or other action with respect to construction plans, partition of the project, reconstruction or repairing of the project and any improvements thereof, amendment to the Declaration, or By-Laws, or the said Declaration of Covenants, Conditions and Restrictions, and any rights, options and votes which in the sole discretion of the Lender, would impair the security of this Security Instrument.

(g)  The term "Planned Unit Development" as used herein shall mean a development consisting of two or more lots subject to a Declaration of Covenants, Conditions and Restrictions or similar restrictions (hereinafter called "covenants") in which individual lots are individually owned or leased and the common area lot or lots are owned or leased by a Community Association which is a Hawaii non-profit corporation organized to exercise all of the powers and privileges and to perform all of the duties and obligations of the corporation as set forth in the covenants, and which corporation's members consist of every person or entity who is a record owner of a fee or leasehold interest in any individual lot within the development which is subject by the covenants to assessment by such corporation, and which such membership is appurtenant to and may not be separated from ownership of any such individual lot.

PROVIDED, HOWEVER, that this Rider shall be void and of no effect during such periods as this Security Instrument is held in whole or in part by either the Federal Home Loan Mortgage Corporation, or the Government National Mortgage Association, or the Federal National Mortgage Association; provided, further, that in the event that at any time subsequent thereto neither the Federal Home Loan Mortgage Corporation, nor the Government National Mortgage Association, nor the Federal National Mortgage Association shall hold any interest in this Security Instrument, Lender reserves the right to declare this Rider in full force and effect. Notice of such declaration(s) shall be given to the Borrower in writing through the United States mail, addressed to Borrower at Borrower's address last known to Lender, registered mail, return receipt requested, and shall be effective upon the mailing of such notice to the Borrower.

AND FURTHER PROVIDED that during the period when this Rider shall be in force, this Rider shall be superior to the provisions of the FNMA/FHLMC Uniform Condominium Rider and/or FNMA/FHLMC Uniform Planned Unit Development Rider, attached to the Security Instrument to which this Rider is attached, and in the event of any conflict the terms of this Rider shall control.

IN WITNESS WHEREOF, the Borrower has executed this Rider contemporaneously with the said Security Instrument to acknowledge the attachment hereof.

_____  11-26-9/

MARK   FRANK   BUCKMAN

Page 2

ML-103   4/91