IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| PATRICIA W. BUCKMAN, PATRICIA W. BUCKMAN REVOCABLE TRUST, | Civil No. 1:24-CV-00129-MWJS-KJM |
| Plaintiffs, | **DECLARATION OF MARK F. BUCKMAN** |
| v. | |
| MARK F. BUCKMAN, ET. AL. | |
| Defendants. | |

**DECLARATION OF MARK F. BUCKMAN**

I, Mark F. Buckman, declare as follows:

1.     I am an attorney licensed to practice law before this Court and I am co-counsel of record for Defendant Jennifer Buckman in this matter. I am also a Defendant in this matter.  I am over the age of 18, and I have personal knowledge of the facts recited in this Declaration. If called as a witness in these proceedings, I could and would testify competently to these facts.

2.     I am providing this Declaration in Support of Defendants' Opposition to Matthew Buckman, Kimberly Jean Buckman, and Duke Manoa Buckman's Clarification and Response, Etc., to provide the court some background of the

15817318\000001\130573633\V-4

reasons Matthew Buckman (Matt) should testify and provide evidence in this matter or alternatively, be barred from testifying and providing evidence in this matter.

3.      Defendants have been attempting to obtain Matt's deposition testimony since February.  The first deposition date was re-scheduled pursuant to Matt's request.  On the rescheduled date, Matt failed to appear.  Thereafter, Defendants sought an Order to Show Cause regarding Matt's deposition, which the court issued. Following a hearing on May 7, 2025, the Court ordered Matt to appear for his deposition on May 19, but he again failed to appear (Dkt. # 135).

4.      I understand that Matt had an off-record interest in the Back House at 3010A Kaunaoa Street, Honolulu, Hawai`i (the main property in contention in this case) since providing part of the down payment when it was acquired in 2003.  My mother, Plaintiff Patricia Buckman, has always spoken of the Back House as "Matt's house," and it is my understanding that she held it as a constructive trustee for Matt, even though title was in her name, because of his financial irresponsibility.

5.      In early 2018, Matt, our mother, and I discussed having the Back House) placed in an irrevocable spendthrift trust for Matt. Mom initially agreed to this, but that did not come to pass. However, in an email she sent me at that time, Mom re-affirmed that the Back House was for Matt and that she would "NEVER"

2

15817318\000001\130573633\V-4

change that, and she intended he would always be able to live there during his lifetime.

6.    In 2022, after my sister authored an email to our mom's estate attorney, Steven Reese, from my mom's email account, my mom's trust was changed.  Mr. Reese testified on June 16, 2025, in answer to my questions that Natalie did not inform him that she drafted that email and that he would have been quite concerned if he had known that, and he would have handled the 2022 trust amendment differently.  Mr. Reese also testified that he did not meet alone with my mom at any time before she signed the 2022 trust amendment, and he drafted the 2022 trust amendment based on the email Natalie authored using Patricia's account.

7.    The 2022 Amendment led to Matt being totally removed from the 2019 Trust, whereas for the previous 16 years under each prior version of my mom's trust, Matt had been the beneficiary of the Back House.  I know these facts as I was a successor trustee of my mom's trust and had copies of the relevant documents. Under the 2022 Amendment, Matt had no right to occupy the Back House, nor to receive the rental income from it (which he could apply to housing).

8.    The 2022 Amendment also led to the Front House at 3010 Kauanoa Street, Honolulu, Hawai`i, which had been going to Manoa since Mom's first trust

3

in 2006, being changed so that Natalie and her husband Carl would inherit the

Front House.

9.      Matt, Manoa and others told me of incidents and interactions they had

observed between Natalie and my mom that led me to believe that Natalie may

have used improper means to convince mom to undertake the 2022 Amendment.

10.     In July and early August 2023, Matt and I discussed the 2022

Amendment and the Back House, and Natalie's conduct, and Matt wanted my help

to reclaim his right to occupy the Back House or get the income for his lifetime.

11.     Matt and I discussed the situation in some detail and came to an

agreement between ourselves, which I refer to as the "Brothers' Agreement", a term

also used by Matt's son Duke Manoa Buckman during his deposition on May 21,

2025.  Matt and I were the only two people involved in the negotiations, although

my wife Jennifer was present on the day when we finalized the agreement and

signed documents. Matt never asked Kimberly Buckman ("Kimi") to be involved

in the negotiations and she took no part in them. Indeed, I do not believe Matt told

Kimi about our agreement for several months.

12.     The circumstances of Jennifer and my meeting with Matt in August

2023 were as follows:  Jennifer and I flew to Honolulu on August 9, 2023. Matt

picked us up from the airport with his vehicle, as we had previously arranged. Matt

drove us to a late lunch at a restaurant of his choosing, Nico's Fish House. I bought

4

15817318\000001\130573633\V-4

lunch for all three of us. I did not buy Matt any alcohol and none of us drank any alcohol at lunch.

13.     After further discussions of details during which we finalized the Brothers' Agreement, and a telephone call to check in with Manoa about it, Matt agreed to sign a deed to the Back House to me (even though Matt did not have an on-record interest). Matt then drove us to meet a mobile notary, which was necessary because we had talked so long that we missed the notary appointment we had previously set up. We were all in Matt's vehicle together, and Matt was not drunk or incapacitated in any way. In fact, I did not observe Matt have any alcohol on August 9, 2023.

14.     We did not go to Dave & Buster's, as alleged in Kimi's declaration. Rather, we went and met with the notary and Matt freely signed the deed, which he had reviewed at lunch along with my Mom's 2022 Trust Amendment and other documents.

15.     Matt has never told me that Kimi is or was his "caregiver." From my observations, Matt is competent (despite some asphasia) and has no need for "caregiving" by Kimi or anyone else. My understanding is consistent with the scope of disability determination that I believe Matt obtained following his stroke in June 2022.

5

15817318\000001\130573633\V-4

16.     Since this case began, Matt has initiated proceedings against our sister Natalie Pitre and has appeared and given statements in state court proceedings related to the possession and occupancy of the Back House. At that hearing, both Matt and Kimi urged the state court to stay that case pending the outcome of this one. I do not understand how Matt can take the position that he is capable of appearing in court and even initiating proceedings, but not capable of testifying pursuant to the subpoena issued to him in this case.

17.     Circumstantial evidence obtained during discovery suggests to me that Matt has been avoiding his deposition because he has been pressured by Natalie to "cooperate" by providing false testimony in this case.

18.     This is because on March 9, 2024, when Natalie was evicting Matt from the Front House, she texted Matt, stating in part:

> Move into your own house, the back house.  That Persian guy is paying you $1000 a month.  You can use that money however you wish – you could pay the property taxes you could pay the utilities.  There are many things you could do with that money.  It's your choice. **If you cooperate, you will inherit the back house.  Nothing is written in stone, Matt.  You take care of mom by cooperating and vacating and she will take care of you**.

Emphasis added. A true and correct copy of this text, which Natalie produced in discovery as document N 000242-243, is attached to this Declaration as Exhibit A.

19.     Matt was not happy with Natalie's pressure, and he filed an application for a Temporary Restraining Order against her based on her actions to evict him from the Front House, take charge of his medical records, and take

6

actions for him under a power of attorney signed while he was hospitalized. In that

application, Matt declared under penalty of perjury:

> I feel like Nat is trying to mess things up for me and wants me out of the picture so she can manipulate my situation to where she gets both of my mother's house[s].  **Nat told me when I got home from the hospital on 2/28/24 that if I do not cooperate then I will not get the back house.**

Emphasis added. A true and correct copy of the relevant page of Matt's application

for the Temporary Restraining Order filed March 12, 2024, Case 24-0503, is

attached to this Declaration as Exhibit B.

20.     Matt and Kimi continue to occupy the disputed Back House without

paying any of the costs associated with it.

I declare under penalty of perjury under the laws of the United States that

the facts recited above are true and correct.

Executed this 18th day of June in Honolulu, Hawai`i.

 /s/ Mark F. Buckman
MARK F. BUCKMAN

15817318\000001\130573633\V-4