LOUISE K.Y. ING     2394
TIM PARTELOW     10218
DENTONS US LLP
1001 Bishop Street, Suite 1800
Honolulu, HI  96813
Telephone: (808) 524-1800
Facsimile: (808) 524-4591
Email:   louise.ing@dentons.com
         tim.partelow@dentons.com

Attorneys for Defendants
MARK F. BUCKMAN, individually
and as Trustee of the MARK F. BUCKMAN TRUST,
and JENNIFER BUCKMAN

MARK F. BUCKMAN   SBN 7080
Law Offices of Mark F. Buckman
8359 Elk Grove Florin Rd., Suite 103-320
Sacramento, CA  95829
Email:  markfbuckman@sbcglobal.net

Attorney for Defendant
JENNIFER BUCKMAN

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| PATRICIA W. BUCKMAN, PATRICIA W. BUCKMAN REVOCABLE TRUST,<br><br>      Plaintiffs,<br><br>  v.<br><br>MARK F. BUCKMAN, ET. AL.<br><br>      Defendants. | Civil No. 1:24-CV-00129-MWJS-KJM<br><br>**DEFENDANTS' MOTION FOR RELIEF FROM SCHEDULING ORDER; DECLARATION OF MARK F. BUCKMAN; DECLARATION OF LOUIS K. Y. ING; EXHIBITS A-O**<br><br>Trial Date: November 3, 2025<br>Judge: Hon. Micah Smith<br><br>ECF 65 |

**TABLE OF CONTENTS**

I.    INTRODUCTION AND SUMMARY OF ARGUMENT................................1

II.   STATEMENT OF PERTINENT FACTS........................................3

    A.    Plaintiff's Agent Natalie Pitre Delayed and Interfered with
        Defendants' Ability to Conduct Discovery ............................3

    B.    The Court Issues Orders Requiring Matt Buckman to Comply with the
        Subpoena or Provide a Letter from a Doctor Stating That He Cannot
        Do So ................................................................8

    C.    Plaintiff Fails to Comply with Court Order to Serve Supplemental
        Responses and Produce All Responsive Documents ......................9

    D.    Despite Repeated Promises, Plaintiff Has Not Served a Verified
        Response to Either Set of Defendants' Interrogatories....................11

    E.    Tamara Fails to Produce Documents in Compliance with Subpoena,
        and Admits to Spoliation of ESI .....................................12

    F.    Defendants Filed Their Motion for Summary Judgment Before the
        Deadline in the Scheduling Order, But Plaintiffs and Her Agent's
        Counsel Continue to Produce Evidence ...............................15

III.  ARGUMENT............................................................16

    A.    Defendants Have Good Cause for Each of Their Requested
        Modifications to the Scheduling Order, and These Changes Are
        Necessary to Prevent Manifest Injustice to Defendants, Will Not
        Result in Substantial Injury to Plaintiffs, and Will Cause Only Slight
        Inconvenience to the Court ..........................................16

        1.    Defendants Have Good Cause to Modify the Scheduling
            Order to Allow Them to File a Motion to Enforce the
            Court Orders of May 7 and June 12 for Matt Buckman to
            Sit for His Deposition, and to Extend the Discovery
            Deadline as to Matt Buckman to July 21 ...............................17

        2.    Defendants Also Have Good Cause to Modify the
            Scheduling Order So Defendants Can File Motions to
            Enforce the Court Order for Plaintiff to Produce
            Documents, and for Sanctions and Spoliation .........................18

3.    Defendants Have Good Cause to Modify the Scheduling
Order So Defendants Can File Motions to Have Plaintiff
Served Verified Responses to Two Sets of
Interrogatories, Including One Served Back in February.........20

4.    Defendants Have Good Cause to Modify the Scheduling
Order to Allow Defendants to File a Motion For Tamara
Buchwald to Comply With the Subpoena Duces Tecum
by Producing All Responsive Documents and ESI, and
Filing a Declaration to Explain What Responsive
Documents and ESI She Has Lost or Destroyed and What
Steps She Has Taken to Recover That Data ............................21

5.    Defendants Have Good Cause to Modify the Scheduling
Order to Permit Defendants to Supplement Their Motion
for Summary Judgment to Include Citations to Evidence
Produced After June 6, and to Extend the Briefing
Schedule Deadlines by Seven Days.........................................22

IV.    CONCLUSION ......................................................................................22

## TABLE OF AUTHORITIES

**Cases**

*Andretti v. Borla Performance Indus.*, 426 F.3d 824, 830 (6th Cir. 2005),
 reh'g denied, corrected ........................................................................ 16, 18, 20

*Carlson v. Geneva City Sch. Dist.*, 277 F.R.D. 90, 95 (W.D.N.Y. 2011) ...............17

*Hickman v. Taylor*, 329 U.S. 495 (1947)...............................................................6

*Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). .........16

*Potomac Elec. Power Co. v. Electric Motor Supply, Inc.*, 190 F.R.D. 372, 375
 (D. Md. 1999).................................................................................................16

*Watt v. All Clear Bus. Sols. LLC*, 840 F. Supp. 2d 324, 326 (D.D.C. 2012)...........16


**Rules**

Fed. R. Civ. Pro., Rule 16(b) ...............................................................................16

Fed. R. Civ. Pro., Rule 16(b)(4)........................................................................1, 16


**Treatises**

6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, <u>Federal Practice and
 Procedure,</u> § 1522.2 (3d ed. 2010)..................................................................16

iii

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that as soon as the matter may be heard in the above-entitled court, in the courtroom of Magistrate Judge Kenneth J. Mansfield, at the United States Courthouse for the District of Hawaii, located at 300 Ala Moana Blvd, Honolulu, Hawaii 96850, with oral argument to be held on a date and time to be designated by the Court, Defendants Jennifer Buckman and Mark Buckman, individually and as Trustee of the Mark F. Buckman Trust, will, and hereby do, move this Court, pursuant to Rule 16(b)(4) of the Federal Rules of Civil Procedure, for relief from its August 7, 2024 (ECF #65) Scheduling Order. Specifically, Defendants seek relief from the Scheduling Order to: (1) file a motion to enforce the Court Orders of May 7 and June 12 for Matt Buckman to sit for his deposition and produce documents, and extend the discovery deadline as to Matt Buckman until he completes his deposition, (2) file a motion to enforce the Court Order of May 23 (ECF #144) for Plaintiff to produce documents, and provide a declaration explaining how responsive documents were lost or destroyed, (3) file a motion to have Plaintiff verify the responses to interrogatories she belatedly served on June 12, and supplement them with the required factual specificity, (4) file a motion under Rule 37 for evidentiary and monetary sanctions and a finding of spoliation against Plaintiff and her counsel, based on discovery responses produced after June 6, (5) file a motion under Rule 45 for an Order to Show Cause for

iv

Tamara Buchwald to comply with the subpoena duces tecum by producing all responsive documents and ESI, or filing a declaration to explain what responsive documents and ESI she has lost or destroyed, and (6) allow Defendants until July 7 to supplement their Motion for Summary Judgment or Partial Summary Judgment including with discovery produced to them after June 6, including Natalie's deposition, with a one-week extension of the briefing schedule for the oppositions, countermotions, and replies to all outstanding dispositive motions.

This Motion is based upon Rule 16(b)of the Federal Rules of Civil Procedure, the facts and pleadings in this case, Mark Buckman's Declaration, the arguments of counsel, and such other evidence as may be properly before the Court.

Dated:  Honolulu, Hawai`i, June 30, 2025.

        /s/ Louise K.Y. Ing
        LOUISE K.Y. ING
        TIMOTHY C. PARTELOW
        Attorneys for Defendants
        MARK F. BUCKMAN, individually
        and as Trustee of the MARK F.
        BUCKMAN TRUST, and
        JENNIFER BUCKMAN

        /s/ Mark F. Buckman
        MARK F. BUCKMAN

        Attorney for Defendant
        JENNIFER BUCKMAN

v

**DEFENDANTS' MOTION FOR RELIEF FROM SCHEDULING ORDER**

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Pursuant to Rule 16(b)(4) of the Federal Rules of Civil Procedure, Defendants seek relief from the Scheduling Order (ECF #65) to: (1) file a motion to enforce the Court Orders of May 7 and June 12 for Matt Buckman to sit for his deposition and produce documents, and extend the discovery deadline as to Matt Buckman until he completes his deposition, (2) file a motion to enforce the Court Order of May 23 (ECF #144) for Plaintiff to produce documents, and provide a declaration explaining how responsive documents were lost or destroyed, (3) file a motion to have Plaintiff verify the responses to interrogatories she belatedly served on June 12, and supplement them with the required factual specificity, (4) file a motion under Rule 37 for evidentiary and monetary sanctions and a finding of spoliation against Plaintiff and her counsel, based on discovery responses produced after June 6, (5) file a motion under Rule 45 for an Order to Show Cause for Tamara Buchwald to comply with the subpoena duces tecum by producing all responsive documents and ESI, or filing a declaration to explain what responsive documents and ESI she has lost or destroyed, and (6) allow Defendants until July 7 to supplement their Motion for Summary Judgment or Partial Summary Judgment including with discovery produced to them after June 6, including Natalie's

1

deposition, with a one-week extension of the briefing schedule for the oppositions, countermotions, and replies to all outstanding dispositive motions.

Defendants have good cause for each of these requests. First, the Court Orders Defendants are seeking to enforce established deadlines that fell after the Scheduling Order's deadline for filing discovery-related motions. Thus, to enforce compliance with the Orders, Defendants should be given relief from the Scheduling Order. Second, through no fault of their own, Defendants were unable to schedule Tamara Buchwald's deposition until June 5, 2025, and thus did not learn until that date that Ms. Buchwald had deleted almost all emails that were responsive to the subpoena and had made no attempt to retrieve them. Third, Plaintiff's withholding and spoliation of documents and evidence in this case did not become fully apparent until Plaintiffs served their supplemental responses to Jennifer's First, Second, and Third RPOD and completed their production on June 9, 2025, and until Defendants received 288 pages of documents from Natalie Pitre's counsel on June 18 that had not been previously disclosed. Fourth, Plaintiff responded on June 12, without providing facts, to Defendants' interrogatories and, despite promising several times to serve verified responses to both sets of interrogatories, has not done so. Finally, Defendants should be permitted to supplement their Motion for Summary Judgment because Plaintiffs should not

2

obtain a litigation advantage by failing to produce adequate and complete discovery responses without court intervention.

## II.    STATEMENT OF PERTINENT FACTS

### A.    Plaintiff's Agent Natalie Pitre Delayed and Interfered with Defendants' Ability to Conduct Discovery

The Scheduling Order issued on August 7, 2024 required all discovery-related motions to be filed by May 5, 2025, and established June 6, 2025 as the discovery cutoff and deadline for filing dispositive motions. ECF #65. Unfortunately, however, this is not a normal case, so these deadlines have proven unworkable.

This is a very rare case where Plaintiff's acknowledged agent, Natalie Pitre, was actively working to prevent Defendants from taking discovery. As Plaintiff's agent, Natalie had provided the list of Plaintiff's witnesses for the Initial Disclosures. Declaration of Mark F. Buckman in Support of Motion for Relief from Scheduling Order ("MFB Decl."), ¶ 4 & Exh. A [N0221 from Natalie's document production]. Thus, Natalie knew who all of these witnesses were, and how to contact them.

While Defendants' Motions to Dismiss were pending, on May 7, 2024, Mark contacted Tamara Buchwald, who has been in contact with Natalie and Plaintiff's counsel about this litigation throughout the case, about scheduling her deposition for some time between July 15 - September 15, 2024. MFB Decl., ¶ 5 & Exh. B

3

[N00689]; *see also id.*, Exh. C N00559-570, 575, 587, 600-01, 686-693 [emails among Tamara, Natalie, and Plaintiff's counsel regarding the case].) Within 40 minutes of receiving that email, Tamara forwarded it to Plaintiff's counsel, asking him "Don't we have to wait on the ruling of [Defendants' Motion to Dismiss] before any depositions are scheduled? Let me know how to respond or if I should respond?" *Id.*, ¶ 7 & Exh. C [N00688-689]. Less than 20 minutes later, Plaintiff's counsel responded, "lets [*sic*] get on a call." *Id.* [N00688]. (At her deposition, Tamara testified she is "not sure" if she has ever talked with Plaintiff's counsel on the phone, but she "think[s] [she] might have." *Id.*, ¶ 8 & Exh. D [T. Buchwald Depo., 54:10-13].

A text Natalie sent two days later confirms that, following this conversation with Plaintiff's counsel, Natalie contacted at least some of the witnesses Plaintiff had identified and encouraged them not to submit to discovery. For example, Natalie sent the following text to Kimberly Katsarsky Buckman ("Kimi"), encouraging Kimi "not to allow" – that is, to delay – Defendants from taking her deposition until Natalie authorized it:

> We gave my mother's attorney a list of witnesses and Mark started contacting them to arrange their deposition [*sic*].
>
> There is a lot that needs to happen before Mark can depose anybody.
> As usual, he is not following the rules.
> If he contacts you, please let me know
> and
> <u>do not allow him to depose you</u>

4

until we get to that point.

*Id.*, ¶ 9 & Exh. A [N000221, emphasis added].

Eight days later, on May 17, 2024, Plaintiff's counsel sent Defendant Mark Buckman Requests for Production of Documents. MFB Decl., ¶ 10 & Exh. E [May 17 email chain]. Defendants' counsel then sent Plaintiff's counsel an email asking about the scheduling of depositions. MFB Decl., ¶ 10. In response, on May 21, 2024, Plaintiff's counsel sent Defendants' counsel an email confirming his refusal to allow Plaintiff's deposition to proceed while any motions to dismiss were under consideration and stating his inability to schedule any depositions before the response date for the Request for Production of Documents ("RPOD"); this email states, in pertinent part:

> First, Pat Buckman's deposition will not take place prior to the ultimate resolution of the amended complaint which we will file before June 10 (addressing the Court's order granting your co-defendant's motion to dismiss with leave to amend). In other words, if your co-defendant moves to dismiss it, Ms. Buckman's deposition will not take place (for the same reasons I have repeatedly told you) until resolution of the motion. I also note that your motion to compel is pending before Judge Mansfield, and is set for hearing on June 26th, and 11 a.m. Suffice it to say, Ms. Buckman will not sit for deposition before then. Following the hearing, we can discuss scheduling Ms. Buckman's deposition.
>
> Second, requesting documents from you has nothing whatsoever to do with her deposition  To conflate the two is, frankly, specious. Your motion to dismiss was denied. Accordingly, propounding written discovery seeking relevant documents was entirely proper. I have no objection to you sending written discovery requests to Ms. Buckman.

5

> Third, as for Ms. Pitre's deposition, I am unavailable until the week of June 24th.  I will check on her availability, and propose that you proceed with her deposition on either June 25th or June 27th.

*Id.*

The final ruling on Jennifer's Motions to Dismiss was issued in October 2024. ECF #82. After Jennifer filed her Answer to the SAC, and the holidays, Defendants prepared subpoenas in January 2025 and again checked with Plaintiff's counsel regarding dates for scheduling depositions. MFB Decl., ¶ 11. On February 10, while these subpoenas were out for service, Defendants served Notices of Deposition for Carl Pitre, Matt Buckman, Kimi Buckman, and Manoa Buckman. ECF #90-94. On February 16, Mark emailed Carl about his deposition, which was then scheduled for February 27. MFB Decl., ¶ 12 & Exh. F [N00835]. On February 17, Carl emailed Plaintiff's counsel, with copies to Natalie and Tamara, asking "Next step?" *Id.* Regarding this case, Plaintiff's counsel replied, "The depo notice that I have is in the federal case here. If he serves you with the subpoena, you need to appear." *Id*.

For reasons unknown to Defendants, that email appeared to set off a game of "catch me if you can." *Cf.*, *Hickman v. Taylor*, 329 U.S. 495 (1947) ["discovery is not a game of hare and hounds"]. Thereafter, service of the subpoenas on each of these witnesses required multiple attempts. MFB Decl., ¶ 13. Indeed, Defendants made 15 service attempts on Tamara Buchwald, plus two stake-outs as multiple

6

process servers advised defense counsel that Ms. Buchwald was evading service. MFB Decl., ¶ 13. In addition, through March 2025, Kimi continued to maintain that Defendants' attempt to take her deposition was "premature" because there were motions pending in the case. MFB Decl., ¶ 14 & Exh. G. (At deposition, Kimi testified, "I was available for my first deposition. I chose not to come." MFB Decl., ¶ 15 & Exh. H [Kimi Depo., 15:11-14].)

The evidence produced in discovery also supports an inference that Natalie encouraged witnesses such as Carolyn Watanabe and Qunyh Vu not to make themselves available for deposition. At her deposition, Ms. Vu stated she had only 3 texts with Natalie, none of which she had produced in response to the subpoena. MFB Decl., ¶ 16. When questioned about the content of the texts and asked to read them, Ms. Vu disclosed a fourth text from Natalie, which she read out loud; in this text, Natalie told Ms. Vu that she "did not have to" appear for her deposition after June 6. MFB Decl., ¶ 16. In a similar vein, when Defendants initially contacted Ms. Watanabe to schedule her deposition, Ms. Watanabe indicated she did not want to be deposed because she feared that Natalie would "make things bad" for Plaintiff if she did. MFB Decl., ¶ 17.

Not only were the subpoenas very difficult to serve on the witnesses in this case, the depositions in this case were also extremely difficult to schedule, in part because of all the scheduling conflicts claimed by Plaintiff's counsel. MFB Decl.,

7

¶ 18. Although the depositions were scheduled to work around these conflicts so Plaintiff's counsel could attend, Mr. Wilson left nearly all of these depositions after the first hour - and did not even attend Matt's deposition on June 20. *Id*.

**B.      The Court Issues Orders Requiring Matt Buckman to Comply with the Subpoena or Provide a Letter from a Doctor Stating That He Cannot Do So**

Other than Carl, none of these witnesses who were served with the subpoenas issued in February complied with them, and failed to attend the depositions rescheduled to March at their requests. MFB Decl., ¶ 19. Thus, Defendants were forced to ask this Court to set an Order to Show Cause to those witnesses.

On May 7, this Court issued an Order directing Matt Buckman to appear for his deposition by May 19.  ECF # 135. However, Matt again failed to appear for his deposition. MFB Decl., ¶ 20. On June 12, this Court again entered an Order directing Matt Buckman to appear for his deposition, or present a letter from a doctor stating that he is medically unable to testify, by June 20. ECF #159. On June 20, 2025, Matt appeared for his deposition, accompanied by Kimi. MFB Decl., ¶ 21. Matt answered a few questions, but then tried to have Kimi answer questions on his behalf. MFB Decl., ¶ 21. Kimi is not a lawyer and Defendants are not seeking further testimony from her at this time (her deposition has already been

given in this case, and she, unlike Matt, has no personal knowledge of any of the transactions or events). MFB Decl., ¶ 21.

### C.    Plaintiff Fails to Comply with Court Order to Serve Supplemental Responses and Produce All Responsive Documents

Following rounds of unsuccessful meet-and-confer sessions with Plaintiff's counsel, Defendants filed a timely Motion to Compel supplemental responses to Defendant Jennifer Buckman's First and Second Requests for Production of Documents. ECF #136. On May 23, 2025, the Court granted this motion and gave Plaintiffs until June 6, 2025 to provide supplemental written responses to the First RPOD and Second RPOD. ECF #144, p. 7. The Court further ordered Plaintiffs to produce all responsive documents "no later than June 13, 2025" and reminded Plaintiff of her obligation to produce "all responsive documents in her possession, custody, or control." ECF #144, p. 8. The Order also required Plaintiffs to identify any documents withheld under claims of privilege. ECF #144, p. 7.

Plaintiff's attorney produced supplemental responses that claimed, for seventy (70) of the requests, including categories seeking texts, emails, and estate documents, that Plaintiff simply has "no" responsive documents. MFB Decl., ¶ 22 & Exh. I [supplemental responses].

However, on June 18, Natalie made a supplemental document production (in response to the subpoena issued to her in February, and for which an OSC had to be obtained to gain compliance). MFB Decl., ¶ 23. These late-produced documents

9

show that there are, in fact, documents responsive to many categories of the RPOD that Plaintiff has never produced, such as: emails between Richard Wilson and Tamara Buchwald[1], emails between Richard Wilson and other third parties, a letter from Plaintiff's doctor stating his opinion that she should only be deposed for one hour every other day, and an interview of Plaintiff conducted before a court reporter in January 2024 related to the facts surrounding the now-disputed transactions– among, presumably, many others. *Id.* Plaintiff did not disclose these documents nor did she indicate that they had been lost or destroyed. *Id.* Neither Plaintiff nor her counsel provided an affidavit detailing what steps he took to try to locate responsive documents. MFB Decl., ¶ 24.

On June 18, Plaintiff's counsel met and conferred in person with Defendants' counsel regarding the inadequate responses. MFB Decl., ¶ 26 & Exh. N [meet and confer email chain between counsel]. Plaintiff's counsel stated that there simply were no responsive documents to the entire Third RPOD, that he had looked (on Natalie Pitre's computer, which Natalie has testified is the only location where Plaintiff's email accounts can now be accessed), but found virtually no emails. *Id.* Plaintiff's counsel also stated that, because Plaintiff's iphone was "lost" during this

---

[1] Ms. Buchwald is named as the successor trustee in Patricia's 2022 Trust Amendment, and was named as a Plaintiff in an initial draft of Plaintiff's Complaint, which is consistent with an email Natalie sent in January 2024 explaining "Pat will resign as trustee and Tamara will take over. . . ."  MFB Decl., ¶ 25.

10

litigation, and Plaintiff "no longer has the phone number which [Defendants] identified ... there are no texts or other electronic communications to be produced." *Id.* Significantly, though, Plaintiff's phone number was changed about a year after this case was filed, and only after Defendants had served Requests for Production, seeking Plaintiff's texts and electronic communications. *Id.* The meet and confer on June 18 was the first time Plaintiff's counsel took the position that Plaintiff's texts were not recoverable. To Defendants' knowledge, Plaintiff and her counsel have made no attempts to recover the texts that are now missing (or destroyed?). *Id.*

At her deposition on June 19, Natalie testified that the only means Plaintiff currently has to access Plaintiff's email is on Natalie's computer. MFB Decl., ¶ 28 & Exh. J [Natalie Depo., vol. 2, 217:16-25]. Natalie also testified at her deposition that she deletes emails from Plaintiff's accounts, using her discretion about what constitutes "junk," and she has made no effort to retrieve any emails that have been deleted from Plaintiff's accounts. *Id.* [Natalie Depo., vol. 2, 217:16 thru 218:25].

### D. Despite Repeated Promises, Plaintiff Has Not Served a Verified Response to Either Set of Defendants' Interrogatories

Plaintiff did not timely respond to either of Defendants' two sets of Interrogatories. MFB Decl., ¶ 29. Plaintiff's counsel initially claimed answering the questions was "way above Plaintiff's pay grade," which curiously contrasts with the detailed factual allegations made in the Complaints filed on Plaintiff's behalf in this case. *Id.* Despite repeated promises to provide a verification, Plaintiff's counsel

has still not provided one, nor have Plaintiffs served a response with the required factual specificity. *Id* at ¶ 31.

**E.      Tamara Fails to Produce Documents in Compliance with Subpoena, and Admits to Spoliation of ESI**

As difficult as it was to serve Matt and other Buckmans, the most difficult witness to serve in this case was Tamara. Defendants first issued a subpoena to her in September 2024. ECF #78. Although she is a licensed attorney, an active member of the Bar of the District of Columbia, and is currently working in the litigation department of Cohen Milstein, serving process on Tamara took 8 months. MFB Decl., ¶ 31. In 2025 alone, the process servers made 15 attempts to serve her at her residence plus two stake-outs. *Id.* After the second 2025 stake-out, Tamara was finally served (though even on that occasion she literally ran from the process server).[2] *Id.* & Exh. K [picture of Tamara taken by process server]. Tamara then requested a continuance of her deposition, so she was not deposed until June 5, 2025, due to scheduling issues. *Id.*

---

[2] Tamara's attempts to evade service of the subpoena and her acknowledged destruction of ESI and failure to produce responsive documents such as her journals appear to violate both Rule 3.4 and Rule 8.4 of the Rules of Professional Conduct for the D.C. Bar. Rule 3.4, Fairness to Opposing Party and Counsel, prohibits lawyers admitted to the D.C. Bar from "obstruct[ing] another party's access to evidence . . . " and "knowingly disobey[ing] an obligation under the rules of a tribunal . . . ." Rule 8.4, Misconduct, provides that it is professional misconduct for a lawyer of the D.C. Bar to "engage in conduct that seriously interferes with the administration of justice."

Before this case was started (back in September 2023), Mark sent Tamara an email reminding her of her "obligation to preserve" materials that could be relevant to any future litigation, "including electronic files, electronically stored and retained information, or ESRI." MFB Decl., ¶ 33 & Exh. L [September 2023 MFB email to Tamara]; *see also id.*, Exh. D, [T. Buchwald Depo., 123:14-125:3]. At her deposition, Tamara acknowledged she was "very aware" that attorneys have obligations to preserve evidence, including ESI and other documents that could be relevant to claims in litigation. MFB Decl., ¶ 34. [T. Buchwald Depo., 126:9-13].

Nonetheless, at her deposition, Tamara testified she "delete[s] everything," she "delete[s] most E-mails", and she did not do anything like contact her email server to try to find responsive emails that had been deleted. *Id.* [T. Buchwald Depo., 14:13-15:15]. In fact, Tamara testified she had deleted emails between herself and Plaintiff's estate attorney Steven Reese, including emails that were sent in October 2023. *Id.* [T. Buchwald Depo., 245:3-17]. Tamara testified she "[doesn't] recall" and "[doesn't] know" if she ever communicated with Plaintiff's counsel outside of the one day in this case when Tamara appeared at Plaintiff's deposition, but stated that if she received any emails from Plaintiff's counsel, she "would have deleted them." *Id.*, [T. Buchwald Depo., 21:14-22:18, 49:22-50:4].

Regarding emails with Plaintiff, Tamara stated she "can't recall right now" if she and Plaintiff had exchanged emails in the last two years, but she "could have

13

deleted them." *Id.* [T. Buchwald Depo., 19:2-9]. Tamara also indicated that she had made no attempt to retrieve the ESI that she had deleted because she does not consider attempting to retrieve deleted emails to be part of a "reasonable search" as required by the subpoena. *Id.* [T. Buchwald Depo., 15:5-15].

At her deposition, Tamara also was asked if she had ever worked with Plaintiff on changing her estate plan or her trust documents, to which she responded, "Not that I could recall sitting here today."[3] *Id.* [T. Buchwald Depo., 63:15-18]. Tamara also testified "I don't think I ever drafted a trust for [Plaintiff]" and "I don't think I ever revised a trust for [Plaintiff]." *Id.* [T. Buchwald Depo., 117:1-15].

However, in 2019 Tamara emailed Plaintiff and Natalie a copy of a new draft of Plaintiff's trust. MFB Decl., ¶ 36 & Exh. M. Tamara did not produce this email, or the related trust document, in response to the subpoena.[4] *Id.*

Similarly, when asked at her deposition to provide examples of the behavior of which she accused Mark, Tamara testified she "[couldn't] think of anything now. But I'm sure if I sat long enough and went back to my journals, I can think of something." MFB Decl., ¶ 38 & Exh. D [T. Buchwald Depo., 181:7-17]. Tamara testified that she has been "journaling since [she's] been 14, off and on," but then

---

[3] During her deposition, Tamara made this statement well over a hundred times, though she testified she does not have any memory impairment.

[4] Neither did Plaintiff.

claimed that she "probably" did not have any journals in the last 5 years and "definitely not" in the last two years because "they're destroyed." *Id.*, [T. Buchwald Depo., 182:1-183:1]. While Tamara testified that the journals would refresh her recollection about what had occurred, Tamara did not produce the journals, nor did she produce any excerpts; rather, she claimed she had destroyed them. *Id.*

**F.    Defendants Filed Their Motion for Summary Judgment Before the Deadline in the Scheduling Order, But Plaintiffs and Her Agent's Counsel Continue to Produce Evidence**

Consistent with the Scheduling Order, Defendants filed their Motion for Summary Judgment on June 6, 2025. Since that date, though, Ms. Pitre's counsel has continued to produce evidence,[5] including significant documents showing that Plaintiff and her counsel improperly withheld documents from production earlier, such as the documents that Plaintiff's agent Natalie did not produce until June 18. MFB Decl., ¶ 39. Defendants have not had an opportunity to include this evidence in their Motion for Summary Judgment (nor have they had any opportunity to question Plaintiff about any of these late-produced documents). *Id.*

---

[5] Defendants do not mean to imply that Ms. Pitre's counsel, Thomas Bush, participated in any discovery abuse. Since Mr. Bush became involved in this case in April 2025, he has demonstrated an understanding of, and willingness to comply with, discovery obligations and has been refreshingly straight-forward.

15

## III.  ARGUMENT

A.  **Defendants Have Good Cause for Each of Their Requested Modifications to the Scheduling Order, and These Changes Are Necessary to Prevent Manifest Injustice to Defendants, Will Not Result in Substantial Injury to Plaintiffs, and Will Cause Only Slight Inconvenience to the Court**

Rule 16(b)(4) provides that a scheduling order "may be modified only for good cause and with the judge's consent." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). "Good cause" is highly fact-dependent. *Watt v. All Clear Bus. Sols. LLC*, 840 F. Supp. 2d 324, 326 (D.D.C. 2012) ["What constitutes good cause . . . necessarily varies with the circumstances of each case."], citing 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, § 1522.2 (3d ed. 2010).

A defendant has good cause to modify scheduling order under Rule 16(b) when plaintiff did not complete his compelled responses to the defendant's discovery requests until after scheduled dispositive motion deadline. *Andretti v. Borla Performance Indus.*, 426 F.3d 824, 830 (6th Cir. 2005), reh'g denied, corrected; *see also Potomac Elec. Power Co. v. Electric Motor Supply, Inc.*, 190 F.R.D. 372, 375 (D. Md. 1999) ["Good cause" for modifying scheduling order exists when scheduling deadlines cannot be met despite party's diligent efforts]; *Carlson v. Geneva City Sch. Dist.*, 277 F.R.D. 90, 95 (W.D.N.Y. 2011) [finding defendant acted with sufficient diligence and had shown good cause to modify and

16

extend discovery period when negotiations for plaintiff's deposition extended over several months before the expiration of the discovery period]; *Rangel v. Mascorro*, 274 F.R.D. 585, 594, 597 (S.D. Tex. 2011) [defendants established good cause to extend deadline to designate experts, discovery deadline, and trial setting conference when defendants had been unable to properly depose both plaintiffs; plaintiffs' counsel had improperly instructed one plaintiff to not answer questions and suspended the deposition, and failed to produce the other plaintiff].

As set forth below, Defendants have good cause for each of their requested modifications to the Scheduling Order. Therefore, Defendants' requests for relief from the Scheduling Order should be granted, as set forth in more detail below.

**1.    Defendants Have Good Cause to Modify the Scheduling Order to Allow Them to File a Motion to Enforce the Court Orders of May 7 and June 12 for Matt Buckman to Sit for His Deposition, and to Extend the Discovery Deadline as to Matt Buckman to July 21**

As shown above, Matt Buckman was required to sit for his deposition, or provide a letter from a doctor explaining why he could not do so, by June 20. The letter that Matt provided to Defendants did not indicate that Matt's medical conditions render him unable to sit for deposition. *See* ECF #162, 168.

While Matt did appear at his deposition on June 20, he tried to have his former wife, Kimberly Buckman ("Kimi"), answer questions on his behalf.

17

Defendants' counsel objected to this as Kimi is not the deponent and has no first-hand knowledge of the relevant transactions and events.

Matt's compelled attendance at this deposition did not occur until after the scheduled discovery motion deadline. This constitutes good cause to relieve Defendants from the discovery motion deadlines established by the scheduling order. *Cf.*, *Andretti v. Borla Performance Indus.*, 426 F.3d at 830. Further, equity demands this modification. Matt has evaded testifying in this case by failing to appear in response to repeated subpoenas first served in February, followed by two court orders. Allowing Matt to escape testifying altogether merely because he refused to testify during the discovery period established by the Scheduling Order would be manifestly unjust.

> **2.    Defendants Also Have Good Cause to Modify the Scheduling Order So Defendants Can File Motions to Enforce the Court Order for Plaintiff to Produce Documents, and for Sanctions and Spoliation**

As noted above, Plaintiffs did not complete their court-ordered responses to discovery until on or about June 18, more than a month after the discovery motion deadline established in the Scheduling Order.

Plaintiff's responses remain inadequate. Plaintiff has stated she has "no documents" in response to 70 categories of requests, but she has obviously not included documents within her "care, custody or control," such as emails held by her attorney. Plaintiff failed to produce emails from Plaintiff's attorney to Tamara

18

Buchwald and Natalie Pitre, as sought by requests 23, 40, 41, and 54 — but, as shown above, the documents produced by Natalie on June 18 show that many such responsive emails do in fact exist, and not all have been produced.

Plaintiff also failed to produce texts, based on "non-availability" due to Natalie having changed Plaintiff's phone type and phone number after Plaintiff filed this case. However, Defendants have received from other parties some texts sent by Plaintiff, so they know responsive texts did (at one time) exist; indeed, one text was from Plaintiff to Mark the day before the Back House deed was signed, and showed that Plaintiff wanted to deed the Back House to Mark pursuant to the Brother's Agreement – "Now I have Matt taken care of by you and by me with small house . . . thanks so much for stepping up to be your brothers keeper!!!!' As u and I both know Matt is very poor $$$$$manager." MFB Decl., ¶ 39, Exh. O. Plaintiffs' response also fails to include a declaration or affidavit explaining what searches were undertaken to locate responsive documents, how responsive documents and ESI have been lost or destroyed, and whether any steps were taken to retrieve that missing evidence. *Id.,* at ¶ 40. Yet at her deposition on June 19 Plaintiff's agent Natalie testified that she had made no effort to retrieve Plaintiff's deleted emails and said she "doesn't even know how to do that." MFB Decl., ¶ 41 & Exh. J [NBP Depo., vol. 2, 217:16-25].

19

Because Plaintiffs have delayed completion of their court-ordered responses and productions until after the discovery motion deadline established in the Scheduling Order, Defendants have good cause to modify the Scheduling Order to permit them to file a motion to enforce the Court's Order compelling production and a motion for evidentiary and monetary sanctions and a finding of spoliation against Plaintiff and her counsel. *Cf.*, *Andretti v. Borla Performance Indus.*, 426 F.3d at 830. This modification is necessary to provide Defendants discovery of documents and ESI that are within Plaintiffs' "care, custody, and control," but which Plaintiffs have continued to withhold throughout the discovery period, including in disobedience to the Court's May 23 order requiring supplemental responses and production of all responsive documents

> **3.    Defendants Have Good Cause to Modify the Scheduling Order So Defendants Can File Motions to Have Plaintiff Served Verified Responses to Two Sets of Interrogatories, Including One Served Back in February**

As noted above, Plaintiffs did not serve verified responses to Defendants two sets of interrogatories. Despite Plaintiff's counsel's repeated assurances that he would provide verifications, to date he has not done so, nor has he provided the required facts in response to Jennifer's interrogatories. As such, Defendants should be allowed to serve a simple motion to compel verified responses to those interrogatories and factually specific answers to Jennifer's interrogatories.

20

> **4.    Defendants Have Good Cause to Modify the Scheduling Order to Allow Defendants to File a Motion For Tamara Buchwald to Comply With the Subpoena Duces Tecum by Producing All Responsive Documents and ESI, and Filing a Declaration to Explain What Responsive Documents and ESI She Has Lost or Destroyed and What Steps She Has Taken to Recover That Data**

Tamara, in addition to being named as successor trustee as well as Plaintiff in the initial draft of the complaint in this matter, is also a practicing lawyer who works in the litigation department of Cohen Milstein in Washington, D.C. She acknowledges that she is aware of her professional obligation to preserve evidence. As indicated the facts recited above, Defendants diligently sought to schedule Tamara's deposition beginning in May 2024, but it took until April 2025 to serve her with a subpoena, and her deposition did not take place until June 5, 2025.

Even though Mark sent Tamara an email asking her to preserve evidence in September 2023, before Plaintiff initiated this case, Tamara testified at her deposition that she had deleted various categories of documents responsive to Defendants' subpoena, including emails with Plaintiff's counsel and Plaintiff's estate lawyer. She even deleted the email that asked her to preserve ESI. As shown above, Tamara testified that she had made no effort to recover this deleted ESI.

Under these circumstances, Defendants have shown good cause to modify the Scheduling Order to allow them to bring an application for an Order to Show

21

Cause against Tamara for her failure to produce ESI that is within her care, custody, or control.

**5.    Defendants Have Good Cause to Modify the Scheduling Order to Permit Defendants to Supplement Their Motion for Summary Judgment to Include Citations to Evidence Produced After June 6, and to Extend the Briefing Schedule Deadlines by Seven Days**

As demonstrated by the above, Defendants have encountered highly unusual challenges to obtaining discovery in this case. To avoid further delay in this case, Defendants filed their Motion for Summary Judgment by the deadline established in the Scheduling Order. Through no fault of their own, Defendants were unable to cite in that Motion any of the evidence that Plaintiffs and her witnesses did not provide until after June 6. So that Plaintiffs do not benefit from their stonewalling, Defendants seek leave of Court to supplement their Motion for Summary Judgment by July 7, 2025. Defendants also ask the Court to extend the briefing schedule deadlines by 7 days for all oppositions, countermotions, and replies to accommodate this supplementation.

## IV.    CONCLUSION

For all the reasons set forth above, Defendants respectfully request that the Court modify the Scheduling Order to:

22

(1)    Extend the discovery motion deadline to July 3, for the specific

purposes of:

(a)    allowing Defendants to file a motion to enforce the Court

Orders of May 7 and June 12 for Matt Buckman to sit for his

deposition,

(b)    allowing Defendants to file a motion to enforce the May 23

Court Order for Plaintiffs to produce documents, and provide a

declaration explaining how responsive documents were lost or

destroyed,

(c)    allowing Defendants to file a motion to have Plaintiffs serve

verified responses to interrogatories along with required factual

specificity;

(d)    allowing Defendants to file a motion for evidentiary and

monetary sanctions and a finding of spoliation against Plaintiff

and her counsel, based in large part on discovery responses

produced after June 6, and

(e)    allowing Defendants to file a motion under Rule 45 for an

Order to Show Cause for Tamara Buchwald to comply with the

subpoena duces tecum by producing all responsive documents

23

and ESI, or filing a declaration to explain what responsive documents and ESI she has lost or destroyed.

(2)     Extend the discovery deadline as to Matt Buckman until he completes his court-ordered deposition.

(3)     Extend the deadline for filing dispositive motions to July 7 to permit Defendants to supplement their Motion for Summary Judgment or Partial Summary Judgment, including with discovery produced to them after June 6, including Natalie's deposition, with a 7-day extension of the deadlines the Court previously established for the dispositive motions.

Dated:  June 30, 2025.

/s/ Louise K.Y. Ing
LOUISE K.Y. ING
TIMOTHY C. PARTELOW
Attorneys for Defendants
MARK F. BUCKMAN, individually
and as Trustee of the MARK F.
BUCKMAN TRUST, and
JENNIFER BUCKMAN

/s/ Mark F. Buckman
MARK F. BUCKMAN

Attorney for Defendant
JENNIFER BUCKMAN

24