IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| PATRICIA W. BUCKMAN, PATRICIA W. BUCKMAN REVOCABLE TRUST,<br><br>     Plaintiffs,<br><br>  v.<br><br>MARK F. BUCKMAN, MARK F. BUCKMAN TRUST, JENNIFER BUCKMAN, JOHN DOES 1-10, JANE DOES 1-10, DOE CORPORATIONS 1-10, DOE PARTNERSHIPS 1-10, DOE GOVERNMENTAL AGENCIES 1-10,<br><br>     Defendants. | Civil No. 1:24-CV-00129-MWJS-KJM<br><br>**DECLARATION OF MARK F. BUCKMAN IN SUPPORT OF DEFENDANTS' MOTION FOR RELIEF FROM SCHEDULING ORDER** |

**DECLARATION OF MARK F. BUCKMAN**

I, Mark F. Buckman do hereby declare and state under penalty of perjury that the following facts are true and correct:

1.    I am an attorney licensed to practice law before the Courts of the State of Hawai'i. I am co-counsel of record for Defendant Jennifer Buckman in these proceedings. I am also one of the Defendants in these proceedings.

2.    I make this Declaration based on my personal knowledge and am competent to testify about the matters contained in this Declaration. "This motion

is made following the conference of counsel pursuant to LR7.8 which took place on June 17."

3.      This Declaration is submitted in support of Defendants' Motion for Relief from Scheduling Order.

4.      Both Plaintiff's attorney and Natalie Pitre have recently acknowledged that Natalie has been acting as Plaintiff's agent in these proceedings. As shown in a text, Natalie provided the list of Plaintiff's witnesses for the Initial Disclosures. Attached to this Declaration as Exhibit A is a true and correct copy of text messages, which were produced in discovery by Natalie, between Natalie and Kimberly Katsarsky Buckman ("Kimi") dated May 8, 2024. (Page N0221 from Natalie's document production.)

5.      On May 7, 2024, I contacted Tamara Buchwald about scheduling her deposition for some time between July 15 - September 15, 2024. Attached as Exhibit B is a true and correct copy of that email. (Pages N00688-689 from Natalie's document production.)

6.      Attached to this Declaration as Exhibit C are true and correct copies of emails among Tamara, Natalie, and Plaintiff's counsel regarding this case, which were produced by Natalie's counsel Tom Bush on or about June 18, 2925 (Pages N00559-570, 575, 587, 600-01, 686-693 from Natalie's document production.)

7.      Within 40 minutes of receiving my May 7, 2024 email, Tamara

forwarded it to Plaintiff's counsel, asking him "Don't we have to wait on the ruling of [Defendants' Motion to Dismiss] before any depositions are scheduled? Let me know how to respond or if I should respond?" Plaintiff's counsel responded, "lets [*sic*] get on a call." See Exhibit C.

8.    At her deposition, Tamara testified she is "not sure" if she has ever talked with Plaintiff's counsel on the phone, but she "think[s] [she] might have." Attached as Exhibit D is a true and correct copy of excerpts from the deposition of T. Buchwald [T. Buchwald Depo., 54:10-13].

9.    On May 9, 2024, , Natalie sent the following text to Kimberly Katsarsky Buckman ("Kimi"), encouraging Kimi "not to allow" – that is, to delay – Defendants from taking her deposition until Natalie authorized it. See Exhibit A, which includes a true and correct copy of Natalie's May 9, 2024 text message to Kimi.

10.    On May 17, 2024, Plaintiff's counsel sent me an email about Plaintiff's Requests for Production of Documents. In response, I sent Plaintiff's counsel an email asking about the scheduling of depositions. On May 21, 2024, in response to my email, Plaintiff's counsel sent me an email confirming his refusal to allow Plaintiff's deposition to proceed while any motions to dismiss were under consideration and stating his inability to schedule any depositions before June 24, which would be after the response date for Plaintiff's Request for Production of

Documents. Attached as Exhibit E is a true and correct copy of this email chain between Plaintiff's counsel and me.

11. Defendants prepared subpoenas in January 2025 and again checked with Plaintiff's counsel regarding dates for scheduling depositions.

12. On February 16, 2025, I emailed Carl Pitre about his deposition, which was then scheduled for February 27. Attached as Exhibit F is a true and correct copy of the email from me to Carl, and the subsequent email chain. (Pages N00835 from Natalie's document production.) On February 17, Carl emailed Plaintiff's counsel, with copies to Natalie and Tamara, asking "Next step?" Regarding this case, Plaintiff's counsel replied, "The depo notice that I have is in the federal case here. If he serves you with the subpoena, you need to appear."

13. Service of the subpoenas on each of these witnesses required multiple attempts. For example, in 2025, Defendants made 15 service attempts on Tamara Buchwald, plus two stake-outs as multiple process servers advised defense counsel that Ms. Buchwald was evading service.

14. Through March 2025, Kimi continued to maintain that Defendants' attempt to take her deposition was "premature" because there were motions pending in the case. Attached as Exhibit G is a true and correct copy of the email I received from Kimi setting forth this position.

15. At her deposition, Kimi testified, "I was available for my first

deposition. I chose not to come." Attached as Exhibit H is a true and correct copy of excerpts of the deposition transcript of Kimi's deposition.

16.     At her deposition, Qunyh Vu stated she had only 3 texts with Natalie, none of which she had produced in response to the subpoena. When questioned about the content of the texts and asked to read them, Ms. Vu disclosed a fourth text from Natalie, which she read out loud; in this text, Natalie told Ms. Vu that she "did not have to" appear for her deposition after June 6.

17.     When Defendants initially contacted Carolyn Watanabe to schedule her deposition, Ms. Watanabe indicated she did not want to be deposed because she feared that Natalie would "make things bad" for Plaintiff if she did.

18.     Not only were the subpoenas very difficult to serve on the witnesses in this case, the depositions in this case were also extremely difficult to schedule, in part because of all the scheduling conflicts claimed by Plaintiff's counsel. Although the depositions were scheduled to work around these conflicts so Plaintiff's counsel could attend, Mr. Wilson left nearly all of these depositions after the first hour - and did not even attend Matt's deposition on June 20.

19.     Other than Carl, none of these witnesses who were served with the subpoenas issued in February complied with them, and they failed to attend the depositions rescheduled to March at their requests.

20.     Notwithstanding the Court's May 7 Order directing Matt to appear for

his deposition, Matt again failed to appear.

21.    On June 20, 2025, Matt appeared for his deposition, accompanied by Kimi. Matt answered a few questions, but then tried to have Kimi answer questions on his behalf. Kimi is not a lawyer and Defendants are not seeking further testimony from her at this time (her deposition has already been given in this case, and she, unlike Matt, has no personal knowledge of any of the transactions or events).

22.    On or after June 6, in response to the Court's Order compelling discovery, Plaintiff's attorney produced supplemental responses that claimed, for seventy (70) of the requests, including categories seeking texts, emails, and estate documents, that Plaintiff simply has "no" responsive documents. Attached as Exhibit I are true and correct copies of the supplemental responses.

23.    On June 18, 2025, the day before the completion of her deposition, Natalie made a supplemental document production (in response to the subpoena issued to her in February, and for which an OSC had to be obtained to gain compliance).

24.    These late-produced documents show that there are, in fact, documents responsive to many categories of the RPOD that Plaintiff has never produced, such as: emails between Richard Wilson and Tamara Buchwald, emails between Richard Wilson and other third parties, a letter from Plaintiff's doctor

stating his opinion that she should only be deposed for one hour every other day, and an interview of Plaintiff conducted before a court reporter in January 2024 related to the facts surrounding the now-disputed transactions - among , presumably, many others. Plaintiff did not disclose these documents nor did she indicate that they had been lost or destroyed. Neither Plaintiff nor her counsel provided an affidavit detailing what steps he took to try to locate responsive documents.

25.    Ms. Buchwald is named as the successor trustee in Patricia's 2022 Trust Amendment, and was named as a Plaintiff in an initial draft of Plaintiff's Complaint, which is consistent with an email Natalie sent in January 2024 explaining "Pat will resign as trustee and Tamara will take over. . . ."  See Exh. C, page 569 for the draft complaint.

26.    On June 18, Plaintiff's counsel met and conferred in person with myself and my co-counsel regarding Plaintiffs' inadequate responses. Plaintiff's counsel stated that there simply were no responsive documents to the entire Third RPOD, that he had looked on Pat's computer (which I subsequently learned was actually Natalie Pitre's computer, which Natalie has testified is the only location where Plaintiff's email accounts can now be accessed), but found virtually no emails. Plaintiff's counsel also reaffirmed the statements he had made in an email sent the day before, to the effect that because Plaintiff's iphone was "lost" during

this litigation, and Plaintiff "no longer has the phone number which [Defendants] identified ... there are no texts or other electronic communications to be produced." A true and correct copy of the email chain between Plaintiff's counsel and Defendants' counsel regarding this meet and confer is attached as Exhibit N.

27.    Plaintiff's phone number was changed about a year after this case was filed, and only after Defendants had served Requests for Production, seeking Plaintiff's texts and electronic communications. To Defendants' knowledge, Plaintiff and her counsel have made no attempts to recover the texts that are now missing (or destroyed?).

28.    At her deposition on June 19, Natalie testified that the only means Plaintiff currently has to access Plaintiff's email is on Natalie's computer, and Natalie gets them for her. Natalie also testified at her deposition that she deletes emails from Plaintiff's accounts, using her discretion about what constitutes "junk," and she has made no effort to retrieve any emails that have been deleted from Plaintiff's accounts. Attached as Exhibit J are true and correct copies of excerpts from the deposition transcript of Natalie Pitre.

29.    Plaintiff did not timely respond to either of Defendants' two sets of Interrogatories. Plaintiff's counsel initially claimed answering the questions was "way above Plaintiff's pay grade," which curiously contrasts with the detailed factual allegations made in the Complaints filed on Plaintiff's behalf in this case.

When those responses and other discovery was discussed during a conference with the court, Ms. Ing informed me the court would not provide a blanket extension for discovery, but would consider requests on a case-by-case basis.

30. Despite repeated promises to provide a verification, Plaintiff's counsel has still not provided one, nor have Plaintiffs served a response with the required factual specificity.

31. Although Tamara Buchwald testified she is a licensed attorney, an active member of the Bar of the District of Columbia, and is currently working in the litigation department of Cohen Milstein, serving process on Tamara took 8 months. In 2025 alone, the process servers made 15 attempts to serve her at her residence plus two stake-outs. After the second 2025 stake-out, Tamara was finally served (though even on that occasion she literally ran from the process server). Attached as Exhibit K is a true and correct copy of a picture the process server sent me of Tamara running from the process server after being served; indeed, Tamara acknowledged running away at her deposition

32. After being served, Tamara requested a continuance of her deposition, so she was not deposed until June 5, 2025, due to scheduling issues.

33. Before this case was started (back in September 2023), I sent Tamara an email reminding her of her "obligation to preserve" materials that could be relevant to any future litigation, "including electronic files, electronically stored

and retained information, or ESRI." Attached as Exhibit L is a true and correct copy of the email I sent Tamara regarding retention of electronic materials. *See also* Exh. E, T. Buchwald Depo., 123:14-125:3.

34.    At her deposition, Tamara acknowledged she was "very aware" that attorneys have obligations to preserve evidence, including ESI and other documents that could be relevant to claims in litigation. See Exh. E, T. Buchwald Depo., 126:9-13. Nonetheless, at her deposition, Tamara testified she "delete[s] everything," she "delete[s] most E-mails", and she did not do anything like contact her email server to try to find responsive emails that had been deleted. See Exh. E, T. Buchwald Depo.,14:13-15:15. In fact, Tamara testified she had deleted emails between herself and Plaintiff's estate attorney Steven Reese, including emails that were sent in October 2023. See Exh. E, T. Buchwald Depo., 245:3-17. Tamara testified she "[doesn't] recall" and "[doesn't] know" if she ever communicated with Plaintiff's counsel outside of the one day in this case when Tamara appeared at Plaintiff's deposition, but stated that if she received any emails from Plaintiff's counsel, she "would have deleted them." See Exh. E, T. Buchwald Depo., 21:14-22:18, 49:22-50:4. Regarding emails with Plaintiff, Tamara stated she "can't recall right now" if she and Plaintiff had exchanged emails in the last two years, but she "could have deleted them." See Exh. E, T. Buchwald Depo., 19:2-9. Tamara also indicated that she had made no attempt to retrieve the ESI that she had deleted

because she does not consider attempting to retrieve deleted emails to be part of a "reasonable search" as required by the subpoena. See Exh. E, T. Buchwald Depo., 15:5-15.

35.    At her deposition, Tamara also was asked if she had ever worked with Plaintiff on changing her estate plan or her trust documents, to which she responded, "Not that I could recall sitting here today." See Exh. E, T. Buchwald Depo., 63:15-18. Tamara also testified "I don't think I ever drafted a trust for [Plaintiff]" and "I don't think I ever revised a trust for [Plaintiff]." See Exh. E, T. Buchwald Depo., 117:1-15.

36.    However, in 2019 Tamara emailed Plaintiff and Natalie a copy of a new draft of Plaintiff's trust, which Plaintiff authorized forwarding to me in 2023. Attached as Exhibit M is a true and correct copy of the email and the attached draft trust that Plaintiff received from Tamara.

37.    Tamara did not produce this email, or the related trust document, in response to the subpoena.

38.    When asked at her deposition to provide examples of the behavior of which she has accused me, Tamara testified she "[couldn't] think of anything now. But I'm sure if I sat long enough and went back to my journals, I can think of something." Exh. E, T. Buchwald Depo., 181:7-17. Tamara testified that she has been "journaling since [she's] been 14, off and on," but then claimed that she

"probably" did not have any journals in the last 5 years and "definitely not" in the last two years because "they're destroyed." Exh. E, T. Buchwald Depo., 182:1-183:1. While Tamara testified that the journals would refresh her recollection about what had occurred, Tamara did not produce the journals, nor did she produce any excerpts; rather, she claimed she had destroyed them.

39.    Although the discovery period closed on June 6, 2025, Ms. Pitre's counsel has continued to produce evidence since that date, including significant documents showing that Plaintiff and her counsel improperly withheld documents from production earlier, such as the documents that Plaintiff's agent Natalie did not produce until June 18.

Plaintiff also failed to produce texts, based on "non-availability" due to Natalie having changed Plaintiff's phone type and phone number after Plaintiff filed this case. See Exh. N. However, Defendants have received from other parties some texts sent by Plaintiff, so they know responsive texts did (at one time) exist; indeed, one text was from Plaintiff to Mark the day before the Back House deed was signed, and showed that Plaintiff wanted to deed the Back House to Mark pursuant to the Brother's Agreement "Now I have Matt taken care of by you and by me with small house . . . thanks so much for stepping up to be your brothers keeper!!!!'   As u and I both know Matt is very poor $$$$$manager.. A true and correct copy of this text is attached hereto as Exhibit O.

40.    Plaintiffs' response also fails to include a declaration or affidavit explaining what searches were undertaken to locate responsive documents, how responsive documents and ESI have been lost or destroyed, and whether any steps were taken to retrieve that missing evidence.

41.    At her deposition on June 19, Plaintiff's agent Natalie testified that she had made no effort to retrieve Plaintiff's deleted emails and said she "doesn't even know how to do that."

I hereby declare under penalty of perjury under the laws of the United States that the facts recited above are true and correct.

Executed in Elk Grove, California, on June 30, 2025.


/s/ Mark F. Buckman
MARK F. BUCKMAN