**From:** Richard WIlson <rewilson_law@yahoo.com>
**Subject: draft complaint**
**Date:** January 8, 2024 at 12:28:50 PM HST
**To:** Natalie Pitre <nataliebpitre@gmail.com>, Tamara Buchwald <tambuchwald@aol.com>
**Reply-To:** Richard WIlson <rewilson_law@yahoo.com>

FYI, comments?


Richard E. Wilson
735 Bishop St., Ste. 306
Honolulu, HI 96813

rewilson_law@yahoo.com
Direct -- 808.545.1311
Fax -- 808.545.1388

CONFIDENTIALITY NOTICE:  The information contained in this email and any attachments may be privileged, confidential and protected from disclosure.  Any disclosure, distribution or copying of this email or any attachments by persons or entities other than the intended recipient is prohibited. If you have received this email in error, please notify the sender immediately by replying to the message and deleting this email and any attachments from your system. Thank you for your cooperation.

N000570

**EXHIBIT C**

**From:** Natalie Pitre <nataliebpitre@gmail.com>
**Subject: Re: changes made to Pat Buckman's life insurance by Mark Buckman**
**Date:** January 4, 2024 at 1:18:29 PM HST
**To:** Richard WIlson <rewilson_law@yahoo.com>
**Cc:** Tamara Buchwald <tambuchwald@aol.com>

Aloha, Rich,

Attached below is the Life insurance changes made by my brother Mark.

Can we please schedule my mother's court reporter interview for this coming Tuesday or Wednesday?

I'm going to call you now.

On Jan 3, 2024, at 9:19 AM, Richard WIlson <rewilson_law@yahoo.com> wrote:

Richard E. Wilson
735 Bishop St., Ste. 306
Honolulu, HI 96813

rewilson_law@yahoo.com
Direct -- 808.545.1311
Fax -- 808.545.1388

CONFIDENTIALITY NOTICE: The information contained in this email and any attachments may be privileged, confidential and protected from disclosure. Any disclosure, distribution or copying of this email or any attachments by persons or entities other than the intended recipient is prohibited. If you have received this email in error, please notify the sender immediately by replying to the message and deleting this email and any attachments from your system. Thank you for your cooperation.

N000559

Of Counsel:
Law Offices of Richard E. Wilson, LLC

RICHARD E. WILSON      5614
850 Richards Street, Suite 600
Honolulu, Hawaii 96813
Telephone (808) 545-1311
Facsimile (808) 545-1388

Attorney for Plaintiffs

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAII

| | |
|---|---|
| PATRICIA W. BUCKMAN, TAMARA BUCHWALD as Trustee of the PATRICIA W. BUCKMAN REVOCABLE TRUST; PATRICIA W. BUCKMAN REVOCABLE TRUST<br><br>Plaintiffs,<br><br>vs.<br><br>MARK F. BUCKMAN Individually, and as TRUSTEE OF THE MARK F. BUCKMAN TRUST; MARK F. BUCKMAN TRUST; JENNIFER BUCKMAN; JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATIONS 1-10; DOE PARTNERSHIPS 1-10; and DOE GOVERNMENTAL AGENCIES 1-10,<br><br>Defendants. | ) Civil No. _____<br>)<br>) COMPLAINT; DEMAND FOR JURY TRIAL;<br>) SUMMONS<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

_____

## COMPLAINT

Plaintiffs Patricia W. Buckman and the Patricia W. Buckman Revocable Trust, by and through her counsel, Law Offices of Richard E. Wilson, LLC, hereby alleges and avers the following complaint against the above-named Defendants as follows:

1.  Plaintiff Patricia W. Buckman is a resident of the City and County of Honolulu, and currently resides at 3010 Kaunaoa St., Honolulu, Hawaii 96815. Tamara Buchwald is the Trustee of the Plaintiff Patricia W. Buckman Revocable Trust (the "2019 Trust").

N000560

2.      Defendant Mark F. Buckman ("M. Buckman") is a resident of the State of California, and currently resides at 8359 Elk Groce Florin Road, Sacramento, California 95829. M. Buckman is the Trustee of Defendant Mark F. Buckman Trust ("MB Trust").

3.      Defendant Jennifer Buckman ("J. Buckman") is also a resident of the State of California, and currently resides at 8359 Elk Groce Florin Road, Sacramento, California 95829. On information and belief J. Buckman is the wife of M. Buckman.

4.      Defendants JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATIONS 1-10; DOE PARTNERSHIPS 1-10; and DOE GOVERNMENTAL AGENCIES 1-10 are persons, partnerships, corporations, associations, governmental units, trusts or entities whose names, identities, capacities, activities and/or responsibilities are presently unknown to Plaintiff and his attorneys despite diligent and good-faith efforts to ascertain their true names, identities and capacities, who may be, or are, responsible and/or liable to Plaintiffs (individually or collectively) for the injuries and damages sustained by Plaintiffs by acting in a negligent, wrongful and/or tortious manner presently unknown to Plaintiff which proximately caused and/or contributed to the damages sustained by Plaintiffs.  Accordingly, Plaintiffs have sued the unidentified Doe Defendants herein with fictitious names pursuant to Rule 17(d) of the Hawaii Rules of Civil Procedure.  Plaintiffs will seek leave of Court to amend this Complaint to allege the true names of the Doe Defendants and describe their activities, responsibilities and/or capacities when the same is ascertained.

5.      The Plaintiff is 85 years old and M. Buckman's mother.  The Plaintiff has two other children, Natalie Pitre ("Natalie") and Matt Buckman ("Matt").  Matt Buckman has a son, Duke, aka, Manoa.

6.      The Plaintiff through the Plaintiff Trust owns real property located at 3010 Kaunaoa St., Honolulu, Hawaii 96815 ("Trust Property").   The property is a two-lot condominium with homes on each lot.  The Plaintiff currently resides in the front house – TMK (1) 3-1-24-43-1.  Natalie and her family currently reside in the rear house – TMK (1) 3-1-34-43-2.

7.      Since approximately 2016, M. Buckman had been essentially estranged from his family.  He was living in California, and rarely came to Hawaii or contacted his family.

8.      The Plaintiff never intended for M. Buckman to receive any of her real property after her death.  In a 2011 amended to her 2006 Trust, the Trust Property was to be held in favor

N000561

of Manoa (the front house) and Matt (the rear house). The remainder of the Trust assets was to be split 1/3 each among Matt, Natalie, and M. Buckman. M. Buckman was to be Trustee upon Plaintiff's death.

9. M. Buckman was unhappy with how the Plaintiff intended to dispose of her estate. As he said in a January 29, 2015 email,

> "Why aren't you dividing things equally, 1/3 to Matt, 1/3 to me, 1/3 to Natalie? I can see I'm getting the short end of the stick. When you depart from equally dividing things, you're playing favorites. That makes me feel bad, but it's your choice."

He ended the email, stating:

> "I'm disappointed by your ignoring my previous advice. I have reached a point in my life that I do not work with people that cannot take advice, it's simply a waste of time for me and them. There are other problems in your proposal, but no sense in my commenting on them if the comments would simply be ignored. Given the circumstances and that you have disregarded my previous advice, I'm unwilling to be the administrator. Please choose a neutral third party, like a trust attorney.

> You might want to hire a good estate attorney and try to take care of the problems before they become a permanent rift in your family."

10. In early 2016, M. Buckman returned to Honolulu, and decided to fix up another property owned by the Plaintiff located at 714 16th Ave. #B for eventual sale. The Plaintiff and M. Buckman neither discussed nor agreed that M. Buckman would be compensated for any of the work or share in any profits from the sale of the property. Plaintiff presumed that M. Buckman was trying to make amends and be a good son. On July 8, 2016, 714 16th Ave. #B went on the market for $1,588,000.00. Six months later it sold for $1,200,000.00, and the sale closed on January 5, 2017.

11. Following the sale, the Plaintiff reimbursed M. Buckman for the money he spent on the remodel. M. Buckman then demanded an additional $100,000.00 compensation for the work he performed. As there was no agreement, the Plaintiff refused. M. Buckman became angry, and refused to communicate further with her.

12. On June 2, 2017, M. Buckman wrote:

> "Family is a word with meeting, it's also a two-way street of helping. Real family just helps each other – as I do my mom... I'll carry on letting my actions speak louder than words… Over and out."

M. Buckman had little further contact with the Plaintiff or his siblings. Although Natalie occasionally communicated with M. Buckman and J. Buckman on family matters, both M.

N000562

2

Buckman and J. Buckman told her that they wanted nothing to do with her, their family, and that they had no intention of being further involved with them.

13.    In 2019, the Plaintiff prepared a new Trust (the "2019 Trust"). In the 2019 Trust, the rear house was to be held in trust in favor of Matt. Upon his death or the sale of the rear house, monies were to be distributed to several beneficiaries. M. Buckman and J. Buckman would split any remaining funds with Natalie and her husband. Manoa would still receive the front house upon the Plaintiff's death. M. Buckman was also removed as Trustee and replaced by Natalie.

14.    In September 2022, the Plaintiff amended the 2019 Trust. By this amendment, Manoa would receive the rear house, Natalie would receive the front house upon the Plaintiff's death. Any residual Trust property was to be split between M. Buckman and Natalie.

15.    On June 19, 2023, Natalie informed M. Buckman and J. Buckman in a text that Matt would be staying in the back house, and she would be staying in the front house after the Plaintiff dies. Three days later, Natalie told M. Buckman that the Plaintiff had updated her Trust. M. Buckman was furious upon learning that he would not be receiving any real property, and that Manoa would get the rear house and Natalie would receive the front house upon the Plaintiff's death. He exclaimed, "Is that all I'm getting?" He demanded a copy of the Plaintiff's updated Trust.

16.    On June 27th, M. Buckman again demanded a copy of the Plaintiff's Trust.

17.    On July 5th, he reiterated his demand for a copy of the Trust. Since neither the Plaintiff nor Natalie was inclined to provide him with a copy of the Trust, M. Buckman contacted the Plaintiff's attorney, Steven Reese, and asked for a copy of her Trust. Mr. Reese declined to provide him with a copy absent the Plaintiff's consent.

18.    Three days later, Natalie finally agreed to provide M. Buckman with a copy of the Trust. Shortly after receiving the copy, M. Buckman called Natalie, and demanded that she give him half of the front house. Natalie refused.

18.    On Saturday, July 15, 2023, M. Buckman and J. Buckman arrived in Hawaii. A few days later, M. Buckman called Natalie, and grilled her for over an hour about the amendments to the 2019 Trust.

19.    On July 24, M. Buckman texted Natalie:

N000563

> "We are in the midst of moving, so I don't have a lot of time and mental energy
> today.  I will give you a call tomorrow afternoon and we can talk things through."

Over the next several days, M. Buckman repeatedly pestered Natalie.  He claimed he was entitled to half of the front house, that he was being treated unfairly, and that he wanted her to agree to split it with him.  On August 3, M. Buckman set the following text to Natalie:

> "Hi Natalie, please get back to me by Sunday.  That gives you time to think about
> it and talk with Carl if you'd like."

On August 7, Natalie responded with a text of her own, telling M. Buckman in part that she was "not in the position to split the house with you."

20.    Angry that Natalie would not "split" the front house with him, M. Buckman and J. Buckman concocted a plan.  If they could not get the property by agreement, they would get it through deception.  They decided to take advantage of the Plaintiff's age, and her trust.  As part of their plan, both Defendants would attempt to reengage with the Plaintiff, regain her trust, and separate her from both Natalie and Matt.  This would allow M. Buckman to trick the Plaintiff into signing over her property.

COUNT I – <u>UNDUE INFLUENCE – DEED</u>

21.    Plaintiffs reassert and reallege the allegations set forth in paragraphs 1-20 as though fully set forth herein.

22.    On August 10, 2023, at approximately 7:00 a.m., M. Buckman picked the Plaintiff up at her residence supposedly to take her to physical therapy.  However, the Plaintiff had canceled the physical therapy because she was sick with an infection, and wanted to stay home.  M. Buckman insisted that he take the Plaintiff out.

23.    M. Buckman knew that because of her age, the Plaintiff tended to get very tired after lunch.  For his plan to work, he counted on the Plaintiff being fatigued.  He also ensured that he and the Plaintiff would be alone, with no one to help her.

24.    On information and belief M. Buckman had prepared well in advance of their outing a warranty deed transferring the rear property from the Plaintiff Trust to his own trust.  His plan was to spring these documents on the Plaintiff when she was tired, and would likely ask few questions.  He hired a mobile-notary to meet him and the Plaintiff.

25.    At the end of the all-day outing, M. Buckman told the Plaintiff that she needed to sign some paperwork.  He did not tell the Plaintiff what she was signing; he simply insisted that she sign the documents before he would agree to take her home.  Since she was tired, feeling ill,

N000564

at the time had no reason to believe M. Buckman would swindle her, and because she wanted to go home, she signed several documents.

26. After signing the documents, the Plaintiff asked M. Buckman for copies of what she had signed. He refused to provide them to her.

27. The Plaintiff later discovered that one of the documents she had signed was a warranty deed on behalf of her trust, deeding the back house to M. Buckman. (Exhibit "1") This was contrary to the Plaintiff's 2019 Trust, and as amended in 2022. M. Buckman paid no consideration for the back house property, and did not inform his siblings of the deed. M. Buckman recorded the Warranty Deed on August 11, 2023. The Plaintiffs would only find out about the Deed two months later.

28. The Plaintiff did not intend to deed the back house out of her Trust to M. Buckman. It was her intent that the front house would go to Natalie upon her death. Had M. Buckman explained to the Plaintiff what she was signing, she never would have signed the deed.

29. In furtherance of his plan, and as a result of her refusal to give M. Buckman half of the front house upon the Plaintiff's death, on December 2, 2023, M. Buckman sent Natalie a 45-day eviction notice demanding she vacate the back house.

30. As a result of separating the Plaintiff from her family, and exercising undue influence over her, the Plaintiff mistakenly and unintentionally deeded the front house to M. Buckman. The Plaintiffs have been damaged in an amount in excess of the jurisdictional minimum of this Court.

COUNT II – <u>UNDUE INFLUENCE – MORTGAGE</u>

31. Plaintiffs reassert and reallege the allegations set forth in paragraphs 1-30 as though fully set forth herein.

32. Once again on September 24, 2023, M. Buckman succeeded in separating the Plaintiff from her family.

33. As he did on August 10, 2023, he took the Plaintiff on an all-day outing. He had previously prepared the mortgage for the front property, and retained the same mobile-notary. Late in the afternoon, he told the Plaintiff that she had to sign several additional documents. He did not explain what they were for, or inform her of their contents. She signed whatever he demanded her to sign.

N000565

6

34.    One of the documents which M. Buckman had the Plaintiff sign was a mortgage on the front house in the amount of $235,695.00.  (Exhibit "2")  The Plaintiff received no consideration for the mortgage.  Although the mortgage references a "note", the Plaintiff does not know whether she executed a note in M. Buckman's favor.  He has refused to provide the Plaintiffs with copies of everything she signed.

35.    The Plaintiff received no consideration for the mortgage.

36.    M. Buckman took total advantage of the Plaintiff.

37.    As a result of separating the Plaintiff from her family, and exercising undue influence over her, the Plaintiff mistakenly and unintentionally executed a mortgage on the front house to M. Buckman.  The Plaintiffs have been damaged in an amount in excess of the jurisdictional minimum of this Court.

COUNT III – <u>FRAUD (FAILURE TO DISCLOSE)</u>

38.    Plaintiffs reassert and reallege the allegations set forth in paragraphs 1-37 as though fully set forth herein.

39.    Before demanding that the Plaintiff sign the documents, including the mortgage and warranty deed, M. Buckman failed and refused to disclose the contents of those documents. Instead, he simply told the Plaintiff that these documents were "necessary" or word to that effect.

40.    M. Buckman had a duty to disclose to, and inform the Plaintiff of the exact nature and effect of the documents which he demanded she execute.

41.    M. Buckman knew that had he been honest with the Plaintiff about the nature of the documents, she would not have signed the warranty deed or mortgage, as both were contrary to her wishes set forth in her 2019 Trust, as amended, a copy of which he had already been provided.  He also knew that the Plaintiff was unaware of the nature of any of the documents.

42.    As a result of the foregoing, Plaintiffs have been damaged in an amount in excess of the jurisdictional minimum of this Court.

COUNT IV – <u>FRAUD (CONSTRUCTIVE)</u>

43.    Plaintiffs reassert and reallege the allegations set forth in paragraphs 1-42 as though fully set forth herein.

44.    As the Plaintiff's eldest son, he enjoyed a special/confidential relationship with the Plaintiff.

N000566

7

45. Plaintiff relied on M. Buckman's representations that what she was signing was simply "necessary" for him.

46. Because of his special/confidential relationship with the Plaintiff, M. Buckman was obligated to explain to the Plaintiff the nature and effect of the documents which he was demanding that she sign.

47. M. Buckman used his special/confidential relationship with the Plaintiff to defraud her out of part of her property, as well as having her place a mortgage of the rest of it.

48. As a result of the foregoing, Plaintiffs have been damaged in an amount in excess of the jurisdictional minimum of this Court.

COUNT V – <u>CONSTRUCTIVE TRUST</u>

49. Plaintiffs reassert and reallege the allegations set forth in paragraphs 1-48 as though fully set forth herein.

50. The property fraudulently deeded and mortgaged to M. Buckman belongs to the Trust, and was wrongfully taken from it by Defendants. Any money or proceeds generated from the use of the Property was likewise wrongfully taken from the Trust. Defendants are unjustly benefiting and unjustly profiting from their wrongful conduct by retaining title to the Property and via the mortgage.

51. M. Buckman holds title to the Property in trust for the Trust. The Trust is entitled to have title to the Property conveyed to it, as well as having the mortgage removed.

COUNT VI – <u>INJUNCTIVE RELIEF</u>

52. Plaintiffs reassert and reallege the allegations set forth in paragraphs 1-51 as though fully set forth herein

53. The Plaintiffs are entitled to a preliminary and permanent injunction preventing conveyance of title to the Property to a third-party or any liens or encumbrances from attaching to the Property.

54. Plaintiffs are entitled to injunctive relief to enjoin Defendants from engaging in further breaches of their fiduciary duties.

55. Plaintiffs are entitled to a preliminary and permanent injunction relinquishing control of the Property.

WHEREFORE, Plaintiffs demand judgment in their favor against Defendants, jointly and severally, as follows:

N000567

A.  Awarding Plaintiff compensatory damages against Defendants in an amount to be determined at trial together with prejudgment interest at the maximum rate allowable by law;

B.  Awarding Plaintiff punitive damages against Defendants in an amount to be determined at trial; and

C.  Enjoining the Defendants from selling, encumbering, or otherwise transferring the Property;

D.  Placing the Property into a constructive trust for the benefit of the Plaintiff and her Trust;

E.  An order nullifying the deed, reconveying the Property back to the Trust;

F.  An order striking and releasing the mortgage; and

G.  Granting such other and further relief, legal, equitable and/or declaratory, as this Court may deem just and proper.

DATED:  Honolulu, Hawaii, June 18, 2025.

_____/S/ Richard E. Wilson_____
RICHARD E. WILSON

Attorneys for Plaintiffs

N000568

9

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAII

| | |
|---|---|
| PATRICIA W. BUCKMAN, TAMARA BUCHWALK as Trustee of the PATRICIA W. BUCKMAN REVOCABLE TRUST; PATRICIA W. BUCKMAN REVOCABLE TRUST | ) Civil No. _____ ) ) ) DEMAND FOR JURY TRIAL ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) |
| MARK F. BUCKMAN Individually, and as TRUSTEE OF THE MARK F. BUCKMAN TRUST; MARK F. BUCKMAN TRUST; JENNIFER BUCKMAN; JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATIONS 1-10; DOE PARTNERSHIPS 1-10; and DOE GOVERNMENTAL AGENCIES 1-10, | ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

_____

## DEMAND FOR JURY TRIAL

Plaintiffs Patricia W. Buckman and the Patricia W. Buckman Revocable Trust, by and through their counsel, Law Offices of Richard E. Wilson, LLC, hereby demand a jury trial on all matters so triable.

DATED: Honolulu, Hawaii, June 18, 2025.


_____/S/ Richard E. Wilson_____
RICHARD E. WILSON

Attorneys for Plaintiffs


N000569

**From:** Richard WIlson <rewilson_law@yahoo.com>
**Subject: questions**
**Date:** January 9, 2024 at 2:54:54 PM HST
**To:** Natalie Pitre <nataliebpitre@gmail.com>, Tamara Buchwald <tambuchwald@aol.com>
**Reply-To:** Richard WIlson <rewilson_law@yahoo.com>

For starters .....


Richard E. Wilson
735 Bishop St., Ste. 306
Honolulu, HI 96813

rewilson_law@yahoo.com
Direct -- 808.545.1311
Fax -- 808.545.1388

CONFIDENTIALITY NOTICE:  The information contained in this email and any attachments may be privileged, confidential and protected from disclosure.  Any disclosure, distribution or copying of this email or any attachments by persons or entities other than the intended recipient is prohibited. If you have received this email in error, please notify the sender immediately by replying to the message and deleting this email and any attachments from your system. Thank you for your cooperation.

N000575

1. State your name for the record.

2. How old are you?

3. Are you feeling okay?

4. Is your mind clear?

5. Are you prepared to answers some questions today?

6. Can you tell me where were are right now?

7. Is this your house?

8. What is the address?

9. Is this residence referred to as the front house?

10. Is there also a rear house?

11. Who lives in the front house?

12. Who lives in the rear house?

13. Is that how you want it?

14. How long has your daughter Natalie lived in the rear house?

15. What does Natalie do for you?

16. Is that important to you?

17. How so?

18. Do you want her to continue to be living in the rear house?

19. You have two other sons, is that correct?

20. Your oldest son is Mark, and his brother is Matt, right?

21. Matt has a son named Manoa, is that correct?

22. Where does Matt live?

23. Where does Mark live?

24. Who of your children would you say you are closest too?

25. Which one would you say you are the least close too?

26. Before last summer, how often would you see Mark?

27. Let me show you what we will attach to your statement as Exhibit 1.

28. Do you recognize it?

29. Is this the Trust that you prepared in 2019?

30. Is that your signature?

N000571

31. Does the Trust accurately reflect what you wanted to do with your property after you pass away?

32. In the 2019 Trust, you wanted the front house to be used to benefit your son Matt, is that correct?

33. And the rear house, you wanted to be held in trust for your grandson Duke, also know as Manoa, Matt's son, is that correct?

34. Did you want to give your son Mark any of your real property?

35. Why not?

36. And in 2022, you made some changes to your Trust, is that correct?

37. Let me show you what we will attach to your statement as Exhibit 1.

38. Do you recognize it?

39. What is it?

40. One of the changes was that you decided to give the front house to Natalie, is that right?

41. Why did you make that change?

42. Manoa would receive the rear house when you pass away, is that right?

43. Did anyone tell you to make these changes, or did you do them on your own?

44. Did Natalie ask you to give her the front house?

45. Did Natalie ever pressure you to give her the front house?

46. Did make any changes or amendments to your Trust since September 2022?

47. Do you still want Natalie to receive the front house and Manoa to receive the back house when you pass away?

48. Do you want Mark to get either the front house or the rear house when you pass away?

49. Why did you decide not to give Mark any of your real property?

50. Do you recall Mark taking you out alone last August and having you sign some documents?

51. Let me show you what he will mark as Exhibit 3, which says that it is a warranty deed.

52. On the last page is your notarized signature, do you see that?

53. Do you recall signing this.

N000572

54. The warranty deed says that you, on behalf of your Trust, gave the rear house to Mark – was that your intention?

55. How was it that you came to sign this warranty deed?

56. Do you recall the circumstances?

57. Did Mark explain to you what you were signing?

58. If he told you that if you signed this document, he would be getting the rear house out of your Trust, would you have signed it?

59. Was it your intent to give Mark the rear house?

60. Was it your intent that Mark should get the rear house after you pass away?

61. Did you prepare this warranty deed?

62. Did you ask Mark to prepare this warranty deed?

63. Did you ever tell Mark that you wanted to give him the rear house?

64. Let me show you what he will mark as Exhibit 4, which says that it is a mortgage on the front house.

65. On the last page is your notarized signature, do you see that?

66. Do you recall signing this.

67. How was it that you came to sign this mortgage?

68. Do you recall the circumstances?

69. Did Mark explain to you what you were signing?

70. If he told you that if you signed this document, you would be giving him a mortgage on the front house, would you have signed it?

71. Did you ever borrow money from Mark?

72. Did you prepare this mortgage?

73. Did you ask Mark to prepare this mortgage?

74. Did you ever tell Mark to prepare this mortgage on the front house?

75. Do you recall signing any other documents?

76. Did you ask Mark to give you copies of what you signed?

77. Did he?

78. Did Mark give you any money in exchange for signing over the deed to the rear house?

79. Did Mark give you any money in exchange for signing the mortgage?

N000573

80.    Let me show you what we will attach to your statement as Exhibit 5, which is a Petition for an Order for Protection on Behalf of Family or Household Member, do you remember seeing this?

81.    Do you recognize it?

82.    Did you ask Mark to do this on your behalf?

83.    It says you are an "incapacitated" adult, do you see that?

84.    Is that true?

85.    Did he tell you he was going to file this on your behalf?

86.    Did he get your permission to file this on your behalf?

87.

N000574

**From:** Richard WIlson <rewilson_law@yahoo.com>
**Subject: complaint**
**Date:** January 11, 2024 at 8:44:54 AM HST
**To:** Natalie Pitre <nataliebpitre@gmail.com>, Tamara Buchwald <tambuchwald@aol.com>
**Reply-To:** Richard WIlson <rewilson_law@yahoo.com>

Richard E. Wilson
735 Bishop St., Ste. 306
Honolulu, HI 96813

rewilson_law@yahoo.com
Direct -- 808.545.1311
Fax -- 808.545.1388

CONFIDENTIALITY NOTICE:  The information contained in this email and any attachments may be privileged, confidential and protected from disclosure.  Any disclosure, distribution or copying of this email or any attachments by persons or entities other than the intended recipient is prohibited. If you have received this email in error, please notify the sender immediately by replying to the message and deleting this email and any attachments from your system. Thank you for your cooperation.

N000587

**From:** Natalie Pitre <nataliebpitre@gmail.com>
**Subject: Mark Buckman, $500,000 mortgage on 3010A Kauna'oa Street**
**Date:** January 16, 2024 at 7:35:36 PM HST
**To:** Richard Rich WIlson <rewilson_law@yahoo.com>
**Cc:** Tamara Buchwald <tambuchwald@aol.com

N000600

**From:** Richard WIlson <rewilson_law@yahoo.com>
**Subject: complaint**
**Date:** January 19, 2024 at 4:11:10 PM HST
**To:** Natalie Pitre <nataliebpitre@gmail.com>, Tamara Buchwald <tambuchwald@aol.com>
**Reply-To:** Richard WIlson <rewilson_law@yahoo.com>

Here you go.


Richard E. Wilson
735 Bishop St., Ste. 306
Honolulu, HI 96813

rewilson_law@yahoo.com
Direct -- 808.545.1311
Fax -- 808.545.1388

CONFIDENTIALITY NOTICE:  The information contained in this email and any attachments may be privileged, confidential and protected from disclosure.  Any disclosure, distribution or copying of this email or any attachments by persons or entities other than the intended recipient is prohibited. If you have received this email in error, please notify the sender immediately by replying to the message and deleting this email and any attachments from your system. Thank you for your cooperation.

N000601

**From:** Richard WIlson <rewilson_law@yahoo.com>
**Subject: Order**
**Date:** May 10, 2024 at 12:51:21 PM HST
**To:** Natalie Pitre <nataliebpitre@gmail.com>, Tamara Buchwald <tambuchwald@aol.com>
**Reply-To:** Richard WIlson <rewilson_law@yahoo.com>

Read this one!  We need to add more facts to Jennifer's involvement in the scheme.  Huge WIN!

Richard E. Wilson
735 Bishop St., Ste. 306
Honolulu, HI 96813

rewilson_law@yahoo.com
Direct -- 808.545.1311
Fax -- 808.545.1388

CONFIDENTIALITY NOTICE:  The information contained in this email and any attachments may be privileged, confidential and protected from disclosure.  Any disclosure, distribution or copying of this email or any attachments by persons or entities other than the intended recipient is prohibited. If you have received this email in error, please notify the sender immediately by replying to the message and deleting this email and any attachments from your system. Thank you for your cooperation.

N000686

**From:** Richard WIlson <rewilson_law@yahoo.com>
**Subject: allegations about Jennifer**
**Date:** May 16, 2024 at 9:27:01 AM HST
**To:** Natalie Pitre <nataliebpitre@gmail.com>, Tamara Buchwald
<tambuchwald@aol.com>
**Reply-To:** Richard WIlson <rewilson_law@yahoo.com>

Ladies,

We need to allege facts that tie in Jennifer as part of the conspiracy to defraud Pat.  She was not there, did not prepare the deed and mortgage, and did not call the mobile notary.  But she did come to Hawaii with Mark, butter Mom up, *et cetera*.  Things she had never done in the prior several years.  Natalie -- so I need facts, when did she come to Hawaii the last time prior to August 2023.  What did she do differently with Pat?  We need to tell the story.  Let's get on this sooner rather than later.

Rich


Richard E. Wilson
735 Bishop St., Ste. 306
Honolulu, HI 96813

rewilson_law@yahoo.com
Direct -- 808.545.1311
Fax -- 808.545.1388

CONFIDENTIALITY NOTICE:  The information contained in this email and any attachments may be privileged, confidential and protected from disclosure.  Any disclosure, distribution or copying of this email or any attachments by persons or entities other than the intended recipient is prohibited. If you have received this email in error, please notify the sender immediately by replying to the message and deleting this email and any attachments from your system. Thank you for your cooperation.

N000687

**From:** Natalie Pitre <nataliebpitre@gmail.com>
**Subject: Re: Deposition no more than one hour every other day doctors note**
**Date:** May 21, 2024 at 8:26:22 AM HST
**To:** Richard WIlson <rewilson_law@yahoo.com>
**Cc:** Tamara Buchwald <tambuchwald@aol.com>

Rich,

My mother's doctor just wrote a note saying she should not be deposed for more than one hour at a time every other day.

I will send that to you when I receive it.

Mahalo,
Natalie B Pitre
808-927-9199
Sent from my iPhone


On May 7, 2024, at 9:20 AM, Richard WIlson <rewilson_law@yahoo.com> wrote:


lets get on a call.


Richard E. Wilson
735 Bishop St., Ste. 306
Honolulu, HI 96813

rewilson_law@yahoo.com
Direct -- 808.545.1311
Fax -- 808.545.1388

CONFIDENTIALITY NOTICE:  The information contained in this email and any attachments may be privileged, confidential and protected from disclosure.  Any disclosure, distribution or copying of this email or any attachments by persons or entities other than the intended recipient is prohibited. If you have received this email in error, please notify the sender immediately by replying to the message and deleting this email and any attachments from your system. Thank you for your cooperation.


On Tuesday, May 7, 2024 at 09:02:22 AM HST, Tamara Buchwald <tambuchwald@aol.com> wrote:


Hi Rich-

N000688

I received the below e-mail.  My understanding is that Mark has a motion to dismiss pending.  Don't we have to wait on the ruling of that before any depositions are scheduled?  Let me know how to respond or if I should respond?

Mahalo,
Tamara

Begin forwarded message:

**From:** Mark Buckman <markfbuckman@sbcglobal.net>
**Date:** May 7, 2024 at 8:25:58 AM MDT
**To:** Tamara Buchwald <Tambuchwald@aol.com>
**Subject: Deposition**

Dear Ms. Buchwald:

You were identified as a witness by Patricia Buckman in her lawsuit against Mark Buckman and Jennifer Buckman.  Therefore, we need to take your deposition in the time period July 15 - September 15. Thus, please send me a couple of selected time windows and we will move forward to set up your deposition at a mutually convenient time and location.

We will also be sending you a subpoena for documents and electronically stored information such as any estate related documents you reviewed or drafted, all communications or agreements between you and Patricia Buckman, Mark Buckman, and/or Natalie Pitre, all communications or agreements regarding Patricia Buckman's estate documents or will, all communications or agreements with anyone in the Buckman family regarding ownership of real estate, and all communications or agreements with anyone in the Buckman family in the last 10 years, among other items.  In the meantime, please make sure to preserve all of these documents and ESI.

Also, please inform me now if you intend to claim any sort of attorney / client privilege between yourself and Patricia Buckman (and the basis and extent of such claim) in response to deposition questions concerning your estate or trust document involvement with Ms. Buckman so we can get that matter addressed with the court prior to the deposition.

Regards,

Mark F. Buckman, Esq.

N000689

**From:** Richard WIlson <rewilson_law@yahoo.com>
**Subject: Fw: Second request for production of documents**
**Date:** May 30, 2024 at 3:11:43 PM HST
**To:** Natalie Pitre <nataliebpitre@gmail.com>, Tamara Buchwald
<tambuchwald@aol.com>
**Reply-To:** Richard WIlson <rewilson_law@yahoo.com>

Such bullshit


Richard E. Wilson
735 Bishop St., Ste. 306
Honolulu, HI 96813

rewilson_law@yahoo.com
Direct -- 808.545.1311
Fax -- 808.545.1388

CONFIDENTIALITY NOTICE:  The information contained in this email and any attachments
may be privileged, confidential and protected from disclosure.  Any disclosure, distribution or
copying of this email or any attachments by persons or entities other than the intended recipient
is prohibited. If you have received this email in error, please notify the sender immediately by
replying to the message and deleting this email and any attachments from your system. Thank
you for your cooperation.


----- Forwarded Message -----
**From:** Mark Buckman <markfbuckman@sbcglobal.net>
**To:** 'Richard WIlson' <rewilson_law@yahoo.com>
**Sent:** Thursday, May 30, 2024 at 02:56:25 PM HST
**Subject:** RE: Second request for production of documents


Hi Rich,


        Thanks for the email.



        I have not opened the previous email attachment with document demands as I hadn't agreed to e-
discovery and didn't want to deal with attachments.  But, I also have not received it by snail mail.  Do you
U.S. Mail serve the first set of inspection demands?



        I do appreciate receiving just an email saying it's been served, so thanks for that.  However, I would
prefer getting discovery by mail - I'll do the same for you.

N000690

Also, please keep in mind that I will be out of the county for almost a month (roughly June 8 through July 8) so will not be available for case related activities.

Regards,

Mark

**From:** Richard WIlson [mailto:rewilson_law@yahoo.com]
**Sent:** Thursday, May 30, 2024 5:23 PM
**To:** Mark Buckman
**Subject:** Second request for production of documents

FYI, two copies are being mailed today.

Richard E. Wilson
735 Bishop St., Ste. 306
Honolulu, HI 96813

rewilson_law@yahoo.com
Direct -- 808.545.1311
Fax -- 808.545.1388

CONFIDENTIALITY NOTICE:  The information contained in this email and any attachments may be privileged, confidential and protected from disclosure.  Any disclosure, distribution or copying of this email or any attachments by persons or entities other than the intended recipient is prohibited. If you have received this email in error, please notify the sender immediately by replying to the message and deleting this email and any attachments from your system. Thank you for your cooperation.

N000691

**From:** Richard WIlson <rewilson_law@yahoo.com>
**Subject: first amended complaint**
**Date:** June 9, 2024 at 2:52:19 PM HST
**To:** Natalie Pitre <nataliebpitre@gmail.com>, Tamara Buchwald <tambuchwald@aol.com>
**Reply-To:** Richard WIlson <rewilson_law@yahoo.com>

Check this one out.  It is starting to sing.


Richard E. Wilson
735 Bishop St., Ste. 306
Honolulu, HI 96813

rewilson_law@yahoo.com
Direct -- 808.545.1311
Fax -- 808.545.1388

CONFIDENTIALITY NOTICE:  The information contained in this email and any attachments may be privileged, confidential and protected from disclosure.  Any disclosure, distribution or copying of this email or any attachments by persons or entities other than the intended recipient is prohibited. If you have received this email in error, please notify the sender immediately by replying to the message and deleting this email and any attachments from your system. Thank you for your cooperation.

N000692

**From:** Richard WIlson <rewilson_law@yahoo.com>
**Subject: Re: First amended complaint**
**Date:** June 9, 2024 at 12:14:26 PM HST
**To:** Natalie Pitre <nataliebpitre@gmail.com>
**Cc:** Tamara Buchwald <tambuchwald@aol.com>
**Reply-To:** Richard WIlson <rewilson_law@yahoo.com>

here.


Richard E. Wilson
735 Bishop St., Ste. 306
Honolulu, HI 96813

rewilson_law@yahoo.com
Direct -- 808.545.1311
Fax -- 808.545.1388

CONFIDENTIALITY NOTICE:  The information contained in this email and any attachments may be privileged, confidential and protected from disclosure.  Any disclosure, distribution or copying of this email or any attachments by persons or entities other than the intended recipient is prohibited. If you have received this email in error, please notify the sender immediately by replying to the message and deleting this email and any attachments from your system. Thank you for your cooperation.


On Sunday, June 9, 2024 at 10:41:40 AM HST, Natalie Pitre <nataliebpitre@gmail.com> wrote:


Rich,
Are we all good?


Mahalo,
Natalie B Pitre
808-927-9199
Sent from my iPhone


On Jun 8, 2024, at 3:22 PM, Richard WIlson <rewilson_law@yahoo.com> wrote:


Comments?


Richard E. Wilson
735 Bishop St., Ste. 306
Honolulu, HI 96813

N000693