IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII


PATRICIA W. BUCKMAN, et al.,

        Plaintiffs,

  v.

MARK F. BUCKMAN, et al.,

        Defendants.

_____

Case No.:  1:24-cv-00129-MWJS-KJM



                Thursday, June 5 2025

                  2:06 p.m.

                Conducted Virtually




Job:  44980

Pages:  1 - 254

Reported by: Garrett Lorman

Olender Reporting                              (866) 420-4020
A Boutique Litigation Support Firm    Schedule@OlenderReporting.com

**EXHIBIT D**

Job 44986 Buchwald Depo

Patricia W. Buckman v. Mark F.Buckman                                    6/23/2025

Page 14

went through the subpoena and put the names in.

Q. So, you went one by one through the subpoena. If somebody was named on the subpoena, you would have searched for their name. Is that correct?

A. Not necessarily. Only the ones that I reasonably thought I might have documents for. Like I would never have anything to do with Jennifer Buchwald. I don't even know her.

Q. Uh-huh. And I think you mean Jennifer Buckman, correct?

A. Sorry. Buckman, correct.

Q. Okay, good enough. And do you do -- do you have any kind of E-mail retention policy? Could E-mails be deleted?

A. I delete everything. I don't keep anything for space issues.

Q. Okay. So, you delete all E-mails?

A. I delete most E-mails, correct. I read them, I delete them.

Q. Okay. And so, what did you do to try to locate E-mails that would have been responsive but

Job 44980 Buchwald Depo

Patricia W. Buckman v. Mark F.Buckman                                    6/23/2025

Page 15

are deleted?

A.  I have no idea.  They're not there.  I did a search.  I provided what I have in my control.

Q.  Okay.  Well, you know, a lot of times you can go up to your E-mail server.  That is the, you know, let's say, I think it's AOL in your case. Is that correct?

A.  Sure.

Q.  And you can ask them for -- or look through your account online to find deleted E-mails, that kind of thing.  Did you do anything like that?

A.  No, I did a reasonable search as required by the subpoena.

Q.  Okay.  So, even like -- are you talking about your policy for deleting E-mails personally, or is that the same you do in your legal work?

A.  It's my personal.  I don't have a policy personally.  I delete E-mails, Mark.

Q.  Okay.  And so, if like you E-mailed with my mom, you would delete those once you read them?

Job 44980 Buchwald Depo

Patricia W. Buckman v. Mark F.Buckman                                   6/23/2025

Page 19

to her on her 90th birthday last week.

Q.  Okay.  Have you exchanged any E-mails with my mom in the last -- since this case -- well, let's say in the last two years, going back to June, 2023.

A.  I can't recall right now.  I don't know. I didn't have any when I did a search, so I don't know.  I could have.  I could have deleted them. I don't recall.

Q.  So, have you ever communicated with Rich Wilson, like by E-mail or text in the last two years?

A.  I don't recall.

Q.  Okay.  Can you tell me you've never had any texts with Rich Wilson?

A.  I'm not saying I never had.  I said, I don't recall.  Please don't put words in my mouth.

Q.  I'm trying to understand though.

A.  I don't recall.  What don't you understand about I don't recall.

Q.  Please don't interrupt.  I'm asking another question.  And what we'll do is I'll try

Job 44580 Buchwald Depo

**Patricia W. Buckman v. Mark F.Buckman**                          **6/23/2025**

Page 20

to let you finish your answer.  If you could let
me finish my question, that'd be great.

A.  Okay.  That'd be great.

Q.  Thank you.  So, have you ever texted with
Rich Wilson?

A.  I don't recall.

Q.  Is there some reason why you wouldn't
recall that?

A.  Well, actually I could say probably not.
I don't recall.  I don't think so.

Q.  Okay.

A.  But, I don't want to speculate.  I want
to give you a hundred percent of the truth.

Q.  Okay.  And have you ever E-mailed with
Rich Wilson?

A.  Probably, but I don't -- I can't give you
any specifics on that either.

Q.  And what did you do?  What were those E-
mails about?

A.  I don't recall at all.

Q.  Why would you have been E-mailing him?

A.  I don't know.  I don't recall.  I can't

Patricia W. Buckman v. Mark F.Buckman                                6/23/2025

Page 21

tell you because I don't know what would be in the E-mails.

Q.  What are you communicating with Rich Wilson about, by E-mail, by voice, by text, any way two humans can communicate?  What have you communicated with him?

A.  We talk.  I don't know what we talk about.  We shoot -- we talk story.

Q.  You're talking story with my mom's lawyer?

A.  Well, I was in his presence at your mother's deposition, as you can recall.  So, of course we talk story, sure.

Q.  Besides being in his presence at that deposition day, have you ever communicated with Richard Wilson?

A.  I don't recall.  When I did the search, there was nothing for him.

Q.  I'm asking your memory though. Have you ever communicated with Mr. Wilson besides that day of the deposition that you were appeared in my mom's depo?

Job 44980 Buchwald Depo

Patricia W. Buckman v. Mark F.Buckman                                    6/23/2025

Page 22

A.  I don't know.

Q.  **You don't know if you've communicated with Mr. Wilson besides that one day?**

A.  No, I'm sure I don't know.  And again, you're making me speculate, Mark.  Don't you want the truth?  I don't know.  I don't recall.  That's my answer.

Q.  **Well, it's -- most opponents recall if they've communicated with somebody in the last two years.  So, that's why I'm having an issue with it.  So, I'm trying to get -- what could refresh your recollection about this?**

A.  Well, nothing, but you shouldn't have an issue with my answer.  You should ask the answer and accept -- ask the question and accept my answer.  Just because you have an issue with it, maybe you don't like it.  It doesn't matter.  That's my answer.  Move on.

Q.  **I'm saying it's an outlier to not remember what's happened last year.  So, I'm going to probe into that a little bit more.**

A.  I have a very busy life, Mark, a very

Job 44980 Buchwald Depo

Patricia W. Buckman v. Mark F.Buckman                                    6/23/2025

Page 49

sent two days ago --

A. Okay.

Q. -- in a legal matter.

A. Yeah.

Q. You were writing to an attorney --

A. Sure.

Q. --0 and you don't recall what you meant by saying none two days ago?

A. No, I'm telling you that you -- you know you're not asking me that. You're asking me if these documents ever existed to several questions where I responded none. That's not what you're asking. That's not how I'm interpreting your question.

Q. Okay. What did you do -- let's go to category 8, Richard Wilson. You said none.

A. I don't have any documents between me and Richard Wilson.

Q. Have you -- did you look for any documents between you?

A. Yes, I did. I don't have any.

Q. If you would have received E-mails from

Job 44586 Buchwald Depo

Patricia W. Buckman v. Mark F.Buckman                                          6/23/2025

Page 50

Richard Wilson, would have you saved them or deleted them?

A. No. I would have deleted them. They're not pertinent to me.

Q. Say again?

A. They're not pertinent to me.

Q. Why so? Aren't -- you're not helping my mom with this case in any way?

A. I am supporting your mother because I love her and I care for her and I feel sorry for her for what she's been through.

Q. But are you supporting her in this case by working with Mr. Wilson or working with Natalie to try to advance the case in any way?

A. I am not working. We've been over this before. Asked and answered. I'm not working in any legal manner for your mother in this case. I care for her and I love her and I feel for this wonderful woman who's worked her whole life to support you and your siblings and going through this at the end of her life.

Q. Uh-huh.

Job 44980 Buchwald Depo

Patricia W. Buckman v. Mark F.Buckman                              6/23/2025

Page 51

A.  It's abominable, Mark.  It's abominable.

Q.  Uh-huh.  Again, the ad hominem attacks, if you could restrain yourself.

A.  Okay.

Q.  Have you ever -- you said none to Richard Wilson.  Have you ever had anything that you would consider like a privileged communication with Richard Wilson where the attorney-client privilege might apply?

A.  Not that I recall sitting here today.

Q.  Okay.  Take a minute to think about that, though.  Have you ever had any type of communication with Richard Wilson where you thought the attorney-client privilege could apply, whether held by you or whether held by Pat Buckman or her estate?

A.  No, I'm not sure.

Q.  Do you believe you've ever communicated in a privileged way with Richard Wilson?

A.  I'm not sure.

Q.  I would like your answer.  Why are you unsure?

Job 44980 Buchwald Depo

**Patricia W. Buckman v. Mark F.Buckman**                                      **6/23/2025**

Page 54

question whether you love your mother doing what you're doing.

Q. Okay. So, whose voice was that talking a minute ago?

A. It was Rich's voice.

Q. Okay. So, you've talked with him. Have you ever talked with him on the phone?

A. Yeah. Didn't you see his mic go off when -- are you --

Q. Have you ever talked with Rich on the phone?

A. On the phone? I'm not sure. I think I might have, but I've talked to Rich in person.

Q. Uh-huh. And do you ever believe that you've ever communicated with Rich Wilson where my mom's attorney-client privilege or her trust's attorney-client privilege could apply?

A. I think you've asked that, and I don't recall sitting here today whether I have or not.

Q. Okay. Is -- have you ever discussed you possibly taking over this litigation as the successor trustee, like if my mom resigned under

Page 55

the 2022 trust, which again, we have a dispute whether that's active, but I'm asking the question.

A. I'm here and now, Mark. Your mom is alive. She's the trustee of her trust. I don't count on her dying anytime soon.

Q. Are you aware that my mom previously resigned as the trustee under her trust and Natalie took over as the acting trustee?

A. No, I didn't -- I mean, I recall that somewhat, but I don't know the details.

Q. Have you ever discussed with anybody, whether it was my mom, Natalie, Rich Wilson, Steve Reese, about my mom resigning as trustee and you taking over?

A. No, not that I know of.

Q. Okay.

A. Recall.

Q. Was there ever any discussion about my mom resigning as trustee and then you stepping in, in any context?

A. Not that I recall sitting here today.

Page 56

Q. Okay. And is there -- it's -- it seems that you don't recall a lot. Is that your typical memory or is this -- I'm trying to figure out if this is typical.

A. That's a little insulting, Mark. No, it's not my typical memory, but as I have a very busy life, this isn't a priority. Your mom is a priority and your mom's well-being to me is a priority, but I'm not -- until I'm actually a trustee, I would never spend the time to look at the documents.

Q. I'm asking you if there was a discussion in any form about my mom resigning and you taking over as successor trustee.

A. And I answered that already, and then you went and insulted my memory after that. So, no.

Q. The answer is no, there's never been a discussion. Is that correct?

A. No. The answer was, I don't recall sitting here at this time.

Q. Okay. And on category 9 of the subpoena, which generally concerned communications with

Page 57

Stephen Reese, you also said none. What do you mean by none in that instance?

A. I don't have any documents from Stephen Reese in my control, possession, or custody.

Q. Okay. But would you have deleted those E-mails if you ever had them?

A. Yeah, absolutely. Why would I take the space?

Q. Uh-huh. Does AOL limit the space of your E-mails?

A. My computer? I'm not sure, but it's quite an old system, so.

Q. If you would have communicated with my mom's estate attorney, don't you think it would be important to keep those communications to help you fulfill your success?

A. Why would it be important, in case her son comes and steals the land and I have to be deposed later? I don't think like that. I never thought this would happen.

Q. Could you please let me finish the question and not do the ad hominem attacks. I've

**Olender Reporting**                                      **(866) 420-4020**
**A Boutique Litigation Support Firm**          **Schedule@OlenderReporting.com**

Job 44980 Buchwald Depo

**Patricia W. Buckman v. Mark F.Buckman**                                    **6/23/2025**

Page 62

were looking to get documents for the subpoena?

A. What? Go to my recently deleted?

Recently deleted is recently deleted, Mark.

Q. How long of a time period?

A. Recently deleted. I don't know what the time period is, but I know it doesn't last long. But since it's June 5th and it was June 3rd that I responded to Louise and June 1st that you sent me that E-mail, there's a good chance it's in recently deleted.

Q. How many times have you communicated with Rich Wilson in the last month?

A. Probably maybe none. I don't know. None, probably.

Q. So, when I say communicated, I mean talking --

A. None.

Q. -- in person, on the phone, E-mail.

A. I haven't been in Hawaii.

Q. What?

A. I haven't been in Hawaii, so I haven't seen him in person.

Page 63

Q. But like in the last month, you haven't E-mailed or texted with Rich Wilson. Is that correct?

A. Not that I can recall sitting here today.

Q. We've talked about it a little bit, but I just think it's the last question in the area. Do you feel like besides being my mom's successor trustee, which that job hasn't come up yet, that you are my mom's agent in any way?

A. Absolutely not.

Q. Okay. And have you ever represented my mom in a legal matter, or have you ever provided my mom with legal advice?

A. No.

Q. Have you ever worked with my mom on changing her estate plan or her trust documents?

A. Not that I could recall sitting here today.

Q. What could you do to refresh your recollection?

A. Not sure.

Q. Uh-huh. Did you do anything before this

Page 64

depot to prepare and think about what you might have done as far as my mom's trust?

A. No.

Q. Okay. And when you say when sitting here today, it seems like you think you might be able to recall this at another date. Is there any reason why you wouldn't be able to recall answers today at your deposition?

A. No.

Q. So, today is probably the best chance to get your recollection on the matters I'm asking about, correct?

A. Not sure. I'm not sure.

Q. Can you tell me if there's any reason why you can't give your best testimony today?

A. I'm giving you my best testimony today. I just don't recall.

Q. Okay. And is there any reason why your memory would be less than its best today?

A. No, my memory's at its best today.

Q. Okay. You said that -- you kind of laughed or smiled about that. Is that a funny

Page 65

question to you?

A. I'm sorry?

Q. Is that a funny question for me to ask you.

A. Yeah, it's ridiculous, but go ahead.

Q. Okay. Because you think your memory is just as good as it will ever be today, correct?

A. You just -- it's ridiculous. You're harassing me, but it's okay. I'll take it.

Q. Could you just answer the question. Your memory is as good as it will be today, correct?

A. Correct.

Q. Okay. Can you tell me a little bit about your job history?

A. How is that relevant, Mark?

Q. We get it from all witnesses. We can ask about their background.

A. I also do want to reserve my right to object or appropriately object to preserve.

Q. Okay. You can object, and then the answer comes in subject to the objection.

A. Okay.

**Olender Reporting**                                    **(866) 420-4020**
**A Boutique Litigation Support Firm**          **Schedule@OlenderReporting.com**

Job 44980 Buchwald Depo

Patricia W. Buckman v. Mark F.Buckman                                        6/23/2025

Page 116

Natalie at present, as it could tend to undermine my mom's interest.  However, I can provide you documentary evidence for these issues, and we can try to sort things out.  Mark Buckman.

Do you recall receiving that E-mail in about September 19, 2023 from me?

A.  Perhaps.

Q.  Okay.  And what do you think when I say I can give you documentary evidence to show Natalie's, you know, misconduct?

A.  What's the question?

Q.  I'll ask a different question.  I told you, I don't think you have the authority to share with Natalie this information at present, because it could undermine my mom's interest.

A.  That's inaccurate.  What -- what -- that's -- what kind of obligation do I have to your mother?

Q.  Didn't you work with her as her attorney or give her legal advice on her trust?

A.  Never.  You keep asking the same question.  Never.  She has a trust attorney.

Patricia W. Buckman v. Mark F.Buckman                                    6/23/2025

Page 117

Q.  Did you ever draft any trust or revise any trust for her in about 2019?

A.  Not that I know of, no.  Not that I remember.

Q.  It seems like you'd say that's impossible by what you're telling me.

A.  Don't put words in my mouth.  Let me answer the question, Mark.

Q.  Would that be impossible, yes or no, that you drafted a trust for my mom?

A.  I don't think I ever drafted a trust for your mom.

Q.  Did you ever revise a trust for my mom?

A.  I don't think I ever revised a trust for your mom.

Q.  Did you ever meet and talk with my mom and/or Natalie about her trust and changing her trust?

A.  I might have, sure.  She probably just let me know what she wanted, yeah.

Q.  And why would you be having such a meeting?

Job 44980 Buchwald Depo

Patricia W. Buckman v. Mark F.Buckman                                6/23/2025

Page 118

A.  Because -- I don't know, because she wants to talk it through.  I'm your mom's sounding board.  Her other two kids aren't there for her.

Q.  **Would you consider that to be giving her any kind of legal advice?**

A.  Absolutely not.  I never gave your mom legal advice ever.  She could tell me anything she wants.  We're very close, Mark.

Q.  **Okay.**

A.  And it's so funny when, you know, I'm the one who ends up being by her at the end of her life as opposed to her son.

Q.  **Well, move to strike the last part.  I just disagree with you, but I'm not going to testify here.**

**So, when I say to the extent you provided any legal advice or drafting to my mom, your duty runs to my mom and not to Natalie.**

A.  I've never provided legal advice to your mother.

Q.  **Got it.**

A.  Never.

Job 44980 Buchwald Depo

Patricia W. Buckman v. Mark F.Buckman                          6/23/2025

Page 124

that you preserve all records in any way related to the work and/or advice you performed for my mother, Patricia Buckman and/or Natalie Petrie. Do you recall getting that from me?

A.  Actually, I don't recall specifically that one sitting here today.

Q.  Uh-huh.  This, of course, includes all E-mails, texts, or any other documents.  So, please make sure not only that you do not delete any of these materials, but they are preserved.  Do you remember getting such an E-mail from me?

A.  No, but boy were you -- yeah.  No, it's just -- why did you send that to me?  What were you planning, Mark?

Q.  I was planning for you to not delete further E-mails.  Did that seem unfair to you in a litigation?

A.  Yeah, it does.  Like that's a very odd request for you to reach out to someone you have nothing to do with to ask that.  That is very -- yeah, it's an odd request.

Q.  So you think it's odd for me to ask you

Job 44580 Buchwald Depo

Patricia W. Buckman v. Mark F.Buckman                              6/23/2025

Page 125

to preserve electronic evidence?

A.  Yeah, for what regard?  Yeah, sure.  I think it's very odd.

Q.  Did you think you had the obligation to preserve that evidence once you'd been put on notice?

A.  I probably didn't read it, actually.  I saw your name and I probably deleted it because I don't want anything to do with you.

Q.  Uh-huh.  And it goes on to say, I'm sure you can see the need for this given the situation and would probably already understand this, but I want you to confirm explicitly that you will honor your obligation to preserve these materials, including electronic files, electronically stored and retained information, or ESRI.  If any documents, files, or materials have been deleted or no longer exist, please inform me immediately.  Do you recall receiving that from me?

A.  No, not sitting here today.  I do not recall that.

Q.  If you had read that at the time, would

Job 44980 Buchwald Depo

Patricia W. Buckman v. Mark F.Buckman                                    6/23/2025

Page 126

you then have made sure not to delete any future

E-mails?

        A.   Sure.

        Q.   What?

        A.   Maybe, yeah.

        Q.   The word you said was sure, because I

didn't hear it.

        A.   Yeah, sure.  Sure.

        Q.   Okay.  And are you aware as an attorney

that we have obligations to preserve electronic

evidence and other documents that could be used in

litigation?

        A.   Yes, I'm very aware.

        Q.   And were you aware that there could be

litigation coming at this point in September 2023?

        A.   No, I had no idea you sold your mother's

houses.

        Q.   Uh-huh.  Non-responsive.  Move to strike

that portion.

                If you had received this in September

2023, did you say you didn't know about problems?

When did you first become aware of any issues my

Job 44980 Buchwald Depo

Patricia W. Buckman v. Mark F.Buckman                                6/23/2025

Page 127

mom had with her estate or trust or real estate?

A.  I don't recall, but I became aware.  I'm not sure, actually.  I don't know the dates.

Q.  Uh-huh.  Did you ever write to Steve Reese about the E-mails you received from me?

A.  I'm not sure.

Q.  Uh-huh.  I don't recall sitting here today.

A.  Have you ever talked with Steve Reese and said that it appeared that I was, you know, sending an incorrect authorization for my mom to release files or anything like that?

A.  I don't recall sitting here today.

Q.  Have you communicated with Steve Reese that idea in any way?

A.  I don't recall sitting here today.

Q.  And so, are you aware also that I forwarded you an E-mail that I had sent to Steve Reese on September 19, and it starts out, Aloha Steve.  As you know, I'm Patricia Buckman's middle child.  My mom and I called your office last month to speak with you and obtain information about

Patricia W. Buckman v. Mark F.Buckman                                    6/23/2025

Page 181

A.  Yeah, I do.  I do.

Q.  Okay.  And tell me any time I've been greedy that you know from personal experience, not Natalie saying it.

A.  I just, you know, I don't know what you --

Q.  Any time in the last forty years where you've seen I've been greedy?

A.  Oh, I think -- I don't know.  I can't think of anything now.  But I'm sure if I sat long enough and went back to my journals, I can think of something.

Q.  Okay.  Have you produced your journals if they have notes about you and I?

A.  They certainly don't have notes about you and I.  I would never.  I'm trying not to remember that.

Q.  But what are your journals?

A.  They're my personal journals.  No, absolutely not.

Q.  And you keep notes in there?

A.  No, I don't.

Job 44980 Buchwald Depo

Patricia W. Buckman v. Mark F.Buckman                                    6/23/2025

Page 182

Q.   What do you keep in your journals?

A.   Nothing.

Q.   Nothing.  So, you have journals about nothing?

A.   Yeah, pictures.

Q.   Uh-huh.  And so, how long -- how far did these journals go back?

A.   Oh, I don't know.  I've been journaling since I've been 14, off and on.

Q.   Okay.  And you still have those?

A.   No, probably not.  They're destroyed.

Q.   How old of journals do you have?

A.   I don't know.  I've written a journal once in a while.

Q.   How old of journals do you have?

A.   I don't know.  I don't know.  I don't write randomly, random pieces of paper.  I'm a writer.

Q.   Do you have them in the last five years?

A.   No, probably not.

Q.   Do you have any journaling that you've done in the last two years?

Job 44980 Buchwald Depo

Patricia W. Buckman v. Mark F.Buckman                          6/23/2025

Page 183

A.  No, definitely not.

Q.  Okay, hmm.  So, originally left in trust for Manoa Buckman.  When we hear that, does that refresh your recollection as to how it was going to be set up?

A.  Absolutely not.  I probably don't think two minutes about it.  I don't let this take up any part of my life.

Q.  Okay.  So it was left in a trust for Manoa Buckman, as you know, with the intention of taking care of Matt Buckman.  Does that refresh your recollection as to how it was structured and my mom's intent?

A.  No, but I obviously knew it then at that moment in time.

Q.  Uh-huh.  So, why are you writing to Steve about this matter?  It seems very unimportant to you, like you'll just forget it immediately.  You deleted the E-mail immediately.  Why are you even writing him then?

A.  Because I don't trust you.  I don't trust you in any regard.  I don't trust you.

Job 44980 Buchwald Depo

Patricia W. Buckman v. Mark F.Buckman                                    6/23/2025

Page 245

A.  I -- you know, I gave you everything I have.  I gave you everything I have.

Q.  Okay.  There's an obligation for you to -- in the E-mail that I quoted you, and I'll send it to you, that I told you to preserve your electronic evidence, don't delete E-mails, and you forwarded that E-mail itself to Steve Reese, but then you didn't produce us any E-mails with Steve Reese.

A.  I don't have them.  I don't have them. I've deleted them years ago.

Q.  But -- but you deleted it apparently right after receiving the E-mail that says don't delete anything because we have issues, legal issues have arisen.

A.  But I don't --  Mark, I don't have anything else.

Q.  I get it.  I get when you say that, but you do have an obligation to go back and check like your AOL or how to preserve because we actually get to find these documents.  If you're art of drafting my mom's trust --

Job 44980 Buchwald Depo

Patricia W. Buckman v. Mark F.Buckman                              6/23/2025

Page 246

A. That's part of drafting her texts. I was doing what she ever asked me to. I am not part of drafting anything. I did nothing in a legal capacity at all.

Q. **But I have an E-mail from you saying you've revised this trust.**

A. That's -- that's -- you do then. But I was not drafting everything. She has a trust lawyer, maybe to take it to her lawyer.

Q. **And when you're doing legal work, you have an obligation to preserve the paperwork.**

A. It's not legal work. I never held myself as a lawyer. She never paid me.

Q. **You don't have to be a lawyer.**

A. I'm not licensed in the state of Hawaii.

Q. **I agree with you on that. And so, that's why I questioned why you were doing such work.**

A. Because your mom -- anything you -- I am a loyal, loyal daughter, like whatever, Hanai daughter to her.

Q. **Can you tell me anything you've done for my mom that took you more than one day of effort,**