IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

PATRICIA W. BUCKMAN,        :   CIVIL NUMBER

PATRICIA W. BUCKMAN         :   24-00129 MWJS-KJM

REVOCABLE TRUST,            :

        Plaintiffs,         :

       Vs.                  :

MARK F. BUCKMAN, MARK       :

F. BUCKMAN TRUST,           :

JENNIFER BUCKMAN, JOHN      :

DOES 1-10; JANE DOES 1-10;  :

DOE CORPORATIONS 1-10;      :

DOE PARTNERSHIPS 1-10;      :

DOE GOVERNMENTAL            :

AGENCIES 1-10,              :

        Defendants.         :

_____:

     CONTINUED DEPOSITION OF NATALIE PITRE taken by the Defendants at the Law Offices of Dentons US LLP, 1001 Bishop Street, Suite 1800, Honolulu, Hawaii 96813 on June 19, 2025, commencing at 10:12 a.m. pursuant to Notice.

REPORTED BY:   Kathryn Plizga, RPR, CSR No. 497

RALPH ROSENBERG COURT REPORTERS, INC.

**EXHIBIT J**

A.   Three or four.

Q.   And how many times has Rich visited the house with you and Mom?

A.   Two or three.

Q.   Do you know if he's ever visited Mom without you being there?

A.   I don't think so.  She's got to be gotten ready and this and that.

Q.   Has Mom ever gone to Rich's office without you or spoken to Rich without being in your presence?

A.   I don't know if she's spoken to him on the phone.  She's never been to his office without me because I drive her there.  I get her ready and drive her there.

Q.   Without telling me what they communicated about, how does Mom usually communicate with Rich?  Is that by e-mail, text, phone or carrier pigeon?

A.   I would say in person or perhaps on the phone, but not through text or e-mail.

Q.   And does Mom have access to e-mail today like on a computer or something like that?

A.   She still has her gmail account.  But she doesn't really access that or have any interest in accessing that.

Q.   Where would she access that?

A.   She would use my computer.

Q.   So Mom signs into her e-mail from your computer?

A.   No, I would sign her in.

Q.   So, you have mom's credentials preloaded?

A.   Her gmail.

Q.   And what gmail accounts are those?

A.   Patriciawbuckman@gmail.

Q.   Any other accounts?

A.   There's another account, pbuckman@gmail. But we don't use that because it's just choked with junk mail.

Q.   Any other accounts in the last five years that Mom has had?

A.   Not that I'm aware of.

Q.   Did you set up one that has the number 35 in it, pbuckman35, something like that?

A.   I did, but we've never used it.

Q.   Why did you set that one up?

A.   Because I thought that you had the password to her e-mail. You've got the password to her e-mail and the bank account I think. Either I gave you the bank account or Carolyn did. Anyway, I thought that you had the passwords to her accounts.

Q.   Why didn't you just simply change the

RALPH ROSENBERG COURT REPORTERS, INC.

password?

A.   I eventually did change the password but I just had this uncomfortable feeling that you were still able to access it.

Q.   So when Mom was supposed to produce documents in this case, was that Mom looking through her e-mails to get that or was that you?

A.   Rich came over and looked.  I looked, Rich looked.

Q.   Did Mom look?

A.   Mom was there.  You know, I would ask her.

Q.   Did you look for those e-mails on your own without Rich being there?

A.   Rich came over and looked for them.

Q.   Could you just answer my question?

A.   Yeah, I looked for e-mails because he was asking for e-mails.

Q.   How long did you spend in looking for these e-mails?

A.   On multiple different occasions, you know, probably an hour each time just like, okay, do we have -- is this it -- do we have anything else.

Q.   How did you do these searches?  Did you use search terms, just scroll through?  What did you actually do?

RALPH ROSENBERG COURT REPORTERS, INC.

A.   Search by, you know, name.

Q.   And how did you actually get those e-mails then to Rich?  When you found one that was responsive, what would you do?

A.   I don't even remember.  Was it like forwarded or screen shot or -- it's all kind of like blurring together between what I did for mine.  I don't recall.

Q.   But you might have forwarded them from Mom's account?

A.   Yeah, that's a possibility for sure.

Q.   Do you know an approximation of how many e-mails you sent to Rich one way or the other that were from Mom's account?

A.   I really don't.

Q.   Did you attempt to recover any e-mails that were deleted?

A.   I don't know how to recover e-mails that are deleted.

Q.   Did you try to learn about how to do that or did you have to seek some help to recover deleted e-mails?

A.   No.

Q.   You also delete e-mails out of Mom's account that you believe are junk e-mails; correct?

RALPH ROSENBERG COURT REPORTERS, INC.

A.    From the pbuckman there was lots of junk e-mail.  This e-mail there's not much to delete because there's almost no junk e-mail.

Q.    Which e-mail are you talking about that are --

A.    Patriciawbuckman e-mail.  So there's very little to delete from there.  But yeah, any e-mails that looked like spam or you qualify for, you know, car insurance.

Q.    So you delete e-mails from Mom's account; correct?  That's a yes?

A.    Spam e-mails.

Q.    What you consider to be spam though; correct?

A.    Clearly and obviously spam e-mails.

Q.    So you use your discretion in deleting those?

A.    I think that if you were to poll everybody in this room whether the e-mail was a junk e-mail everybody, including you and her, would agree that it doesn't apply to her and that they're trying to get her money.

Q.    So that's a yes, you use your discretion in deleting Mom's e-mails; correct?

A.    The junk e-mails.

Q.   And is there an allegation in this case that I improperly took over some of Mom's life insurance money?

MR. WILSON:  Objection.  She's not a party. Calls for a legal conclusion, it's a totally improper question.

MR. BUSH:  Objection to the form of the question.

Q.   Please answer.

MR. BUSH:  If you understand the allegation in the complaint, you can answer it to the best of what your understanding is.

A.   Yeah, I don't know what you're talking about.

Q.   Have you or Mom ever made an allegation that I improperly changed the beneficiaries on her life insurance policies?

MR. WILSON:  The same objection.

MR. BUSH:  This objection is compound.  He's asking you or your Mom -- first of all actually -- to the extent that information regarding your Mom was learned in the context of an attorney-client communication, then don't answer.  Otherwise, you can answer.

MR. WILSON:  If you have an independent

RALPH ROSENBERG COURT REPORTERS, INC.

STATE OF HAWAII          )

COUNTY OF HONOLULU )     SS.

I, KATHRYN PLIZGA, RPR, Hawaii CSR, Notary Public, State of Hawaii, hereby certify:

That on June 19, 2025 at 10:12 a.m. appeared before me NATALIE PITRE, the witness whose deposition is contained herein; that prior to being examined, the witness was by me duly sworn;

That pursuant to Rule 30 (e) of the Hawaii Rules of Civil Procedure, a request for an opportunity to review and make changes to the transcript was made by the deponent or a party (and/or their attorney) prior to the completion of the deposition.

That the foregoing represents, to the best of my ability, a full, true and correct transcript of said deposition.

I further certify that I am not an attorney for any of the parties hereto, nor in any way concerned with the cause.

_____

KATHRYN PLIZGA, RPR, Hawaii CSR 497

RALPH ROSENBERG COURT REPORTERS, INC.