

## Fwd: Patricia Buckman - request for documents and a Copies

1 message

---

**From:** Mark Buckman <markfbuckman@sbcglobal.net>
**Date:** September 20, 2023 at 9:42:16 AM PDT
**To:** Tamara Buchwald <tambuchwald@aol.com>
**Subject: Fwd: Patricia Buckman - request for documents and a Copies**


Good morning Tammy,
I have not received any response to my emails to you nor to my text asking for confirmation of receipt of the email.  That makes me concerned.

In either case, please ensure that you preserve all records in any way related to the work and/ or advice you performed for my mother Patricia Buckman and/or Natalie B. Pitre.  This of course includes all emails, texts, or any other document, so please make sure not only that you do not delete any of these materials, but that they are preserved.

I am sure you can see the need for this, given the situation, and would probably already understand this, but I want you to confirm explicitly that you will honor your obligation to preserve these materials, including electronic files (electronically stored or retained information or ESRI).  If any documents, files, or materials have been deleted or no longer exist, please inform me immediately.

Mark Buckman
Sent by my Continuum Transfunctioner

Begin forwarded message:


   **From:** Mark Buckman <markfbuckman@sbcglobal.net>
   **Date:** September 19, 2023 at 12:07:07 PM HST
   **To:** Tamara Buchwald <tambuchwald@aol.com>
   **Subject: Fwd: Patricia Buckman - request for documents and a copie**


   Hi Tammy,

   I just wanted to remind you that to the extent that you provided any legal advice or drafting to my mom that your duty runs to my mom and not to Natalie. So I do not think you have the authority to share this with Natalie at present as it could tend to undermine my mom's interest. However, I can provide you documentary evidence

## EXHIBIT L

for these issues, and we can try to sort things out.

Mark Buckman
Sent by my Continuum Transfunctioner

Begin forwarded message:

**From:** Mark Buckman <markfbuckman@sbcglobal.net>
**Date:** September 19, 2023 at 12:00:36 PM HST
**To:** Tamara Buchwald <tambuchwald@aol.com>
**Subject: Fwd: Patricia Buckman - request for documents and a copie**

Hi Tammy, long time no talk.
Unfortunately, we're having a few family problems and the short story is that it appears Natalie has breached her duties to my mom, taken her money, forged family member, signatures on legal documents, and done a few other things.
I don't know the exact role you played in input or drafting any trust, documents, or anything else. However, I thought you should be aware of some of the problems we're having, and I would like to talk with you as to any insight you could provide.

Aloha,

Mark Buckman
Sent by my Continuum Transfunctioner

Begin forwarded message:

**From:** Mark Buckman <markfbuckman@sbcglobal.net>
**Date:** September 19, 2023 at 9:44:18 AM HST
**To:** steve.reese@shrlawhawaii.com, "Stephen Reese Esq. PWB Estate Attorney" <Georgie.smythe@shrlawhawaii.com>
**Subject: Re: Patricia Buckman - request for documents and a copie**

Steve, here's the text version of my mom's authorization. Mahalo.

Mark Buckman
Sent by my Continuum Transfunctioner

On Sep 19, 2023, at 9:39 AM, Mark Buckman <markfbuckman@sbcglobal.net> wrote:

Aloha Steve,

As you know, I'm Patricia Buckman's middle child.  My mom and I called your office last month to speak with you and obtain information about her estate documents.  As you were out of the office, we spoke with your assistant and my mom authorized release of information to me.  We also asked that you call me back to discuss same, but perhaps you did not receive that message.  At the bottom of this email is my mom's signed authorization for the release of the requested information and records.

I'm helping my mom with her finances due to financial difficulties she is currently experiencing.  After I agreed to help my mom straighten things out, among other things, I have discovered my mother's mortgage payment had bounced, Natalie has not been keeping any accounting (and claims to have paid my mom thousands of dollars in cash, of which there is no record at all), Natalie has assumed my mom's identity and forged her signature on legal documents, and significant other financial irregularities.

You may also have seen the news reports regarding Natalie's difficulties with the Hawaii Real Estate Commission due to two separate matters: 1) her misuse of client property and related issues, and 2) failure to return her tenant's security deposit, failure to pay the tenant even after

judgment was rendered against her, and the subsequent garnishment of her bank account to satisfy that judgment.  The Department of Commerce and Consumer Affairs imposed a $12,000 fine on Natalie B. Pitre and Island Properties – Sales, Development, Management Corp. effective as of May 26, 2023. Following is the text of the DCCA / Real Estate Commission's release:

"RICO alleges in REC 2022-157-L that Respondents [Natalie] failed to promptly reduce to writing an agreement between Respondents and complainant for an exclusive agency listing after oral agreement, failed to advise complainant of a possible ethical conflict when Respondents presented a draft Purchase Contract naming Respondents as one of the buyers, failed to timely transmit a purchase offer, occupied and used the property without authorization, and misrepresented to complainant regarding Respondents' use and occupation of the property, in potential violation of HRS §§ 436B-19(2), 436B-19(7), 436B-19(8), 436B-19(9), 436B-19(17), 467-14(8), 467-14(13), and 467-14(20) and HAR §§16-99-3(b), 16-99-3(f) and 16-99-3(j).

RICO alleges in REC 2022-312-L that Respondents misrepresented to complainant and public that a rental was a "single-family detached

home" when the property was a duplex with a tenant living on the first floor, failed to provide timely notice of Respondents'intent to retain a portion of complainant's security deposit, failed to provide utility bills and receipts justifying deductions from the security deposit, failed to timely return the security deposit and had a default judgment entered against Respondent in the Small Claims Division of the District Court of the First Circuit, Honolulu Division, failed to pay the judgment, and failed to notify the Commission in writing of the judgment within 30 days, all in potential violation of HRS §§ 436B-19(2), 436B-19(7), 436B-19(8), 436B-19(17), 467-14(1), 467-14(13), 467-14(20), and 436B-16 and HAR § 16-99-3(b). (Commission approved Settlement Agreement.)"

I am sure you can understand why I would be very concerned with the facts that I have gathered thus far.  I am sure you can also understand why I have not been able to get the documents I need to help my mom, as she requested, from Natalie.

I am writing you this email to follow up on a few items.  First, per my mom's previous request, please: (1) provide me with a complete copy of all your files related to my mom, including your all your notes (such as notes of meetings, calls, and research), all

emails sent or received, and (2) confirm that your office has provided me with all documents you have drafted relating to Pat including any drafts that were not signed or were sent to you after being drafted by others.  Since my mom (Pat) is the client, she is entitled to receive these documents per her request.

Second, please ensure that you preserve all records in any way related to the work performed for my mom.  I am sure you can see the need for this, given the situation, and would probably already understand this, but I want you to confirm explicitly that you will honor your obligation to preserve these materials, including electronic files (electronically stored or retained information or ESRI).  If any documents, files, or materials have been deleted or no longer exist, please inform me immediately.

Third, please provide all information you have regarding the following items:

1)  In all 3 prior versions of the trust documents, our bother Matt was to receive the interest in the house that he and my mom purchased together about 20 years ago.  That changed in the 2022 Trust Amendment.  Natalie has indicated that the impetus for the 2022 Trust Amendment was that you advised mom and her that Matt "cannot" inherit / obtain via the trust any interest in the

house (due to his receipt of some sort of Social Security benefits) so the trust could not pass an interest in that property to Matt as all the previous trusts had.  Please indicate any and all advice you provided regarding Matt's being a beneficiary of the trust and his complete removal via the 2022 amendment.

2)  Natalie has also indicated that you advised Duke Manoa ("Manoa") could be the constructive trustee for Matt so the trust would indicate the house that was previously for Matt's benefit was going to Manoa but Manoa would actually be holding the house for Matt.  (This was apparently the stated justification for Natalie and Carl becoming the beneficiaries of the front house in the 2022 amendment, when that had been set aside for Manoa for many years, dating back to at least 2006.)  Did you discuss this issue or draft anything setting forth the terms of a constructive trust and/or the relationship between Matt and Manoa with respect to that house?  What do you understand the legal obligation of Manoa to be towards Matt?  For example, if the house is rented out, who would receive the rental income, Matt, Manoa, or both?  If it's both, in what shares?

3)  The 2022 Trust Amendment names Natalie as the "property manager" of the house that she currently occupies (and has been occupying for several years).  Was there any

discussion of what property management fees she would receive?  What protections have been put in place to eliminate the possibility of self-dealing?  For example, if Natalie as the property manager decides that Natalie the tenant needs a completely new air conditioning system at a cost of $15,000, is Natalie the property manager authorized to forgive Natalie the tenant's payment of rent until the "necessary" cost is paid off?  (This is the same property that Natalie claims to be paying cash rent on, to my mom, which my mom denies, and for which there are no records.)  If Natalie were to lose her broker's license, what is your understanding of her status as property manager for the house?  Would she still control Matt's / Manoa's house even if the Real Estate Commission found her unfit to act for others with respect to their properties?  Was there any discussion of why Carl Pietre, who is not a licensed real estate agent, was also listed as a "property manager"?

    4)  The 2022 Trust Amendment removed Natalie as the trustee.  Please provide your understanding for why that change was made.  On a related matter, did Natalie ever communicate with you or receive any advice regarding her removing some ~$170,000 from my mom's accounts and placing it out of my mom's reach, allegedly for safe keeping?

5) Natalie has recently claimed that she "owns" Island Properties and that mom "gave"it to her.  I had never heard that before and Natalie, despite claiming to have a signed agreement, has been unable to produce it.  My mom says she is still the owner, and none of the Island Properties employees, including the bookkeeper / accountant, believe that Natalie is the owner.  The 2022 Trust Amendment does not discuss the ownership of Island Properties. Did you draft any other documents related to the disposition of Island Properties? Although I understand that Natalie has claimed to you that the value of the company is zero (i.e., it has no value), the accountant informs me that the company has working capital of approximately $40,000 (which has been built up by retaining payments that would otherwise go to the owner, i.e., mom), and it also holds other marketable assets.

6)  Has my mom ever come to your office without Natalie, or has she been accompanied by Natalie on each visit?  How did you receive your instructions regarding the changes to the trust?  Were those mostly conveyed from Pat's email account?  Did you verbally read through all of the changes to Pat at any point?  Was Natalie present?

I am sorry to have to trouble you for so much information, but I am sure you can understand the

need for it, under the current circumstances.  No one in my family trusts Natalie, and my investigation is bearing that out.  Thank you for your anticipated cooperation.  Please feel free to contact me if you have any questions.

Mark Buckman
Sent by my Continuum Transfunctioner

Adobe Scan Sep 19, 2023.pdf