IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| PATRICIA W. BUCKMAN, Individually, and as Trustee of the PATRICIA W. BUCKMAN REVOCABLE TRUST; PATRICIA W. BUCKMAN REVOCABLE TRUST, | ) Civil No. 24-00129 ) MWJS-KJM ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) |
| MARK F. BUCKMAN, Individually, and as TRUSTEE OF THE MARK F. BUCKMAN TRUST; MARK F. BUCKMAN TRUST; JENNIFER BUCKMAN; JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATIONS 1-10; DOE PARTNERSHIPS 1-10; and DOE GOVERNMENTAL AGENCIES 1-10, | ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

DEPOSITION OF MATTHEW BUCKMAN, commencing at 10:05 A.M., on FRIDAY, JUNE 20, 2025, pursuant to Rule 30 of the Federal Rules of Civil Procedure.

REPORTED BY:  JAMIE S. MIYASATO, Hawai`i CSR #394

Registered Professional Reporter

RALPH ROSENBERG COURT REPORTERS, INC.
(808)524-2090

**EXHIBIT 5**

APPEARANCES:


For the Defendant JENNIFER BUCKMAN:

               MARK F. BUCKMAN, ESQ.
               8359 ELK GROVE FLORIN ROAD, STE. 103-320
               SACRAMENTO, CALIFORNIA 95829
               Telephone: (916)442-8300
               Email: markfbuckman@sbcglobal.com


For the Defendants MARK F. BUCKMAN, MARK F. BUCKMAN
TRUST, and JENNIFER BUCKMAN:

               LOUISE K.Y. ING, ESQ.
               DENTONS US LLP
               1001 Bishop Street, Suite 1800
               Honolulu, Hawai`i 96813
               Telephone: (808)524-1800
               Email: louise.ing@dentons.com


DEPONENT:  MATTHEW BUCKMAN


ALSO APPEARING:  KIMBERLY BUCKMAN


VIDEOGRAPHER:  Andrew Gomes
               Esquire Deposition Solutions

WITNESS INDEX

Witness                                                Page

MATTHEW BUCKMAN..........................
Examination by Mr. Mark Buckman...........    5

4

JUNE 20, 2025                                10:05 A.M.

-oOo-

THE VIDEOGRAPHER:  We are on the record at 10:05 a.m., on June 20, 2025.  Please note that microphones are sensitive and may pick up whispering and private conversations.  Audio and video recording will continue to take place unless all parties agree to go off the record.

We'll begin Media No. 1 of the deposition of Matthew Buckman, In the Matter of Patricia W. Buckman, Patricia W. Buckman Revocable Trust versus Mark F. Buckman, Mark F. Buckman Trust, and Jennifer Buckman.  Venue in the United States District Court for the District of Hawai`i.  Case No. 1:24-CV-00129-MWJS-KJM.

Our location is 1001 Bishop Street, Suite 1800, Honolulu, Hawai`i, 96813.  The videographer is Andrew Graves representing Esquire.

The reporter is Jamie Miyasato representing Rosenberg Reporting.

Counsel, please identify yourselves and state whom you represent.

MR. MARK BUCKMAN:  Good morning.  I am Mark F. Buckman representing defendant Jennifer Buckman.

MS. ING:  Good morning.  Louise Ing representing the defendants.  And may the record reflect we have the witness available -- present as well as Kimberly Buckman, who is not a party to this suit.

THE VIDEOGRAPHER:  Thank you.

Would the reporter please swear in the witness.

THE COURT REPORTER:  Do you solemnly swear or affirm that the testimony you are about to give will be the truth, the whole truth, and nothing but the truth?

THE WITNESS:  Yeah.


MATTHEW BUCKMAN,

having been first duly sworn,

was examined and testified as follows:


EXAMINATION

BY MR. MARK BUCKMAN:

Q.   Good morning, Matt.  Could you please state and spell your name for the record please.

A.   Matt Buckman, M-a-t-t B-u-c-k-m-a-n.

Q.   Have you ever been deposed before?

A.   I don't think so.

Q.      So we're informal, but you're under oath, the same oath you'd take in a regular court. Do you understand that?

A.      Yeah.

Q.      And so we're just going to have a question-and-answer session.  And I want you to try to understand precisely the question.  So if there's anything unclear to you, please ask for clarification.  Can you do that?

A.      Yeah.

Q.      And we are trying to get verbal answers here because the reporter can't take down or it's confusing for uh-huh or uh-uh or head shakes.  So I might ask you to say a yes or a no answer sometimes.  Do you understand that?

A.      Yeah.

Q.      Okay.  And the questions aren't designed to trick or mislead you.  And so, again, if you don't understand, please ask for clarification and we'll give that to you.

And we will be able to take breaks. This isn't an endurance contest, and we're not in a rush either.  So you can take your time or go slow, or if you need to take a break, we'll do that. Okay?

A.    So we're only going to be here for like an hour; right?

Q.    I think we're going to go as far as we can today and see how it goes.

A.    It's only going to be an hour.  No more than that.

Q.    Okay.  We'll talk about that more in a minute.  And we're going to -- you know, we all know that time can fade memory, and we're talking about events in the past.  So I don't want you to guess or speculate.  Okay?

A.    Yes.

Q.    And we are entitled to your best estimate or your best recollection though.  And you understand the difference between those two?

A.    Yes.

Q.    Okay.  Is there any medicine or any reason why you cannot give your best testimony here today?  Like is your memory bad?

A.    Because I got like eight pills in the morning and the afternoon, sometimes I can talk well and sometimes I don't go very well.

Q.    Okay.  But right now how are you feeling as far as memory and such?

A.    Pretty okay.

Q.    Okay.  And would you say you're talking about average for you at this point in time?

A.    Little bit.

Q.    Little bit better or worse or --

A.    About the same or worse.

Q.    Okay.  So usually you talk a little bit better than you are right now?

A.    Yes.

Q.    Okay.  So when we're done, the reporter will type up the deposition and you will be able to make corrections.  But I or others could comment on those corrections, and that can prove embarrassing if there's changes.  So do you understand that?

A.    Yeah.

Q.    Okay.  What have you done to prepare for your deposition?

THE WITNESS:  Kimmy, help me with that. I really don't know.

BY MR. MARK BUCKMAN:

Q.    Have you reviewed any documents?

A.    A little bit.

Q.    What did you review?

A.    I'm not really sure.

Q.    Okay.  Have you talked to a lawyer at all?

A.    No.

Q.    Have you spoken to Brandy Faria?

A.    No.

Q.    How about Richard Wilson?

A.    No.

Q.    Do you know who Rich Wilson is?

A.    Yes.

Q.    And who is he?

A.    Natalie's attorney.

Q.    And do you know if Natalie has any other attorneys?

A.    I don't know.

Q.    Okay.  And how do you know that Rich is Natalie's attorney?

A.    I went there the first -- one time.  I don't know what -- year, two years ago for like maybe 20 minute -- or 10 minutes.

Q.    And this was to discuss this lawsuit with Rich Wilson?

A.    I think so, yes.

Q.    So your understanding is Rich Wilson represents Natalie in this lawsuit?

A.    Yeah.

Q.    Okay.  And has Natalie told you that Rich Wilson represents her in this lawsuit?

A. Probably. I'm not -- I don't really know.

Q. Do you know if Mom has an attorney in this lawsuit?

A. You gotta talk to Natalie.

Q. Okay. 'Cause Natalie is in charge of this lawsuit?

A. Probably.

Q. That's your understanding though?

A. Yeah.

MS. KIMBERLY BUCKMAN: Mark.

THE WITNESS: Because my mom cannot -- she is way more mumu than I am anytime. She can't even talk -- nonsense. No, she can't talk at -- very barely.

BY MR. MARK BUCKMAN:

Q. So --

A. She can't talk.

Q. Mom can't talk well right now, you say?

A. Way worse than me.

Q. Okay.

A. She's what? 90 years old.

Q. Uh-huh. How would you say Mom's memory is now?

A. Bad. Horrible. I saw her two year --

two weeks ago.  Doesn't remember anything anymore.
Not everything.  But pretty much everything.

Q.    Pretty much everything Mom's forgotten
you say?

A.    (Witness nodded.)

Q.    Can I get a verbal answer please?

A.    Yes.

Q.    Okay.  And what we'll do on some of the
questions -- again, I'd like you to take your time.
Sometimes when I've spoken with you in the past, I
might say, Hey, do you mean this, and you would say
yes or no.  So I'm going to try to do that less
today, but I want to make sure we give you a chance
to clarify, or if I try to summarize, you make sure
to say yes or no.  Okay?

A.    Yes.  But why did Kimmy stop you and not
even say -- she was about to say something to her
and you say no.  Why?

Q.    Because only attorneys can represent
people in court here.  So she's not a participant
in this.

A.    She is.

MS. KIMBERLY BUCKMAN:  I wasn't --

BY MR. MARK BUCKMAN:

Q.    She's not a participant in the

12

deposition?

A.    She -- she -- she helps completely.  So she does, so I'm sorry.

Q.    Okay.

A.    You need to talk to Kimmy.  So you better get with that now or I'm going to be out of here or stop.

Q.    But she cannot --

A.    I'm going to leave if you don't tell -- you don't talk to Kimmy.  Just so you know, I'm going to go.

Q.    Okay.  We don't want you to do that.

A.    I'm going to go.  Are you going to talk to her?  I'm going to go.

MS. KIMBERLY BUCKMAN:  All I was going to say to you --

MR. MARK BUCKMAN:  You're not his lawyer.

MS. ING:  Can we just go off the record.

MR. MARK BUCKMAN:  I want the record --

THE WITNESS:  Okay.  I'm done.

MS. KIMBERLY BUCKMAN:  (Inaudible).  It wasn't a personal thing.  Before we started, I didn't get a chance to tell you Matt's current status of his medical situation.

MR. MARK BUCKMAN:  But you're not his doctor.

THE WITNESS:  I don't care.

MS. KIMBERLY BUCKMAN:  I actually am his legal representative for medical stuff.

MR. MARK BUCKMAN:  We're not here for that.  He's here for his deposition.

MS. KIMBERLY BUCKMAN:  I know.  Which he actually has a letter saying that he doesn't have to participate, and he's willing to do so.

THE WITNESS:  And I'm going to say nothing else.  I'm done.

MR. MARK BUCKMAN:  Okay.

THE WITNESS:  Okay.  Goodbye.

MS. KIMBERLY BUCKMAN:  Okay.  So we'll go file this right now and come back and make your corrections.

THE WITNESS:  'Cause you don't want to talk to Kimmy.

MS. KIMBERLY BUCKMAN:  All I was going to do -- and I should have said it right at the beginning -- was what his current level of his med -- his medical condition.  He saw his heart doctor yesterday.  He saw his primary care this morning. I just wanted you to be aware of exactly what's

going on with your brother. Okay?

Aside from depositions and what not, if you read this letter, you can clearly see that he does have a valid medical condition, that he's very highly susceptible. He has a fragile -- he's not the Matt that you've always known to be a strong, sturdy guy.

So Mark, I know you're desperately trying to get answers out of Matt to go your way. But however, you're not going to get it like this.

He wanted to come here and participate.

MR. MARK BUCKMAN: Okay. We have the letter. I marked it for it to be an exhibit. And we don't -- because you're not his doctor, we're not going to take your medical opinion. I hear what you're saying, but if you wanted to tell me about his condition, you should have done that outside of the deposition. It's not part of the deposition. We just put the doctor's letter in the record and let it speak for itself. Neither we nor you can comment on it because we're not doctors.

MS. KIMBERLY BUCKMAN: All right.

MR. MARK BUCKMAN: And then you're not his lawyer, so you don't get to interject objections --

MS. KIMBERLY BUCKMAN:  I wasn't doing that.

MR. MARK BUCKMAN:  I know you weren't.

THE WITNESS:  For me it's -- it's my -- it's my place.  Whatever Kimmy wants to do, I can't say.  She knows more than that than I do by any time.  What she can say, I want her to say whatever it is.  So if that's going -- we're going to leave.  That's that.  So I'm sorry.

Let's go.

MS. KIMBERLY BUCKMAN:  Okay.

MS. ING:  Well, just for the record then --

THE COURT REPORTER:  Wait.  On the record again?

MR. MARK BUCKMAN:  We're still on the record the whole time.

THE COURT REPORTER:  Oh, she said let's go off the record.

MS. ING:  I'm sorry.  He had over --

THE COURT REPORTER:  Oh, I'm sorry.  I didn't -- I wasn't taking all of this.

MS. ING:  But we have it recorded; right?

MR. MARK BUCKMAN:  Please record Matt,

the deponent.

MS. ING:  Okay.  So just for the record, just so Matt knows too, normally in a deposition, you have the witness and you have the attorneys for the parties.  And parties can attend.

Now, Kimmy and Matt, you are not parties in this litigation.  And so -- but in the past, we have allowed non-parties, family members to come and attend.  The usual requirement, and a judge could probably uphold us, is that, you know, they sit and listen and they need to maintain the decorum.

They could talk to us during a break, but it's not proper to interject during the deposition, which is just a question and answer with the attorney and the witness.

MS. KIMBERLY BUCKMAN:  Uh-huh.

MS. ING:  So that's the reason that Mark was not having Kimmy say anything or was not intending to have Kimmy say anything on the record.  Not to deny the fact that if you need support, great.  During a break, you can discuss.  But today is your deposition.

And we appreciate the fact that you came, you're willing to try to sit for an hour or

however long.

THE WITNESS:  Not for however long.
It's only an hour.

MS. ING:  Well, for an hour.  But I have to tell you that there is a right to take a deposition up to seven hours.  If we need to, we may need to have you come back if you're going to --

THE WITNESS:  No.

MS. ING:  And if you're not willing to do it, then we'll just have to go to the court and determine --

THE WITNESS:  Yeah.  Do that.

MS. ING:  -- what our rights are.

MS. KIMBERLY BUCKMAN:  So what his rights are too.

MS. ING:  And yeah, what everybody's rights are.

But for today, are you willing to sit for an hour and answer questions?

THE WITNESS:  No.  Kimmy is going to be there with me.  So that's -- if that's the deal, then I'm going with her.

MS. ING:  Well, we're not excluding Kimmy from sitting in the deposition.  She's here.

MS. KIMBERLY BUCKMAN:  I feel that right now currently, I'm not a doctor, but I can tell already that Matt's -- Matt isn't currently in -- well, you don't even care or want to know.  So we'll just leave it.  I don't think it's -- I agree with what the doctor says on paper.

MS. ING:  Okay.  And we have the video recording of your description.

But Mark, sorry --

MS. KIMBERLY BUCKMAN:  I didn't get to say what his situation actually is.  What I wanted to say I was gonna --

MS. ING:  It's on -- we have a video recording of it.

MS. KIMBERLY BUCKMAN:  Did I explain his situation?  I don't recall saying -- but I mean, I said he went to his doctor's.

Okay.  So let's just stick with what the doctor said here.  That's probably best -- is that we just go with what the doctor.  And there is a suggestion of written responses for Matt.  He can't -- Matt's -- anyway, you guys --

BY MR. MARK BUCKMAN:

Q.    So Matt, will you answer our questions?
Kimmy can stay here in the deposition room.

A.    No.

Q.    What did you think Kimmy could do in this deposition?  Answer questions for you or -- trying to figure that out.  Did you want her to answer some of the questions?  Was that the issue?

A.    You're talking to me?

Q.    Yes.  Why are you upset?  It seems like you --

A.    Yeah.  'Cause you gotta talk to Kimmy.

Q.    Okay.

A.    So if that's not happening, we're leaving.  I'm going to go.

Q.    Okay.  But when we -- the normal way we do a deposition is that we ask you the questions. Because we had Kimmy's deposition another day and we asked her the questions, and then she got to tell us what she knows.

A.    No.  You're asking about her, not me. She's doing it for me.  Me.  Not her.

MS. KIMBERLY BUCKMAN:  I explained to Matt that I cannot answer the questions for him. We talked about it after seeing his doctor, and we both decided that maybe, you know, go ahead and give it a try.  I can see that it's not going well. He's already said that it's not going well.

We should re-approach the doctor -- I mean, what the Court requested, a doctor's note stating that that's what the doctor says here.  His primary care physician says not to participate.

He went ahead and gave it a try.  And I can clearly see it's not going to work out.  He's answering questions that he knows incorrectly.

So therefore, you know, it's not me coaching him.  How could I coach him in all of this?

MR. MARK BUCKMAN:  We're not saying that.  It's he can give his testimony.  I think the issue we have is he's able to do it, but he's refusing now.  We just want to ask the questions.

MS. KIMBERLY BUCKMAN:  Oh, no, no, no.  He's not able -- are you aware of -- this isn't my definition -- but of the definition of what Matt has?

MR. MARK BUCKMAN:  Yeah.  But see, I'm not going to argue the medical part with you.

Matt, could you please answer some questions?

MS. KIMBERLY BUCKMAN:  No.  He's not going to because of this.

MR. MARK BUCKMAN:  Okay.

MS. KIMBERLY BUCKMAN: That's what he's already said.

MR. MARK BUCKMAN: You want to try one more time, Louise?

MS. ING: Well, sounds like that's your position. Is there anything we can do to --

THE WITNESS: I'm done.

MS. ING: Is there anything we can do today to make you comfortable to sit here and answer questions?

THE WITNESS: Talk to Kimmy. That's that.

MR. MARK BUCKMAN: Kimmy, can you tell us what he means by, "Talk to Kimmy"? 'Cause he's not explaining that --

MS. KIMBERLY BUCKMAN: Okay. So Matthew is aware that this is a deposition, and he is aware of where we're at and why we're here. I don't know if he's aware of exactly which case we're here for because he had the wrong number on there that I didn't -- I didn't catch that. So I believe that Matt -- the aphasia -- Matt answered like -- okay, hold on a second, Mark. I know we have all day. You have all day. So can you please hear me out? I'm not speaking on behalf of Matt. I'm speaking

in general.

MR. MARK BUCKMAN:  I just would like to ask Matt a question.

THE WITNESS:  No.  Talk to Kimmy first.

MS. KIMBERLY BUCKMAN:  I'm not done speaking, so --

THE WITNESS:  Yeah.  You gotta wait.

MS. KIMBERLY BUCKMAN:  -- I'm going to continue answering the question, okay?  And what I'm trying to say here, much longer than I should be, is Matthew's mind goes like this.  I know the answer to the question.  The word that comes out of my mouth is different than the word that's going on in my head.

If the answer's yes, he says no.  And his brain does not catch that.  It's mis -- it's -- it is not -- he's incapable of sitting here and answering questions.  He's incapable of sitting here and answering questions with accuracy.  That's the problem.

And then add the heart problem.  Gets all upset.  He's currently in Afib.  He has water in his heart.

Don't worry.  He'll be gone soon, Mark.

MS. ING:  I'm sure that's not -- don't

have to add the editorial comments.

MS. KIMBERLY BUCKMAN:  Well, he's looking at me like I'm BS'g or something.

MR. MARK BUCKMAN:  I'm just listening to you, Kimmy.

MS. KIMBERLY BUCKMAN:  Okay.  I'm done speaking now.

BY MR. MARK BUCKMAN:

Q.    Matt, what we're trying to do is just ask you the questions -- Kimmy's here in the room -- and we get your testimony because this is a case where Mom is suing Jenny and I.  And Natalie is running the case.  And we want to be able to defend ourselves because you've told me multiple times that Natalie is terrible, greedy, controlling Mom, etc.  And I'd like to talk with you about that.

A.    Let me ask you this.  Why did you have my house -- you stole that house and (indiscernible) for about three weeks without even saying that.  Tell me why is that.

Q.    This is not my deposition.

A.    (Inaudible).

Q.    Say again.  You're saying --

A.    (Inaudible), then fine.  We need to talk

the truth about it.

Q.    It seems to me that you want to depose me instead of answering the question.  You'll get answers --

A.    I just asked you, that's all, one thing, and you won't do that.  So that's -- it's all good.

Let's go, Kimmy.  Bye.

MS. ING:  The record will reflect that the witness and Kimmy Buckman are leaving the room.

THE VIDEO SPECIALIST:  The time is 10:24 a.m.  We are now off the record.

(Deposition concluded at 10:24 a.m.)

-o0o-

C E R T I F I C A T E

STATE OF HAWAI`I                    )
                                   )         SS.
COUNTY OF HONOLULU                 )

        I, Jamie Miyasato, CSR for the State of Hawai`i, do hereby certify:

        That on June 20, 2025, at 10:05 a.m., appeared before me MATTHEW BUCKMAN, the witness, whose testimony is contained herein; that prior to being examined, the witness was by me duly sworn or affirmed pursuant to Act 110 of the 2010 Session of the Hawai`i State Legislature.

        That the proceedings were taken down by me in machine shorthand and were thereafter reduced to typewritten form under my supervision; that the foregoing represents, to the best of my ability, a true and correct transcript of the proceedings had in the foregoing matter.

        That pursuant to Rule 30 of the Federal Rules of Civil Procedure, a request for an opportunity to review and make changes to the transcript:

        ____ Was made by the deponent or a party
        (and/or their attorney) prior to the completion
                of the deposition.
        __X_ Was not made by the deponent or a party
                (and/or their attorney) prior to the completion
                of the deposition.
        ____ Was waived.

        I further certify that I am not an attorney for any of the parties hereto, nor in any way concerned with the cause named in the caption.

DATED this 22nd day of June, 2025.

/s/ Jamie Miyasato
_____

Jamie Miyasato, RPR, CSR #394