LOUISE K.Y. ING      2394
TIM PARTELOW       10218
DENTONS US LLP
1001 Bishop Street, Suite 1800
Honolulu, HI  96813
Telephone: (808) 524-1800
Facsimile: (808) 524-4591
Email:    louise.ing@dentons.com
          tim.partelow@dentons.com

Attorneys for Defendants
MARK F. BUCKMAN, individually
and as Trustee of the MARK F. BUCKMAN
TRUST, and JENNIFER BUCKMAN

MARK F. BUCKMAN   SBN 7080
Law Offices of Mark F. Buckman
8359 Elk Grove Florin Rd., Suite 103-320
Sacramento, CA  95829
Email:  markfbuckman@sbcglobal.net

Attorney for Defendants MARK BUCKMAN AND
JENNIFER BUCKMAN

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| PATRICIA W. BUCKMAN, PATRICIA W. BUCKMAN REVOCABLE TRUST, <br><br>           Plaintiffs, <br><br>   v. <br><br> MARK F. BUCKMAN, ET AL., <br><br>           Defendants. | Civil No. 1:24-CV-00129-MWJS-KJM <br><br> **DEFENDANTS' CONCISE STATEMENT OF FACTS IN OPPOSITION TO PLAINTIFF'S MOTINO FOR SUMMARY JUDGMENT;** DECLARATION OF MARK F. BUCKMAN; EXHIBITS "1" – "_"; <br><br> Trial Date: November 3, 2025 <br> Judge: Hon. Micah Smith |

Error! Unknown document property name.

## DEFENDANTS' CONCISE STATEMENT OF FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

|   | Plaintiff's Facts | Admit / Deny | Citation |
|---|---|---|---|
| 1. | The counterclaim does not distinguish between Pat Buckman and her Trust | Deny, vague. The Counterclaim speaks for itself. Pat is an individual and is believed to be the current trustee of her trust; however, Natalie Pitre was also a trustee of Pat's trust from 2020 to 2022. The trustee's actions can bind the trust. | MFB Decl. 23, Exh. 10, 11 (Resignation of Trustee and Acceptance of Trustee.) |
| 2. | Claims against the Trust are identical to those against Pat in her individual capacity. | Deny, vague as to what claims. The claims are not identical because, inter alia, Natalie Pitre was the trustee of the trust from 2020 - 2022, and Pat did not always act as trustee. | MFB Decl. 23, Exh. 10, 11 |
| 3. | M. Buckman could not identify any general damages. | Deny. Mark identified $235,000 of damages on the promissory note and ~$30,000 on the bill paying agreement at deposition. Mark also has detailed the damages of $382,000.00. | MFB Decl., Ex 1, p. 82:8-13; 80:17-81:5; 89:14-18, passim MFB Decl. 8, 14, 16, Exhibit 8 |
| 4. | M. Buckman could not define general damages | Deny, plaintiff's counsel claimed "general damages" did not include breach of contract damages, but they do. So, the confusion was caused by plaintiff's counsel. In either event, provided damages of $382,000. | MFB Decl., 7, Ex 1, 80:17-21; 82:4-13. |
| 5. | M. Buckman could not calculate any general damages. | Denied. Mark specified the terms of the Promissory Note could be used to calculate the current amount due (face value $235,000), and said that the $30,000 on bill paying was increasing as he had just paid for some expenses. | MFB Decl., 7, 8, 14, 16 Mark's deposition at MFB Decl., Ex 1, p. 82:4-13; 80:17-81:5; 89:14-18, |

Error! Unknown document property name.

| | Plaintiff's Facts | Admit / Deny | Citation |
|---|---|---|---|
| | | | Exhibit 8 |
| 6. | M. Buckman is asking the Court to adjudicate the underlying validity of the note, mortgage, deed, and the supposed rental agreement. | Denied.  The Note, Mortgage, Deed, and Agreement Regarding Note are all signed (some Notarized) and provide the parties' agreement.  The declaratory relief Claim involves a changed circumstance of Matt's housing, as explained in the Counter-Claim. | MFB Decl., Ex. 4 (Notarized Promissory Note), 5 (Agreement Regarding Note), 6 (Notarized Mortgage) |
| 7. | M. Buckman agreed to help Pat. | Denied - so vague as to be meaningless - helped with what? When, where?  If this means with the Bill Paying agreement, Mark agreed to do that, at Pat's request. | MFB Decl., 6, 15, 16;  Ex. 2 RFA 38 (Admit that you asked Mark Buckman to take over paying some of your bills in 2023.) |
| 8. | M. Buckman does not know his rights and obligations under the purported contract with Pat. | Denied.  Unspecified what of the several contracts this refers to. Mark knows the terms and set them out, several are in writing and signed and notarized.  Mark is seeking declaratory relief as stated in Counterclaim due to the changed circumstance of Matt's housing. | MFB Decl., Ex. 4, 5, 6, 7 |
| 9. | There was no written contract between M. Buckman and Pat. | Deny.  For example,  see, Agreement Regarding Note and Mortgage, Promissory Note,  and Mortgage,  and email memorandum. | MFB Decl., MFB Decl., Ex. 4, 5, 6, 7(email regarding Bill Pay) |
| 10. | M. Buckman could identify three (3) misrepresentations | Deny, vague and unclear as to misrepresentations to whom, when, and about what.  Might be partially  correct as to Pat, | MFB Decl. 23, 29, Exhibits 10 and 11 (Resignation of Trustee and |

2

**Error! Unknown document property name.**

| | Plaintiff's Facts | Admit / Deny | Citation |
|---|---|---|---|
| | . | incorrect as to Trustee of Trust, because that includes Natalie, who also made misrepresentations on behalf of the Trust / Pat. Natalie also had power of attorney for Pat, and acted for Pat. | Acceptance of Trustee) |
| 11. | All misrepresentations related to future events. | Deny, unclear as to misrepresentations to whom, when, and about what. | Too unclear to respond further. |
| 12. | Count IV is no different factually than Count III. | Denied. The CounterClaim speaks for itself. | Counterclaim, Counts 3 and 4. |
| 13. | Count V is no different than Counts III, and IV. | Denied. The CounterClaim speaks for itself. | Counterclaim, Counts 3 , 4, and 5. |
| 14. | Pat was M. Buckman's partner in 16th Avenue. | Admit they were co-owners, don't know the time or circumstance of the other factual claim. | Exhibit 5 (Agreement Regarding Note and Mortgage) |
| 15. | Pat alone allegedly entered into contracts and engaged in fraud. | Deny, unclear as to what contracts, with whom, and what fraud; moreover, this has multiple factual assertions. Pat and Natalie, as trustees of the Pat Buckman Trust, engaged in conduct for the trust, such that the trust can be responsible. | MFB Decl. 23, 29, Exhibits 10 and 11 (Resignation of Trustee and Acceptance of Trustee)Trustee also made misrepresentations . |

3

Error! Unknown document property name.

## MARK BUCKMAN'S CONCISE STATEMENT OF
## ADDITIONAL FACTS IN OPPOSITION TO COUNTER-
## DEFENDANTS MOTION FOR SUMMARY JUDGMENT AND
## IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT
## ON THE 6TH COUNT FOR BREACH OF CONTRACT
## (PROMISSORY NOTE)

|  | Statement of Facts | Citation |
|---|---|---|
| 1. | The main reason Plaintiff signed the "Promissory Note" on September 24, 2023 was to pay Mark for his interest in 714 16th Avenue. | MFB Decl. 5, Exh. 3, RFA #54. |
| 2. | Plaintiff admitted the "Promissory Note" to Mark Buckman that Plaintiff signed on September 24, 2023 is fully enforceable pursuant to its terms. | MFB Decl. 6, 5, Exh. 1, RFA #12. |
| 3. | Natalie Pitre was the trustee of the Patricia W. Buckman Revocable Trust from September 24, 2020 until September 7, 2022 | MFB Decl. 23, 29, Exhibits 10 and 11 (Resignation of Trustee and Acceptance of Trustee) |
| 4. | Natalie Pitre, as Trustee of the Patricia W. Buckman Revocable Trust, represented to Mark Buckman that he would be paid for his interest in 714 16th Avenue | MFB Decl., 23, 29; Exh 1, 131:25 - 132:6 ("In 2023, my sister had said that she was going to have me pay back on 16th Avenue, and I figured out Natalie had created a lot of false narratives with my mom.") |
| 5. | Natalie Pitre had the Power of Attorney for Patricia Buckman from 2019 to 2023 and made agreements on her behalf. | MFB Decl., 23, 29. |
| 6. | Plaintiff admits that a document written in her own handwriting states that Mark Buckman is to get "40% of the [16th | MFB Decl., Exh. 13, Plaintiff's Depo. (filed in support of Defendant's Motion for |

4

**Error! Unknown document property name.**

| Statement of Facts | Citation |
|---|---|
| Avenue] house which he earned in construction" and that the document was true when it was written. | Summary Judgment) v. 1, 48:25-49:11; Exh. 13, Plaintiff's Depo., v. 3, 36:17-37:16; 41:14– 42:1. |

DATED:  Honolulu, Hawai'i and Elk Grove, California, July 7, 2025.


   /s/ Louise K.Y. Ing
LOUISE K.Y. ING
TIMOTHY C. PARTELOW

Attorneys for Defendants
MARK F. BUCKMAN, individually
and as Trustee of the MARK F.
BUCKMAN TRUST, and
JENNIFER BUCKMAN


   /s/ Mark F. Buckman
MARK F. BUCKMAN
Attorney for Defendant
JENNIFER BUCKMAN

5

**Error! Unknown document property name.**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

PATRICIA W. BUCKMAN,
PATRICIA W. BUCKMAN
REVOCABLE TRUST,

          Plaintiffs,

     v.

MARK F. BUCKMAN, ET AL.,

          Defendants.

Civil No. 1:24-CV-00129-MWJS-KJM

**DECLARATION OF MARK F. BUCKMAN;**

**DECLARATION OF MARK F. BUCKMAN**

I, MARK F. BUCKMAN, declare that the following is true and correct:

1.     I am an attorney licensed to practice law before the Courts of the State of Hawai'i. I am counsel of record for myself as well as Defendant Jennifer Buckman in these proceedings. I am also one of the Defendants in these proceedings.

2.     I make this Declaration based on my personal knowledge and am competent to testify about the matters contained in this Declaration Unless otherwise indicated, I make this Declaration based on my personal knowledge and am competent to testify concerning the matters set forth below.

3.     I make this Declaration in support of my COUNTERMOTION FOR SUMMARY ADJUDICATION OF THE 6TH COUNT AND MEMORANDUM IN

**Error! Unknown document property name.**

OPPOSITION TO PLAINTIFFS' MOTION FOR JUDGMENT ON THE

PLEADINGS AND FOR PARTIAL SUMMARY JUDGMENT

4.    Attached hereto as Exhibit 4 is a true and correct copy of the notarized

Promissory Note signed by Patricia W. Buckman, individually, and Patricia W.

Buckman, Trustee of the Patricia W. Buckman Revocable Trust dated July 25,

2019, as amended.  ( Bearing Bates stamp MFB00022-00023).  The note matures

upon, among other things, Patricia W. Buckman permanently moving out of 3010

Kaunaoa Street.  The Promissory Note and Mortgage, which encumbers the Front

House, were signed by Patricia in her individual and trustee capacity as the Front

House title was held in the name of the Trust.  Attached hereto as Exhibit 6 is a

true and correct copy of the notarized Mortgage signed by Patricia W. Buckman,

individually, and Patricia W. Buckman, Trustee of the Patricia W. Buckman

Revocable Trust dated July 25, 2019, as amended.

5.    Plaintiff failed to respond to Mark Buckman's Requests for Admission

to Patricia W. Buckman (RFAs), Set 1, which were served on February 6, 2025,

and likewise failed to respond to Mark Buckman's Requests for Admission to

Patricia W. Buckman, Set 2, which were served on April 5, 2025. No extension

was sought, nor was one granted, and Plaintiff did not seek any protective order.

Attached hereto as Exhibit 2 is a true and correct copy of Mark Buckman's

Requests for Admission to Patricia W. Buckman, Set 1.  Attached hereto as Exhibit

2

Error! Unknown document property name.

3 is a true and correct copy of Mark Buckman's Requests for Admission to Patricia W. Buckman, Set 2.

6.    In RFA # 12, Patricia W. Buckman has admitted, "The 'Promissory Note' to Mark Buckman that you signed on September 24, 2023 is fully enforceable pursuant to its terms.  (MFB00022-00023)."  In  RFA #38, Patricia admitted, "You asked Mark Buckman to take over paying some of your bills in 2023."

7.    Plaintiff inaccurately claims that I "had no clue" what about my general damages were at deposition.   Plaintiff's counsel sought to exclude breach of contract damages from the definition of general damages, and then proceeded to pose questions based on that incorrect legal premise.  (Deposition attached as Exhibit 1, pages 63-66, (for example, Q:  "What general damages are you seeking?"  A:  "But it seems like you're not including breach of contract damages."  Q:  "That's different.  I just want to know your general damages."  A:  "The damages that i would say I have are for the note and the mortgage."  (page 65:22 thru 66:4.)  I was confused by Mr. Wilson excluding breach of contract damages from general damages, and became unsure of what was included in the legal term of art "general damages."

Likewise, when I testified about written contracts, including "a promissory note, agreement regarding note and mortgage, and . . .a mortgage," Plaintiff's

3

**Error! Unknown document property name.**

counsel stated, "I generally don't look at those.  Those are more financial

instruments, not contracts."  (Exhibit A, Page 93:24 thru 94:10.)  Plaintiff's counsel

then proceeded to try to question me based on that counsel's faulty understanding

of the contractual nature of these documents.  I found it difficult to follow Mr.

Wilson's questions as he seemed to often misstate things and he spoke very

quickly.

8.    In fact, I testified about my damages.  I have adduced evidence of

general damages of $351,323.54 on the Promissory Note (Count 6) and $30,821.96

on the Bill Paying Agreement (Count 2) ; indeed, I provided an approximation of

these damages at my deposition ("$235,000 plus Interest" and  "Approximately

$30,000", respectively).  Exh 1, p. 82, p. 80, respectively.

I used a real estate calculator to calculate the total due under the promissory

note from January 4, 2017 (the date of sale of 714 16th Avenue) through July 4,

2025 (to make an even 8 years).  So, I entered the monthly interest rate (5% / 12),

and used the calculator to compound that for 96 months, to arrive at total due as of

July 4 of $351,323.54.  This number does not include any costs of collection.   This

is pursuant to the terms of the notarized Promissory Note, which provides that the

principal sum is $235,695, "with interest on the unpaid principal balance from

January 4, 2017 until paid, at the rate of Five Percent (5.0)%) per year."  (1st

4

Error! Unknown document property name.

paragraph)  "The interest on this Note shall be compounded monthly but in no case shall it exceed the maximum rate permitted by law."  (Id., last sentence)

9.      At my deposition, I believe Plaintiff's counsel understood my claim for damages, as demonstrated by his stating "I think we're all clear on the note. You say you're entitled to it right now at 235[,000] because of anticipatory repudiation plus interest. Put that aside. The only other number you've given me is $30,000[,] which you said results from your bill pay agreement with your mom. . . ."  Exh. 1, p.  91:9-14.

10.     Regarding the 2nd Count, in response to the question, "What are your breach of contract damages, Mr. Buckman, that you're seeking in this action against your mother and her trust?" I testified, "As to the bill paying agreement, I believe I have laid out approximately $30,000 more money for my mom's expenses and the back house expenses than I have received from her. So she would have to reimburse that."  Exh. 1, p 80:17-21.

11.     I explained the $30,000 and components of it several times in deposition. Exh. 1, p. 81:10-12; 81:25 thru 82:3.

12.     As to damages related to the 6th Count, I testified as follows at his deposition:

Q      Then you say there's money due under the note; correct?

5

A    Correct.

Q    How much is due under the note?

A    I believe the face amount of that is $235,000.

Q    How much has she not paid according to whatever the payment period is?

A    There's nothing been paid on it.

Exh. 1, p 82:5-13

13.    I also testified about the Promissory Note and the need to add interest as well. Exh. 1, p. 89:21-24; Exh. 4.

14.    The total due on the Promissory Note as of July 4 is $351,323.54 as detailed in paragraph 8 above.

15.    In an email sent on August 31, 2023, entitled "Bankoh Ease Account, I wrote to my mom, stating:

> Carolyn asked for information on the Bankoh EASE bill paying account.
>
> The goal remains to get your EASE bill paying account simplified and  have 2 pieces of income: (1) rent from back house, (2) property management commissions from Island Properties.
>
> Then, we will use that money to pay recurring expenses of the mortgage, property taxes, insurance (homeowner's, life, car, etc.) utilities. Other, non-recurring expenses will continue to be paid from your regular checking account. I want to build up a buffer in the EASE account so that we never miss any of these payments and I will keep up with it on a regular basis and update you monthly.

**Error! Unknown document property name.**

> It will probably take about another 6-8 weeks to get everything straightened out with the EASE account due to everything being on automatic payments and 30-day cycles.

Plaintiff responded to Mark later that day, "This is great, thank you!" Attached hereto as Exhibit 7 is a true and correct copy of that email.

16.    My understanding of my agreement with my mom on bill paying is as stated in the email:  I would get income (rent, property management proceeds), and use it to pay my mom's mortgage on the Front House, the property taxes, insurance, etc.  If I had excess funds, I was to pay them to my mom, after building up a buffer.  If I had a deficit in funds, my mom was to reimburse me.  This is what my mom and I agreed.   I have provided updated calculations of the amount I expended for my mom through July 5, 2025.  I am continuing to pay costs for mom related to the Back House and for her physical therapy.  Thus, as of July 5, 2025, the total outstanding amount on the Second Count for the Bill Paying agreement is $30,821.96, which is the amount I've advanced for my mom's bills, and for which I'm  owed.  She agreed to pay me, but Natalie has cut off my ability to communicate with my mom - calling the police on me if I go to the house, and changing her phone number and blocking her emails.  I've attached a true and correct summary of the bank accounts total inflows and outflows as Exhibit 8, I've previously provided plaintiff with bank statements and other accounting.

7

**Error! Unknown document property name.**

17     The Counterclaim pleads that I deeded 16th Avenue to PWB's Trust in October 2008. ECF #71, ¶ 32. At the time, Plaintiff was the trustee of her Trust, which I know from looking at the trust and as I was one of the successor trustee's under my mom's 2006 trust.

18.     I deeded my interest in the 16th Avenue Property to Plaintiff's Trust in reliance on Plaintiff's agreement that I would continue to have a 40% ownership interest in the 16th Avenue Property despite title to the property being held solely by the Trust, and with Plaintiff's agreement that my 40% interest would be satisfied upon Plaintiff's death or the sale of 16th Avenue.   As I was also a successor trustee and trusted my mom, I was not worried about recovering my 40% interest.

19.     I provided an additional ~$50,000 (closer to $55,000, I believe) in 2016 to renovate 16th Avenue when mom and I decided to sell the property as she was going to move.  I thought his additional money, and my month's of effort fixing and remodeling the house, would increase the amount we would realize on the sale of 16th Avenue.

20.     My mom requested that I agree to delay payment of my 40% share of 16th Avenue so that she could use the funds for her living expenses, pay down debt, resolve her tax issues, and earned some additional real estate commissions which would then allow her to refinance the Kaunaoa properties.  My mom represented that she would repay Mark out of escrow for the entirety of the

8

Error! Unknown document property name.

~$50,000 he had advanced for remodeling into 16th Avenue in 2016, and that she would pay me additional $100,000 of the remaining debt when my children graduated from high school and started college (this is a summary of an evolving agreement, as I testified at my deposition).

21.     Plaintiff agreed to pay $50,000 of the balance when my older child started college, and an additional $50,000 of the balance when my younger child started college, and the remaining balance would be paid upon Plaintiff's death. My mom never challenged Mark's entitlement to his share of the proceeds, and she committed *at that time* to making a future payment in exchange for Mark agreeing not to present a demand for payment to escrow upon the sale of 16th Avenue.

22.     I did rely on Plaintiff's representations to my detriment—I agreed not to seek payment from escrow when the 16th Avenue Property was sold in 2017, in exchange for Plaintiff repaying me for the full ~$50,000 he put into 16th Avenue for its repair in 2016 (essentially a loan to my mom, because she was obligated to do maintenance), and her representation that I would be repaid for his 40% ownership share of 16th Avenue with $50,000 in fall 2018, $50,000 in fall 2021, and the remainder upon Plaintiff's death.  My mom also asked me to continue being the trustee of her trust at this time, even though I previously told her that I thought she should hire a professional trustee.

9

23.     Natalie took over as trustee of my mom's trust in September 2020, and remained as trustee until September 2022.  Natalie also held power of attorney for my mom from July 2019 until about September 2023 (I know from reviewing the signed power of attorney form.)  Attached hereto as <u>Exhibits 10 and 11</u> are true and correct copies of a Trustee Resignation and Acceptance of Trustee.  I spoke to Natalie several times during this time period, and as the acting trustee of my mom's trust and with her power of attorney, Natalie assured me that I would be paid for my 40% interest in 714 16th avenue upon my mom's passing.  I believed my sister and relied upon her representations, which I only came to doubt in 2023.

24.     I articulated in his Counterclaim that he enjoyed a special/confidential relationship with my mom, "a licensed real estate broker that represented him in numerous real estate deals over the years" That is correct, my mom represented me in several real estate transactions over the years and we worked closer together in numerous real estate deals before I moved to the mainland - and continued to work on things together after that time.

25.     I further pled, and it is correct, that Plaintiff acted as a "constructive trustee" for my benefit, and I was relying on her representations that I continued to own 40% of 16th Avenue when I conveyed it to Plaintiff's Trust in 2008, and that I would receive compensation for that interest either when 16th Avenue was sold or upon Plaintiff's death.  I didn't doubt my mom at the time.

10

**Error! Unknown document property name.**

26.     I reposed confidence in Plaintiff based on their past dealings, and Plaintiff served as my real estate broker, such that Plaintiff was my fiduciary as to 16th Avenue and I thought she was looking out for my best interests and could trust her.

27.     I believe my mom abused that confidence and trust by defrauding me out of his rightful interest in 16th Avenue.  I believe my mom is under Natalie's control and Natalie is impersonating my mom, as she's done via email, text, electronic signatures, to enrichen Natalie without regard to my agreements with my mom or my mom's agreements with my brothers.

28.     In fact, I agreed that Plaintiff could sell 16th Avenue through Island Properties, and Mark assisted my mom in preparing the listing information and sale flyer, but I didn't agree to pay Natalie a commission.

29.     The Counterclaim pleads, and I believe, that Plaintiff breached her fiduciary duty by making misrepresentations to me regarding the payment for my 40% ownership of the 16th Avenue Property.  Until later 2023, I thought I would be paid for my interest in 16th avenue.  Indeed, my sister Natalie, had agreed to this even after my mom said she couldn't afford to pay $50,000 for college, as she had agreed.  I testified at my deposition about the representations of Natalie, "In 2023, my sister had said that she was going to have me pay back on 16th Avenue, and I figured out Natalie had created a lot of false narratives with my mom.  And even

11

though Natalie knew about 16th Avenue, she then tried to claim she didn't."

Natalie made those representations that I would be paid at least once a year in

2020, 2021, 2022, and 2023.   I did not find out that Natalie was not the trustee

until later in 2023, when I found out she was replaced in 2022.  Exh 1, pages 131-

132.

30.     The Promissory Note also matures upon Pat moving out of 3010

Kaunaoa Street, which she did in or about February, 2024.  See, Exhibit 4, first

page.

I declare under penalty of perjury under the laws of the United States of

America that the foregoing is true and correct.

Executed in Elk Grove, California, July 7, 2025.


*/s/ Mark F. Buckman*
MARK F. BUCKMAN

12

Error! Unknown document property name.