IN THE UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

PATRICIA W. BUCKMAN,              ) CIVIL NO. 24-00129 MWJS-KJM
Individually, and as             )
Trustee of the                   )
PATRICIA W. BUCKMAN              )
REVOCABLE TRUST;                 )
PATRICIA W. BUCKMAN             )
REVOCABLE TRUST,                )
                                 )
                Plaintiffs,      )
                                 )
        vs.                      )
                                 )
MARK F. BUCKMAN,                )
Individually, and as            )
Trustee of the MARK F.          )
BUCKMAN TRUST; MARK F.          )
BUCKMAN TRUST;                  )
JENNIFER BUCKMAN; JOHN          )
DOES 1-10; JANE DOES            )
1-10; DOE CORPORATIONS          )
1-10; DOE PARTNERSHIPS          )
1-10; and DOE                   )
GOVERNMENTAL AGENCIES           )
1-10,                           )
                                 )
                Defendants.      )
_____)

DEPOSITION OF MARK F. BUCKMAN,

Taken on behalf of the Plaintiffs pursuant to

Notice, on Thursday, April 24, 2025, commencing at

10:21 a.m., at the Law Office of Richard E. Wilson,

735 Bishop Street, Suite 306, Honolulu, Hawaii 96813.


Ali'i Court Reporting
956 Uwao Street
Honolulu, Hawaii  96825
(808) 394-Alii

EXHIBIT 1

Avenue?

A    I would say we reached a compromise where she agreed to pay me under the note and the mortgage for my interest in 16th Avenue.

Q    Okay.  I think we're kind of like getting off to other matters.  We'll get back to it.  I'm just taking general damages.  What general damages are you seeking as a result of your counterclaim against your mother individually and as trustee for her trust as well as her trust?

A    Can you clarify what you're meaning by general damages?

Q    What you put on the paper on page 45.  It's your counterclaim, and you say:

"Wherefore, Counterclaimant Mark F. Buckman demands judgment against Counterclaim-Defendant Patricia W. Buckman, individually, and as trustee of the Patricia W. Buckman Revocable Trust, and the Patricia W. Buckman Revocable Trust as follows, (i), General Damages."

That's what I'm asking.  What general damages are you seeking?

A    But it seems like you're not including breach of contract damages.

Q      That's different.  I just want to know your general damages.

A      The damages that I would say I have are for the note on the mortgage.

Q      I'm sorry.  For the what?

A      The note -- the promissory note on the mortgage due to 16th Avenue.

Q      Okay.

A      I would say the money I have advanced for my mom's care and for some of the costs on the back house and the front house.  And, yeah, if we're not talking about fraud or other things, that's what I would say they are.

Q      So you're seeking general damages, and then you can explain it to me, but you're seeking general damages based on the note, the mortgage, money that you advanced for her care and costs that you advanced or paid for the front and the back house; correct?

A      If you exclude all the other damages, correct.  Yes.

Q      I'm just focusing on general damages now.  We're on the same page?

A      Actually right now, I don't have a clear understanding what general damages are.  So if you

paragraph 20. But talking about the rent on the back house, as I'm not supposed to make any profit, I'm not out any money, Mark personally, but because I'm not collecting the rent, I am unable to pay that money to my mom or apply it to her bills. So it spills over from the back house into I cannot fulfill my agreement with her to pay her bills because for me to pay her bills, I was not supposed to come out of my pocket. I was supposed to get the income from the back house, and I was also supposed to get the income from my mom's property management. That gets deposited into the accounts I have for my mom.

Q    Okay. We'll get into your two contracts in a second. What are your breach of contract damages, Mr. Buckman, that you're seeking in this action against your mother and her trust?

A    As to the bill paying agreement, I believe I have laid out approximately $30,000 more money for my mom's expenses and the back house expenses than I have received from her. So she would have to reimburse that.

Q    Anything else on your breach of contract damages?

A    I think those -- those numbers are increasing on a periodic basis. Like, I paid my

mom's caregiver, Truly (phonetic), this morning about $500, and those will continue to accrue, I believe.

Q    As of today, it's about 30 grand?

A    That's my estimate without looking at that bookkeeping lately.

Q    Any other breach of contract damages that you're alleging as part of your counterclaim against your mother, individually and as trustee for her trust and her trust?

A    Okay.  So we've talked about the bill paying.  I believe that's approximately 30,000. We've talked about the rent, and I believe that although I should not get any rent, I should be relieved of the obligation to pay other bills with the money I would have collected for rent.

I believe that my mom also, I think under the guise of my sister, has disavowed our agreement to pay me under the note and mortgage that she signed, I believe, in September of 2023 to repay me for 16th Avenue.

Q    So you have the 30 grand you've overpaid for rent, expenses for your mom, and you're saying another breach of contract damage is her not paying on the note for the back house?

A    I think you said 30,000 for rent, and

that's not what that is at all.  There's $30,000 under the bill pay agreement where I've paid more of my mom's expenses than she's reimbursed me for.

Q   Okay.  I understand.  Bill pay agreement, 30 grand.  Then you say there's money due under the note; correct?

A   Correct.

Q   How much is due under the note?

A   I believe the face amount of that is $235,000.

Q   How much has she not paid according to whatever the payment period is?

A   There's nothing been paid on it.  It's due -- it's technically due when she passes or moves out of the Kaunaoa house.

Q   So there's no breach of that note.  She hasn't died yet; right?

A   Well, they are disputing they have to pay it.  So I think lawyers will call it anticipatory repudiation.

Q   I'm just looking at your breach of contract today.  You haven't been damaged because she hasn't died; right?

A   I think there's two parts of it.  I said that she would have to pay it when she moves out of

Kaunaoa, which she has done and she had done before I filed this counterclaim, and she would have to pay it when she passes. However, because she's filed her suit, her suit disavows any obligation under that note. And my understanding of the law is when somebody says they're not going to perform under a contract, they breached it. I could be wrong.

Q    Okay. Let me see if I get this right. So you said that the money -- the 235 would be due when she moved out of the Kaunaoa; correct? Or did I misunderstood you?

A    Do we have a copy of the document? Because we could look at that and it's very clear.

Q    I'm just asking what your understanding is. That's what's you said; correct?

A    No, that's not what I said.

Q    Okay. What did you say?

A    My understanding -- and it would be clear if I looked at the document. My recollection of the document is that the 235 is due if my mom moves out of Kaunaoa or when she passes.

Q    Okay.

A    There could be other terms in the note that I'm unaware of right now.

Q    And she moved out of Kaunaoa because she

back house; is that correct?

A    My brother and I have an agreement.

Q    Not my question.  You moved to evict him from the back house; correct?

A    I'm going to tell you the reason why --

Q    I don't want the reason.  I just want you to answer my question.  You moved to evict him from the back house; correct?

A    When Matt did not fulfill our agreement, I tried to work it out with him.  He wouldn't work it out.  He wouldn't pay any of the carrying costs, and then I filed an eviction against him, correct.

Q    The answer is yes.  Okay.  Fine.

        Getting back to the breach of contract damages, you say you're owed approximately 30,000 for the failure of the bill pay agreement.  You say you're owed 235,000 on the note for anticipatory repudiation issues.  Is there anything else under the breach of contract you claim you're owed or you're seeking in this lawsuit on your counterclaim?

A    235,000 then includes interest.

Q    Okay.

A    So it's a higher number.  I don't know what the number is now.

Q    Any other element of those contractual

damages?

A    I think it gets more into a legal theory. So I'm not sure of it now.

Q    Just tell me whatever you think you're entitled to, sir.  I'll work with you.  You can look at whatever you need to look at.

A    I would say those issues, the three issues that we discussed are them.

Q    Three issues, the 30,000, 235 plus interest.  What's the third issue?

A    The third issue is on the rent for the back house to the extent I have an obligation to my mother or my brother that any rent that was supposed to be paid should offset that.

Q    Is that the $30,000 or offset what?

A    Our agreement was I would collect the rent on the back house and then pay my mom's bills or essentially provide housing for Matt, money for that. To the extent I am held responsible for that, that should have come out of the rent money.  So I'm not trying to make a profit, but it's just kind of like, I would say, you know, attorneys might call it indemnity.

Q    Okay.  I want to make sure we're clear. You've given me two numbers.  Approximately 30 grand

and it's the bill pay agreement, and 235 plus interest for your note.  This bill pay agreement, does that have to do with Matt and that you paid in an extra $30,000 which you should not have paid, or is this some other pocket of contractual damages that you haven't told me about?

A    I'm sorry.  I did not follow that.  Could you --

Q    Okay.  I think we're all clear on the note.  You say you're entitled to it right now at 235 because of anticipatory repudiation plus interest.  Put that aside.  The only other number you've given me is $30,000 which you said results from your bill pay agreement with your mom.  Then you said you have an offset.  Offset of what?  Are you offsetting the $30,000, or is there some other element of damages that you haven't told me about?  Contractual damages, that is.

A    I think -- I think there's a third element which is, again, where I'm asking the court for declaratory relief because I cannot talk to my mom to try to figure out how Matt should be provided housing and what we should do.  And so to the extent that I'm responsible for using any of the money that I should have collected from rent from Matt because

Matt is supposed to be paying those carrying costs, that I might have an obligation to my mom, and I don't want to have that obligation to my mom if I was unable to collect the rent.  That's all I'm saying.  It's an offset.

Q    That's a claim your mother would bring against you, not a claim that you would bring against your mother; right?

A    That's a problem that I have because of this situation of my mom and my sister putting Matt into the back house so that he doesn't have to pay, and then I don't have the ability to pay my mom's bills, but --

Q    Let's maybe do it this way since you're an attorney.  You have a defense to any claim your mother would bring against you for payment of the back house.  I'm asking about your affirmative claims.  I'm not asking about affirmative defenses.  You say you have an affirmative claim for the note and mortgage -- I mean, I'm sorry, for the note plus interest.  You say you have an affirmative claim against your mother or trust for approximately $30,000 on a bill pay agreement.  What other affirmative contractual claim do you have against your mother, either individually or as trustee for

her trust or her trust, for breach of contract?

A    I believe that's it for breach of contract.

Q    All right.  Now, what I'd like to do is you've kind of given me a general statement of the contracts.  So let's go to page 36, I believe.  35.  Page 37 where it says "Breach of Contract."  Do you see that?

A    I do.

Q    And these allegations you drafted; correct?

A    Yes.

Q    And I take it you reviewed them before you filed it?

A    I did.

Q    And they're complete and accurate?

A    I don't know how complete they are.

Q    But they're accurate?

A    They're accurate.

Q    Okay.  Under breach of contract, is there any written contractual agreement you have with your mother that you're accusing her of breaching, I mean in writing, nothing verbal, but in writing?

A    There's a promissory note.  There's an agreement regarding note and mortgage and there's a

mortgage.

Q    I generally don't look at those.  Those are more financial instruments, not contracts.  But however you want to define it is fine.  Putting those aside, the note, the mortgage, the deed, whatever else, any written contract between you and your mother that you contend she breached?

A    You know, I'm not here to argue with you as a lawyer, but things that are entitled agreement and signed by two parties I consider a contract.

Q    That's fine.

A    And that's the agreement regarding note and mortgage.  I think a promissory note is also a contract and it's a contractual obligation.  I believe the mortgage is as well.  So I don't think those can just be brushed off because you don't believe they, you know, under your opinion, count.

Q    Fair enough.  Put those aside.  Any other written contracts you had with your mother or her trust and your mother individually or as trustee for her trust?

A    The bill pay agreement.

Q    That's in writing.

A    We have a correspondence about that in emails, correct.

Finish your answer.

A    Well, it looks to me like you're looking for documents.  So that's what I -- I was waiting for you, but --

Q    Just finish your answer.  I'm listening.

A    I'm sorry.  Can we start again?

Q    And your answer is what?

MS. ING:  You were talking about the $50,000 loan.

BY MR. WILSON:

Q    Are you saying the $50,000 loan or line of credit is secured by a mortgage on the property? I believe your answer is yes; is that correct?

A    My answer is that $50,000 is secured by the mortgage on the front house, correct.

Q    And that's the $235,000 mortgage; correct?

A    I don't know if the mortgage has a face amount on it.

Q    Well, if the mortgage has a face amount of 235,000, that would -- that wouldn't cover the note of 235,000; correct?

A    I think it covers my mom's obligations as my mom individually and as trustee of the trust.

Q    I'm just talking about amounts that --

You're saying that that covers -- that mortgage also covers the $50,000 if its face value for the mortgage is 235,000?

MS. ING:  Object.  Improper hypothetical. Is there a document you want to show him?

MR. WILSON:  No, there's nothing I want to show him.  I just want to ask him questions and get answers.

BY MR. WILSON:

Q   Can you answer my question, please?

A   Well, again, I think -- look at the documents.  They've been recorded in the public record, and I can't tell you these --

You're asking me kind of for legal opinions, and I can't give you a legal opinion now. I think the documents, you've reviewed them yourself, and you know, and I tell you my mom owes me, and there you go.  And we could have different legal opinions, but I can't tell you that now.

Q   They were documents that you prepared. If the face value of that mortgage or the note is 235 and the mortgage secures the note for 235, is it your testimony that the mortgage also secures this line of credit for 50 grand to your mom?

MS. ING:  Well, object.  Again, it

the fraud?

A    I would say that when I deeded the entire property to her and the agreement was we're going to continue with our agreement, she was 60.  I was 40.  That didn't change because the paper title changed.

Q    When did you deed her the remaining portion or remaining 90 percent of the property?

A    I believe it was October 6th, 2008.  That's what it says in paragraph 32.

Q    Okay.  Did you memorialize that in writing, "Hey, mom, I'm -- you know, here's our deal.  I'm deeding you the remaining 90 percent, but I still own a 40 percent equitable interest in the property, and here are the terms of however we're going to go forward"?

A    There was no change in any of the terms and it wasn't documented.

Q    Why wouldn't you document it, you being an attorney?

A    We didn't document in my family.

Q    Well, you documented the lease and mortgage; right, the two -- I mean, I'm sorry, the deed and mortgage with your mom; right?  You documented the note in 2023; right?

A    In 2023, my sister had said that she was

going to have me pay back on 16th Avenue, and I figured out Natalie had created a lot of false narratives with my mom.  And even though Natalie knew about 16th Avenue, she then tried to claim she didn't.  So we documented it because of Natalie's actions and concern.

Q    When you say "we documented," what do you mean by "we"?  Who's we?

A    Me and my mom.  And as I told you before, my mom went and spoke to Natalie about it before it was signed.

Q    When was the 2014 -- I mean, I'm sorry, the 16th Avenue house sold in?

A    I believe -- I'm looking through the complaint.  I believe it was early 2017.

Q    And the deal with your mom when it was sold is you're supposed to get your 40 percent interest as well as some other funds that you claim you invested, like you did updates, you did some upgrade to the property; correct?

A    No.

Q    All right.

A    My mom -- we came in and my mom was going to sell the property, she said, in 2016.

Q    All right.

C E R T I F I C A T E

STATE OF HAWAII                    )
                                   )  ss.
CITY AND COUNTY OF HONOLULU )

                I, LAURA SAVO, a Court Reporter in and
for the State of Hawaii, do hereby certify:

                That on Thursday, April 24, 2025, at
10:21 a.m., appeared before me MARK F. BUCKMAN, the
deponent whose testimony is contained herein; that
prior to being examined, the deponent was by me duly
sworn or affirmed; that the proceedings were taken in
machine shorthand by me and was thereafter reduced to
typewriting under my supervision; that the foregoing
represents, to the best of my ability, a correct
transcript of the proceedings had at that time;

                That pursuant to Rule 30(e) of the Hawaii
Rules of Civil Procedure, a request for an
opportunity to review and make changes to the
transcript:

        _X_   Was made by the deponent or a party
              (and/or their attorney) prior to the
              completion of the deposition.
        ___   Was not made by the deponent or a party
              (and/or their attorney) prior to the
              completion of the deposition.
        ___   Was waived.

                I further certify that I am not of counsel
or attorney for any of the parties to this case, nor
in any way interested in the outcome hereof, and that
I am not related to any of the parties hereto.

                Dated this 9th day of May, 2025, in
Honolulu, Hawaii.


                _____
                LAURA SAVO, RPR, CSR NO. 347
                STATE OF HAWAII