| LAND COURT SYSTEM | REGULAR SYSTEM |

AFTER RECORDATION, RETURN BY MAIL [  ] PICKUP [  ]:
Mark F. Buckman, Esq.
7100 Bandy Road
Sacramento, CA 95829

This Document Contains 12 Pages

Tax Map Key No. (1) 3-1-024-043 CPR 0001
COTTAGES AT DIAMOND HEAD
Unit Diamond Head

## MORTGAGE

THIS MORTGAGE is made this **24** day of September, 2023, between and among PATRICIA W. BUCKMAN, individually and as Trustee of the Patricia W. Buckman Revocable Trust dated July 25, 2019, as amended, having all powers under said trust agreement, including full powers to sell, convey, exchange, mortgage, lease, assign or otherwise deal with and dispose of all lands of the trust estate and interests therein, whose address is 3010 Kaunaoa Street, Honolulu, Hawaii 96815 (herein "**Borrower**") and MARK F. BUCKMAN, a married man as his sole and separate property, whose address is 7100 Bandy Road, Sacramento, CA 95829 (herein "**Lender**").

WHEREAS, Borrower is indebted to Lender in the principal sum of TWO HUNDRED THIRTY-FIVE THOUSAND, SIX HUNDRED NINETY-FIVE AND NO/100 DOLLARS ($235,695.00), which indebtedness is evidenced by Borrower's note of approximate even date herewith (herein "**Note**");

TO SECURE to Lender the repayment of the indebtedness evidenced by the Note, with interest thereon, the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Mortgage, and the performance of the covenants and agreements of Borrower herein contained, Borrower does hereby mortgage, grant, convey and assign to Lender, a married man as his sole and separate property, all of the property described in Exhibit "A" attached hereto.

Page 1 of 12

**EXHIBIT 6**

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rents, rights, appurtenances, and all fixtures now or hereafter attached to the property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the property covered by this Mortgage; and all of the foregoing, together with said property are herein referred to as the "Property".

TO HAVE AND TO HOLD the same with all improvements now or hereafter erected thereon, and all rights, privileges and appurtenances thereto belonging, and the rents, issues and profits thereof and all of the estate, rights, easements, title and interest of the Borrower both at law and in equity, therein and thereto, or appertaining or held and enjoyed therewith, unto the said Lender, and its successors and assigns forever.

Borrower covenants that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property, that the Property is unencumbered except by a first mortgage to Bank of Hawaii, and that Borrower will warrant and defend title to the Property against all claims and demands, subject to any declarations, easements or restrictions or encumbrances mentioned in Exhibit "A" attached hereto.

Borrower and Lender covenant and agree as follows:

1.      Payment of Principal and Interest. Borrower shall promptly pay when due the principal of and interest on the indebtedness evidenced by the Note, and any prepayment and late charges as provided in the Note.

2.      Application of Payments. Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraph 1 hereof shall be applied first to any prepayment charges and late charges, then to any advances by or other costs of Lender, then to interest payable on the Note, and last to the principal due under the Note.

3.      Charges; Liens. Borrower shall pay all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Mortgage, and leasehold payments or ground rents, if any, when due, directly to the payee thereof, unless otherwise directed by Lender. Borrower shall promptly furnish to Lender all notices of amounts due under this paragraph, and Borrower shall promptly furnish to Lender receipts evidencing such payments. Borrower shall promptly discharge any lien which has priority over this Mortgage; provided, that Borrower shall not be required to discharge any such lien so long as Borrower shall agree in writing to the payment of the obligation secured by such lien in a manner acceptable to Lender, or shall in good faith contest such lien by, or defend enforcement of such lien in, legal proceedings which operate to prevent the enforcement of the lien or forfeiture of the Property or any part thereof.

4.      Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, and other hazards included within the term "extended peril coverage" (with inflation guard) in amounts at least equal to the full replacement cost of the insurable improvements on the Property. Borrower shall also obtain comprehensive public liability insurance as customarily provided in Hawaii for homeowner's insurance, and

flood insurance if the Property is within the flood zones eligible for federally subsidized flood insurance.

The insurance carrier providing the insurance shall be chosen by Borrower from insurance companies authorized to do business in the State of Hawaii. NOTICE IS HEREBY GIVEN BY LENDER TO BORROWER THAT BORROWER IS FREE TO PROCURE ANY INSURANCE POLICY REQUIRED BY THIS INSTRUMENT FROM ANY INSURANCE COMPANY AUTHORIZED TO DO BUSINESS IN THE STATE OF HAWAII. All premiums on insurance policies shall be paid by Borrower making payment, when due, directly to the insurance carrier, unless otherwise directed by Lender.

All insurance policies and renewals thereof shall be in form acceptable to Lender and shall include a standard mortgage clause in favor of and in form acceptable to Lender. If the Borrower shall procure any other insurance on the improvements on the property, all such insurance shall likewise include such standard mortgage clause in favor of the Lender and will be claimable by the Lender for application in accordance with this paragraph, and, whether or not so made payable, may be recovered by the Lender by any appropriate proceeding and be similarly applied. Lender shall have the right to hold the policies and renewals thereof, and Borrower shall promptly furnish to Lender all renewal notices and all receipts of paid premiums. In the event of loss, Borrower shall give promptly notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is damaged or destroyed, then the proceeds of the insurance insuring against such damage or destruction will be applied, at Borrower's option, to repair, restore or rebuild the Property, or to reduce the amount Borrower owes to Lender under the Note and under this Mortgage. Any such proceeds not used to repair, restore or rebuild the property shall be applied to the sums secured by this Mortgage. If the insurance proceeds are to be applied to the sums secured by this Mortgage, then the excess proceeds, if any, shall be paid to Borrower. If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds to restoration or repair of the Property.

Unless Lender and Borrower otherwise agree in writing, any such application of proceeds to principal shall not extend or postpone the due date of any installment called for under the Note or change the amount of any such installments. If under paragraph 15 hereof the Property is acquired by Lender, all right, title and interest of Borrower in and to any insurance policies and in and to the proceeds thereof resulting from damage to the Property prior to the sale or acquisition shall pass to Lender to the extent of the sums secured by this Mortgage immediately prior to such sale or acquisition.

5.    Preservation and Maintenance of Property. Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Mortgage is on a leasehold. If this Mortgage is on a unit in a condominium or a planned unit development, Borrower shall perform all of

Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

6.    Protection of Lender's Security. If Borrower fails to perform the covenants and agreements contained in this Mortgage, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, including, but not limited to, eminent domain, insolvency, code enforcement, or arrangements or proceedings involving a bankrupt or decedent, then Lender at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums and take such action as is necessary to protect Lender's interest, including, but not limited to, disbursement of reasonable attorney's fees and entry upon the Property to make repairs.

Any amounts disbursed by Lender pursuant to this paragraph 6, with interest thereon, shall become additional indebtedness of Borrower secured by this Mortgage. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof, and shall bear interest from the date of disbursement at the rate payable from time to time on outstanding principal under the Note unless payment of interest at such rate would be contrary to applicable law, in which event such amounts shall bear interest at the highest rate permissible under applicable law. Nothing contained in this paragraph 6 shall require Lender to incur any expense or take any action hereunder.

7.    Inspection. Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

8.    Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Mortgage, with the excess, if any, paid to Borrower. In the event of a partial taking of the Property, unless Borrower and Lender otherwise agree in writing, there shall be applied to the sums secured by this Mortgage such proportion of the proceeds as is equal to that proportion which the amount of the sums secured by this Mortgage immediately prior to the date of taking bears to the fair market value of the Property immediately prior to the date of taking, with the balance of the proceeds paid to Borrower.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date such notice is mailed, Lender is authorized to collect and apply the proceeds, at Lender's option, either to restoration or repair of the Property or to the sums secured by this Mortgage.

Unless Lender and Borrower otherwise agree in writing, any such application of proceeds to principal shall not extend or postpone the due date of any installment called for under the Note or change the amount of any such installments.

9. Continuing Liability of Borrower. Unless Lender agrees in writing to release the original Borrower or any of Borrower's successors in interest, any extension of the time for payment or modification of amortization of the sums secured by this Mortgage granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by the original Borrower and Borrower's successors in interest.

10. Forbearance by Lender Not a Waiver. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of any of Lender's rights, including, without limitation, to accelerate the maturity of the indebtedness secured by this Mortgage.

11. Remedies Cumulative. All remedies provided in this Mortgage are distinct and cumulative to any other right or remedy under this Mortgage or afforded by law or equity, and may be exercised concurrently, independently or successively.

12. Successors and Assigns Bound; Joint and Several Liability; Captions. The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 14 hereof. All covenants and agreements of Borrower shall be joint and several. The captions and headings of the paragraphs of this Mortgage are for convenience only and are not to be used to interpret or define the provisions hereof.

13. Notice. Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Mortgage shall be given by mailing such notice by certified mail, return receipt requested, addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail, return receipt requested, to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Mortgage shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

14. Transfer of the Property. If Borrower shall sell, dispose of, transfer (including by way of Agreement of Sale), or further encumber, or agree to sell, dispose of, transfer (including by way of Agreement of Sale), or further encumber, all or any portion of the Property, excluding (a) the creation of purchase money security interest for household appliances, (b) a transfer by devise, descent or by operation of law upon the death of a joint tenant, or (c) the grant of any leasehold interest of three years or less not containing an option to purchase, then except as otherwise prohibited by federal or state law, Lender may, at Lender's option, declare all the sums secured by this Mortgage to be immediately due and payable pursuant to Paragraph 15 hereof.

15.    Default. In the event of default, that is to say, if any one or more of the following events shall happen:

(1)    Borrower fails to make any payment of principal or interest on the Note secured hereby on or before the date such payment is due;

(2)    Borrower fails to make payment of any advance or expense with interest thereon secured hereby, or repay any disbursement with interest thereon authorized by the terms of this Mortgage and actually made by Lender;

(3)    Borrower fails to perform or observe any other covenant, condition, or agreement contained herein or in any other instrument or obligation secured hereby;

then in each such event and after providing the notice as hereinafter set forth, at Lender's option, the whole amount of all indebtedness owing by or chargeable to the Borrower under any provision of this Mortgage or intended to be secured hereby shall become at once due and payable, and any delay or failure on the part of Lender to demand such payment shall not prejudice the right of Lender to do so. Prior to acceleration by Lender as aforesaid, Lender shall mail notice to Borrower as provided in paragraph 13 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than thirty (30) days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage and sale of the Property.

In each such event of default, with or without foreclosure, the Borrower, upon demand of Lender, shall forthwith surrender to Lender the actual possession of the Property and, to the extent permitted by law, Lender (i) may enter and take possession of the mortgaged property, together with the books, papers, and accounts of the Borrower relating thereto, (ii) may exclude the Borrower, its agents, and servants therefrom, (iii) may hold, operate, and manage the same and from time to time make all needful repairs and such alterations, additions, advances, and improvements as Lender shall deem wise, (iv) may receive and collect all rents, income, and profits from the Property whether then due or accrued or to become due, and said rents, income, and profits are hereby assigned to Lender, and Lender is hereby irrevocably appointed the attorney-in-fact of the Borrower in the name of the Borrower, or in the name of Lender, to demand, sue for, collect, recover, and receive all such rents, income, and profits, to compromise and settle claims for rents, income, or profits upon such terms and conditions as the Lender may deem proper, and out of the same, may pay all proper costs and expenses in connection therewith, including reasonable compensation to Lender's agents, attorneys, counsel, and accountants, and any taxes and assessments and other charges, including rents, prior to the lien of this mortgage, which Lender shall deem it wise to pay, and all expenses of such repairs, alterations, additions, and improvements, and other disbursements made by Lender pursuant to the terms hereof, and may apply the remainder of the moneys so received by Lender to the payment of the unpaid principal of, and interest on, the or any other obligation secured hereby, and (v) may enter into, renew, or terminate leases or tenancies.

In each such event of default, Lender may, in its sole discretion, foreclose this Mortgage: (a) by civil action, with the immediate right to appointment of a receiver with the aforesaid powers upon ex parte motion or order and without bond pending foreclosure; (b) by entry and possession; (c) with or without entry and possession, by advertisement and sale under Section 667-5, Hawaii Revised Statutes, as amended or otherwise, of all or any portion or portions of the Property, either as a whole or in parcels or units, and on such terms as to payment and credit, partial credit, and security for payment as Lender may approve, having first given notice as required by law, at public auction in Honolulu, Hawaii, unless at the time of such sale the law requires, notwithstanding this provision, that the sale be held elsewhere, in which event such sale shall be held wherever required by such law, and may either in the name of Lender or as the attorney-in-fact of the Borrower for such purpose hereby irrevocably appointed, give valid receipts for the purchase money and effectually assign, transfer, and convey the Property so sold to the purchaser or purchasers absolutely and forever; or (d) by any other remedy then provided by law.

Any foreclosure shall forever bar the Borrower and all persons claiming under the Borrower from all right, title, and interest in the Property at law and in equity, notwithstanding any provision of law to the contrary now existing or hereafter enacted, the Borrower expressly waiving the benefits thereof, and no foreclosure sale shall impair or affect the lien of this Mortgage on any portion of the Property remaining or any other remedy of Lender for the recovery of any indebtedness remaining after application of said moneys. Out of the proceeds of any foreclosure sale, Lender may deduct all costs and expenses of any remedy pursued, including attorneys' fees, may pay and discharge any lien, either prior or junior to this Mortgage, on said property, and retain or be awarded all sums necessary to repay advances authorized hereunder and to satisfy all indebtedness of the Borrower to Lender whether or not then due, rendering the surplus, if any, to the Borrower. IF SUCH PROCEEDS SHALL BE INSUFFICIENT TO DISCHARGE THE SAME IN FULL, THEN EXCEPT AS OTHERWISE PROVIDED BY LAW, LENDER MAY HAVE ANY OTHER LEGAL RECOURSE AGAINST THE BORROWER FOR THE DEFICIENCY.

This Mortgage shall not prevent nor be deemed to prevent Lender, in the event of default, from pursuing any other remedy whatsoever against Borrower for the collection of the indebtedness hereby secured and interest thereon and Lender may, at the option of Lender, pursue any other course to collect said indebtedness and interest thereon and resort to any assets of Borrower whatsoever without first resorting to, and without prejudice to the right to later resort to, the Property pursuant hereto.

Neither the Borrower nor anyone claiming by, through, or under Borrower, to the extent Borrower may lawfully so agree, shall or will set up, claim, or seek to take advantage of any appraisement, valuation, stay, extension, or redemption laws now or hereafter in force in any locality where any of the Property is situated, in order to prevent or hinder the enforcement or foreclosure of this Mortgage, or the absolute sale of the Property, or the final and absolute putting into possession thereof, immediately after such sale, of the purchasers thereat; and Borrower, for themselves and all who may claim under them, hereby waive, to the full extent that

they may lawfully do so, the benefit of all such laws, and any and all right to have the estates comprised in the security intended to be created hereby marshalled upon any foreclosure of the lien hereof and agrees that Lender or any court having jurisdiction to foreclose such lien may sell the Property as an entirety.

16.     Governing Law; Severability. This Mortgage shall be governed by the law of the State of Hawaii. In the event that any provision or clause of this Mortgage or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Mortgage and the Note are declared to be severable.

17.     Assignment of Rents; Appointment of Receiver. As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 15 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 15 hereof or abandonment of the Property, Lender shall be entitled to have a receiver appointed by a court to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorney's fees, then to the sums secured by this Mortgage. The receiver shall be liable to account only for those rents actually received.

18.     Defaults on Prior Mortgages. A default under any mortgage prior to this Mortgage that continues for 30 days or more, or the commencement of any action to foreclose any such prior mortgage, shall constitute a default under this Mortgage and all amounts secured hereby shall immediately become due and payable without notice at the option of the Lender, notwithstanding the provisions of paragraph 15 to the contrary.

If the Borrower defaults under any prior mortgage, the Lender shall have the right but not the obligation to cure any such default, and all amounts paid or advanced by Lender to cure such default, including all costs and expenses incident thereto, together with interest from the time of such payments shall be added to the indebtedness secured by this Mortgage and may be collected hereunder at any time thereafter.

19.     Release. Upon payment of all sums secured by this Mortgage and payment by Borrower for the cost of a release, Lender shall release this Mortgage. Borrower shall pay all costs of recordation, if any.

20.     Usury. If the loan secured by this Mortgage is subject to a law which sets maximum loan charges and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the

principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

21.    Alterations and Improvements. Borrower is not permitted to make additions or major improvements to the Property without Lender's written consent. Lender may inspect plans and specifications and may condition Lender's consent on Borrower's obtaining required building permit and evidence of Borrower's adequate financing or bonding to pay for the improvements; provided, however, that if after ten calendar days from the Borrower submitting such plans to Lender, Borrower has not received any advice from the Lender, then Lender's silence shall be deemed to be approval and Borrower may proceed with improvements or alterations.

IN WITNESS WHEREOF, the Borrower has executed this Mortgage on the day and year first above written.


_Patricia W. Buckman_

PATRICIA W. BUCKMAN,
Individually


_Patricia W. Buckman_

PATRICIA W. BUCKMAN,
Trustee of the Patricia W. Buckman
Revocable Trust dated July 25, 2019, as amended
"Borrower"

STATE OF HAWAII                    )

                                   ) SS.

CITY AND COUNTY OF HONOLULU        )


On this this 24 day of September, 2023, before me personally appeared PATRICIA W. BUCKMAN, to me personally known or adequately proven to be the person(s) described in and who executed the foregoing instrument, who, being by me duly sworn or affirmed, did say that such person(s) executed the same as the free act and deed of such person(s), and if applicable, in the capacity shown, having been duly authorized to execute such instrument in such capacity.

Notary Public, State of Hawaii

_Mihail Gilevich_

(Printed name}        MIHAIL GILEVICH #16-241
                      My commission expires July 10, 2024

My commission expires: _July 10, 2024_

Doc. Date: _09-24-2023_        # Pages: _12_

Name: _Mihail Gilevich_  First Circuit

Doc. Description: _Mortgage_

Notary Signature        Date

NOTARY CERTIFICATION

MIHAIL GILEVICH #16-241
My commission expires July 10, 2024

Page **10** of **12**

## EXHIBIT "A"

### FIRST

Unit Diamond Head of that certain Condominium Project known as "COTI AGES AT DIAMOND HEAD", as shown on Condominium Map No. 5725 and described in the Declaration of Condominium Property Regime dated January 25, 2018, recorded in the Bureau of Conveyances of the State of Hawaii as Document No. A-65990763, as may be amended from time to time.

Together with appurtenant easements as follows:

(A)    An exclusive easement to use the Dwelling Area having the same number as the Unit as designated on said Condominium Map.

(B)    An exclusive easement to use the parking spaces, if any, designated on said Condominium Map.

(C)    Non-exclusive easements in the common elements designed for such purposes for ingress to, egress from, utility services for and support of said Unit; in the other common elements for use according to their respective purposes.

(D)    Exclusive easements to use other limited common elements appurtenant thereto designated by the Declaration.

### SECOND

An undivided fifty percent (50%) interest in all common elements of the Project as established for said Unit by said Declaration, or such other percentage interest as hereinafter established for said Unit by an amendment of said Declaration, as tenant in common with the other Unit owners and tenants thereof.

Being a portion of the land conveyed to Grantor herein by UNIT DEED to Unit Diamond Head, dated August 11, 2022 recorded as aforesaid as Document No. A-82590334.

The land upon which said Condominium Project is located is described in said Declaration, which description is hereby expressly incorporated by reference.

SUBJECT, HOWEVER, to the following:

1.    The terms and provisions contained in said Declaration, as the same may be amended from time to time. (Project covered by Condominium Map No. 5725 and any amendments thereto.)

2.    Bylaws of the Association of Unit Owners for "COTTAGES AT DIAMOND HEAD", dated January 25, 2018, recorded in the Bureau of Conveyances of the State of Hawaii as Document No. A-65990764, as the same may be amended from time to time

3.    Any and all easements encumbering the Unit herein mentioned, and/or the common interest appurtenant thereto, as created by or mentioned in said Declaration, as the same may be amended from time to time, and/or in said Unit Deed, and/or as delineated on said Condominium Map.

TOGETHER WITH all built-in furniture, attached existing fixtures, built-in appliances, water heater, electrical and/or gas and plumbing fixtures, and attached carpeting, all of the foregoing being situate in or used in connection with the above-described real property.

**END OF EXHIBIT "A"**