# The

# Patricia W. Buckman

# Revocable Trust

EXHIBIT 9

# Declaration of Revocable Trust

## of

## Patricia W. Buckman

THIS TRUST AGREEMENT is made in the State of Hawaii between the Grantor and Trustee who have signed below.

## Article I - Introduction

**1.01. Grantor.**

The Grantor of this trust is **Patricia W. Buckman**, also known as **Patricia Whitaker Buckman**, and all references herein to "the Grantor" shall be to said person.

**1.02. Trustee.**

The initial Trustee of this trust is **Patricia W. Buckman**, and all references herein to "the Trustee" shall be to said **Patricia W. Buckman** so long as said person serves as Trustee, and during such time said person alone shall have all the powers granted to the Trustee herein. In the event that **Patricia W. Buckman** dies, resigns or becomes incapacitated, **Natalie P. Pitre** shall serve as Trustee. In the event that **Natalie P. Pitre** dies, resigns or is unable or refuses to act, **Carl T. Pitre** shall serve as Trustee. In the event that **Carl T. Pitre** dies, resigns or is unable or refuses to act, **Matthew B. Buckman** and **Tamara Buchwald** shall serve as Co-Trustees. In the event that either **Matthew B. Buckman** or **Tamara Buchwald** dies, resigns or is unable or refuses to act, the survivor of them shall serve as sole Trustee. Any Trustee appointed hereunder shall become Trustee without court order or other action other than the delivery of written notice to the beneficiaries hereunder.

**1.03. Name of Trust.**

This trust shall be named the Patricia W. Buckman Revocable Trust.

**1.04. Spouse.**

At the present time, the Grantor is unmarried.

I-1

**1.05.   Children.**

The Grantor's children are **Mark F. Buckman, Natalie P. Pitre** and **Matthew B. Buckman**, and all references herein to the Grantor's "children", "issue" and "descendants" shall be to said persons and to any other persons hereinafter born to or adopted by the Grantor and to their descendants.

# Article II - Trust Provisions During Grantor's Lifetime

**2.01.    Trust Property.**

The Grantor transfers to the Trustee the sum of One Dollar ($1.00) together with the property described in the attached Schedule A and has caused or will cause the Trustee to be designated as beneficiary, but not the owner, of certain policies of insurance on the Grantor's life.  Such property and policies, any other property that hereafter may be received by the Trustee and the proceeds of all policies payable to the Trustee shall be held and disposed of upon the following trusts.

**2.02.    Payments to Grantor.**

During the life of the Grantor, the Trustee shall pay all the net income of the trust to the Grantor or as the Grantor otherwise directs in writing, and the Trustee shall pay any part of the principal of the trust to the Grantor or one or more person as the Grantor from time to time directs in writing.  However, during any period in which the Grantor, in the opinion of the Trustee, is incapable of managing the Grantor's own affairs, the Trustee, in its discretion, may pay to or use for the benefit of the Grantor so much of the income and principal of the trust as the Trustee determines to be required for the Grantor's support, comfort and welfare, in the Grantor's accustomed manner of living, or for any other purposes the Trustee believes to be for the Grantor's best interest.  Any excess income shall be added to principal at the discretion of the Trustee.

**2.03.    Revocation.**

The Grantor alone reserves the right to revoke this agreement at any time by an instrument in writing, signed by the Grantor, acknowledged before a notary public and delivered to the Trustee.  No guardian, committee, conservator or similar legal representative shall have any power of revocation.  Upon revocation the Trustee shall return to the Grantor any and all property, including life insurance policies if held for safekeeping by the Trustee which may have been added to the trust during the lifetime of the Grantor.

**2.04.    Amendment.**

The Grantor alone reserves the right to amend this agreement in whole or part at any time by an instrument in writing, signed by the Grantor, acknowledged before a notary public and delivered to the Trustee.  No amendment shall increase the duties, obligations or responsibilities of the Trustee without said Trustee's consent.

# Article III – Trust Provisions Regarding Life Insurance

### 3.01.  Life Insurance Policies.

During the Grantor's life, the Grantor may cause certain life insurance policies to have the trust named as beneficiary thereunder. The Trustee shall have no responsibility with respect to the safekeeping of such life insurance policies or the payment of any premiums, assessments or other sums due on any of the life insurance policies which name the trust as beneficiary.  The Grantor retains during the Grantor's life all rights under insurance policies payable to the Trustee, including but not limited to the right to all dividends, conversion and option privileges, cash surrender values and the right to change beneficiaries.  The Grantor may assign any policy to any lender, including any Trustee, as security for any loan.  The rights of the assignee of any policy shall be superior to the rights of the Trustee.  If any policy is surrendered or if the beneficiary of any policy is changed, this trust shall be ineffective with respect to that policy only.

### 3.02.  Collection of Life Insurance Proceeds.

Upon the death of the Grantor, the Trustee, in its discretion, may collect the net proceeds of any policy on the life of the Grantor held by or known to and payable to it or may exercise any optional method of settlement.  Payment to and the receipt by the Trustee shall be a full discharge of the liability of any insurance company, which need not take notice of this instrument or see to the application of any payment.  If other assets of the trust are insufficient to defray expenses, the Trustee need not engage in litigation to enforce payment of any policy without satisfactory indemnification for any resulting expense.

# Article IV - Trust Provisions Upon Grantor's Death

**4.01.  Payments to Grantor's Estate.**

After the Grantor's death, to the extent that cash and marketable securities in the Grantor's estate are stated by the Personal Representative or legal representatives to be insufficient, pursuant to an instrument or instruments in writing delivered to the Trustee, the Trustee shall pay the Grantor's funeral expenses, legally enforceable claims against the Grantor or the Grantor's estate, reasonable expenses of administration of the estate, any allowances by court order for those dependent upon the Grantor, any deficiencies needed to complete the payment of any legacies and all inheritance, estate, succession and death taxes, including but not limited to the taxes on the testamentary estate, payable by reason of the Grantor's death, together with any interest or other additions to the tax, without reimbursement from the Grantor's Personal Representative or administrator or from any beneficiary of insurance upon the Grantor's life, United States Savings Bonds or property held by the Grantor jointly with any person or from any other person, or property subject to a general power of appointment or any property transferred during the Grantor's lifetime.  The Grantor waives any right of reimbursement for any payments made pursuant to this Article.

**4.02.  Payment of Taxes by Third Party.**

The Grantor directs that the amount, if any, (a) by which the estate and inheritance taxes shall be increased as a result of the inclusion of property in which the Grantor may have a qualifying income interest for life or over which the Grantor may have a power of appointment, and (b) generation-skipping taxes caused by a disclaimer or by a direct skip from a trust not established hereunder, shall be paid by the person holding or receiving that property.

**4.03.  Trustee's Responsibility to Determine Liability.**

The Trustee shall have no responsibility with respect to the fixing, ascertainment and determination of the estate, inheritance, succession and death taxes and is not required to take any steps to protest or bring legal proceedings with respect to the determination of such taxes.  Written statements by the Personal Representative or administrator of the sums to be paid shall be sufficient evidence of the amount and propriety for the protection of the Trustee, and the Trustee shall be under no duty to see to the application of any payments.

**4.04.  Charging of Expenses Against Trust Estate.**

Subject to any limitations set forth herein or in the Grantor's will, all such payments shall be charged generally against the principal of the trust estate.

# Article V - Trust Distribution Provisions Upon Grantor's Death

**5.01.    Disposition of Trust Property Upon Death of Grantor.**

Upon the death of the Grantor, the Trustee shall distribute all the trust property, together with any unpaid income, as follows.

**(a)    Personal Property Distribution.**

The Grantor requests the Trustee to abide by any memorandum by the Grantor directing the disposition of personal and household effects of every kind including but not limited to furniture, appliances, furnishings, pictures, china, silverware, glass, books, jewelry, wearing apparel, and all policies of fire, burglary, property damage, and other insurance on or in connection with the use of this property. Otherwise, the personal and household effects of the Grantor shall be distributed at the sole discretion of **Natalie P. Pitre** with the remaining assets of the Trust.

**(b)    The Grantor's Real Property Located at 3010 A Kaunaoa Street, Honolulu, Hawaii.**

3010 A Kaunaoa Street, Honolulu, Hawaii shall be held IN TRUST for the benefit of **Matthew B. Buckman** as follows:

**(i)**    Income and Principal shall be used for the benefit of **Matthew B. Buckman** at the discretion of the Trustee, as the Trustee determines to be required for said beneficiary's HEALTH, MAINTENANCE AND SUPPORT, adding any excess income to principal.

**(ii)**    Notwithstanding, the Grantor requests that the property continue to be managed as a rental property under the management of **Natalie P. Pitre** (currently affiliated with Island Properties Hawaii).

**(iii)**    The Grantor suggests that for the first six (6) months following her death that all income be retained IN TRUST and be used by the Trustee to pay down the mortgage, property related expenses and repairs, with any excess income retained as a reserve fund for future home expenses.

**(iv)**    The Grantor requests that 3010 A Kaunaoa Street, Honolulu, Hawaii continue to be held as a rental property for the benefit of the beneficiaries of this Trust. However, if **Matthew B. Buckman** requests that the property be sold, the Trustee shall sell the property and hold the proceeds for the benefit of **Matthew B. Buckman** pursuant to the terms and conditions of this paragraph 5.01 (b).

**(v)**    Upon the death of **Matthew B. Buckman**, unless previously sold, the property shall be sold by the Trustee and, the proceeds, together with all other assets held in this fund (after all expenses of the sale) will be distributed as follows:

    **(A)**    The sum of One Hundred Thousand and No/100 Dollars ($100,000.00) shall be held IN TRUST for the benefit of **Emma Buckman** pursuant to the terms and conditions of paragraph 5.02 hereinbelow.

    **(B)**    The sum of One Hundred Thousand and No/100 Dollars ($100,000.00) shall be held IN TRUST for the benefit of **Brian Buckman** pursuant to the terms and conditions of paragraph 5.02 hereinbelow.

    **(C)**    The sum of One Hundred Thousand and No/100 Dollars ($100,000.00) shall be held IN TRUST for the benefit of **Emanuelle Pitre** pursuant to the terms and conditions of paragraph 5.02 hereinbelow.

    **(D)**    The sum of One Hundred Thousand and No/100 Dollars ($100,000.00) shall be held IN TRUST for the benefit of **Gabrielle Pitre** pursuant to the terms and conditions of paragraph 5.02 hereinbelow.

    **(E)**    The sum of Three Hundred Thousand and No/100 Dollars ($300,000.00) shall be held IN TRUST for the benefit of **Duke Manoa Buckman** pursuant to the terms and conditions of paragraph 5.02 hereinbelow.

    **(F)**    The sum of One Hundred Thousand and No/100 Dollars ($100,000.00) shall be distributed outright and free from any trust to **Natalie Pitre**.

    **(G)**    The sum of Ten Thousand and No/100 Dollars ($10,000.00) shall be distributed outright and free from any trust to **Sokda Phick**.

    **(H)**    The sum of Ten Thousand and No/100 Dollars ($10,000.00) shall be distributed outright and free from any trust to **Rita Wong**.

    **(I)**    Any remaining funds shall be distributed outright and free from any trust, in equal shares to **Natalie P. Pitre**, **Carl T. Pitre Mark F. Buckman** and **Jen Buckman,** or if they are not surviving, to their issue.

(c)    **The Grantor's Real Property Located at 3010 B Kaunaoa Street, Honolulu, Hawaii.**

The Grantor's real property located at 3010 B Kaunaoa Street, Honolulu, Hawaii shall be held IN TRUST for the benefit of **Duke Manoa Buckman** pursuant to the terms and conditions of paragraph 5.02 hereinbelow.

Notwithstanding the foregoing, 3010 B Kaunaoa Street, Honolulu, Hawaii can be sold and exchanged for another property at **Duke Manoa Buckman's** request with the consent of the Trustee, which consent can be withheld at the Trustees sole discretion.

(d)    **Rest, Residue and Remainder.**

The rest, residue and remainder of trust property, shall be equally divided between **Matthew B. Buckman** and **Duke Manoa Buckman** and held IN TRUST under the terms and conditions of paragraphs 5.01(b) and 5.01(c) respectively.

**5.02.    Disposition of Trust Property Held for the Benefit of a Grandchild of the Grantor.**

Each trust set aside for a grandchild of the Grantor shall be held and disposed of as follows:

(a)    **Income and Principal Provisions Prior to Age Eighteen.**

While any grandchild of the Grantor is under the age of Eighteen (18) years, the Trustee shall use for said grandchild's benefit so much of the income and principal of said grandchild's trust as the Trustee determines to be required, in addition to said grandchild's other income from all sources known to the Trustee, for said grandchild's HEALTH, EDUCATION, MAINTENANCE and SUPPORT, adding any excess income to principal. The term "health" as used herein shall include medical, dental, hospital and nursing expenses as well as expenses of invalidism. The term "education" as used herein shall include, but not be limited to, elementary, intermediate, secondary, undergraduate, graduate, postgraduate, college, university, technical or trade schools, and private lessons in musical instruments and the arts, and whether directed toward the attainment of a specific degree or not, except as otherwise provided herein. It is the Grantor's desire that, insofar as the grandchildren of the Grantor are concerned, each be enabled to obtain the highest education to which he or she is capable, and that the Trustee liberally exercise its power under this provision to provide for him or her all of the reasonable costs of tuition, books, supplies, room, board and living expenses at a suitable educational institution, where appropriate.

**(b)** **Income and Principal Provisions Upon Attainment of Age Eighteen.**

After any grandchild of the Grantor attains the age of Eighteen (18) years, the Trustee shall use for said grandchild's benefit so much of the income of said grandchild's trust as the Trustee determines to be required, in addition to said grandchild's other income from all sources known to the Trustee, for said grandchild's HEALTH and EDUCATION, adding any excess income to principal; PROVIDED, HOWEVER, that if said grandchild shall be enrolled full-time at an accredited university, college or other institution of higher education, the Trustee shall use for said grandchild's benefit so much of the income and principal of said grandchild's trust as the Trustee determines to be required, in addition to said grandchild's other income from all sources known to the Trustee, for said grandchild's HEALTH, EDUCATION, MAINTENANCE and SUPPORT, adding any excess income to principal. The definition of "full-time" shall be as it is defined by the respective accredited university, college or other institution of higher education.

Notwithstanding the above, if, due to the necessity of said grandchild to secure employment, internship or otherwise, while attending such educational institution, said grandchild shall be unable to attend such educational institution full-time and, in the absolute and sole discretion of the Trustee, it shall be deemed necessary or advisable and in the best interest of said grandchild to do so, or if such grandchild shall, without such education, in the Trustee's sole discretion, have earned the right to such income from such trust for said grandchild's HEALTH, EDUCATION, MAINTENANCE and SUPPORT, the Trustee may distribute the income of said trust to said grandchild in accordance with the provisions of this subparagraph (b).

**(c)** **Income and Principal Provisions Upon Graduation.**

After any grandchild of the Grantor shall have graduated from such accredited university, college or other institution of higher education and shall have obtained a Bachelor's Degree or its equivalent, the Trustee shall pay all the net income of said grandchild's trust to said grandchild in convenient installments at least as often as quarter-annually.    Whenever the Trustee determines that the income of any grandchild of the Grantor from all sources known to the Trustee is not sufficient for said grandchild's HEALTH, EDUCATION, MAINTENANCE and SUPPORT, and that of said grandchild's dependent children, the Trustee may pay to said grandchild or use for said grandchild's benefit, so much of the principal of said grandchild's trust as the Trustee determines to be required for those purposes.

V-4

(d)    **Income and Principal Provisions Upon Attaining Age Twenty-Five.**

Notwithstanding the provisions of subparagraph (b) hereinabove, after any grandchild of the Grantor shall have attained the age of Twenty-Five (25) years, or shall have completed his or her education prior to attaining said age, the Trustee shall pay all the net income of said grandchild's trust to said grandchild in convenient installments at least as often as quarter-annually. Whenever the Trustee determines that the income of any grandchild of the Grantor from all sources known to the Trustee is not sufficient for said grandchild's HEALTH, EDUCATION, MAINTENANCE and SUPPORT, and that of said grandchild's dependent children, the Trustee may pay to said grandchild or use for said grandchild's benefit, so much of the principal of said grandchild's trust as the Trustee determines to be required for those purposes.

(e)    **Termination of Each Grandchild's Trust.**

After any grandchild of the Grantor shall have reached the age of Thirty (30) years, the Trustee shall distribute to said grandchild such portions or all of the principal of said grandchild's trust as said grandchild from time to time requests by signed instruments delivered to the Trustee during said grandchild's life [not exceeding in the aggregate, however, One-Fourth (1/4) in value before said grandchild reaches the age of Thirty-Five (35) years, nor One-Half (1/2) in value before said grandchild reaches the age of Forty (40) years]. For the purpose of this subparagraph, the value of the principal of any grandchild's trust shall be its value as of the time said grandchild first became entitled to request a distribution, plus the value of any subsequent additions as of the time of addition.

(f)    **Distribution If Grandchild Dies Before Trust Terminates.**

Should any grandchild die before becoming entitled to receive distribution of the entire trust set aside for said grandchild, such trust or its undistributed remainder, including all accumulated undistributed income, shall be held for and distributed to said grandchild's then living lawful issue, such issue taking *per stirpes*, outright and free from any trust, or should no such issue then be living, such trust shall go to augment equally the shares then held for the benefit of, and those previously distributed to, the other of the issue of the parent of said grandchild, or their issue *per stirpes*, pursuant to the terms and conditions of this paragraph 5.02 and if no such issue are then surviving, to the other of the Grantor's children, *per stirpes*, pursuant to the terms and conditions of paragraph 5.01 hereinabove.

(g)    **Distribution of Trust Property With Respect to Afterborn Grandchildren.**

Notwithstanding the foregoing, in the event any child of the Grantor shall have any issue born to such child after the death of the Grantor, and said issue born after the death of the Grantor shall be the only surviving issue of the Grantor, the Trustee

V-5

shall distribute to each such issue said issue's share of the trust property upon said issue's attaining the age of Twenty-One (21) years.

**5.03.    Contingent Beneficiaries.**

If no descendants of the Grantor survive the Grantor, or if any descendant of the Grantor dies before becoming entitled to receive distribution of the entire trust set aside for him, and if there are no other descendants of the Grantor then surviving, then in such event the Trustee shall distribute the trust property, outright and free of all trusts, to the Grantor's heirs-at-law determined as if the Grantor had died intestate, simultaneously with the termination of this trust, domiciled in the State of Hawaii.

V-6

# Article VI - Miscellaneous Trust Distribution Provisions

**6.01.  Payments to Minors.**

If any beneficiary to whom the Trustee is directed in a preceding provision to distribute any share of trust principal is under the age of Twenty-One (21) when the distribution is to be made, and if no other trust is then to be held under this instrument for the beneficiary's primary benefit, the beneficiary's share shall vest in interest in the beneficiary indefeasibly; however, the Trustee, in its discretion, may continue to hold it as a separate trust for such period of time as the Trustee deems advisable, but not after the time the beneficiary reaches said age.  In the meantime the Trustee may use for the beneficiary's benefit so much of the income and principal as the Trustee determines to be required, in addition to the beneficiary's other income from all sources known to the Trustee, for the beneficiary's reasonable support, maintenance, health and education, adding any excess income to principal at the discretion of the Trustee.

**6.02.  Payments to Parent or Guardian.**

The Trustee either may expend directly any income or principal which it is authorized in this instrument to use for the benefit of any person, or may pay it over to said person or for said person's use to said person's parent or guardian or to any person with whom said person is residing, without responsibility for its expenditure.  It is the Grantor's intention that no guardian appointed by the Grantor incur personal expense in the support and maintenance of, or in the execution of such guardian's responsibilities to such beneficiary.  In exercising its discretion to make distribution hereunder, the Trustee shall reimburse such guardian for any expenses reasonably incurred in providing for the health, education, maintenance, and support of such child.

**6.03.  Spendthrift Limitation.**

No interest under this instrument shall be transferable or assignable by any beneficiary or be subject during said beneficiary's life to the claims of his or her creditors.  This paragraph shall not restrict the exercise of any power of appointment.

**6.04.  Termination in Lieu of Perpetuities.**

Notwithstanding anything to the contrary, the trusts under this instrument shall terminate not later than Twenty-One (21) years after the death of the last survivor of the Grantor's descendants and beneficiaries living on the date of the Grantor's death, at which time the Trustee shall distribute the remaining trust property to the current income beneficiary or beneficiaries at that time, and if there is more than one beneficiary, in the proportions in which they are beneficiaries.

VI-1

**6.05.  Continued Trust Administration Financially Uneconomical.**

Anytime that the value of the principal of the entire trust estate (or any sub-trust created hereunder) shall be less than Fifty Thousand Dollars ($50,000.00), the Trustee (or all of the Trustees, if more than one Trustee is then serving) shall have the power to terminate the trust, if, in the Trustee's sole and absolute discretion, said Trustee deems it advisable to do so.  Upon such termination by the Trustee, said Trustee shall transfer all of the trust property, including any unpaid income, to the current income beneficiaries provided for under Article V hereinabove.  The Trustee's decision to terminate the trust shall be final and binding on all persons interested in the trust estate.

**6.06.  Conflict of Interest Regarding Early Termination.**

Notwithstanding the provisions of Paragraph 6.05 hereinabove, at no time shall the discretion to terminate this trust (or any sub-trust created hereunder) be exercisable by a Trustee who, as a beneficiary under this trust, would receive any part of the income or principal of such trust upon termination.  If any such discretion is not exercisable by a Trustee under the provisions of this paragraph, such discretion shall be exercisable by (but only by) the other Trustee or Trustees who are capable of exercising the discretion, and if there are none, such discretion shall not be exercisable until a Trustee is appointed who is capable of exercising the same.  This paragraph shall be unequivocally construed to prevent the creation of a general power of appointment over the income or principal of the trust in a Trustee based on the discretion given to the Trustee to distribute the income or principal of the trust to such Trustee or for his benefit.

VI-2

# Article VII - Trust Provisions Relating To Trustee

**7.01.    No Bonding and Court Supervision of Trustee Required.**

No Trustee or successor Trustee shall be required (i) to give any bond as Trustee; (ii) to qualify before, be appointed by or, in the absence of breach of trust, account to any court; or (iii) to obtain the order of approval of any court in the exercise of any power or discretion.

**7.02.    Notice to Trustee.**

The Trustee may rely upon any notice, certificate, affidavit, letter, telegram or other paper or document believed by it to be genuine or upon any evidence deemed by it to be sufficient in making any payment or distribution.  The Trustee shall incur no liability for any payment or distribution made in good faith and without actual notice or knowledge of a changed condition or status affecting any person's interest in the trust.  No person paying money or delivering any property to any Trustee need see to its application.

**7.03.    Trustee's Powers.**

The Trustee, its successor or substitute shall have the following powers, and any others that may be granted by law, with respect to each trust created hereunder to be exercised as the Trustee in its discretion determines to be in the best interest of the beneficiaries:

**(a)    Acquire and Dispose of Personal Property.**

To buy and/or sell, invest and reinvest the trust estate in bonds, including but not limited to notes, real estate or any interest in real estate, and interests in trusts, including common trust funds, or in any other property or undivided interests in property, wherever located; to buy, sell and trade in securities of any nature, including options and short sales, commodities, commodity futures contracts and commodity futures options, on margin, and for such purposes to maintain and operate margin accounts with brokers; to pledge or hypothecate any securities, commodities, commodity futures contracts and commodity futures options held or purchased by it with such brokers as security for loans and advances made to the Trustee; and to delegate authority to agents to enter orders in securities and commodities transactions.

**(b)    Deal With Real Property.**

To lease any real property for such term or terms as it may deem advisable, without the authorization of any court and whether or not any such term may extend beyond the period of any trust, and in connection with any such lease to enter into any agreements and covenants which it may deem advisable with

respect thereto or with respect to any improvements which may then or thereafter be erected thereon; to make repairs, alterations and improvements on any real property, including the right to demolish and replace buildings, and to erect new buildings and employ architects and contractors in connection therewith; to subdivide real estate, to grant easements and to accept the surrender of any leases or leasehold interests and buildings or improvements thereon; to purchase buildings on any real property and the right, title and interest of tenants in such buildings; to demand, receive, collect, sue for, and compromise rents, debts, claims and demands of any nature in connection with any real property and to execute and deliver releases, discharges and other instruments relating thereto, including satisfaction of any judgment recovered therefor; to institute summary proceedings for the recovery of any real property or possession thereof; to prosecute or defend any actions, claims or proceedings affecting any real property, and to compromise, settle and discontinue the same; to insure such real properties against fire and any other risk whatsoever, and to make proof of loss under such insurance; to adjust losses and collect the proceeds; to mortgage for such amounts, rates of interest, rates of amortization and terms as may be deemed wise, including the right to mortgage for terms which may extend beyond the period of any trust, and to receive the proceeds of such mortgages; to extend the time of payment of any mortgages and to make agreements modifying, assigning or satisfying such mortgages; to file protests against the taxes or assessments on such real property; to make applications for reduction of assessed valuations thereon, and to bring certiorari proceedings to obtain the reduction of such assessed valuations; and to adjust and compromise any real estate taxes or tax valuations.

(c)     **Transactions With Trust Property.**

To sell any trust property, including both real and personal, for cash or on credit at public or private sales; to exchange any trust property for other property; to grant options to purchase or acquire any trust property; and to determine the prices and terms of sales, exchanges and options.

(d)     **Borrowing.**

To borrow money for any purpose from the Trustee or from others, and to mortgage or pledge any trust property.

(e)     **Loans.**

To make loans in such amounts, upon such terms, secured or unsecured, at such rates of interest and to such persons, firms or corporations as it may deem advisable, including to the Personal Representative of the Grantor's estate, provided there is adequate security and a fair rate of interest.

VII-2

**(f)     Employ Agents.**

To employ attorneys, accountants, auditors, depositaries and agents, with or without discretionary powers; to exercise in person or by proxy all voting and other rights with respect to stocks or other securities; and to keep any property in bearer form or in the name of a trustee or a nominee, with or without disclosure of any fiduciary relationship.

**(g)     Employ Investment Advisers.**

To select and employ any person, firm or corporation engaged in rendering investment counsel and real estate management; to be advised by them in making investments, managing securities or making decisions with reference to the purchase, retention, sale or other disposition of real property, securities or other property held by the Trustee; however, nothing herein shall be construed to require the Trustee to follow the advice of any such investment counsel.

**(h)     Determine Interest and Principal Allocations.**

To determine the allocation or apportionment of all receipts and disbursements between income and principal in accordance with "The Revised Uniform Principal and Income Act" as adopted by Hawaii.

**(i)     Conserve Assets.**

To take any action with respect to conserving or realizing upon the value of any trust property and with respect to foreclosures, reorganizations or other changes affecting the trust property; to collect, pay, contest, compromise or abandon demands of or against the trust estate wherever situated; and to execute contracts, notes, conveyances and other instruments, including instruments containing covenants and warranties binding upon and creating a charge against the trust estate and containing provisions excluding personal liability.

**(j)     Receive Additional Trust Property.**

To receive additional property from any source and add it to the trust estate.

**(k)     Locate Trust Assets.**

To keep any or all of the trust property at any place or places in the United States or abroad or with a depository or custodian at such place or places.

VII-3

**(l)    Enter Into Transactions With Trustees and Personal Representatives.**

To enter into any transaction authorized by this Article with trustees, personal representatives or administrators of other trusts or estates in which any beneficiary has any interest, even though any such trustee or representative is also Trustee under this instrument; and in any such transaction to purchase property or make loans on notes secured by property, even though similar or identical property constitutes all or a large proportion of the balance of the trust estate, and to retain any such property or note with the same freedom as if it had been an original part of the trust estate.

**(m)    Separate Funds.**

To hold, manage, invest and account for the separate trusts in one or more consolidated funds, in whole or part, as it may determine; and to the divisions (of each consolidated fund) into various shares comprising such fund only on the Trustee's books of account, in which each trust shall be allotted its proportionate part of the principal and income of the fund, and charged with its proportionate part of the expenses thereof.  In no event, however, shall such holding defer the vesting in possession of any estate created herein.

**(n)    Reserves.**

To establish out of income and credit to principal reasonable reserves for the depreciation and/or depletion of tangible and intangible property, taxes, assessments, insurance premiums, repairs, improvements, obsolescence, and general maintenance of buildings, and other property, and for the equalization of payments to or for beneficiaries entitled to receive income, out of rents, profits or other income received.

**(o)    Ongoing Business.**

To continue or permit the continuation of any business, incorporated or unincorporated, which Grantor may own or in which the Grantor may have any interest at the time of the Grantor's death, or to liquidate the same.

**(p)    Distribution in Kind.**

To make distributions (including the satisfaction of any pecuniary bequest) in cash or in specific property, real or personal, or an undivided interest, or partly in cash and partly in such property, without the consent of any beneficiary, and to do so without regard to the income tax basis of specific property allocated to any beneficiary (including a trust) and without making pro rata distribution of specific assets; to distribute trust property wholly or partially in kind, or sell trust assets to make such distribution.

VII-4

**(q)** **Purchase Assets From Grantor's Estate.**

To purchase assets from the estate of the Grantor, provided such assets are purchased at fair market value.

**(r)** **Establish Bank Accounts.**

To establish bank accounts and authorize that checks or drafts be drawn on, or withdrawal made from, any such accounts on the individual signature of the Trustee or Trustees.

**(s)** **Gifting Program.**

To, with respect to (i) an ongoing program during the lifetime of the Grantor of making gifts or (ii) a gift program the Grantor has not yet previously commenced, make gifts during the lifetime of the Grantor to use the available Federal Gift Tax annual exclusion, provided, however, that during any time that the Grantor is not, in the Trustee's judgment, incapacitated, the Grantor must consent in writing to such gifts and provided, further, that during the time the Grantor is incapacitated and the Trustee does not seek and obtain the Grantor's written consent, no Trustee shall be empowered under this paragraph to make gifts to himself or herself which exceed the amounts provided for in Code Section 2514(e) where the Trustee has sole discretion to make such gift, without either (A) the donee-Trustee abstaining from voting upon the action to make such gift (B) the written consent of an adverse party.

**(t)** **Guaranty of Beneficiary's Obligations.**

To mortgage and hypothecate trust property in order to guaranty and secure payment of debts and performance of obligations arising from loans made to a trust beneficiary or to third parties as well as extensions, renewals and refinancing thereof, when expressly directed by a beneficiary and on terms and conditions approved by such beneficiary.

**7.04.** **Powers With Regard to Environmental Issues.**

The Trustee shall have the power to act, and to use and expend the trust income and principal:

**(a)** **Conduct Assessments.**

To conduct environmental assessments, audits, and site monitoring to determine compliance with any environmental law or regulation thereunder;

**(b)**     **Remedial Actions.**

To take all appropriate remedial action to contain, clean up or remove any environmental hazard including a spill, release, discharge or contamination, either on its own accord or in response to any actual or threatened violation of any environmental law or regulation thereunder;

**(c)**     **Institute Legal Proceedings.**

To institute legal proceedings concerning environmental hazards or contest or settle legal proceedings brought by any local, state or federal agency concerned with environmental compliance, or by a private litigant;

**(d)**     **Comply With Orders.**

To comply with any local, state or federal agency order or court order directing an assessment, abatement or cleanup of any environmental hazards;

**(e)**     **Employ Environmental Specialists.**

To employ agents, consultants and legal counsel to assist or perform the above undertakings or actions;

**(f)**     **Disclaimer.**

To disclaim, in whole or in part, any interests in property for any reason, including but not limited to a concern that such property could cause potential liability under any federal, state or local environmental law;

**(g)**     **Segregation of Problem Property.**

To set aside as a separate trust, to be held and administered upon the same terms as those governing the remaining trust property, any interest in property, for any reason, including but not limited to a concern that such property could cause potential liability under any federal, state or local environmental law; and

**(h)**     **Right to Refuse Contributions.**

To receive any property, real or personal, to be added to the trust from the Grantor in any event (and if the Trustee consents in writing, from any other person) by lifetime or testamentary transfer or otherwise, provided, however, that the Trustee, in its sole discretion, may require, as a prerequisite to accepting property, that the donating party provide evidence satisfactory to the Trustee that:

VII-6

(i)     the property is not contaminated by any hazardous or toxic materials or substances; and

(ii)    the property is not being used and has never been used for any activities directly or indirectly involving the generation, use, treatment, storage, disposal, release, or discharge of any hazardous or toxic materials or substances.

**(i)     Environmental Expenses Incurred.**

Any expenses incurred by the Trustee under this paragraph may be charged against income or principal as the Trustee shall determine.

**7.05.   Powers With Regard to Life Insurance.**

**(a)**    The Trustee shall have the power to act, and to use and expend the trust income and principal:

**(i)     Acquire Insurance.**

To carry insurance to protect trust assets, including public liability, in either stock or mutual companies and to purchase annuity policies or life insurance on the life of any beneficiary or other person in whom any of the beneficiaries have an insurable interest, naming as beneficiary of any such policy either the trust itself or the beneficiary on whom or with respect to whom the policy was taken out; to pay premiums, assessments and proper charges on any such policy as beneficial distributions, charging the same to income or principal as permitted by the distributive provisions of this trust relating to the beneficiary on whom or with respect to whom the policy was taken out; and to exercise all or any rights granted under such policy.

**(ii)    Split Dollar Insurance.**

To execute an assignment of any policy of insurance held hereunder as collateral security in favor of any corporation which advances payments to cover premiums under such policy, and the Trustee may further enter into any split dollar arrangement it deems advisable.

**(b)     Indemnity Regarding Life Insurance.**

The Trustee has no obligation to continually monitor the quality of life insurance policies acquired by the trust or the ability of the insurer to pay all benefits when due; the Trustee's compensation is based in part on not having such obligations. The Trustee shall have no responsibility with respect to the proceeds of any insurance policy not received by the Trustee, for any depreciation or loss in value

VII-7

of life insurance policies, or for any other loss unless the same shall occur by reason of the Trustee's own bad faith, willful or gross negligence, or reckless disregard of its duties. The Trustee shall be reimbursed and indemnified by the trust estate against any and all liability, loss, or expense resulting from the holding of any insurance policies included in the trust estate. Further, the Trustee shall have a lien on the principal of the trust estate and the income therefrom for the amount of any liability, loss, or expense that may be so incurred by the Trustee, including the expense of defending any action or proceeding instituted by anyone, including the Grantor and the beneficiaries of the trust, against the Trustee by reason of any such holding.

**7.06. Powers With Respect to Closely Held Business Interests.**

The Trustee, its successor or substitute, shall have the following powers with respect to closely held business interests:

**(a)    Continuation of Business.**

The power to continue or to permit the continuation of any business, incorporated or unincorporated, which shall be held in any trust hereby created for such period as the Trustee shall determine, or to recapitalize or liquidate the same upon such terms as the Trustee in its sole discretion shall determine, including without limiting the generality of the foregoing power (i) to invest additional sums in any such business even to the extent that any trust hereby created may be invested largely or entirely in any such business without liability for any loss resulting from lack of diversification; (ii) to act as or to select other persons (including any beneficiary hereunder) to act as directors, officers or other employees of such business, the same to be compensated without regard to any such person being a beneficiary hereunder; and (iii) to make such other arrangements in respect thereof as the Trustee shall deem proper.

**(b)    Closely Held Business Powers.**

To retain any business interest transferred to the Trustee, as shareholder, security holder, creditor, partner or otherwise, for any period of time whatsoever, even though the interest may constitute all or a large portion of the trust principal; to comply with the provisions of any agreement restricting transfer of the interest; to participate in the conduct of the related business or rely upon others to do so, and to take or delegate to others discretionary power to take any action with respect to its management and affairs which an individual could take as outright owner of the business or the business interest, including the voting of stock (by separate trust or otherwise regardless of whether that separate trust will extend for a term within or beyond the term of the trust) and the determination of all questions of policy; to execute and amend partnership agreements; to participate in any incorporation, reorganization, merger, consolidation, sale of assets, recapitalization, liquidation or dissolution of the business, or any change in its

VII-8

nature, or in any buy-sell, stock restriction, or stock redemption agreements; to invest in additional stock or securities, or make secured, unsecured, or subordinated loans, to the business with trust funds; to take all appropriate actions to prevent, identify or respond to actual or threatened violations of any environmental law or regulation thereunder; to elect or employ with compensation, as directors, officers, employees or agents of the business, any persons, including a Trustee of any trust held under this instrument, without adversely affecting the compensation to which the Trustee would otherwise be entitled; to rely upon reports of certified public accountants as to the operations and financial condition of the business, without independent investigation; to deal with and act for the business in any capacity (including in the case of a corporate Trustee any banking or trust capacity and the loaning of money out of the Trustee's own funds) and to be compensated therefor; and to sell or liquidate the business or any interest held in the business.

**(c)    Subchapter S Savings Provision.**

Notwithstanding any other provision of this trust, if at the Grantor's death the trust owns stock of an S corporation [as defined in Code Section 1361(a)] and such stock is not specifically disposed of, all such stock shall be allocated to the trusts created under Article V.  To the extent that the terms of said Article V provide for:

**(i)**     a trust with multiple beneficiaries, the Trustee shall segregate the S corporation stock so that it is held in a separate subtrust fund, one for each separate trust beneficiary, and that such single beneficiary shall be the only party to whom principal may be distributed during his or her lifetime;

**(ii)**    income to be paid other than automatically on an annual basis to a single beneficiary, the Trustee shall pay the income from the trust (or subtrust) to the sole beneficiary of such trust or subtrust fund at least annually;

**(iii)**   distribution upon termination, the termination distribution shall be only to the single current beneficiary; and

**(iv)**    any terms inconsistent with the terms of Code Section 1371, or the regulations thereunder, the Trustee shall hold such S corporation stock for the beneficiaries of the trust in a manner so as not to jeopardize the corporation's status as an S corporation.

If the stock cannot practically be disposed of in accordance with this trust other than pursuant to this provision without causing the corporation to lose its status as an S corporation, the Trustee is authorized to appoint the stock to such person or persons out of a class composed of the Grantor's descendants, of whatever degree and whenever born, and in such estates, interests and proportions (including an appointment to a Trustee in trust for any such person, any such trust to be an

VII-9

eligible shareholder of an S corporation), as the Trustee in its sole discretion determines. The Trustee may exercise or release this power within Five (5) years after the Grantor's death and shall not be required to exercise it and shall have no liability for releasing it or failing to exercise it. The Grantor requests (but does not direct) that the Trustee consult with the Grantor's adult descendants in connection with any exercise.

**(d)    Limit on Trustee Liability.**

Certain risks are inherent in the operation of any business, and the Trustee may make decisions of a "businessman's risk" nature in contrast to the "prudent man" rule. Therefore, the Trustee shall not be held liable for any loss resulting from the retention and operation of any business or any other asset held by the Trustee at the time of the Grantor's death unless such loss results directly from bad faith or willful misconduct of the Trustee. In determining any questions of liability for losses, it should be considered that the Trustee is engaging in a speculative enterprise not of such Trustee's own selection.

**(e)    Business Indemnification.**

If any business or other for-profit activity operated by the Trustee is unincorporated, all liabilities arising from it shall be satisfied first from the business itself and second out of the trust estates, and in no event shall any such liability be enforced against the Trustee personally. If the Trustee is held personally liable, it will be entitled to indemnity first from the business and second from the trust estates. Accordingly, the Trustee may acquire any additional liability policy cost, as a business expense, to ensure and protect the business and itself.

**7.07.    Presumption by Trustee in Favor of Current Income Beneficiary.**

This agreement shall be liberally construed in the interest and for the benefit of the current income beneficiary or beneficiaries, and the exercise of any discretion of the Trustee in favor of any current income beneficiary shall be absolutely binding on all successor income beneficiaries and remaindermen; provided, that this paragraph shall not be deemed to limit any discretion conferred upon the Trustees under this trust.

**7.08.    Discretionary Distributions.**

In determining whether to make any distribution of income or principal to a beneficiary of this trust where the Trustee has discretion as to whether to make such distribution, the Grantor directs that the Trustee may, but shall not be required, to consider such circumstances and factors as the Trustee believes are or may be relevant, including the other income and assets known to the Trustee to be available to that beneficiary, including funds which might be made available by enforcement of the legal obligation of any person to furnish support or education, and the advisability of supplementing such

VII-10

income or assets, the tax consequences to the beneficiary of requiring the beneficiary to rely first on his or her own assets, and the tax consequences of such distribution. The Trustee shall also consider the Grantor's belief that it might be prejudicial to the welfare of the Grantor's beneficiaries for such persons to come into possession and enjoyment of large amounts of property before and unless they have attained sufficient wisdom and character to use the funds distributed wisely. The Grantor directs that the Trustee shall have in mind these considerations in exercising its discretion hereunder and will realize that the Grantor is more concerned about any beneficiary receiving too much rather than too little.

**7.09.    Exoneration of Trustee.**

The Trustee shall be deemed to have acted within the scope of its authority to have exercised reasonable care, diligence and prudence, and to have acted impartially as to all persons interested unless the contrary be proved by affirmative evidence, and in the absence of such proof shall not be liable for loss arising from depreciation or shrinkage in value of any property authorized to be held or acquired, or as a result of the Trustee retaining any property upon which there is later discovered to be hazardous materials or substances requiring remedial action pursuant to any federal, state, or local environmental law, unless the Trustee contributed to the loss or depreciation in value through willful default, willful misconduct or gross negligence.

**7.10.    Private Accounting.**

The Trustee shall periodically, but not less than once each year, render an account of its administration of the trusts to all of the current income and current principal beneficiaries who are then adults. The beneficiary's written approval of the accounting shall be a complete protection of the Trustee as to all matters and transactions stated or shown by the accounting. Failure to transmit to the Trustee either (a) the written approval of such accounting, or (b) written objection to the accounting, with reasons specified, within a period of Ninety (90) days after delivery by hand or mail shall constitute a written approval of the beneficiary, guardian, conservator, or representative of such person entitled to the accounting. To the extent permitted by law, the written approval of the adult beneficiaries shall bind minor and contingent remainder interests. Except as provided in this paragraph, any reports or accounts otherwise required by Hawaii Probate Code (or the law of any other jurisdiction under which this trust shall at any time be administered) are hereby waived to the fullest extent of the law.

**7.11.    Approval of Trustee.**

A Trustee shall be presumed to have approved a proposed act or decision to refrain from acting if that Trustee fails to indicate approval of or disapproval thereof within Fifteen (15) days after a written request for approval, and a Trustee shall not be required to continue to make a proposal which has been disapproved on at least Two (2) occasions if that Trustee has been informed by the disapproving Trustee that continued disapproval will be assumed until notice to the contrary has been received.

VII-11

**7.12.  Conflicting Claims and Withholding Payment.**

On the occurrence of any event requiring the Trustee to divide, segregate or distribute the trust property, the Trustee may delay, without the payment of interest, the division, segregation, or distribution of all or any part of such property for such period of time as may be necessary to ascertain and provide for any such contingent liability. However, this delay shall not affect the vesting of any interests or the accrual and payment of trust income to any beneficiary.

**7.13.  No Contest Clause.**

Except as otherwise provided in this trust and in the Will of the Grantor, the Grantor has intentionally and with full knowledge omitted to provide for the Grantor's heirs. If any devisee, legatee or beneficiary under the Will of the Grantor or any beneficiary under this trust or any legal heir of the Grantor, or any person claiming under any of them, shall contest this trust or attack or seek to impair or invalidate any of its provisions or conspire with or voluntary assist anyone attempting to do any of those things, in that event, the Grantor specifically excludes each such person from any benefits hereunder and all interest given under this trust to that person shall be forfeited and shall augment proportionately the interests of such beneficiaries as shall not have participated in such acts or proceedings. If all beneficiaries under this trust shall participate in such proceedings, the entire trust estate shall be distributed to the Grantor's heirs-at-law determined as if the Grantor had died intestate, simultaneously with the termination of this trust, domiciled in the State of Hawaii, excluding all contestants and all persons conspiring with or voluntarily assisting them.

**7.14.  Delegation of Duties.**

With respect to any matter as to which the Trustees have joint authority, a Trustee may from time to time delegate any or all of the Trustee's rights, powers, duties and discretions as Trustee to the other Trustee, with the consent of the latter.

**7.15.  Right of Resignation of Trustee.**

The resignation of any Trustee shall be by written notice, specifying the effective date of the resignation, delivered to the then serving Trustee or Trustees, to any named successor Trustee or Trustees, and during the Grantor's lifetime to the Grantor. After the death of the Grantor, said written notice shall be given to the beneficiaries to whom the Trustee is to or may distribute the income at the time of giving notice, to the then serving Trustee and to any named successor Trustee or Trustees.

**7.16.  Non-Liability of Successor Trustee.**

No successor Trustee shall be personally liable for any act or omission of any predecessor Trustee.  Any successor Trustee shall accept without examination or review the accounts rendered and the property delivered by or for a predecessor Trustee, without incurring any liability or responsibility. Any successor Trustee shall have all the title, powers and discretion of the Trustee succeeded without the necessity of any conveyance or transfer.

**7.17.  Contingent Trustee.**

In the event the last surviving named Trustee dies, resigns or is unable or refuses to act, a successor Trustee may be appointed by a majority in number of the beneficiaries to whom the Trustee is to, or may, distribute the income at the time of appointment.  In carrying out the provisions of this Article, the guardian or conservator of the estate of the beneficiary under legal disability or the parents or guardian of the person of a minor beneficiary for whose estate no guardian has been appointed may act and receive notice for the beneficiary and sign any instrument for such beneficiary.

**7.18.  Merger.**

The Trustee may merge, without court approval, any trust under this instrument with any other trust otherwise created whose terms are substantially identical, provided that the Trustee, in the Trustee's reasonable discretion, determines that administration as a single trust will be consistent with the intent of the person or persons who established the trusts and will facilitate trust administration without defeating or impairing beneficial interests or any tax elections and without changing an individual trust's inclusion ratio, within the meaning of Code Section 2642.

**7.19.  Trust Powers Survive.**

All powers, duties, and immunities of the Trustee shall continue after termination of any trust and until the Trustee has made actual distribution of the property of such trust.

**7.20.  Trustee's Compensation.**

Any Trustee shall be entitled to reimbursement for expenses and to reasonable compensation for services in administering and distributing the trust property which compensation shall not exceed compensation charged for similar services by trust companies doing business in the State of Hawaii.  The Trustee shall receive, in addition to the commissions provided for herein or by statute, reasonable compensation for special or extraordinary services, including but not limited to preparation of tax returns and the adjustment and payment of taxes.

# Article VIII - Tax and Savings Provisions

**8.01.  Income Upon Death of Beneficiary.**

Upon the death of any beneficiary, any accrued or undistributed income shall be held and accounted for or distributed in the same manner as if it had been received and accrued after the beneficiary's death.

**8.02.  Tax Elections.**

The Trustee may make such elections under the tax laws applicable to the estate of the Grantor and to the trust estate as the Trustee determines should be made.  No compensating adjustments between principal and income nor with respect to any trust shall be made even though the elections made under the tax laws by the Trustee may affect (beneficially or adversely) the interests of the beneficiaries.  The action of the Trustee shall be binding upon all beneficiaries.

**8.03.  Definition of the Code.**

When used herein the term the "Code" shall mean the Internal Revenue Code of 1986, as amended, or corresponding provisions of subsequent revenue laws.

VIII-1

# Article IX - Miscellaneous Trust Provisions

**9.01.  Trust Situs.**

This instrument and the dispositions under it shall be construed and regulated and their validity and effect shall be determined by the laws of the State of Hawaii. Notwithstanding the foregoing provisions of this Trust, the situs of any of the trusts created hereunder may be transferred, at any time and from time to time, to such other state of the United States of America or to such other country or jurisdiction, as the Trustee shall deem advisable in their absolute discretion, without the approval of any court unless required by applicable law and without the filing of any bond.  Once the situs is moved, this instrument and the disposition under it shall be construed and regulated and their validity and effect shall be determined under the laws of the jurisdiction to which the trust situs has been moved.  The Trustee is hereby authorized to take whatever action may be necessary to effect a transfer of situs.  If court approval is required to effect a transfer of situs, it is the Grantor's intention and desire that the court accept the determination of the Trustee even if one or more trust beneficiaries disagree with such determination.  A transfer of situs by the Trustee shall be evidenced by an instrument in writing, signed and acknowledged by them.

**9.02.  Confidentiality.**

The terms and provisions of this trust shall be kept in confidence by the Trustee.  If and to the extent that the law permits, and then only during the lifetime of the undersigned Grantor, the Trustee is hereby directed not to and shall not file the trust instrument nor any copy thereof in any court, and shall not register the trust with any court or governmental body, and shall not reveal the terms thereof to any beneficiary or to any other person except as authorized by the Grantor.  Upon the death of the Grantor the Trustee may make such filing or registration, or may from time to time make such revelation or accounting to any beneficiary as the Trustee in its sole discretion may deem necessary or advisable.

**9.03.  Adopted Children.**

In determining the meaning of the words "children," "grandchildren," "issue," "beneficiary" and "descendants" for the purpose of this trust, adopted children of any person, including the Grantor, shall be treated as though they were natural born children of that person.

**9.04.  Incapacity or Incompetency.**

A determination of a person's incapacity hereunder shall be made either by (i) an adjudication by a court of competent jurisdiction that such person is an incapacitated person, or (ii) delivery to the Trustee of a written instrument signed by such person's primary care physician (or if no such physician is immediately available, by any two

IX-1

independent physicians), stating that, by reason of such person's mental or physical condition, such person is incapable of properly managing his or her business affairs. Such person shall be determined to have recovered from any such incapacity upon the submission to the Trustee of a statement by the same physician or physicians (or if the physician(s) is unavailable, two independent physicians) that the incapacity has been removed.

**9.05.   Survivorship.**

All beneficiaries under this agreement shall be deemed to have survived if they survive the Grantor by Sixty (60) days.

**9.06.   Assets in Other Jurisdictions.**

If at any time any trust property is situated in a jurisdiction in which any Trustee is unable or unwilling to act, such person (who may be an officer or employee of any corporate Trustee) or corporation as may be appointed in an instrument signed by the individual Trustee or by the vice-president of the corporate Trustee shall act as Trustee with respect to that property, and such Trustee and every successor Trustee so appointed shall have all the title, powers and discretion with respect to that property that is given to that Trustee.  The net income from that property and any net proceeds of its sale shall be paid over to the principal Trustee.

**9.07.   Interpretation.**

Whenever necessary in this agreement and where the context permits, the singular term and the related pronoun shall include the plural, the masculine, the feminine and the neuter.

**9.08.   Headings.**

The paragraph headings used herein are for descriptive purposes only and shall not be deemed to alter or modify the meaning of any paragraph contained herein.

**9.09.   Disclaimer.**

Except to the extent fundamentally inconsistent with the provisions of this trust and the Grantor's estate plan, the Grantor hereby authorizes the Trustee to renounce, in whole or in part, any devise or legacy or any interest in any trust provided for the Grantor's benefit under the will of any person or under any trust instrument at any time within Nine (9) months after the date of the transfer which created an interest in the Grantor, provided that such disclaimer shall also comply with the state law governing the operation of this trust.

In addition to any renunciation rights conferred by law, the Grantor hereby authorizes any person at any time within Nine (9) months after the date of the Grantor's death to

renounce, in whole or in part, any interest, benefit, right, privilege or power granted to such person by this trust, provided that such disclaimer shall also comply with the state law governing the operation of this trust.  Any such renunciation shall be made by duly acknowledged written instrument executed by such person or his or her conservator, guardian, committee, personal representative, executor or administrator delivered to the Grantor's Personal Representative and Trustee and filed in the court having jurisdiction over this trust.  The property, interest or power disclaimed or renounced shall pass as though the beneficiary predeceased the Grantor.

IN WITNESS WHEREOF, **Patricia W. Buckman**, as Grantor and as Trustee, has signed this trust agreement on this _____25____ day of _____July 2019_____.


_Patricia W. Buckman_
**Patricia W. Buckman**
Grantor and Trustee


STATE OF HAWAII      )
            ) ss.
CITY AND COUNTY OF HONOLULU )


On this __25__ day of ___July 2019_____, as certified before me personally appeared **Patricia W. Buckman**, also known as **Patricia Whitaker Buckman**, as Grantor and as Trustee of The Patricia W. Buckman Revocable Trust dated ___7.25.19_____, consisting of __33 pages, to me known to be the person in and who executed the foregoing instrument and acknowledged that she executed the same as her free act and deed as such Grantor and Trustee.

Notary Public, State of Hawaii
Name of Notary: **STEPHEN H. REESE** First Circuit

My commission expires: __12.5.2019_____

## Schedule "A"

The following is a description of the original assets of the Patricia W. Buckman Revocable Trust.

1.    Cash: $1.00

2.    All of the Grantor's jewelry, wearing apparel, personal effects, furniture, furnishings, rugs, books, papers, pictures, prints, paintings, objects of art, silverware, china, glass, linens, other household effects and supplies, and all other unregistered tangible personal property of whatsoever description and wheresoever situated.

3.    In addition, cash and such other amounts either in cash, personal or real property, or as proceeds from insurance covering the Grantor's life which may be added to the trust property from time to time by the Grantor or any other person.

Dated at Honolulu, Hawaii, this _25th_ day of _July 299_ .

_Patricia W. Buckman_
**Patricia W. Buckman**
Grantor