LOUISE K.Y. ING        2394
TIM PARTELOW          10218
DENTONS US LLP
1001 Bishop Street, Suite 1800
Honolulu, HI  96813
Telephone: (808) 524-1800
Email:   louise.ing@dentons.com
          tim.partelow@dentons.com

Attorneys for Defendants
MARK F. BUCKMAN, individually
and as Trustee of the MARK F. BUCKMAN TRUST,
and JENNIFER BUCKMAN

MARK F. BUCKMAN   SBN 7080
Law Offices of Mark F. Buckman
8359 Elk Grove Florin Rd., Suite 103-320
Sacramento, CA  95829
Email:  markfbuckman@sbcglobal.net

Attorney for Defendant
JENNIFER BUCKMAN

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| PATRICIA W. BUCKMAN, PATRICIA W. BUCKMAN REVOCABLE TRUST, <br><br> Plaintiffs, <br><br> v. <br><br> MARK F. BUCKMAN, ET. AL. <br><br> Defendants. | Civil No. 1:24-CV-00129-MWJS-KJM <br><br> DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL FURTHER RESPONSES, PRODUCTION OF DOCUMENTS, COMPLIANCE WITH COURT ORDER, AND MONETARY SANCTIONS FROM PATRICIA W. BUCKMAN AND HER COUNSEL RICHARD WILSON; DECLARATION OF MARK F. BUCKMAN <br><br> [Caption continues on second page] |

(ECF # 136, 144)

Trial Date: November 3, 2025
Judge: Hon. Micah Smith

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that as soon as the matter may be heard in the above-entitled court, in the courtroom of Magistrate Judge Kenneth J. Mansfield, at the United States Courthouse for the District of Hawai'i, located at 300 Ala Moana Blvd, Honolulu, Hawai'i 96850, with oral argument to be held on a date and time to be designated by the Court, Defendants Jennifer Buckman and Mark Buckman will move the court for orders compelling plaintiff Patricia W. Buckman to (i) serve a further response to Jennifer Buckman's Request for Production of Documents, Sets 1 & 2 in full compliance with the court's May 23, 2025 Order (ECF #144), (ii) serve a further response to Jennifer Buckman's Third Request for Production of Documents, without objection or claim of privilege, (iii) serve all responsive documents, including all responsive ESI (such as emails, texts, videos and/or audio files) via thumb drive or other electronic means, (iv) produce Natalie Pitre's computer and cell phone for forensic examination, at Plaintiff's expense, to retrieve and restore the texts, imessages, and emails that have been deleted from Plaintiff's and Plaintiff's agent's accounts, and (vi) have plaintiff and her counsel

ii

Richard Wilson pay $12,770 of monetary sanctions to Jennifer Buckman's attorneys DENTONS US LLP for the attorneys fees and costs incurred in attempting to gain Plaintiff's compliance with her discovery obligations and the Court's order.

This motion is made following the conferences of counsel pursuant to LR 7.8 and 37.1, which took place on June 13, 17, and 19, 2025, and continued by email thereafter.

This Motion is based upon Rules 34 and 37 of the Federal Rules of Civil Procedure, this Notice of Motion, the Memorandum of Points and Authorities, the Declaration of Mark F. Buckman, any arguments of counsel, the pleadings and papers filed herein, and any other materials properly considered by the Court.

Dated:  July 16, 2025.

<div style="margin-left:50%">

 /s/ Louise K.Y. Ing
LOUISE K.Y. ING
TIMOTHY C. PARTELOW
Attorneys for Defendants
MARK F. BUCKMAN, individually
and as Trustee of the MARK F.
BUCKMAN TRUST, and
JENNIFER BUCKMAN

 /s/ Mark F. Buckman
MARK F. BUCKMAN

Attorney for Defendant
JENNIFER BUCKMAN

</div>

iii

**TABLE OF CONTENTS**

I.     INTRODUCTION ...................................................................................1

II.    SUMMARY OF PERTINENT FACTS .........................................................2

    A.    The Court's May 23 Order Compelling Plaintiff to Respond and
        Produce Documents........................................................................2

    B.    Despite the Court Order, Plaintiff Failed to Produce All Responsive
        Documents in Her Possession, Custody, or Control, and Continues to
        Claim Others Produced or Hold These Responsive Records...............3

    C.    Plaintiff's Counsel Failed to Identify and Instead Withheld Numerous
        Responsive Documents, Including Many Non-Privileged Emails He
        Authored ......................................................................................5

    D.    The "Tip of the Iceberg": Seven Examples of Documents that
        Demonstrate that Plaintiff and Her Counsel Have Failed to Identify
        and Produce Responsive Documents .................................................7

        1.    Four Texts to or From Plaintiff...................................................7

        2.    Three Emails to Have Plaintiff Resign and Tamara Step
                in As Trustee (and Lead Litigator), to "Get Facts to Keep
                Jennifer in this Case" and Laughing About Getting the
                Court to Accept Their Allegations Against Jennifer ................11

    E.    Plaintiff Has Not Established That She Made a Diligent Search for
        Responsive Documents, Nor That Counsel Took Affirmative Steps to
        Identify All Sources of Discoverable Information.............................14

III.   ARGUMENT.......................................................................................14

    A.    The Court Should Enforce Its Order to Allow Defendants to Obtain
        the Discovery Withheld by Plaintiff and Her Agents .........................14

    B.    Plaintiff Should Be Compelled to Provide Supplemental Responses in
        Compliance with FRCP 34 and the Court's Order .............................15

        1.    Plaintiff Did Not Affirm Making a Diligent Search For
                Responsive Documents, and It Appears Neither She Nor
                Any of Her Agents, Including Counsel, Made Such a
                Search...............................................................................15

        2.    Plaintiff's Responses Must Clearly State Whether Her
                Production Is Complete..........................................................16

C.      Plaintiff Must Be Ordered to Produce All Responsive Documents, Including ESI.................................................................................17

     1.      In Disobedience of the Court's Order, Plaintiff Still Has Not Provided All Responsive Documents in Her Possession, Custody, or Control, Nor Produced *Any* ESI.........17

     2.      Since Plaintiff's Agent Natalie Confirmed She Made No Efforts to Recover Texts, Emails, and Other Deleted and Destroyed Evidence, Plaintiff Should Be Ordered to Produce Natalie's Computer for a Forensic Examination by a Qualified Forensic ESI Firm. ............................................19

D.      Plaintiff Waived the Attorney-Client, Attorney Work Product, and Trial Preparation Privileges................................................................21

E.      Defendants Request the Court Explicitly Warn Plaintiff That Further Sanctions Pursuant to Fed. R. Civ. P. 37(b)(2)(A) May Be Imposed for Her Continuing Failure to Obey the Court's Order, Produce Documents, and Preserve Evidence. ....................................................22

F.      Sanctions of $12,770 Should Be Awarded Pursuant to Fed. R. Civ. P. 37(b)(2)(C) Due to Plaintiff's and Her Counsel's Disobedience of the Court's Order. ................................................................................23

IV.    CONCLUSION ........................................................................................25

## TABLE OF AUTHORITIES

**Cases**

*Flagg v. City of Detroit,* 252 F.R.D. 346, 352-353 (E.D. Mich. 2008).....................19

*In Re Bankers Trust Co.*, 61 F.3d 465, 469 (6th Cir. 1995). ....................................18

*McKesson Corp. v. Islamic Republic of Iran*, 185 F.R.D. 70, 77 (D.D.C. 1999)....18

*Rowe Entertainment, Inc. v. William Morris Agency, Inc.*, 205 F.R.D. 421, 428
  (S.D.N.Y. 2002) ...............................................................................................18

**Rules**

Fed. R. Civ. P. 37(a)(5)...............................................................................................24

Fed. R. Civ. P. 37(b)(2)(A) .........................................................................................22

Fed. R. Civ. P. 37(b)(2)(A)(iv) ...................................................................................23

Fed. R. Civ. P. 37(b)(2)(C) ................................................................................. 23, 24

Fed. R. Civ. P. 37(e)....................................................................................................23

## I.    INTRODUCTION

Plaintiff's supplemental responses do not comply with FRCP 34 and violate the Court's May 23 order (ECF #144).  Plaintiff and her counsel not only disobeyed the order and failed to produce documents, but her counsel falsely claimed responsive documents did not exist - including many non-privileged emails and attachments he himself authored.

The existence of withheld documents was discovered in later June, after Plaintiff's court-ordered supplemental response, when Natalie's counsel, Thomas Bush, produced 288 pages of documents received from his client, all of which were responsive to the RPODs, none of which Plaintiff produced. (This production was made pursuant to the Rule 45 subpoena issued to Natalie in February.)

As to Defendants' third Request for Production (RPOD 3), although Plaintiff promised to provide responses and documents, this response was also late, and Plaintiff failed to provide a single electronic record.  Plaintiff has simply refused to provide electronic records that are in the possession of her attorney and/or her agent, Natalie.[1]

---

[1] Defendants do not believe their 90-year old mother is *personally* accountable for this discovery abuse, particularly the loss or destruction of the ESI; rather, the fault here seems to rests squarely on the shoulders of her agent and counsel.

## II.    SUMMARY OF PERTINENT FACTS

### A.    The Court's May 23 Order Compelling Plaintiff to Respond and Produce Documents

Due to shortcomings in Plaintiff's responses and failure to produce documents responsive to RPOD 1 and RPOD 2,[2] Defendants filed, and the Court granted, a motion to compel. This Order, issued on May 23 (ECF #144), generally directed Plaintiff and her counsel to work together to provide responses as follows:

1.    Plaintiff had to establish that a diligent search was made for responsive documents;

2.    Counsel must take affirmative steps to monitor compliance so all sources of discoverable information are identified;

3.    All objections were waived because the responses were untimely;

4.    Plaintiff must clearly state whether her production is complete;

5.    There is no room for gamesmanship.  For each and every document request, Plaintiff must state whether she is withholding any documents on the basis of any objections. If Plaintiff withholds documents, she must satisfy the requirements set forth in Federal Rule of Civil Procedure 26(b)(5)(A) and Local Rule 26.2(d).

6.    Plaintiff must produce all responsive documents in her possession, custody, or control, regardless of whether Plaintiff believes Defendant may already have copies of the same document from other sources.

---

[2] Indeed, Plaintiff did not respond on time to <u>any</u> of Defendants' RPODs or interrogatories, and strung Defendants along with promises to comply for months. MFB Decl. ¶ 3

7.      Plaintiff had to provide a supplemental written response  and produce all responsive documents by June 13, 2025.

Plaintiff has not complied with this Order, despite Defendants' urgings that she do so, thereby necessitating Defendants' filing of this Motion to secure Plaintiff's compliance and appropriate sanctions.

**B.      Despite the Court Order, Plaintiff Failed to Produce All Responsive Documents in Her Possession, Custody, or Control, and Continues to Claim Others Produced or Hold These Responsive Records**

Plaintiff's court-ordered supplemental responses continue to claim she is not required to produce responsive records that could be obtained from others, even if those records are within Plaintiff's possession, custody or control. Plaintiff's responses to Requests 6 and 10 provide a good example of the type of gamesmanship in which Plaintiff has engaged throughout these proceedings. These Requests sought: "All Documents that constitute, concern, refer, or relate to:"

(6)      your will and estate planning documents, including any trusts, amendments, modifications, revisions, wills, codicils, exhibits, attachments, letters, instructions, powers of attorney . . . trustee resignations, acceptances of trustee, appointment of successor trustee(s), acceptance of appointment. . . from January 1, 2006 to date . . . specifically include[ing] . . . all communications, emails, text messages, imessages, etc. regarding your estate planning and/or such documents through the date you fully respond to this discovery,"[3] and

---

[3] Despite producing no documents to this category in her supplemental response, Plaintiff had responsive documents - which she admitted last week in opposition to Defendants' Motion for Summary Judgment.  MFB Decl., ¶ 3

(10) communications or agreements between you and Tamara Buchwald.

MFB Decl., ¶ 3 & Exh. 1, pp. 4-6. The requested documents are relevant. *Id.*

Plaintiff's Responses to Nos. 6 and 10 simply stated: "I have no such documents, but I believe that my attorney Steve Reece [*sic*] produced all of the documents requested." These responses directly contradict the Court's Order to "produce all responsive documents . . . regardless of whether Plaintiff believes Defendant might already have copies of the same document from other sources."

Plaintiff's Response to No. 14 is similarly deficient. Request No. 14 sought: "All Documents that constitute, concern, refer, or relate to your receiving any rent or other consideration from renting the Back House to Natalie Pitre . . . from January 1, 2019 to date. . . ." Plaintiff's response states: "I have no such documents. Island Properties may have retained records, but I do not know." (Exh 1, pp. 7-8)

Plaintiff is the owner of Island Properties. Quyn Vu, the company's former bookkeeper, testified that Natalie closed Island Properties' office and took personal possession of the company's computers. MFB Decl., ¶ 4, Exh. 3, pp. 12-13. Thus, whatever records Island Properties has are within the possession, custody, and control of Plaintiff's agent, Natalie.

4

**C.    Plaintiff's Counsel Failed to Identify and Instead Withheld Numerous Responsive Documents, Including Many Non-Privileged Emails He Authored**

Plaintiff's supplemental production consisted of just 84 pages. As part of that production, Mr. Wilson attested that he was "not withholding any documents under attorney/client or work product privilege."[4] MFB Decl. ¶ 5, Exh. 4.

Several of the requests sought communication or agreements between Mr. Wilson, Natalie Pitre, and/or Tamara Buchwald (the purported successor trustee to Plaintiff's trust) related to this lawsuit, as follows:

23:    All DOCUMENTS that constitute, concern, refer, or relate to communications between Richard Wilson and Natalie Pitre and/or Tamara Buchwald that in any way concern this lawsuit.

40:    All DOCUMENTS CONCERNING you and/or your attorney's communications or agreements, that include Natalie Pitre as one of the senders or recipients, from January 1, 2020 to February 6, 2025.

41.    All DOCUMENTS CONCERNING you and/or your attorney's communications or agreements that include Tamara Buchwald as one of the senders or recipients, from January 1, 2020 to February 6, 2025.

---

[4] In his Opposition to Defendants' Rule 16 Motion, Plaintiff's counsel offhandedly suggests, for the first time, that these documents are somehow subject to a claim of privilege and must have been "inadvertently produced" by Natalie's counsel. ECF #181, p. 3, n. 3. Not so. In fact, Mr. Bush consulted with Mr. Wilson before determining what documents to produce, and Mr. Bush, like Defendants' counsel, concluded that the attorney-client privilege was waived by the inclusion of third parties such as Tamara in the communications. *Cf., Burden-Meeks v. Welch*, 319 F.3d 897, 899 (7th Cir. 2002).

Plaintiff's Court-Ordered Supplemental Response to each of these Requests was: "I have no such documents." MFB Decl., ¶ 6, Exh. 1, 2. In response to defense counsel's meet and confer letter outlining deficiencies in the Supplemental Responses, Mr. Wilson replied:

> With respect to communications with Natalie, Tamara, and the others you have identified -- communications were verbal -- there is no email trail.

MFB Decl., ¶ 5, Exh. 4.

It soon turned out that Mr. Wilson's representations that there were "no documents" and that he was "not withholding anything" and "there is no email trail" between Natalie, Tamara, and him were all false. In truth, Mr. Wilson had extensively emailed with Natalie and Tamara Buchwald concerning this lawsuit[5] – as was conclusively established just days later when Mr. Bush, as counsel for Natalie, produced over 200 pages of non-privileged emails and documents exchanged between Natalie, Tamara, and Mr. Wilson regarding this litigation.[6] None of these documents were produced by Plaintiff.  MFB Decl., ¶ 7, Exh. 5

---

[5] Tamara Buchwald, who produced less than 50 pages documents in May after having evaded service for months, claimed there were "None" when asked for documents concerning her communications with Richard Wilson." Subsequently, in her deposition, Tamara admitted she had deleted all emails she had received from Mr. Wilson, if she received any, but she "could not recall as I sit here today." MFB Decl. ¶ 8, Exh. 6, 7.

[6] Natalie, Tamara, and Mr. Wilson all seem to take the position that if they have deleted an email from their account, it "no longer exists" and they have no

6

**D.      The "Tip of the Iceberg":  Seven Examples of Documents that Demonstrate that Plaintiff and Her Counsel Have Failed to Identify and Produce Responsive Documents**

Defendants provide 7 examples of responsive documents that were undisclosed and not produced by Plaintiff, to show that they are likely the "Tip of the Iceberg" of documents Plaintiff and her agents have withheld or spoliated in disobedience to the Cout's order.

**1.      Four Texts to or From Plaintiff**

When pressed as to why Plaintiff had not produced texts, Mr. Wilson stated, "You mistakenly believe that she was a significant texter or emailer over the last several years." Mr. Wilson further explained, "She [Plaintiff] no longer has the phone number which you identified ... so there are no texts or other electronic communications to be produced." MFB Decl., ¶ 9, Exh. 4.

However, as shown below, Plaintiff has or had many responsive texts that are relevant to this dispute, and which should have been produced.

**a)      Text # 1 - Matt to Mom - How Natalie is "Living in My House without Paying Rent," and "Tearing Our Family Apart to Steal These Houses! This is Awful"**

Less than a month before Plaintiff signed the now-disputed deed, when Matt and his son Manoa were still living with Plaintiff in the Front House, Matt learned that Natalie, without Matt's or Manoa's knowledge or consent, had forged Manoa's

---

obligation to produce it. This is not how Defendants understand a party's obligations regarding the production of documents and ESI.

7

name on a lease for a condo and told them to move out of the Front House. When

Matt learned of Natalie's eviction plan, he texted Mom:

> DID YOU KNOW ABOUT THIS?
> WHY IS NATALIE KICKING MANOA AND ME OUT?
> HOW COME SHE CAN LIVE IN MY HOUSE WITH MY THINGS
> AND NOT EVEN PAY RENT THAT ANYONE KNOWS OF?
> SHE HAS RUINED YOUR BUISNESS AND IS TEARING our
> family apart to steal these houses! This is awful.

MFB Decl., ¶ 10, Exh. 8.

Plaintiff responded to Matt: "Relax!  I [love you]  I want u here to help me

and be my friend and loyal supporter!  I Love You!!!!  I have told her to stop![7]

> **b)    Text # 2 - Mom To Mark - "Now I Have Matt Taken Care Of By You And By Me With Small House [Back House]. . . Thanks So Much For Stepping Up To Be Your Brothers Keeper!"**

Another text Plaintiff failed to produce was from Plaintiff to Mark the day

before Plaintiff signed the Back House deed:

> Now I have Matt taken care of by you and by me with small house . . .
> thanks so much for stepping up to be your brothers keeper!!!!' As u
> and I both know Matt is very poor $$$$$manager.

MFB Decl., ¶ 29, Exh. 11. This text demonstrates that Plaintiff willingly deeded

the Back House to Mark "to take care of Matt" — which starkly contrasts with the

---

[7] Natalie admitted in her deposition that she forged Pat's name on the rental application, misstated facts to mislead the landlord, and then forged Manoa's name on the Lease without his knowledge or consent.  MFB Decl., ¶ 11.

Complaint's claims that Mark surprised Plaintiff, failed to tell her what she was signing, and defrauded her into deeding the Back House to his trust.

        **c)**       **Text # 3 - Mom to Her Bookkeeper - "Natalie is Tough and Can Be Mean and Very Greedy" and "Don't Tell Natalie About This!!!"**

Several months before the Disputed Deed was signed, Plaintiff was already experiencing problems with Natalie trying to take her assets and wrest control of her company away. Thus, Plaintiff reached out and asked for help, and repeatedly requested that Natalie not be told about remedial measures.  Plaintiff texted Island Properties' bookkeeper:

> Legally, I still own this company. Do not breathe one word of this to Natalie.
>
> Do you understand not one word this is not hers this is mine.
>
> I know I sound tough and mean but I can tell you from experience that my darling daughter is tough and can be mean and very greedy. Keep this between you and me. She has nothing to do with it. Nothing nothing nothing thank you dear Quynh.
>
> I am trusting you that you will be loyal to me and not let Natalie in on any of this.!!!!!
>
> Do not communicate ANY of this to Natalie!!!!!!!!!! I hope I am clear'!!!
>
> Dear Natalie wants as much as possible for her children!
> I also have other grandchildren that I want to provide for please DO NOT convey any of this to Natalie.
>
> I don't argue with Natalie, because no one ever wins with Natalie. She is always Right.!!!

<div align="center">9</div>

MFB Decl., ¶ 12, Exh. 9, (capitalization in original)

This text shows that, before Mark investigated in July 2023, Plaintiff was struggling against Natalie and Natalie was attempting to take control of Plaintiff's business to direct more of its assets or potential assets towards herself and her children, despite Plaintiff's stated desire to leave assets to other family members.

> **d)**     **Text #4 - Mom to Natalie About Forging Mom's Name on a Lease and Other Legal Documents - "You are Getting into Serious Stuff.  You have to STOP!!!" and "SERIOUS business!!!!!"**

Another text Plaintiff failed to produce is dated October 2023. Plaintiff sent this text to Natalie after she discovered Natalie had forged both Plaintiff's and Manoa's names on the rental application in her July attempt to evict Matt and Manoa out of the Front House. Plaintiff texted:

> Natalie Dear you are getting into serious stuff.  You have to STOP!!!
> Please come to talk to me!!!!!!

A second text from Plaintiff to Natalie said much the same:

> Natalie pls come to talk to me about this!!!
> SERIOUS business!!!!!
> Please come as soon as possible!!!!!!

MFB Decl., ¶ 13 & Exh. 10.

10

**2.      Three Emails to Have Plaintiff Resign and Tamara Step in As Trustee (and Lead Litigator), to "Get Facts to Keep Jennifer in this Case" and Laughing About Getting the Court to Accept Their Allegations Against Jennifer**

Defendants first became aware of the unprivileged email traffic between Plaintiff's agents because Plaintiff's counsel had filed some of them as exhibits. Despite this public disclosure (the first tip of the iceberg), which Defendants specifically noted in their motion to compel (*see* ECF #136, p.13), Mr. Wilson's signed, court-ordered supplemental response continued to deny the existence of these responsive, non-privileged documents. MFB Decl., 14, Exh. 1, 2; see also ECF #136, p. 13.

**a)      Email Chain 1: Plans for Patricia to Resign and Be Replaced by Tamara Buchwald as Trustee and Named Plaintiff for Patricia's Trust**

Less than two weeks before filing the case, Natalie, Tamara, and Richard Wilson emailed about a plan to have Plaintiff resign and Tamara take over as trustee; indeed, Mr. Wilson's initial drafts of the complaint named Tamara as plaintiff and trustee of Patricia's Trust. MFB Decl., ¶ 17, Exh. 13.

> January 5, 2024, Natalie emails Steve Reese and Tamara: Natalie informs Steve that Pat is going to resign as trustee of her trust, and Tamara Buchwald will be her successor trustee to protect and preserve Pat's trust.  [MFB Decl., ¶ 1, Exh. 12]
>
> From Steve Reese to Natalie, Tamara: If [Rich Wilson] feels it would be acceptable and both your mother and Tamara consent, I can be again retained by Pat as the trust attorney.  [Id.]

11

January 6, 2024, Natalie email to Steve Reese: Pat will be resigning as trustee of her trust this coming week. Pat's attorney Rich Wilson will arrange for a court reporter to interview and videorecord Pat to clarify Pat's intentions and to validate your current Trust.  [Id.]

January 8, 2024, Rich Wilson emails both Natalie and Tamara: Mr. Wilson asks for comments on the draft complaint, which lists as a plaintiff "Tamara Buchwald, as Trustee of the Patricia W. Buckman Revocable Trust."  [MFB Decl., ¶ 1, Exh. 13]

As set forth above, Defendants have sought Plaintiff's updated trust documents since July 2024. While Plaintiff still has not produced them, Plaintiff filed a statement confirming she has signed new trust documents.[8] This late disclosure raises concerns about whether Patricia is the trustee of her trust, and thus the proper party plaintiff in this case.

> **b)  Email Chain 2: After Jennifer's Motion to Dismiss Was Granted, Richard Wilson Seeks Facts to Allege Against Her with Natalie and Tamara**

Jennifer filed a motion to dismiss, which was granted on May 10, with leave to amend. ECF #24. That same day, Mr. Wilson emailed Natalie and Tamara stating, "Read this one!  We need to add more facts to Jennifer's involvement in the scheme."  Plaintiff was not copied on that email.  MFB Decl. ¶ 17 & Exh. 14.

---

[8] Plaintiff explained in her Opposition to Defendants' Motion for Summary Judgment that "Mark also had Pat give he and his wife an extensive power of attorney, and made other changes to her trust and will. Those matters are no longer at issue as they have been rescinded and/or modified to their pre-2023 status." ECF 177, page 4, foot note 2.

The following week, Mr. Wilson sent another email to Natalie and Tamara (but again, not Plaintiff) reiterating the need for the First Amended Complaint to add facts sufficient to state a claim against Jennifer:

> Ladies,   We need to allege facts that tie in Jennifer as part of the conspiracy to defraud Pat. She was not there, did not prepare the deed and mortgage, and did not call the mobile notary. But she did come to Hawaii with Mark, butter Mom up, *et cetera.* Things she had never done in the prior several years. Natalie – so I need facts, when did she come to Hawaii the last time prior to August 2023. [*sic*] What did she do differently with Pat? We need to tell the story. Let's get on this sooner rather than later.[9]  Rich

MFB Decl., ¶ 5 & Exh. 15.

As explained in more detail in Mr. Buckman's Declaration, neither Natalie nor Tamara has any personal knowledge of the transactions that are now disputed in the Complaint. MFB Decl., ¶ 19.

> **c)    After the False Allegations against Jennifer Withstood Her Motion to Dismiss, Richard Wilson Emails Natalie & Tamara, "Ha ha, Jen's still in Play"**

Although Jennifer filed a motion to dismiss the SAC, the Court found the new allegations against Jennifer sufficient to get past the pleading stage. However, that Order expressly noted, "Jennifer is undoubtedly correct that it is impermissible to amend a complaint's allegations without a good faith basis for doing so or for the

---

[9] Ironically, this email in which Plaintiff's agents are grasping at speculative facts to support a conspiracy allegation against Jennifer appears to show Plaintiff's agents engaged in their own conspiracy to defraud the parties and the Court.

13

sole purpose of withstanding a motion to dismiss," and explicitly cited Rule 11. ECF #82, p. 14.

On October 30, 2024, Plaintiff's attorney sent a copy of the Order to Natalie and Tamara along with an email entitled, "**haha Jenn is still in full play**," and the message, "Enjoy the read." MFB Decl., ¶ 20, Exh. 16. The tone and tenor of Mr. Wilson's email support the inference that he found it funny that he had convinced the Court to accept the false allegations against Jennifer.

E.     **Plaintiff Has Not Established That She Made a Diligent Search for Responsive Documents, Nor That Counsel Took Affirmative Steps to Identify All Sources of Discoverable Information**

Defendants understand the Court's Order (ECF #144) to require Plaintiff to establish that a diligent search had been made for responsive documents and directed counsel to take affirmative steps "so all sources of discoverable information are identified." *Id.* at p. 5. Plaintiff's court-ordered Supplemental Responses fail to comply with these standards, as set forth in more detail below.

III.   **ARGUMENT**

A.     **The Court Should Enforce Its Order to Allow Defendants to Obtain the Discovery Withheld by Plaintiff and Her Agents**

As Defendants have maintained since the inception, this case is being run by Natalie, not Patricia, and the now-disputed transactions were necessitated by Natalie's malfeasance, theft, and financial elder abuse of Patricia, some of which remains unknown to her. Since Natalie serves as Plaintiff's agent in this case, and

14

Natalie has testified she serves as the "sole conduit" to supply "facts" to Plaintiff's

attorney, it is unsurprising Natalie is not inclined to produce any evidence showing

her misconduct.[10] MFB Decl., ¶ 21  But Natalie's desire to hide her misdeeds does

not relieve Plaintiff of her burden to preserve and produce relevant evidence.

Nonetheless, Defendants are entitled to this evidence, which corroborates their

version of events and refutes Plaintiff's claims.

> **B.      Plaintiff Should Be Compelled to Provide Supplemental
>           Responses in Compliance with FRCP 34 and the Court's Order**

Plaintiff's Supplemental Responses did not comply with the Court's Order.

Defendants are entitled to a full response, <u>signed and served under Rule 37</u>, so that

Defendants may pursue appropriate remedies if Plaintiff and her counsel continue

to stonewall discovery and submit false responses.

> **1.      Plaintiff Did Not Affirm Making a Diligent Search For
>           Responsive Documents, and It Appears Neither She Nor
>           Any of Her Agents, Including Counsel, Made Such a Search**

Plaintiff's responses to Request Nos. 2, 3, 4, 8, 9, 11, 12, 13, 15, 16, 17, 19,

20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 40, 41, 42,

43, 45, 46, 47, 48, 49, 50, 51, 53, and 54 was: "I have no such documents."

---

[10] Defendants have produced over 1,900 pages of documents, plus hours of audio
and video recordings, while Plaintiff has produced less than 250 pages of
documents, and Mr. Wilson continues to refuse to produce the videos that are in
his possession. Indeed, Thomas Bush, who only held a small portion of Plaintiff's
responsive documents, produced over 250 pages of emails and attachments
authored by Richard Wilson himself - and only after checking with Mr. Wilson as
to any privilege claims.  MFB Decl., ¶ 22.

These Responses violate the Court's Order in two important respects. First, they appear to limit the scope of production to what Plaintiff *herself* has available. This interpretation conflicts with the provision in the Order that directed Plaintiff to produce documents within her possession, custody, or control.

Second, the Responses do not confirm that Plaintiff's agents made a diligent search for these documents – and indeed, it does not appear that they have done so. As shown above, Plaintiff's production indisputably withheld hundreds of pages of documents that are responsive to some of these requests. Defendants believe there are many more such documents within Plaintiff's "possession, custody, or control." Plaintiff should be compelled to serve responses to RPODs 1, 2, and 3 in full compliance with the discovery obligations of Rule 34 and the Court's order.

### 2.      Plaintiff's Responses Must Clearly State Whether Her Production Is Complete

The Court's Order required Plaintiff's Supplemental Responses to "clearly state whether her production is complete." The Supplemental Responses do not do so. And while Mr. Wilson has emailed defense counsel claiming that he is not withholding responsive documents, the subsequent production by Mr. Bush revealed that Plaintiff failed to produce at least several hundred pages of responsive documents. MFB Decl., ¶22. Plaintiff's counsel must sign and serve a compliant Response, such that Defendants can bring a Motion for Sanctions under Rule 37 if Plaintiff's agents continue to disobey the Court's Order.

16

**C.    Plaintiff Must Be Ordered to Produce All Responsive Documents, Including ESI**

Because Plaintiff had not been forthcoming with discovery, Defendants served a third RPOD specifically seeking ESI. Plaintiff failed to timely respond, thereby waiving all objections. MFB Decl., ¶ 23, Exh 17.

In response to defense counsel's initial meet and confer efforts, Plaintiff's counsel promised a response, but then delayed, and ultimately failed to produce a single document or any other ESI. As many of the requests were similar to RPODs 1 and 2, but just sought ESI, Plaintiff should be compelled to produce that ESI to Defendants, as recovered by a professional e-discovery consultant, at Plaintiff's cost.  MFB Decl., ¶ 24

**1.    In Disobedience of the Court's Order, Plaintiff Still Has Not Provided All Responsive Documents in Her Possession, Custody, or Control, Nor Produced *Any* ESI**

Although numerous categories of the RPODs sought texts and other ESI, Plaintiff failed to produce them. For numerous different categories of documents, Plaintiff's Responses simply stated, "I have none" or "I  have no additional documents to produce in addition to what was previously produced" - but she didn't previously produce all responsive documents.  Other responses baldly claim that responsive documents "Do not exist" or "I have no such documents." MFB Decl., ¶ 25, Exh. 17, See, for example, Response Nos. 56, 57, 59, 61, 65, 67 and 78.

Documents, including ESI, are "deemed within a party's 'possession, custody, or control' if the party has actual possession, custody, or control thereof or the legal right to obtain the property on demand." *In Re Bankers Trust Co.*, 61 F.3d 465, 469 (6th Cir. 1995). The responding party may be deemed to have control over property in possession of its agents. *See McKesson Corp. v. Islamic Republic of Iran*, 185 F.R.D. 70, 77 (D.D.C. 1999) [control may be established through a principal-agent or similar relationship].

Here, Plaintiff no longer has access to her own email accounts; these accounts are managed by Natalie and can only be accessed on Natalie's computer. Plaintiff can no longer text because the new phone that Natalie got her earlier this year is a flip-phone with no easy method of texting. MFB Decl., ¶ 26. Further, Plaintiff, at 90-years old, does not know how to recover and produce emails, texts, and other electronic records. Thus, Plaintiff is relying on her agents, Natalie and her counsel, to manage this litigation. Under these circumstances, Plaintiff's agents, including Natalie and Mr. Wilson, have the obligation to produce documents.

The "Documents" sought by the RPODs included emails and texts that Plaintiff and her agents must produce, such as RPOD 3's requests, Ex. 17.  A party's email and text communications relating to its claims or defenses are a proper subject for RPODs. *Rowe Entertainment, Inc. v. William Morris Agency, Inc.*, 205 F.R.D. 421, 428 (S.D.N.Y. 2002) ["Electronic documents are no less

18

subject to disclosure than paper records"]; *see also Flagg v. City of Detroit,* 252 F.R.D. 346, 352-353 (E.D. Mich. 2008) [text messages and instant messages constitute ESI and are subject to production].

The evidence obtained from Mr. Bush and the texts with third parties confirms that Plaintiff had a significant amount of ESI that would refute the claims presented in the Complaint or support Defendants' contentions. Plaintiff is required to produce this ESI, even if it shows the misconduct of her own agents. This is why a forensic examination of agent Natalie's computer is necessary, as set forth below.

> **2.    Since Plaintiff's Agent Natalie Confirmed She Made No Efforts to Recover Texts, Emails, and Other Deleted and Destroyed Evidence, Plaintiff Should Be Ordered to Produce Natalie's Computer for a Forensic Examination by a Qualified Forensic ESI Firm.**

Plaintiff's counsel sought to excuse Plaintiff's failure to produce any of her texts because "She [Plaintiff] no longer has the phone number which you identified ... so there are no texts or other electronic communications to be produced."  MFB Decl., ¶ 5, Exh. 4. This argument is specious.

Plaintiff and her agent Natalie cannot simply replace Plaintiff's phone, change cell service providers, and delete relevant ESI that was created after the case was filed and then say, "Sorry, I deleted them, so there are no records, good luck proving your case!" The texts cited above establish that Plaintiff had

19

responsive ESI at one time - and the limited texts Defendants have been able to obtain are likely just the tip of the iceberg.

Defendants are entitled to obtain all the requested ESI from Plaintiff, even if deleted texts and emails have to be recovered to be produced. Plaintiff was required to preserve the texts when she had access to them, and her agents committed discovery abuse by dropping the service that had these texts during the pendency of this litigation.

Plaintiff's counsel continues to try to shift Plaintiff's responsibility for producing texts to Defendants by stating, "You have always been free to subpoena her cell phone records." MFB Decl., ¶ 5, Exh. 4. The Court already rejected this argument in its prior Order, finding the claim that "others" could have produced documents - such as Plaintiff's cell phone records - did not excuse Plaintiff or her counsel from their discovery obligations. *See* ECF #144, p. 8.

Moreover, given Natalie's deliberate abandonment of Plaintiff's computer and office records during the litigation, Natalie's decision to change Plaintiff's cell phone carrier and phone number while Defendants' RPODs were pending, the "loss" of Plaintiff's iPhone, the claim by Plaintiff's counsel that Plaintiff's emails have been "wiped out", and the fact that Plaintiff's email accounts are only accessed through Natalie's computer, the Court should order Natalie Pitre to produce her computer and cell phone to an ESI firm selected by Defendants so that

20

Defendants can obtain a forensic examination, at Plaintiff's expense, to locate and

restore all potentially responsive documents and ESI. Plaintiff must also seek to

recover her texts. Since Plaintiff's agents took the actions that destroyed this

evidence, equity demands that Plaintiff bear the burden and cost of recovering it.

**D.    Plaintiff Waived the Attorney-Client, Attorney Work Product, and Trial Preparation Privileges**

At this point, the Court should find Plaintiff waived her privileges by failing

to timely respond to the RPODS, make any objections, or identify any privileged

documents on a privilege log. The Court's Order required that:

> For each and every document request, Plaintiff must state whether she is
> withholding any documents on the basis of any objections. If Plaintiff
> withholds documents, she must satisfy the requirements set forth in
> Federal Rule of Civil Procedure 26(b)(5)(A) and Local Rule 26.2(d).

ECF 144, p. 7.

Plaintiff's responses did not state that she was withholding documents;

instead, her counsel confirmed that, "I am likewise not withholding any documents

under attorney/client or work product privilege." MFB Decl., ¶ 5, Exh. 4.

Apparently, Mr. Wilson made a strategic decision not to claim any privileges. At

this point, then, Plaintiff should be deemed to have waived those privileges, and

she must produce all responsive documents without claim of privilege.

In contrast, Mr. Bush did withhold communications between Natalie (as

Plaintiff's agent) and Mr. Wilson, and Mr. Bush asserted Plaintiff's attorney-client

21

privilege. Since Natalie was responding to a Rule 45 subpoena as a third-party witness, Defendants had to pay Mr. Bush $770.00 for him to produce that privilege log to them. MFB Decl., ¶ 27, Exh. 18. As part of the Rule 37 sanctions, Plaintiff should be ordered to reimburse Defendants this $770 because the cost of producing this privilege log was Plaintiff's obligation.

**E.    Defendants Request the Court Explicitly Warn Plaintiff That Further Sanctions Pursuant to Fed. R. Civ. P. 37(b)(2)(A) May Be Imposed for Her Continuing Failure to Obey the Court's Order, Produce Documents, and Preserve Evidence.**

It is, of course, impossible for Defendants to know exactly what evidence Plaintiff's agents are hiding. It could be other texts, like one of the texts above, that says "Mark has helped me with Matt and the Back House, I deeded it to his trust to make sure Matt gets the benefit for his lifetime, then it's Marks." Similarly, Plaintiff could have responded to Matt's text above "It's okay, I deeded the back house to Mark, he'll take care of your housing for your lifetime as agreed."

There could be other texts to Natalie, saying, "I told you I wanted to pay Mark back for 16th Avenue, so let's not fight about that, stop it Natalie!" There could be texts to similar to the answer that Manoa testified Tutu gave him when he inquired about the 16th Avenue debt – "she said you guys had it worked out," and that it was not Manoa's business. It could have been like Kimi testified, that Natalie pressured Plaintiff to dispute the transactions with Mark, and there could be a series of texts showing that Natalie kept at Plaintiff and kept at her – in the words

22

of Manoa and Matt, "brainwashed Mom." Since Plaintiff's agents have been hiding, and deleting, this evidence, Defendants can only guess what it contained.

Further, since it is not yet clear whether ESI "that should have been preserved . . . is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery. . . ," the Court should order Plaintiff's agents to turn over Natalie's Mac computer and iPhone for forensic examination, to contact Plaintiff's former cell carrier to seek recovery of her texts and email, and to work with Defendants' electronic discovery firm to restore and produce the missing ESI. These actions will allow Defendants and the Court to determine if the ESI lost by Plaintiff's agents cannot be restored or replaced. Fed. R. Civ. P. 37(e).

In the meantime, the Court is empowered to stay further proceedings until the order is obeyed. Fed. R. Civ. P. 37(b)(2)(A)(iv). Defendants urge the Court to stay further proceedings on Plaintiff's case and put the onus on Plaintiff to establish full compliance with the Court's order before she can proceed.

F.    **Sanctions of $12,770 Should Be Awarded Pursuant to Fed. R. Civ. P. 37(b)(2)(C) Due to Plaintiff's and Her Counsel's Disobedience of the Court's Order.**

In attempting to obtain this discovery, Defendant Jennifer Buckman has incurred over $12,000 of attorneys' fees and costs, plus $770 as set forth above. MFB Decl., ¶ 27. This total includes time spent on bringing the first motion to

23

compel, reviewing the supplemental responses and production, meeting and

conferring with Mr. Wilson by email and in person, reviewing the production of

documents from Mr. Bush, paying Mr. Bush $770.68 for preparing a privilege log,

and the attorneys' fees to bring this motion and a proportionate amount of the Rule

16 motion. MFB Decl., ¶ 27.

Monetary sanctions are mandatory for both disobedience to a court order and

failing to provide discovery. Fed. R. Civ. P. 37(b)(2)(C), *Id.* at 37(a)(5) [the "court

must order the disobedient party, the attorney advising that party, or both to pay

the reasonable expenses, including attorney's fees, caused by the failure, unless the

failure was substantially justified. . ."].

Plaintiff's counsel has no substantial justification for disobeying the Court's

order by failing to disclose, and continuing to hide and withhold, hundreds of

pages of documents. For one example, the statements by Plaintiff's counsel that

there are "no responsive documents" simply cannot be squared with the responsive

documents Mr. Bush produced mere days later. In such a case as this, discovery

abuse is established by the record, and Defendants are entitled to reimbursement

for their efforts to enforce their right to obtain discovery the Court's prior Order.

Accordingly, Jennifer Buckman respectfully requests the Court order sanctions

against Patricia Buckman and Richard Wilson in the amount of $12,770.00,

24

payable to Dentons US, LLP, to reimburse her for attorneys' fees incurred in connection with this motion.

## IV.    CONCLUSION

As shown above, Plaintiff, by and through her agents, has suppressed production of responsive documents, given false discovery responses, and disobeyed the Court's Order. Hence, the Court should grant Defendants' motion in its entirety and award Defendants sanctions in the amount of $12,770.

Dated:  July 16, 2025.

/s/ Louise K.Y. Ing
LOUISE K.Y. ING
TIMOTHY C. PARTELOW
Attorneys for Defendants
MARK F. BUCKMAN, and
JENNIFER BUCKMAN

/s/ Mark F. Buckman
MARK F. BUCKMAN

Attorney for Defendant
JENNIFER BUCKMAN