PATRICIA W. BUCKMAN,
PATRICIA W. BUCKMAN
REVOCABLE TRUST,

          Plaintiffs,

   v.

MARK F. BUCKMAN, ET. AL.

          Defendants.

Civil No. 1:24-CV-00129-MWJS-KJM

**DECLARATION OF MARK F. BUCKMAN IN SUPPORT OF DEFENDANTS' E MOTION TO COMPEL FURTHER RESPONSES; PRODUCTION OF DOCUMENTS, EVIDENTIARY SANCTIONS, ISSUE PRECLUSION, ADVERSE INFERENCE INSTRUCTIONS, AND MONETARY SANCTIONS FROM PATRICIA W. BUCKMAN AND HER COUNSEL RICHARD WILSON**

Trial Date: November 3, 2025

Judge: Hon. Micah Smith

### DECLARATION OF MARK F. BUCKMAN

I, Mark F. Buckman, declare as follows:

1.    I am the attorney for Defendant Jennifer Buckman as well as a defendant and counterclaimant in this matter.

2.    I have personal knowledge of all facts stated in this declaration, and if called to testify, I could and would testify competently thereto.

3.    Attached hereto as **Exhibit 1** is a true and correct copy of "Plaintiffs' Supplemental Response to Request for Production of Documents to Plaintiff

1

Patricia W. Buckman" which contains both the request and the response.

Attached hereto as **Exhibit 2** is a true and correct copy of "Plaintiffs'

Supplemental Response to Second Request for Production of Documents to

Plaintiff Patricia W. Buckman."

The documents sought in category 6 are relevant as it seeks estate and will

documents.  The documents sought in category 10 are relevant as they concern

communications and agreements with Tamara Buchwald, who was the successor

trustee under Plaintiff's 2022 Trust Amendment.  Moreover, Ms. Buchwald had

corresponded with Plaintiff and Plaintiff's estate attorney Steve Reese about the

matters at issue in this lawsuit.  Notably, despite producing no documents to

category 6 in her supplemental response, Plaintiff had responsive documents -

which she admitted last week in Opposition to Defendants' Motion for Summary

Judgment.  As Plaintiff explained:  "Mark also had Pat give he and his wife an

extensive power of attorney, and made other changes to her trust and will. Those

matters are no longer at issue as they have been rescinded and/or modified to their

pre-2023 status."  ECF 177, page 4, foot note 2.  However, we still have not seen

these documents – which apparently are part of Plaintiff dropping some of her

claims against my wife and I – at least that's my reading of those matters being "no

longer at issue."  However, Plaintiff's (agents') false and inflated claims, and her

2

estate documents, remain at issue in Defendants' theory of the case.

Notably, Plaintiff did not respond on time to <u>any</u> of Defendants' RPODs or interrogatories, and strung Defendants along with promises to comply for months.

4.      Based on Plaintiff's and Natalie's testimony, Plaintiff is the owner of Island Properties. Furthermore, at her deposition, the former bookkeeper of Island Properties, Qunyh Vu, testified that Natalie Pitre closed the Island Properties' office and took possession of Island Properties' computers. Attached hereto as **<u>Exhibit 3</u>** is a true and correct copy of certain pages of Ms. Vu's deposition transcript, with the discussion about the computer occurring on pages 12-13.

5.      Plaintiff's supplemental production consisted of just 84 pages. As part of that production, Mr. Wilson attested that he was "not withholding any documents under attorney/client or work product privilege."   Attached hereto as **<u>Exhibit 4</u>** is a true and correct copy of Mr. Wilson's June 17 email to me and Louise Ing.

6.      Several of the requests sought communication or agreements between Mr. Wilson, Natalie Pitre, and/or Tamara Buchwald related to this lawsuit, as follows:

> 23:    All DOCUMENTS that constitute, concern, refer, or relate to communications between Richard Wilson and Natalie Pitre and/or Tamara Buchwald that in any way concern this lawsuit.

40:    All DOCUMENTS CONCERNING you and/or your attorney's communications or agreements, that include Natalie Pitre as one of the senders or recipients, from January 1, 2020 to February 6, 2025.

41.    All DOCUMENTS CONCERNING you and/or your attorney's communications or agreements that include Tamara Buchwald as one of the senders or recipients, from January 1, 2020 to February 6, 2025.

Plaintiff's Court-Ordered Supplemental Response to each of these Requests was, "I have no such documents." Exhibits 1, 2.

7.    Mr. Bush, as counsel for Natalie, produced 288 pages of non-privileged emails and documents exchanged between Natalie, Tamara, and Mr. Wilson regarding this litigation (Documents N 554 – N 842).   None of these documents were produced by Plaintiff.   Mr. Bush noted he had checked with Mr. Wilson about the production of these records and confirmed his understanding that no privilege applied / had been waived because the documents were shared with Tamara Buchwald, who has testified denying any involvement in this case, denying that she was Plaintiff's agent, and claiming she couldn't even remember if she had emailed with Mr. Wilson.  Attached hereto as **Exhibit 5** is a true and correct copy of Mr. Bush's email.  Attached as Exhibits 12, 13, 14, 15, and 16 are some of the emails and attached documents he produced  .

8.    Tamara Buchwald, who produced less than 50 pages documents in

4

May after having evaded service for months, claimed there were "None" when asked for documents concerning her communications with Richard Wilson." Subsequently, in her deposition, Tamara admitted she had deleted all emails she had received from Mr. Wilson, if she received any, but she "could not recall as I sit here today."   Attached hereto as **Exhibit 6** is a true and correct copy of Ms. Buchwald's email attesting to fully producing documents - but certifying that she had "none" when asked about Mr. Wilson's emails (4th page, category 8).

Attached hereto as **Exhibit 7** is a true and correct copy of certain pages of Ms. Buchwald's deposition transcript where she testified she "could not recall if she had emailed with Mr. Wilson" and claimed an astonishing lack of recall about her emails and interactions with Mr. Wilson, such as:

> Q. So, have you ever communicated with Rich Wilson, like by E-mail
> or text in the last two years?
> A. I don't recall.
> Page 20, 10:13
> /      /      /
> A. . . .I want to give you a hundred percent of the truth.
> Q. Okay. And have you ever E-mailed with Rich Wilson?
> A. Probably, but I don't -- I can't give you any specifics on that either.
> Q. And what did you do? What were those E-mails about?
> A. I don't recall at all.
> Q. Why would you have been E-mailing him?
> A. I don't know. I don't recall. I can't tell you because I don't know
> what would be in the E-mails.
> Q. What are you communicating with Rich Wilson about, by E-mail,
> by voice, by text, any way two humans can communicate? What have
> you communicated with him?

A. We talk. I don't know what we talk about. We shoot -- we talk
story.
Page 20:12 through 21:8
/     /     /
Q. Let's focus on Richard Wilson again. If you say none in response to
our request for documents with a communications agreement with
Rich Wilson, and you say none, tell me exactly what you mean by
none.
A. None.
Q. What do you mean?
A. I don't have any documents in my possession, custody, or control
from Richard Wilson.
Q. Does that also include, though, that you could have had them
previously, but deleted them for Richard Wilson.
A. I don't recall sitting here today.
Q. So, you don't recall ever receiving, or sending, or being copied on
E-mails with Rich Wilson, correct?
A. I don't recall sitting here today.
Page 59:14 through 60:9
/     /     /
Q. How many times have you communicated with Rich Wilson in the
last month?
A. Probably maybe none. I don't know. None, probably.
Page 62:11-14

9.      When pressed as to why Plaintiff had not produced texts, Mr. Wilson

stated, "You mistakenly believe that she was a significant texter or emailer over the

last several years." Mr. Wilson further explained, "She [Plaintiff] no longer has the

phone number which you identified ... so there are no texts or other electronic

communications to be produced."  His email is attached as Exhibit 4.

10.      Attached hereto as **Exhibit 8** is a true and correct copy of Matt

6

Buckman's text to Plaintiff  along with her response dated July 23, 2023.

11.   Natalie admitted in her deposition that she forged Pat's name on a rental application for a Marina Palms condo (that is, she hand-signed Pat's name without claiming to be signing under any authority), misstated facts on that application to mislead the landlord into renting the condo to Pat (when Natalie intended Matt to live there), and then forged Manoa's name via electronic means on the Lease without his knowledge or consent.  Attached hereto as **Exhibit 19** is a true and correct copy of certain pages of Natalie Pitre's deposition transcript, both from a case in California, and this case.  (Also, the forged rental application is attached hereto as Exhibit 10 and discussed in more detail in paragraph 13 below).

12.   Plaintiff texted Island Properties' bookkeeper Quynh Vu.  Ms. Vu authenticated the text in her deposition, pages 44-45 (Exhibit 3).  Attached hereto as **Exhibit 9** is a true and correct copy of the text between Patricia Buckman and Quynh Vu, with highlights of the quoted text on pages 5-9 of 13.

13.   Plaintiff failed to produce a text dated October 2023. Plaintiff sent this text to Natalie after she discovered Natalie had forged both Plaintiff's and Manoa's names on the rental application in her July attempt to evict Matt and Manoa out of the Front House (Mom told me Natalie forged her name on the lease, and Natalie admitted to forging Mom's name on the application and Manoa's name on the

7

lease).  Plaintiff texted:

> Natalie Dear you are getting into serious stuff.  You have to STOP!!!  Please come to talk to me!!!!!!
> A second text from Plaintiff to Natalie said much the same:
> Natalie pls come to talk to me about this!!!
> SERIOUS business!!!!!
> Please come as soon as possible!!!!!!

Attached hereto as **<u>Exhibit 10</u>** is a true and correct picture of the text between Patricia Buckman and Natalie Pitre.  Notably, my mom was confused in her deposition and thought that the signature on the two pages I've attached to the text (which is  the pdf attachment shown in the text "A  Natalie's Forged, Hand-Written Application") was actually her own signature.  However, Natalie admitted in deposition that she herself had hand-signed mom's name.  To me, this shows not only that Natalie has deleted texts, but that my mom was trying to get her to stop certain misbehaviors mentioned in the complaints in this case, without success.

14.    We first became aware of the unprivileged email traffic between Plaintiff's agents because Plaintiff's counsel had filed some of them as exhibits.  ECF # 53-2, 53-3, 88-5.  Despite this public disclosure, which Defendants specifically noted in their motion to compel,  Mr. Wilson's signed, court-ordered supplemental response continued to deny the existence of these responsive, non-privileged documents.

15.    Less than two weeks before filing the case, Natalie, Tamara, and

Richard Wilson emailed about a plan to have Plaintiff resign and Tamara take over as trustee; indeed, Mr. Wilson's initial drafts of the complaint named Tamara as plaintiff and trustee of Patricia's Trust.   Attached hereto as **Exhibit 11** is a true and correct copy of that email and a few pages of the attachment showing Tamara listed as the named plaintiff.

16.     Attached hereto as **Exhibit 12** is a true and correct copy of an email string between Natalie Pitre, Tamara Buchwald, and Steve Reese.

17.     Attached hereto as **Exhibit 13** is a true and correct copy of an email dated January 8, 2024 from Rich Wilson to Natalie and Tamara, along with several pages of the  attachment that lists as a plaintiff "Tamara Buchwald, as Trustee of the Patricia W. Buckman Revocable Trust."

17.     Attached hereto as **Exhibit 14** is a true and correct copy of an email dated May 10, 2024 from Rich Wilson to Natalie and Tamara.

18.      Attached hereto as **Exhibit 15** is a true and correct copy of an email dated May 16, 2024 from Rich Wilson to Natalie and Tamara where he states, " "Ladies, We need to allege facts that tie in Jennifer as part of the conspiracy to defraud Pat. She was not there, did not prepare the deed and mortgage, and did not call the mobile notary. But she did come to Hawaii with Mark, butter Mom up, et cetera. Things she had never done in the prior several years. Natalie – so I need

9

facts, when did she come to Hawaii the last time prior to August 2023. [sic] What did she do differently with Pat? We need to tell the story. Let's get on this sooner rather than later.

19.    Neither Natalie nor Tamara has any personal knowledge of the transactions that are now disputed in the Complaint.  I also attended and asked questions at both of their depositions, and both acknowledged not being present when the disputed documents were signed, or having personal knowledge regarding same.

After being in both of their depositions, I can say that.

20.    Attached hereto as **Exhibit 16** is a true and correct copy of an email dated October 30, 2024 where Richard Wilson sent a copy of a Court Order to Natalie and Tamara along with an email entitled, "haha Jenn is still in full play," and the message, "Enjoy the read."

21.    At her deposition, Natalie testified that she is the sole conduit of facts from Plaintiff to Mr. Wilson, and she said that, in working on the amended complaint, Natalie added in her own facts to the allegations, and that she didn't know whether she or Pat provided most of the facts for the amended complaints, but thought it was more Pat.  Natalie also noted they sued Jennifer to gain settlement leverage over me.  Finally, Natalie also admitted to altering an email

from Pat's estate attorney.  So, we have concerns about the document production in this case.  Attached hereto as **Exhibit 20** is a true and correct copy of certain pages of Natalie Pitre's deposition transcript.

I don't think any of the emails produced between Mr. Wilson and Natalie and Tamara ever (i) have Natalie or Tamara as the sender (except for noting they are being forwarded; i.e., they are not the primary sender), implying there are additional withheld documents, or (2) seek the input, facts, or opinions of Plaintiff, rather than Natalie and Tamara.  I did not see anything reporting back what Pat had said, or any questions Pat had, leading me to believe Pat is not involved in the prosecution of this case - as when she admitted she had "no idea" where her attorney got the facts for the complaint - cited in the original motion to compel.

22.    Defendants have produced over 1,900 pages of documents, plus hours of audio and video recordings, while Plaintiff has produced less than 250 pages of documents.  Mr. Wilson continues to refuse to produce the videos that are in his possession, even after I asked him for them and explained that the dropbox link he sent me didn't work. Indeed, Thomas Bush, who only held a small portion of Plaintiff's responsive documents, produced over 250 pages of emails and attachments authored by Richard Wilson himself - and only after checking with Mr. Wilson as to any privilege claims.

11

23.    After encountering problems with obtaining paper documents from Plaintiff, Defendants served a third RPOD specifically seeking ESI. Plaintiff failed to timely respond.  Attached hereto as **Exhibit 17** is a true and correct copy of Jennifer Buckman's Request for Production to Patricia W. Buckman, Set No. 3.

24.    In response to defense counsel's initial meet and confer efforts, Plaintiff's counsel promised a response, but then delayed, and ultimately failed to produce a single document or any other ESI. As all objections were waived by the untimely response and many of the requests were similar to RPODs 1 and 2, but just sought ESI, I don't discuss the individual requests.

25.    Although numerous categories of the RPODs sought texts and other ESI (and the 3rd RPODs specifically sought ESI), Plaintiff failed to produce any ESI or documents. For numerous different categories of documents, Plaintiff's Responses simply stated, "I have none" or "I  have no additional documents to produce in addition to what was previously produced" - but she didn't previously produce all responsive documents.  Other responses baldly claim that responsive documents "Do not exist" or "I have no such documents." See, for example, Exhibit 17, Response Nos. 56, 57, 59, 61, 65, 67 and 78.

26.    According to Natalie's testimony, Plaintiff no longer has access to her own email accounts; these accounts are managed by Natalie and can only be

12

accessed on Natalie's computer. Plaintiff can no longer text because the new phone that Natalie got her earlier this year is a flip-phone with no easy method of texting, as Natalie testified.

27.    Defendant Jennifer Buckman has incurred over $12,000 of attorneys fees and costs in attempting to obtain documentary discovery, and Plaintiff's unified efforts to stymie discovery has made it difficult and expensive.  This includes the time of bringing the first motion to compel reviewing the supplemental responses and production, meeting and conferring with Mr. Wilson by email numerous times, phone, and in person, reviewing the production of Documents from Mr. Bush, paying Mr. Bush $770.68 for his time to prepare a privilege log, as well as the attorneys' fees and costs to bring this motion and a proportionate amount of the Rule 16 motion.  Ms. Ing's billing rate is $600 per hour.  We can provide billing records to substantiate the fees and costs incurred if required by the court, but believe that the time and effort necessary to bring the motions and related actions is apparent from the papers themselves.

28.    Attached hereto as **Exhibit 18** is a true and correct copy of the privilege log Defendants obtained from Mr. Bush.  Mr. Bush sent Louise Ing, myself, and Richard Wilson the following email on June 18, 2025 as part of an email string:

13

Dear Counsel,

To follow up on our meet and confer yesterday, I was able to speak with Rich after our meeting, and he did confirm that Natalie did assist her mom in communications with counsel. . . .

In any event, I had Natalie send me her communications with Rich not involving the District Court eviction proceeding. In reviewing them, I noticed some communications were copied to Tamara Buckwald. Since I don't understand that she is within the privilege explained above, I am now producing those documents as bate-stamp numbers N554-N842.

I am still withhold approximately 22 emails as privileged (communications. The dates of the emails are between 12-3-23 and 3-26-25. If you want to pay for a privilege log, I'll do it. It shouldn't take more than 3 hours at $320 an hour.
Thanks, Tom

Mr. Bush's email is attached as Exhibit 5 and discussed in more detail above.

29.    Attached hereto as **Exhibit 11** is a true and correct copy of a text Plaintiff failed to produce, it is from Plaintiff to me the day before Plaintiff signed the Back House deed to my trust. The text stated, in part, that, "Now I have Matt taken care of by you and by me with small house . . . thanks so much for stepping up to be your brothers keeper!!!!' As u and I both know Matt is very poor $$$$$manager." I understood from this text that my mom had agreed to deed me the Back House pursuant to my agreement with Matt and our discussions with mom. Mom also wanted me to take over Matt's share of her life insurance, and it

14

took her a few more to convince me to do that, as we both thought that would be a very difficult and emotionally wearing job.

I've also attached as part of Exhibit 11 a document that Plaintiff did not produce – a memorandum that she wrote up, hand-corrected, and hand-signed back in 2003.  In discussing me, it noted, "he got 40% of house that he earned in construction."  This refers to 714 16th Avenue, which was the only house mom owned at the time (she did not buy the Kaunaoa properties until later).  This document was not produced by Plaintiff, likely because her agent Natalie abandoned all my mom's files, documents, and computer when Natalie moved mom from Kaunaoa in February 2024, the month after this case was filed.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on July 16, 2025, in Honolulu, Hawai'i.

   /s/ Mark F. Buckman       
Mark F. Buckman
