IN THE UNITED STATES DISTRICT CIRCUIT

STATE OF HAWAII

PATRICIA W. BUCKMAN,              )  CIVIL NO.
PATRICIA W. BUCKMAN              )  1:24-CV-00129-MWJS-KJM
REVOCABLE TRUST,                 )
                                 )
          Plaintiffs,            )
                                 )
     vs.                         )
                                 )
MARK F. BUCKMAN, MARK F.         )
BUCKMAN TRUST, JENNIFER          )
BUCKMAN, JOHN DOES 1-10,         )
JANE DOES 1-10, DOE              )
CORPORATIONS 1-10, DOE           )
PARTNERSHIPS 1-10, DOE           )
GOVERNMENTAL AGENCIES            )
1-10,                            )
                                 )
          Defendants.            )
_____)

DEPOSITION OF QUYNH VU,

taken on behalf of the Defendants pursuant to Notice,

on Tuesday, June 17, 2025, commencing at 1:50 P.M.,

at the office of Dentons US LLP, 1001 Bishop Street,

Suite 1800, before Carlene K. Sasaki, RPR, State of

Hawaii CSR No. 544.

REPORTED BY:    Carlene K. Sasaki, RPR
                State of Hawaii CSR No. 544

**EXHIBIT 3**

12

texter.  She doesn't text me.  When she does something, she will e-mail me from her phone text, "Pay this."  That's it.  Which is reported to the accounting at Island Property's Hawaii.com e-mail.

Q    Okay.  Do you know who ran that e-mail account?

A    Right now?

Q    Yeah.

A    It's Natalie.  IT got it into that computer, and that computer's with Natalie.  Like, she even ask me the password.  I told her, I don't know the password because the IT code it into that computer.

Q    Okay.

A    And we paid them for that service.  It's called Meyer Computer Company.  They run the whole domain.  They run the password, so -- and it's just -- Natalie deal with them for the annual subscription, and that's how it worked.

So we never managed to get access besides that computer -- even she still -- I don't know how she accessed it now, if that computer dies.

Q    Okay.  And so Natalie was kind of in charge of the computer; is that correct?

A    Yeah.  Right now, it's in her possession.

13

Q    That actual computer?

A    That actual computer.

Q    Okay.  And that has all the Island Properties e-mails on it?

A    Everything.  And every work that I do. Even e-mail communications, because every invoice, every amount, has a backup copy because it's digital. Because in the past five years, I've been digital with everything.

Q    At Island Properties?

A    Yes, it's in that computer.

Q    And you know Natalie took that computer.

How do you know that?

A    Because I know she had it.  Because she asked me to go there.  I had to transition for the new bookkeeper she filed.  So I just showed him the file on the computer.

Q    Oh.  So they've hired a new bookkeeper?

A    She has a new bookkeeper.

Q    Okay.  And do you know who that is?

A    I don't know.

Q    Okay.  Is Island Properties still operating?

A    I don't know.

Q    When you left, was the company closing,

16

Q    Did you deal with Pat at all with closing up with the company?

A    No, not at all.

Q    Not at all.  Okay.  And to this day, do you know who owns Island Properties to this day?

A    I didn't even know when I was there.

Q    Did Natalie tell you she owned the company?

A    No.  She made a tax file -- changed from C Corp to an S-Corp.  I don't know when.  That's all I know.

Q    Okay.  Did my mom tell you that she owned the company?

A    When I was hired -- 2010.

Q    Okay.  Did she tell you later, even as late as --

A    It's never come up.  The ownership question never come up.

Q    Okay.  And when you say you did the property management, like tenant's security deposit, transferring the Portfolio, what did you actually do?

A    I just wrote a check to close each rental property accounting.  Owner statement bring it to zero, and just transfer the tenant at hand security deposit --

43

MR. BUCKMAN:  What we'll do is take a little break, maybe ten minutes?

THE WITNESS:  Yeah.

MR. BUCKMAN:  You can have a water, use the restroom.  But we can go off record.

(Whereupon, a recess was taken from 2:33 p.m. to 2:53 p.m.)

MR. BUCKMAN:  Okay.  We're back on the record after a short break, and you're still under oath.

Q    (BY MR. BUCKMAN)  I've given you an exhibit marked number 1.  And it's some texts, I believe, between and you and my mom.

Have you seen these texts before?

A    Yeah.

(Whereupon, Defendant's Exhibit No. 1 was marked for identification by the deposition officer and is attached hereto.)

Q    (BY MR. BUCKMAN)  Okay.  And there is a total of 13 pages.

Have you had a chance to take a look through them?  And just confirm they're all part of the text chain and that you recognize them.

A    Yup.  I confirm.

44

Q    Okay.  So you your time and looked through each page.  You confirm this is a true and correct text between and you and Patricia Buckman?

A    Yes.

Q    Okay.  And the dates are correct?

It starts off at 7-20-22, and the last page on 13, ends with 7-28-23; is that correct?

A    Per this Exhibit.  I don't have this text on my phone anymore.  So, yeah.  But I recognize my text and her texts.

Q    Okay.  Good.  And that's because you have a new phone now, so you don't have her texts?

A    I don't keep because I left, so I just, like -- my old clients, I have no reason to keep it.

Q    Just delete everything to do with Island Properties when you left, kind of?

A    Most of my messages, even friends, if I don't talk to them for a while.

Q    Yeah, that makes sense.  Okay.  So I would like to do is just kind of walk through this and kind of give us a background of some of the interactions between Natalie and Pat.

Because my understanding is they had some conflicts about how to split commissions -- who gets more of the commissions, more of the money -- what's

45

going on.  So maybe we can just walk through the texts for that.

        A    Sure.

        Q    The first one is a bill about Kaiser.  My understanding is the company paid my mom's Kaiser bill, but it deducted the money to pay it out of my mom's commissions.

        A    No, we strictly pay for it.

        Q    And so it doesn't come out of my mom's commission?

        A    No.

        Q    Okay.  And it says -- the second one says -- on page 1:

                    "Would you please look up
                    the information that Carolyn is
                    requesting and send it back
                    ASAP."

                    Do you know who Carolyn is?

        A    Yes, a Kaiser biller.  Pat's bill gets sent -- Kaiser's bill gets -- everything about Pat's Kaiser gets sent to her directly.

                    I make a payment monthly -- $104 or whatever, $206 -- based on, like -- I just do it automatically.  If a year increased, then this happened:  I underpay.  And what she's telling me,

57

how people are -- but she's the one that hired me that very first day.  So --

Q    Excuse me.  And then if you look at your response, you're saying that Natalie took the Tomoko information off to her own management, and you didn't know when it got taken off, but when you look for the info, it's not there.

What do you mean, "it's not there"?  You looked for the information for my mom, and then what do you see, or what don't you see, and how you feel about that?

A    Oh, no, no, it's there.  Natalie just told me that Pat requested information, then just let her give it to Pat.

Q    Oh, let Natalie give it to Pat?

A    Yes.

Q    Okay.

A    So that's why, in short, I tell Pat it's not there.  Anything ask Natalie.  I point back to Natalie in a way.  Say -- that's why I say, "If anything it's Natalie.  Go back to Natalie."

Because it seemed like Kamaile Hale has no owner.  And whatever ownership or whatever going on in there, if they need to do it, they need to sort between them.  Like, Natalie and Rita -- I don't get

113

C E R T I F I C A T E

STATE OF HAWAII                    )
                                  )          SS.
COUNTY OF HONOLULU                )

             I, Carlene Sasaki, CSR for the State of Hawaii, do hereby certify:

             That on June 17, 2025, at 1:50 p.m., appeared before me QUYNH VU, the witness, whose testimony is contained herein; that prior to being examined, the witness was by me duly sworn or affirmed pursuant to Act 110 of the 2010 Session of the Hawaii State Legislature.

             That the proceedings were taken down by me in machine shorthand and were thereafter reduced to typewritten form under my supervision; that the foregoing represents, to the best of my ability, a true and correct transcript of the proceedings had in the foregoing matter.

             That pursuant to Rule 30(e) of the Hawaii Rules of Civil Procedure, a request for an opportunity to review and make changes to the transcript:

          __X_  Was made by the deponent or a party
                (and/or their attorney) prior to the
                completion of the deposition.
          ____  Was not made by the deponent or a party
                (and/or their attorney) prior to the
                completion of the deposition.
          ____  Was waived.

             I further certify that I am not an attorney for any of the parties hereto, nor in any way concerned with the cause named in the caption.


DATED this 17th day of June, 2025.


_____

Carlene Sasaki, RPR, CSR #544