IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII


PATRICIA W. BUCKMAN, et al.,

          Plaintiffs,

   v.

MARK F. BUCKMAN, et al.,

          Defendants.

_____

Case No.:  1:24-cv-00129-MWJS-KJM




             Thursday, June 5 2025

                 2:06 p.m.

             Conducted Virtually




   Job:  44980

   Pages:  1 - 254

   Reported by: Garrett Lorman

Job 44980 Buchwald Depo

**Patricia W. Buckman v. Mark F.Buckman**                                  **6/23/2025**

### Page 18

this matter or the other related case, 25010?

A. No.

Q. Okay.

A. I'm representing myself per se in that matter.

Q. Got it. Have you ever talked with Rich Wilson?

A. Yes.

Q. Okay. How many times?

A. Mark, I don't know.

Q. Give me your best estimate.

A. I'm not speculating. I don't know.

Q. I do want your best estimate though, and I'm entitled to that.

A. I don't want -- you could ask for it. I can't recall. I'm not giving -- I'm not speculating. I don't know.

Q. Do you know how many times you've talked to my mom in the last year?

A. No, I don't actually.

Q. Can you give me an estimate?

A. No. I talk to her frequently. I talked

### Page 19

to her on her 90th birthday last week.

Q. Okay. Have you exchanged any E-mails with my mom in the last -- since this case -- well, let's say in the last two years, going back to June, 2023.

A. I can't recall right now. I don't know. I didn't have any when I did a search, so I don't know. I could have. I could have deleted them. I don't recall.

Q. So, have you ever communicated with Rich Wilson, like by E-mail or text in the last two years?

A. I don't recall.

Q. Okay. Can you tell me you've never had any texts with Rich Wilson?

A. I'm not saying I never had. I said, I don't recall. Please don't put words in my mouth.

Q. I'm trying to understand though.

A. I don't recall. What don't you understand about I don't recall.

Q. Please don't interrupt. I'm asking another question. And what we'll do is I'll try

### Page 20

to let you finish your answer. If you could let me finish my question, that'd be great.

A. Okay. That'd be great.

Q. Thank you. So, have you ever texted with Rich Wilson?

A. I don't recall.

Q. Is there some reason why you wouldn't recall that?

A. Well, actually I could say probably not. I don't recall. I don't think so.

Q. Okay.

A. But, I don't want to speculate. I want to give you a hundred percent of the truth.

Q. Okay. And have you ever E-mailed with Rich Wilson?

A. Probably, but I don't -- I can't give you any specifics on that either.

Q. And what did you do? What were those E-mails about?

A. I don't recall at all.

Q. Why would you have been E-mailing him?

A. I don't know. I don't recall. I can't

### Page 21

tell you because I don't know what would be in the E-mails.

Q. What are you communicating with Rich Wilson about, by E-mail, by voice, by text, any way two humans can communicate? What have you communicated with him?

A. We talk. I don't know what we talk about. We shoot -- we talk story.

Q. You're talking story with my mom's lawyer?

A. Well, I was in his presence at your mother's deposition, as you can recall. So, of course we talk story, sure.

Q. Besides being in his presence at that deposition day, have you ever communicated with Richard Wilson?

A. I don't recall. When I did the search, there was nothing for him.

Q. I'm asking your memory though. Have you ever communicated with Mr. Wilson besides that day of the deposition that you were appeared in my mom's depo?

**Olender Reporting**                                         **(866) 420-4020**
**A Boutique Litigation Support Firm**          **Schedule@OlenderReporting.com**

**Patricia W. Buckman v. Mark F.Buckman**                                    **6/23/2025**

---

**Page 58**

asked multiple times now.

If you ever corresponded with Steve Reese by E-mail, wouldn't it be important to keep those to help you fulfill your duties as a successor trustee down the road?

A. No.

Q. Okay. And so, I'm trying to summarize in your response to Louise, when you say none, that means that you don't have documents currently in your possession. Is that correct?

A. I'm not sure what you're specifically asking.

Q. You responded none to many categories in the deposition subpoena when you E-mailed Louise on June 3 and you said none. So, my understanding means you're using none to say you don't have them in your possession. Is that correct?

A. Yeah.

Q. Okay. But while you also use none, that could mean that you previously had those documents, but they've been deleted by you. Is that correct?

---

**Page 59**

A. No.

Q. That's not correct? Could you explain to me why not.

A. Because it's not correct. That's a very general statement. I don't know what you are specifically referring to. I don't currently have those documents in my possession.

Q. You've had documents, but they've been deleted. Is that correct?

A. No, I'm not saying that either. I have no idea. I have no idea who you're at. There's like several -- there were several questions on that E-mail.

Q. Let's focus on Richard Wilson again. If you say none in response to our request for documents with a communications agreement with Rich Wilson, and you say none, tell me exactly what you mean by none.

A. None.

Q. What do you mean?

A. I don't have any documents in my possession, custody, or control from Richard

---

**Page 60**

Wilson.

Q. Does that also include, though, that you could have had them previously, but deleted them for Richard Wilson.

A. I don't recall sitting here today.

Q. So, you don't recall ever receiving, or sending, or being copied on E-mails with Rich Wilson, correct?

A. I don't recall sitting here today.

Q. Okay. It seems to me, though, when you say the word none, it could also mean that you did delete those E-mails, if there were responsive E-mails to a lot of the categories, like between you and I, for example.

A. There's a good chance I deleted your E-mails. There's a good chance I didn't even open your E-mails because they may have gone to my spam.

Q. Okay. And have you blocked my E-mails from getting to you?

A. Not recently, no.

Q. Okay. But they -- the one I sent on June

---

**Page 61**

1 got to you, right?

A. Yes.

Q. Okay. And is there anybody else you would block or put in the spam filter or something like that, that we asked for?

A. No.

Q. Okay. So, do you still have a copy of the E-mail that I sent you on June 1, or did you delete it?

A. I probably deleted it.

Q. Okay. So, if we asked you for that document, what would your response be today? Would you use the word none again?

A. No. I could probably go to my recently deleted folder, or actually what I would do is I'd probably go to the E-mail that I responded to Louise and print that out.

Q. Did you try to do that with like Rich Wilson E-mails?

A. I didn't try to do it with any E-mails, Mark. Come on.

Q. You didn't do that for any of it when you

---

16 (Pages 58 to 61)

**Patricia W. Buckman v. Mark F.Buckman**                                    **6/23/2025**

---

**Page 62**

were looking to get documents for the subpoena?

A. What?  Go to my recently deleted?

Recently deleted is recently deleted, Mark.

Q. How long of a time period?

A. Recently deleted.  I don't know what the time period is, but I know it doesn't last long.  But since it's June 5th and it was June 3rd that I responded to Louise and June 1st that you sent me that E-mail, there's a good chance it's in recently deleted.

Q. How many times have you communicated with Rich Wilson in the last month?

A. Probably maybe none.  I don't know.  None, probably.

Q. So, when I say communicated, I mean talking —

A. None.

Q. — in person, on the phone, E-mail.

A. I haven't been in Hawaii.

Q. What?

A. I haven't been in Hawaii, so I haven't seen him in person.

---

**Page 63**

Q. But like in the last month, you haven't E-mailed or texted with Rich Wilson.  Is that correct?

A. Not that I can recall sitting here today.

Q. We've talked about it a little bit, but I just think it's the last question in the area.  Do you feel like besides being my mom's successor trustee, which that job hasn't come up yet, that you are my mom's agent in any way?

A. Absolutely not.

Q. Okay.  And have you ever represented my mom in a legal matter, or have you ever provided my mom with legal advice?

A. No.

Q. Have you ever worked with my mom on changing her estate plan or her trust documents?

A. Not that I could recall sitting here today.

Q. What could you do to refresh your recollection?

A. Not sure.

Q. Uh-huh.  Did you do anything before this

---

**Page 64**

depot to prepare and think about what you might have done as far as my mom's trust?

A. No.

Q. Okay.  And when you say when sitting here today, it seems like you think you might be able to recall this at another date.  Is there any reason why you wouldn't be able to recall answers today at your deposition?

A. No.

Q. So, today is probably the best chance to get your recollection on the matters I'm asking about, correct?

A. Not sure.  I'm not sure.

Q. Can you tell me if there's any reason why you can't give your best testimony today?

A. I'm giving you my best testimony today.  I just don't recall.

Q. Okay.  And is there any reason why your memory would be less than its best today?

A. No, my memory's at its best today.

Q. Okay.  You said that -- you kind of laughed or smiled about that.  Is that a funny

---

**Page 65**

question to you?

A. I'm sorry?

Q. Is that a funny question for me to ask you.

A. Yeah, it's ridiculous, but go ahead.

Q. Okay.  Because you think your memory is just as good as it will ever be today, correct?

A. You just -- it's ridiculous.  You're harassing me, but it's okay.  I'll take it.

Q. Could you just answer the question.  Your memory is as good as it will be today, correct?

A. Correct.

Q. Okay.  Can you tell me a little bit about your job history?

A. How is that relevant, Mark?

Q. We get it from all witnesses.  We can ask about their background.

A. I also do want to reserve my right to object or appropriately object to preserve.

Q. Okay.  You can object, and then the answer comes in subject to the objection.

A. Okay.

---

**Olender Reporting**                                    **(866) 420-4020**
**A Boutique Litigation Support Firm**          **Schedule@OlenderReporting.com**

Job 44980 Buchwald Depo

**Patricia W. Buckman v. Mark F.Buckman**                                        **6/23/2025**

Page 254

CERTIFICATE OF TRANSCRIPTIONIST

I, Pamela Ann Flutie, do hereby certify that the foregoing proceeding was transcribed from a digital audio recording provided to me by Olender Reporting and thereafter was reduced to typewriting by me or under my direction.

I am not related to any of the parties in this matter, and this transcript is a true and accurate record of said audio recording to the best of my ability.  The above information has been transcribed by me with a pledge of confidence, and I do hereby certify that I will not discuss or release the content or any information contained herein.

Pamela A.
Flutie
Pamela A. Flutie
Transcriptionist
Central Valley Transcription

**Olender Reporting**                                                    **(866) 420-4020**
**A Boutique Litigation Support Firm**                Schedule@OlenderReporting.com