LOUISE K.Y. ING      2394
DENTONS US LLP
1001 Bishop Street, Suite 1800
Honolulu, HI  96813
Telephone: (808) 524-1800
Email:   louise.ing@dentons.com

Attorneys for Defendants
MARK F. BUCKMAN, individually
and as Trustee of the MARK F. BUCKMAN TRUST,
and JENNIFER BUCKMAN

MARK F. BUCKMAN   SBN 7080
Law Offices of Mark F. Buckman
8359 Elk Grove Florin Rd., Suite 103-320
Sacramento, CA  95829
Email:  markfbuckman@sbcglobal.net

Attorney for Defendant
JENNIFER BUCKMAN

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| PATRICIA W. BUCKMAN,<br>PATRICIA W. BUCKMAN<br>REVOCABLE TRUST,<br><br>            Plaintiffs,<br><br>   v.<br><br>MARK F. BUCKMAN, ET. AL.<br><br>            Defendants. | Civil No. 1:24-CV-00129-MWJS-KJM<br><br>DEFENDANTS'/COUNTERCLAIM-<br>ANT'S MOTION TO LIFT STAY OF<br>PROCEEDINGS TO RESUME CASE;<br>MEMORANDUM OF POINTS AND<br>AUTHORITIES; DECLARATION OF<br>MARK F. BUCKMAN AND<br>EXHIBITS 1-3<br><br>ECF 183<br><br>Trial Date: Vacated<br><br>Judge: Hon. Micah W. J. Smith |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that as soon as the matter may be heard in the above-entitled court, in the courtroom of Magistrate Judge Kenneth J. Mansfield, at the United States Courthouse for the District of Hawaii, located at 300 Ala Moana Blvd, Honolulu, Hawaii 96850, with oral argument to be held on a date and time to be designated by the Court, Defendant Jennifer Buckman and Defendant / Counterclaimant Mark Buckman, individually and as Trustee of the Mark F. Buckman Trust, will move the Court for an Order Lifting the Stay entered on July 17, 2025 as ECF 183.

This motion is brought pursuant to the Court's inherent authority to lift the stay of this case, including, without limitation, to consider motions to enforce the parties' binding term sheet / settlement.

This motion is made following the conference of counsel pursuant to LR 7.8, which took place on October 6, 2025, November 2025, and was attempted again in January 2026 and February 2026.  (Buckman Decl. ¶ 2.)

This Motion is based on this Notice of Motion, the attached Memorandum in Support, the facts and pleadings in this case, the declaration of Mark Buckman, the arguments of counsel, and such other evidence as may be properly before the Court.

Dated:  February 24, 2026.

i

/s/ Louise K.Y. Ing
LOUISE K.Y. ING
Attorneys for Defendants
MARK F. BUCKMAN, individually
and as Trustee of the MARK F.
BUCKMAN TRUST, and
JENNIFER BUCKMAN

/s/ Mark F. Buckman
MARK F. BUCKMAN

Attorney for Defendant
JENNIFER BUCKMAN

ii

## <u>MEMORANDUM OF PONTS AND AUTHORITIES</u>

## I.    INTRODUCTION AND SUMMARY OF SALIENT FACTS

The Court held a Mandatory Settlement Conference in this case on July 17, 2025.  At the Settlement Conference, Patricia and Mark met with the Magistrate Judge individually, and then together, discussed the issues in dispute, and agreed on a full resolution of all material issues in this case.  (Declaration of Mark F. Buckman ["MFB Decl."] ¶ 3.)

Although not parties to this case, Natalie Pitre and Carl Pitre both attended the Settlement Conference and negotiated on their own behalf after Patricia and Mark had fleshed out an agreement.  Natalie requested that Mark pay her $1,500.00 per month to help with Patricia's living expenses. Mark agreed. [1]  Natalie and Carl also obtained an agreement that Mark would pay their children $20,000.00 after he sold the Back House, as well as their dismissal from the related case of Buckman v. Pitre, et al., Case 1:25-cv-00010 MWJS-KJM.  Thus, Natalie and Carl negotiated for, and received, material benefits for themselves at the Settlement Conference – even though they were non-parties to the case that was being resolved, do not have any claims against Mark or Jennifer, and are simply defendants in another case.

---

[1]    Mark paid all such payments to Natalie until Patricia's passing.   (MFB Decl., ¶ 5.)

1

To document the settlement agreement reached at the Settlement Conference, a binding settlement term sheet ("**Binding Term Sheet**") was prepared. Above the signature lines, the Magistrate Judge wrote that the signatories intended the Term Sheet to be binding and resolve all disputes between them:

"The undersigned have full authority to enter into this settlement and do so with the intent to fully and finally resolve any and all disputes among them from the beginning of time until today, July 17, 2025."

All of the parties to this case (Patricia, Mark and Jennifer) as well as non-parties Natalie and Carl Pitre then signed the binding Settlement Term Sheet. (Mark Decl., ¶ 4; **Exhibit "1"** (Binding Term Sheet).

At the time of the Settlement Conference, there were multiple dispositive motions pending, including cross-motions for Summary Judgment / Adjudication, a motion for Judgment on the Pleadings, and discovery motions. Additionally, a Rule 11 Sanctions Motion had been served on Mr. Wilson based on information Defendants learned during discovery.

Based on the Binding Term Sheet, the Court entered an EO staying this action, stating:

2

The parties have agreed to a binding settlement term sheet resolving all remaining claims and parties. Accordingly, the Court STAYS all pending motions and pretrial deadlines to allow the parties time to finalize all necessary settlement documents. The Court also sets an August 29, 2025 deadline for submission of the stipulation for dismissal. . . . (ECF 183.)

After the Settlement Conference, Mark drafted, and circulated on July 28, a more formal settlement document to memorialize the terms of the agreement reached. Mr. Wilson rejected it as "too long" and complicated, refused to comment on it, and tried to substitute his own version of the agreement (in contradiction to the agreement that Defendants will draft the documents). To appease Mr. Wilson, Mark revised and shortened his draft agreement, and recirculated it on August 28, 2025; however, Mr. Wilson refused to comment on it.

Later, Mark again shortened the draft agreement on September 30 and emailed it to counsel for the other settling parties. However, Mr. Wilson and counsel for Natalie and Carl, Tom Bush, have both declined to provide comments on that operative draft. Instead, Mr. Wilson, and then Mr. Bush, commented on the outdated August 28 draft that Mr. Wilson had indicated was "unacceptable," and they both have demanded that the more formal settlement document include

3

additional material terms as a condition of memorializing the settlement agreement documented in the Binding Term Sheet.  (MFB Decl., ¶ 6.)

There was quite a delay in getting comments from Mr. Bush.  For example, although Mark sent him a draft settlement agreement on August 28, it was not until October 27 that Mr. Bush first commented on the draft - which is more than 3 months after the MSC.

Mr. Bush's comments included asks on Natalie's and Carl's behalf that far exceeded anything agreed in the Binding Term Sheet, such as (1) a 6-month extension of the maturity date of Patricia's promissory note on the Front House -- the Term Sheet did not call for an extension, but Mark's first draft still contained a 3-month extension because that is what Patricia and Mark agreed, (2) the striking of any interest from Patricia's promissory note, whereas the Term Sheet did not call for any reduction on the interest and Patricia and Mark had already agreed on a reduced, 5% interest rate on the Note itself; (3) that Mark & Jennifer reach a settlement with all defendants in the related case (Matt, Kimi, Manoa, and Tamara) - apparently for no consideration - which counsel claimed was a "material condition of the agreement", whereas the Binding Term Sheet did not call for such dismissals. This proposed new term directly contradicts the Binding Term Sheet, which states explicitly, "Matt & Manoa beneficiaries, but not signatories" and provides that Matt, et al. would be evicted if they refused to sign a rental

4

agreement and pay rent for the Back House for 60 days (as they have), and (4) a provision stating that Mark and Jennifer agree that Patricia's 2025 Trust Restatement and Estate documents are valid and binding – even though these documents were not disclosed to Defendants in discovery and Mr. Wilson and Natalie did not produce these documents to Defendants until weeks after the settlement agreement had been reached and the Binding Term Sheet had been signed.[2] (MFB Decl., ¶ 7.)  Notably, Patricia never asked for Mark and Jennifer to agree to these documents, it was only Natalie, through counsel.

The new terms proposed by Mr. Wilson and Mr. Bush, which materially change the terms explicitly stated in the Binding Term Sheet, are unacceptable to Defendants.  (MFB Decl., ¶ 8.)  Natalie and Carl are merely defendants in a related case, and they have no right to insist on further benefits for themselves as a condition of Patricia settling her case with Mark and Jennifer.

Despite the impasse that has prevented counsel from memorializing the settlement agreement in more formal documents, the interested parties all seem to concur that the Term Sheet is binding and enforceable. Indeed, Natalie Pitre, who represents that she is Patricia's sole heir and beneficiary under the 2025 documents,

---

[2] While Defendants certainly understand that Natalie and Mr. Wilson would like to be exculpated for their wrongdoing related to both the development and the hiding of those documents, that wish does not change the fact that the documents were not produced prior to, and were not the subject of any negotiations at, the Settlement Conference.

has admitted both that the Term Sheet is binding and that it is enforceable as written:  on November 10, 2025, she texted Mark, " I saw your note suggesting communication through counsel. That's fine, and I'll loop Rich in. **I'm still confirming, on the record, that the three-page handwritten agreement signed by all parties in the judge's chambers remains binding**." In the same text, she also stated that she would "**move forward with counsel to have the court enforce the signed settlement or, if necessary, set the matter for trial.**"  (MFB Decl., ¶ 9, **Exhibit "2"**)

Despite these admissions, the drafting of formal documents to memorialize the settlement agreement remains stalled, due to Messrs. Wilson and Bush both demanding the inclusion of additional terms that were not part of the deal. And, although Mark and Ms. Ing have contacted Messrs. Wilson and Bush at least 5 times over the past 3 months asking them to provide comments on the operative draft of the formal settlement documents so this matter can be moved forward, neither counsel has done so to date.  (MFB Decl., ¶ 10; See also ECF 198-2, Exhibit 1 to Declaration of Mark Buckman filed February 20, 2026, which contains numerous emails to counsel.)  Accordingly, the purpose for which the stay was entered — to permit completion of formal settlement documents — no longer exists, and the interests of justice require lifting the stay so the case can be resumed.

The holdup seems to be Natalie Pitre's intransigence on finalizing this matter. In multiple emails sent to Mark in February 2026, Natalie's position has steadfastly been, "**If you wish to move this matter forward, sign and return the Settlement Agreement previously provided. Until that is completed, there is nothing further to discuss**." (MFB Decl., ¶ 18; Exhibit 3.)

Mark has been asking for notification of probate of Patricia's estate or appointment of a successor trustee (which does not require court action) since November 15, 2025, to no avail. (Exhibit 3, pages 12-20.)

## II.    ARGUMENT

**A.    As the Parties Are at Impasse and Unable to Reach Agreement on a More Formal Set of Settlement Documents to Supplement or Replace the Binding Term Sheet, There is No Need for a Stay and This Case Should Proceed So Defendants Can Seek to Enforce The Term Sheet Settlement Agreement, or Have the Court Consider the Pending Motions or Conduct a Trial**

The Court should lift the stay so that this Case may continue to resolution by Court decision. This should be either by granting the motion to enforce settlement and the Rule 11 Sanctions Motion concerning the improperly pled and filed Second Amended Complaint against Jennifer, or, if those motions do not dispose of the entirety of the case, then by deciding the pending Motions / Counter-Motions for Summary Judgment and discovery motions, and allowing the litigation to run its course.

7

Although federal courts possess the inherent power to control their dockets, including the authority to stay proceedings and to modify or lift stays when appropriate, those powers are limited. *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936).  In *Landis*, the court not only reversed the trial court's imposition of a stay, but counseled moderation in imposing stays, even in cases of important public significance.[3]  Thus, a stay cannot be indefinite and should be lifted when its underlying justification has ended. *Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066–67 (9th Cir. 2007).

Once the circumstances have changed such that the court's reasons for imposing the stay no longer exist or are inappropriate, the stay should be lifted. *See Dependable Highway Express*, 498 F.3d at 1066. "[T]he same court that imposes a stay of litigation has the inherent power and discretion to lift the stay." *Canady v. Erbe Elektromedizin GmbH*, 271 F. Supp. 2d 64, 74 (D.D.C. 2002).

Here, as set forth above, the settling parties have reached an impasse in their attempts to draft more formal documents to memorialize the settlement agreement reached in the Binding Term Sheet. Thus, the reason for the stay no longer exists.

Exhibit 3 demonstrates that Plaintiffs' counsel and Natalie Pitre have been

---

[3] The court explained the limited circumstances for a stay, "[E]specially in cases of extraordinary public moment, [a plaintiff] may be required to submit to delay not immoderate in extent and not oppressive in its consequences if the public welfare or convenience will thereby be promoted." *Id.,* at 256.

insisting on Mr. Buckman signing Ms. Pitre's preferred settlement agreement (which adds unacceptable extra conditions and terms) as a condition of finalizing this litigation, while at the same time avoiding appearing in this case and evading answering whether Ms. Pitre or Ms. Buchwald will take over as plaintiff. Indeed, although Mr. Wilson says, "I presume I will represent the PR and Trustee for purposes of this case" (Exhibit 3, page 12) he refuses to provide any facts as to who will be acting or when they will act - even though no court action is necessary for a successor trustee to take over the Plaintiff trust. This delay and game playing should not be allowed to further delay this long-delayed case.

Thus, lifting the stay is appropriate so this matter can move forward to court resolution.

## B.    Continuing the Stay would Prejudice Defendants

The proponent of a stay bears the burden of establishing the need and justification for it. *Landis v. N. Am. Co.*, 299 U.S. at 255. Here, Defendants / Counterclaimant are not proponents of the stay, so the burden of supporting such a stay is on Plaintiff / Natalie as Plaintiff's purported heir and beneficiary.[4]

Here, Plaintiffs will not be able to meet this burden, because the evidence shows that delaying the resolution of this litigation is causing Defendants to suffer

---

[4] Mr. Wilson lacks authority to file any valid papers at this time since Plaintiff Patricia Buckman died on November 2, 2025, no Substitution of Party has been filed, and he presently has no client to represent in this matter. See, Fed. R. Civ. P. 25(a).

prejudice. Prejudice to a party is a key factor in determining whether to lift a stay. *See Clinton v. Jones*, 520 U.S. 681, 707–08 (1997) (stay should not work "damage to another's interests").

Continued delay is prejudicing Defendants' interests, including the following: Matt, Manoa and Kimberly continue to occupy the Back House without an agreement to do so and without paying rent (and in violation of the Binding Term Sheet); Natalie reports that Matt and crew are engaged in "ongoing criminal and violent activity at the property you hold title to continues to endanger neighbors and create serious liability for you as the titled owner. I've begun documenting incidents and police reports." (MFB Decl., ¶ 9; Exhibit 2, page 2); Mark is on title to the Back House and must pay all its carrying costs; the lis pendens Mr. Wilson filed in this case continues to cloud Mark's title to the Back House; and Natalie and Carl have not made any payment on the Note even though it has been more than 90 days since Patricia passed away. Delay also impedes Defendants' ability to defend themselves due to the potential loss of evidence, and it also increases litigation costs. (MFB Decl., ¶ 11.)

Where, as here, the settling parties have reached an impasse in their discussions and counsel simply refuse to discuss any of the issues, there is no reason to continue the stay. Defendants are entitled to have the Court hear and decide their Motion to Enforce Settlement, and other motions such as the Motion

for Rule 11 Sanctions for improperly maintaining this suit against Jennifer when Natalie, Tamara, and Richard Wilson all admitted that they were unaware of any facts to justify naming Jennifer as a Defendant, and the dispositive motions and discovery motions that were pending when the Mandatory Settlement Conference occurred.

## III.   CONCLUSION

For all the reasons set forth above, Defendants and Counterclaimant respectfully request that the Court grant their motion and lift the stay of this action so it may proceed to court resolution.

Dated:  Hagatna, Guam and Elk Grove, CA February 24, 2026.

/s/ Louise K.Y. Ing
LOUISE K.Y. ING
Attorneys for Defendants
MARK F. BUCKMAN, individually and as Trustee of the MARK F. BUCKMAN TRUST, and JENNIFER BUCKMAN

/s/ Mark F. Buckman
MARK F. BUCKMAN

Attorney for Defendant
JENNIFER BUCKMAN

11

**DECLARATION OF MARK F. BUCKMAN**

I, Mark F. Buckman, declare as follows:

1.    I am an attorney licensed to practice law before this Court and I am co-counsel of record in this matter. I am also a Defendant and Counterclaimant in this matter.  I am over the age of 18, and I have personal knowledge of the facts recited in this Declaration. If called as a witness in these proceedings, I could and would testify competently to these facts.

2.    I've tried to have the LR 7.8 pre-filing conference with Mr. Wilson several times, but he's been unwilling to pick up the phone or return my calls.  In either case, he informed me in writing her wouldn't agree to lift the stay, but won't further discuss the matter.  Mr. Wilson's statement in his motion filed as ECF 195 is telling in that he acknowledged that did not even try to comply with LR 7.8 when he filed his motion.  He has taken the same position with me when I try to talk with him - he refuses to discuss issues with me when I explicitly inform him I'm trying to comply with LR 7.8.  I also emailed and called and left voice mails for Tom Bush, but didn't respond.  I did call and talk with Tom for a short while last week, but he told me that he had not read the draft agreement I had emailed him back in November.  In either case, Mr. Bush does not represent any parties to this case.

3.    I met with my mother Patricia at the MSC and discussed and resolved all issues.  The Magistrate Judge or his law clerk also attended that discussion.  My

12

mom and I agreed to resolve all issues in this case. The main issues in this case concern (1) the title / my ownership of the Back House, (2) my providing Matt a housing payment for life, and Manoa receiving a subsequent payment for real estate, (3) my mom's promissory note and mortgage to me on the Front House, and (4) my obtaining and holding part of my mom's life insurance money for my brother Matt.

4.     To document the settlement agreement reached at the SMSC, a binding settlement term sheet was prepared. Above the signature lines, the Magistrate Judge wrote that the signatories intended the Term Sheet to be binding and resolve all disputes between them. All of the parties to this case (Patricia, Mark and Jennifer) as well as non-parties Natalie and Carl Pitre then signed the binding Settlement Term Sheet. A true and correct copy of the signed Binding Term Sheet is attached hereto as **Exhibit 1**.

5.     Natalie requested that I pay her $1,500.00 per month to help with my mom's living expenses. I agreed. Thus, the Term Sheet provides that "Mark agrees to pay Natalie $1,500/month for the duration of Pat's life as long as Pat is living with Natalie." To fulfill that obligation, I made $6,678.00 of payments to Natalie via Zelle, as follows:

| Time Period | Amount / Date |
|---|---|
| July 17 - August 31 | Paid $2,178 on August 31 |
| September 1-30 | Paid $1,500 on September 16 |
| October 1-31 | Paid $1,500 on September 29 |

13

| November 1-30 | Paid $1,500 on October 28 |
| --- | --- |
| **Total** | **$6,678.00** |

6.     After the Settlement Conference, I drafted and circulated a more formal settlement document to memorialize the terms of the agreement reached, but Mr. Wilson rejected it as "too long" and complicated.  (It was long).  Mr. Wilson sent his own version of the agreement, I then revised and shortened my draft agreement, but Mr. Wilson would not comment.  Later, at the suggestion of the Magistrate Judge, I again shortened the draft agreement.  However, Mr. Wilson and counsel for Natalie and Carl, Tom Bush, have both declined to provide comments on this operative draft. Instead, Mr. Wilson and then Mr. Bush commented on the longer draft that Mr. Wilson had indicated was "unacceptable," and they both have demanded that the more formal settlement document include additional material terms as a condition of memorializing the settlement agreement documented in the Binding Term Sheet.

7.     Mr. Bush's comments included asks on Natalie's and Carl's behalf that far exceeded anything agreed in the Term Sheet, such as (1) a 6-month extension of the maturity date of my promissory note on the Front House, whereas the Term Sheet did not call for an extension (although my drafts still contained a 3-month extension because that is what my mom and I agreed), (2) the striking of any interest from my mom's promissory note to me, whereas the Term Sheet did not

14

call for any reduction and my mom and I had already agreed on a reduced, 5% interest rate as reflected in the note; (3) that Mark & Jennifer's settlement with all defendants in the related case (Matt, Kimi, Manoa, and Tamara) - apparently for no consideration - which he or Mr. Wilson claimed was a "material condition of the agreement", whereas the Term Sheet did not call for such dismissals and instead stated, "Matt & Manoa beneficiaries, but not signatories" and provided that Matt, et al. would be evicted if they refused to pay rent for the Back House for 60 days (as they have), and (4) a provision stating that Mark and Jennifer agree that Patricia's 2025 Trust Restatement and Estate documents are valid and binding – even though these documents were not disclosed to Defendants in discovery and Mr. Wilson and Natalie did not produce these documents to Defendants until after the settlement agreement had been reached and the Binding Term Sheet had been signed - and which the judge had to tell them to produce.

8.    The new terms proposed by Mr. Wilson and Mr. Bush, which materially change the terms explicitly stated in the Binding Term Sheet, are unacceptable to Defendants.  They were not asks from my mom, but after the fact asks of Natalie.

9.    Natalie Pitre, who represents that she is Patricia's sole heir and beneficiary, has admitted both that the Term Sheet is binding and that it is enforceable as written.  On November 10, 2025, about a week after my mom died, Natalie texted me, stating, "**I'm still confirming, on the record, that the three-page**

15

**handwritten agreement signed by all parties in the judge's chambers remains binding**." In the same text, she also stated that she would "**move forward with counsel to have the court enforce the signed settlement or, if necessary, set the matter for trial.**"  True and correct copies of Natalie's text to me (and my response) are attached hereto as **Exhibit 2.**

10.    Although Ms. Ing and I have contacted Messrs. Wilson and Bush at least 5 times over the past 3 months asking them to provide comments on the operative draft of the formal settlement documents so this matter can be moved forward, neither counsel has done so to date.   Indeed, it seems Mr. Wilson's response was to file an ex parte application / motion to extend time to substitute a plaintiff.  I also included numerous emails to counsel in Exhibit 1 to my declaration filed February 20, 2026.  (ECF 198-2.)

11.    Continued delay is prejudicing my and Jennifer's interests, including the following:

*       Matt, Manoa and Kimberly continue to occupy the Back House without an agreement to do so and without paying rent (and in violation of the Binding Term Sheet);

*       Natalie credibly reports that Matt and crew are engaged in "ongoing criminal and violent activity at the property you hold title to continues to endanger

neighbors and create serious liability for you as the titled owner. I've begun documenting incidents and police reports."

    \*      I am on title to the Back House and must pay all its carrying costs;

    \*      The lis pendens Mr. Wilson filed in this case continues to cloud my title to the Back House, which makes it impossible to refinance;

    \*      Natalie and Carl have not made any payment on Patricia's promissory Note even though it has been more than 90 days since Patricia passed away and it is due and payable. (This note encumbers the Front House, which Natalie and Carl own, beneficially or otherwise, as they are the beneficiaries of that house under my mom's two most recent trusts.)

    \*      Delay also impedes our ability to defend ourselves due to the potential loss of evidence, and it also increases litigation costs.

Quite simply, we want to bring this matter to conclusion so we and the whole family can put it in the past.

12.    In multiple emails sent to me this month, Natalie Pitre's position with regard to finalizing this case has been, "**If you wish to move this matter forward, sign and return the Settlement Agreement previously provided. Until that is completed, there is nothing further to discuss**." True and correct copies of some of these emails, as well as related emails either sent or received by me, are attached hereto as **Exhibit 3**. (It should be noted that I've checked with Messrs. Wilson and

17

Bush about whether they represent Natalie and Tamara with regard to her roles as successor trustee and/or personal representative, and they have not provided any clear answer, but they have also not stated that they represent her, even as I've forwarded some of Natalie's emails to them to inquire.)

I declare under penalty of perjury under the laws of the United States that the facts recited above are true and correct.

Executed February 27, 2026 in Elk Grove, California.

 /s/ Mark F. Buckman
MARK F. BUCKMAN
