LOUISE K.Y. ING    2394
DENTONS US LLP
1001 Bishop Street, Suite 1800
Honolulu, HI  96813
Telephone: (808) 524-1800
Email:    louise.ing@dentons.com

Attorneys for Defendants
MARK F. BUCKMAN, individually
and as Trustee of the MARK F. BUCKMAN
TRUST,
and JENNIFER BUCKMAN

MARK F. BUCKMAN        SBN 7080
Law Offices of Mark F. Buckman
8359 Elk Grove Florin Rd., Suite 103-320
Sacramento, CA  95829
Email: markfbuckman@sbcglobal.net

Attorney for Defendant
JENNIFER BUCKMAN

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| PATRICIA W. BUCKMAN,<br><br>    Plaintiffs,<br><br>    VS.<br><br>MARK F. BUCKMAN, et al.,<br><br>    Defendants. | Civil No. CV 24-00129 MWJS-KJM<br><br>JENNIFER BUCKMAN'S AND MARK BUCKMAN'S NOTICE OF MOTION AND MOTION TO ENFORCE SETTLEMENT AGREEMENT; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF MARK F. BUCKMAN (w/ EXHIBITS 1 - 10) AND JENNIFER T. BUCKMAN CONCURRENTLY FILED<br>[ORAL ARGUMENT REQUESTED]<br><br>JUDGE MICAH W. J. SMITH |

## NOTICE OF MOTION AND MOTION TO
## ENFORCE SETTLEMENT AGREEMENT

PLEASE TAKE NOTICE that as soon as the matter may be heard in the above-entitled court, in the courtroom of Judge Micah W. J. Smith, at the United States Courthouse for the District of Hawaii, located at 300 Ala Moana Blvd, Honolulu, Hawaii 96850, with oral argument to be held on a date and time to be designated by the Court, Defendant Jennifer Buckman and Defendant / Counterclaimant Mark Buckman will move the court for orders (i) enforcing the parties' Binding Term Sheet attached as Exhibit 1 against Plaintiffs Patricia Buckman, individually and as trustee of the Patricia W. Buckman Revocable Trust, and the Patricia W. Buckman Revocable Trust, their successors and assigns; (ii) ordering or entering a Dismissal, with Prejudice, of all of Plaintiffs' claims against defendants Mark Buckman and Jennifer Buckman, and (iii) entering judgment for Mark Buckman on his Amended Counterclaim (ECF 71) pursuant to the Settlement Agreement and/or Term Sheet and against counterdefendants Patricia Buckman, individually and as trustee of the Patricia W. Buckman Revocable Trust, and the Patricia W. Buckman Revocable Trust, their successors and assigns.  If the court finds any genuine dispute between Plaintiffs / Counterdefendants and Movants, then Movants request a hearing before the court to provide live testimony and argument of counsel.

This motion is filed after the required conference of counsel, which occurred in October, November, January, and February, 2026.   (Mark Buckman Decl. passim.)

The motion will be based on this Notice of Motion, the Memorandum of Points and Authorities filed herewith, the Declarations of Mark F. Buckman and Jennifer T. Buckman, any arguments of counsel, the pleadings and papers filed herein, and any other testimony or materials properly considered by the Court.

DATED: February 26, 2026

            /s/ Louise K.Y. Ing
            LOUISE K.Y. ING
            Attorneys for Defendants
            MARK F. BUCKMAN, individually and as
            Trustee of the MARK F. BUCKMAN
            TRUST, and
            JENNIFER BUCKMAN

            /s/ Mark F. Buckman
            MARK F. BUCKMAN

            Attorney for Defendant
            JENNIFER BUCKMAN

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   SUMMARY OF PERTINENT FACTS

#### A.   Background Facts

The Court is familiar with this quasi-estate case that concerns two small houses in Kapahulu, known as the Front House and the Back House, a debt owed from Plaintiff Patricia Buckman to defendant / counterclaimant Mark Buckman and secured by Patricia's promissory note and mortgage on the Front House, and the disposition of Patricia's life insurance proceeds.  As most of the parties share the same surname, first names will be used for clarity, with no disrespect intended.

#### B.   At the Mandatory Settlement Conference on July 17, Plaintiff and Defendants Reached an Agreement to Resolve All Their Disputes in This Case, Including the Counterclaim

The District Court noticed a Pre-Trial Settlement Conference in this case for July 17, 2025 and ordered the parties to appear.

Consistent with the Court's Order, the parties to this case, namely, Plaintiff Patricia, Defendant Jennifer Buckman, and Defendant and Cross-Complainant Mark Buckman, appeared at the Settlement Conference with the Magistrate Judge on July 17, 2025 with their respective counsel of record.  Patricia's daughter, Natalie Pitre, and her husband, Carl Pitre, who are not parties to this case but are parties to a related case (Buckman v. Pitre, No. 1:25-cv-00010 (the **"Pitre Case"**))

1

also voluntarily appeared at the Settlement Conference.[1]   (Declaration of Mark F. Buckman ["MFB Decl."] ¶ 3.)

None of the other defendants to the Pitre Case appeared at the Settlement Conference for this case[2] because they are non-parties and no Settlement Conference was noticed for the Pitre Case.  (MFB Decl. ¶ 5.)  Indeed, there hasn't even been a Rule 16 scheduling conference in that case.

Mark is the plaintiff in the Pitre Case and, in addition to the Pitres, the defendants are Matt Buckman, Kimberly Buckman, Manoa Buckman, and Tamara Buchwald.  None of the defendants have asserted any counterclaims against Mark.

Settlement discussions were held, and Patricia and Mark met individually, and then together, with Judge Mansfield and discussed the issues in this case. Patricia and Mark reached agreement on all disputed issues in this case.

At the request of the Magistrate Judge, Mark hand-wrote up a Term Sheet after the productive discussion. Patricia and her attorney reviewed and approved

---

[1]     Although not a party, Natalie has been involved in Patricia's Case from its inception:  she hired attorney Richard Wilson for herself and Patricia, Natalie attended every session of Patricia's deposition (conducted over multiple, one hour sessions), she attended multiple third-party depositions, and she attended the first MSC.  ("MFB Decl." ¶ 4.) Natalie and Mr. Wilson have taken the position that Natalie was serving as Patricia's "litigation assistant" in this case, and Mr. Wilson has represented to the Court that Natalie was his primary point of client contact. (Id.)

[2]   Plaintiff opposed consolidating the Pitre Case with this case.  (ECF 88)

2

this Term Sheet.  The settling parties then made additions based on further discussions, including discussions with Natalie and Carl in which they asked for, and received, monetary payments for themselves.  (MFB Decl. ¶ 6; Exhibit 1.)

The Term Sheet resolved the disputes among Patricia, Mark, and Jennifer that had been raised in this case, as follows:

(1)    Patricia's note and mortgage on the Front House would remain as-is, except for Mark reducing Patricia's payoff obligation by $78,563.00;

(2)    Patricia's deed to Mark for the Back House would remain as-is. Mark would provide his brother Matt a conditional option to occupy the house during his lifetime provided Matt signed a rental agreement and paid the carrying costs of the house (otherwise Matt had to move out or be evicted and thereafter Mark would provide him / his new landlord a housing payment for life).  Mark also agreed that, after Matt's death, he would provide Matt's son Manoa $200,000.00 from the sale of the Back House to be used for real estate for Manoa;

(3)    Patricia's Life Insurance beneficiaries would stay as-is, with Mark holding $40,000 for Matt to be disbursed in Mark's discretion; and

(4)    Mark agreed to continue advancing Patricia further funds by directly paying for physical therapist and other bills during her lifetime, up to an additional $20,000.00.

3

Although only defendants in the Pitre Case, Natalie and Carl sought and obtained benefits for themselves in the Term Sheet:

(a)    Mark agreed "to pay Natalie $1,500 / month for the duration of Pat's life as long as Pat is living with Natalie"; and

(b)    Mark agreed to pay Natalie and Carl's daughters "$10,000 each for college costs from [the sale of] the Back House."

Finally, the Term Sheet provided for "Full releases of everyone - Patricia, Mark, Jeni, Natalie, and Carl."  (MFB Decl.; ¶ 7; Exhibit 1)

As there had been acrimony and distrust in this case and concerns over non-performance of the Term Sheet, the Judge wrote above the signature lines before presenting the document for everyone to sign:  "The undersigned have full authority to enter into this settlement and do with the intent to fully and finally resolve any and all disputes among them from the beginning of time until today, July 17, 2025." (MFB Decl.; ¶ 8; Exhibit 1, page 3.) The Term Sheet does not include any contingency stating it would only be effective if a more detailed agreement was signed; rather, Mark and Jennifer believed the Term Sheet was enforceable as-is.  (MFB Decl. ¶ 8, JTB Decl. ¶ 2; Exhibit 1, passim)

After the settlement conference, Mark and Jennifer encountered Patricia in the court hallway.  Patricia approached them, exchanged hugs, and said that she

4

was glad to have the dispute with Mark and Jennifer resolved and that she loved them.   Unfortunately, though, Carl Pitre was not happy with how Patricia had chosen to resolve her case.[3]  (MFB Decl. ¶ 9)

### C.    Mark and Jennifer Honored the Term Sheet as Legally Binding, and Mark Carried Out His Obligations from the Beginning

After signing the Term Sheet, Mark fulfilled his contractual obligations by, inter alia, paying Natalie all of the $1,500.00 monthly payments and by continuing to advance funds by paying Patricia's physical therapist and certain of Patricia's bills under their bill-paying agreement. Patricia and Natalie accepted these benefits, amounting to over $10,000.00 from signing the Term Sheet until Patricia's passing.  (MFB Decl. ¶¶ 10, 11.)

Mark also contacted Matt to request he sign a rental agreement for the Back House and pay Mark the reduced, $500 per month carrying costs.  Matt refused to engage, refused to sign a rental agreement, and refused to pay any of the carrying costs / rent.  Instead, although Matt is not a party in this case and claimed he was

---

[3] While Mark and Jennifer were talking to Patricia after the conclusion of the settlement conference, Carl came up and interrupted them. He physically grabbed Pat's walker and yanked it back over towards the elevator, causing Pat to misstep a little bit. Carl was demonstrably angry and expressed his anger at Pat in a very loud voice approaching a yell. Carl's voice carried through the vestibule so loudly that a one of the U.S. Marshalls who was downstairs at the entrance to the building walked over and looked up at us. (Declaration of Jennifer T. Buckman ["JTB Decl."] ¶¶ 5-7.)

5

too disabled to sit for his deposition, he subsequently filed papers attempting to

veto Patricia's Term Sheet with Mark and Jennifer.  (MFB Decl. ¶ 10(C))

The Term Sheet provides for this eventuality - it states that Matt is to move

out if he doesn't sign an agreement and pay rent, and is to be evicted if he is not out

within 60 days.  As it has been more than 60 days (actually, more than 150 days),

Mark intends to move forward to evict Matt so he, Kimberly, and Manoa stop

damaging the house.  Thereafter, Mark remains obligated to provide Matt a

housing payment for life, so while Matt has to move, his housing payment is still

assured as Patricia and Mark agreed.  (MFB Decl. ¶ 10(C), Exhibit 1)

> **D.      Although the Parties Memorialized Most Items in the Draft Settlement Agreement, They Are at Impasse Because Natalie and Her Attorneys Are Demanding the Inclusion of Material Terms That Are Not Included in the Term Sheet and Were Never Bargained for Nor Agreed**

The Binding Term Sheet called for the a more detailed settlement agreement

to be drafted by Defendants. The parties have had a bumpy time working through

the language of these documents.  Some of those issues were recounted in

Movant's recently filed opposition to Plaintiffs' Motion to Extend Time (ECF 198),

(See, Mark Buckman Declaration (ECF 198-1) and Exhibit 1 thereto. (ECF 198-2.)

6

Despite those challenges, and despite some extra terms being advocated by Natalie's attorneys, Plaintiff and Defendants were able to document the major points of agreement while Patricia was alive.  Indeed, Mr. Wilson's October 21, 2025 settlement agreement draft, sent less than 2 weeks before Patricia's death, further documented Patricia's and Movants' agreement.  As stated in Plaintiffs' counsel's draft (MFB Decl.; ¶ 12; <u>Exhibit 9</u>):

> **A.    <u>Front House Promissory Note and Mortgage Valid & Enforceable</u>**.  Patricia hereby represents, warrants, and confirms that she voluntarily signed the Promissory Note, ARNM, and Mortgage, and they are valid, effective, and legally binding according to their terms.
>
> **B.    <u>Back House Deed Valid & Transferred 100% Fee Simple Title</u>**.  Patricia hereby represents, warrants, and confirms that she voluntarily signed the Back House Deed and it is valid, effective, and legally binding according to its terms.
>
> **C.    <u>Promissory Note Reduction</u>**.  Mark has agreed to reduce the amount required to pay off the Promissory Note after Patricia's passing.  The discount shall be an amount equal to one-third (1/3) of the original  principal balance of $235,695.00, such that the total discount to be deducted from the pay-off amount will be Seventy-Eight Thousand, Five Hundred Sixty-Three Dollars ($78,563.00)
>
> > **i.    <u>Extended Payoff</u>**.  Mark agrees to extend the Maturity Date of the Promissory Note by up to three (3) months after Patricia's passing so Natalie and Carl have extra time to pay off the Promissory Note.
> >
> > **ii.    <u>Natalie and Carl Agree to Promissory Note and Mortgage</u>**.  Natalie and Carl acknowledge and agree with the terms set forth above regarding the Promissory Note and Mortgage.  Natalie

7

and Carl specifically agree that the Promissory Note, ARNM, and Mortgage are valid and legally binding obligations enforceable pursuant to their terms and that the Promissory Note is secured by the Mortgage, which is a valid encumbrance on the Front House.  Further, Natalie and Carl represent and warrant that they will not challenge or dispute the Promissory Note, ARNM, or Mortgage in any way whatsoever and expressly and irrevocably waive any and all rights, claims, or defenses to challenge, contest, dispute, or hinder the enforcement of the Promissory Note, ARNM, or Mortgage for any reason whatsoever.  [Id.]

Despite the agreement on these main points, Moving Parties were unable to agree to Mr. Wilson's draft because he included additional terms that were not agreed and are not in the Term Sheet.  He also included terms - likely because he made his edits on an outdated draft - that continued to provide Matt the option to occupy the Back House, when that option had already expired due to Matt's refusal to sign a rental agreement or pay rent.  (MFB Decl.; ¶ 13;)

Attorney Tom Bush, who represents Natalie and Carl in the Pitre Case, used Mr. Wilson's draft to make additional comments in late October.  These were the first comments he made, despite receiving draft settlement agreement 2 months earlier.  He proposed to make the effectiveness of the Settlement Agreement contingent on Mark reaching agreement with Matt, Kimi, Manoa, and Tamara and resolving his claims against them in the Pitre Case. Mr. Bush's draft further requested to reduce the interest rate on Patricia's promissory note to Mark, which

8

already bears a below-market 5% interest rate, to zero. None of these proposed new material terms are acceptable to Defendants and they are counter to the Binding Term Sheet. As such, Moving Parties rejected them when they sent a revised draft. (MFB Decl.; ¶ 15.)

> **E.    After Patricia's Death, Natalie Asserts That Defendants Must Sign the Settlement Agreement "as Written by Tom Bush," or She Will Proceed to Enforce the Term Sheet, Which She Admits Is Binding and Enforceable**

On November 7, 2025, less than a week after Patricia's death, Natalie asked whether Mark intended to sign the settlement agreement "as written by Tom Bush" and suggested a call with "Tamara, mom's successor trustee." (MFB Decl.; ¶ 16.)

Three days later, on November 10, 2025, Natalie sent Mark another text, which stated that the Term Sheet is binding and enforceable: "I saw your note suggesting communication through counsel. That's fine, and **I'll loop Rich in.**[4] **I'm still confirming, on the record, that the three-page handwritten agreement signed by all parties in the judge's chambers remains binding.**" (MFB Decl.; ¶ 16; Exhibit 2.)

Natalie further admitted that the signatories could enforce the Term Sheet as written, indicating "If I don't hear from you or your attorney by Wednesday at

---

4    Mr. Wilson has personally represented Natalie for years (MFB Decl. ¶ 4).

noon, **I'll move forward with counsel to have the court enforce the signed settlement** or, if necessary, set the matter for trial." (Id.)

### F. For the Last 3 Months, Natalie and Her Attorneys Have Rebuffed Defendants' Attempts to Make Progress on the More Formal Documents; Indeed, Natalie Has Steadfastly Insisted That Movants Sign Natalie's Preferred Agreement

As noted above, Mr. Wilson had provided his comments on an outdated (August 28) draft of the documents, and Mr. Bush commented on Mr. Wilson's draft. To facilitate resolution of the differences between the operative document and the draft provided by Messrs. Wilson and Bush, Mark incorporated the changes proposed by Mr. Wilson or Mr. Bush, to the extent Defendants were willing to accept them, and created a new version of the operative draft documents. Mark transmitted this revised draft to Mr. Wilson and Mr. Bush on November 12, 2025. (MFB Decl.; ¶ 17.)

To date, neither Mr. Wilson nor Mr. Bush has provided comments, although Mr. Bush did state last week that he would get to it "in a few days." This impasse appears to be due to the fact that Natalie refuses to sign any formal settlement documents unless they include the new, objectionable terms put forth by Messrs. Wilson and Bush. In multiple emails sent to Mark in February 2026, Natalie's position has steadfastly been, "**If you wish to move this matter forward, sign**

10

**and return the Settlement Agreement previously provided. Until that is completed, there is nothing further to discuss**." (MFB Decl., ¶ 18; <u>Exhibit 10</u>.)

Defendants are willing to sign the Settlement Agreement draft attached as Exhibit 9 to the Declaration of Mark F. Buckman and filed concurrently with these papers. However, as set forth above, Defendants are not willing to accept the new terms that Natalie and her attorneys have put forth in their version of the more formal settlement documents.

For the last 3 months, both Mr. Wilson and Mr. Bush have refused to provide comments and they have both ignored Mark's repeated requests to meet and confer pursuant to LR 7.8 prior to the filing of this motion.  Thus, the parties have reached impasse as they have been unable to prepare a more formal document memorializing the terms of their settlement agreement.   (MFB Decl.; ¶ 19.)

## II.   ARGUMENT

### A.   The Court Should Enter an Order to Enforce the Binding Term Sheet and Enter Judgment Thereon

Here, Defendants and Plaintiff signed a Binding Term Sheet that expressly states it "fully and finally resolved all disputes among them. . . ."  Natalie, as both a signatory and as Patricia's sole heir and beneficiary, has put in writing, for the record, that the Term Sheet is binding and enforceable by this court.

As set forth above, counsel have been unable to agree on the terms of a more formal written document, and Plaintiff died before executing such; however, the person who claims to be the sole holder of all the beneficial interest in Patricia's trust and estate, Natalie, concedes that the Term Sheet is binding and enforceable. As Defendants / Crosscomplainant also agree that the Term Sheet is binding and enforceable, they are entitled to enforce it and conclude this matter.

When a case has not been dismissed, the Court has the inherent power to enforce a Settlement Term Sheet. *See MetroNet Servs. Corp. v. U.S. West Communications*, 329 F.3d 986, 1013-14 (9th Cir. 2003), cert granted and judgment vacated on other grounds by *Qwest Corp. v. MetroNet Servs. Corp.*, 540 U.S. 1147, 124 S. Ct. 1144, 157 L. Ed. 2d 1040 (2004). The Court evaluates the Settlement Term Sheet under the principles applicable to any contract. *See Adams v. Johns-Manville*, 876 F.2d 702, 704 (9th Cir. 1989).

Consequently, a Term Sheet to which each party assented, and which the parties expressly intended to be binding, is enforceable. *See Forte Sports, Inc. v. Toy Airplane Gliders of Am., Inc.*, 371 F. Supp. 2d 648, 650 (E.D. Pa. 2004) (granting motion to enforce settlement where the parties failed to formulate a formal written settlement agreement due to the defendant's continued demands for additional material terms as a condition to memorializing the agreement); *see also*

12

*Everything Yogurt Brands, LLC v. Rollo*, No. CV 23-6526 FMO (JCx), 2025 U.S. Dist. LEXIS 28824, at *11-12 (C.D. Cal. Feb. 18, 2025) (enforcing an Email Term Sheet that provided it "represents a binding agreement once approved by all parties" and expressly stated it could be enforced). "The fact that the parties were to later draft other agreements 'reasonably necessary to effect' the terms of the term sheet, does not make any less binding those terms that are agreed to in the signed term sheet." *Guzik Tech. Enters., Inc. v. W. Digital Corp.*, No. 5:11-cv-03786-PSG, 2014 U.S. Dist. LEXIS 42621, 2014 WL 12465441, at *5 (N.D. Cal. Mar. 21, 2014).

Further, Hawai'i law "favors the resolution of controversies through compromise or settlement rather than by litigation." *See State Farm Fire & Cas. Co. v. Pacific Rent–All, Inc.,* 978 P.2d 753, 761 (Haw. 1999) (citation omitted); *see also* Boskoff v. Yano, 217 F. Supp. 2d 1077, 1085 (D. Haw. 2001). Under Hawai'i law, "[a] settlement agreement is not invalid because certain details are not worked out, where such details are not essential to the proposal and do not change its terms or purpose." *Assoc. Fin. Servs. Co. of Haw., Inc. v. Mijo*, 87 Hawai'i 19, 32, 950 P.2d 1219, 1232 (1998). "[T]he law leans against the destruction of contracts for uncertainty. Courts favor the determination that an agreement is sufficiently definite. [Hawaii courts] will, if possible, so construe the agreement so as to carry

13

into effect the intention of the parties." *Provident*, 149 Haw. 288 at 297, 488 P.3d at 1277.  (Indeed, even "[a]n oral settlement agreement is binding on the parties." *See Robinson v. Hyatt Corp.*, No. Civ. 12-00379 LEK, 2013 WL 4561122, at *2 (D. Haw. Aug. 12, 2013).)

The Term Sheet states, on its face, that the Parties signing that document intended for it to be binding and enforceable. "The undersigned have full authority to enter into this settlement and do with the intent to fully and finally resolve any and all disputes among them from the beginning of time until today, July 17, 2025." (MFB Decl.; ¶ 8; Exhibit 1, page 3.) This stated intent renders the Term Sheet enforceable, even in the absence of a more formal document memorializing the Settlement agreement, especially when the points of disagreement are Natalie / Plaintiffs simply trying to demand more than was already agreed in the Term Sheet.  Natalie can only step into the shoes of Patricia, she cannot do a u-turn and demand more than Patricia agreed.  <u>*Sinito v. United States DOJ*, 176 F.3d 512, 516 (D.C. Cir. 1999)</u> (party substituted under Rule 25(a) "step[s] into the shoes of the decedent"); *Corbin v. Blankenburg*, 39 F.3d 650, 654 (6th Cir. 1994), citing *M'Knight v. Craig's, Adm'r*, 10 U.S. (6 Cranch) 183, 187, 3 L. Ed. 193 (1810)).

Nor does a party's subsequent change of heart make the Binding Term Sheet non-enforceable so as to require the trial of already settled issues.  See, *Doi v.*

14

*Halekulani*, 276 F.3d 1131, 1141 (9th Cir. 2002). And since Plaintiff died before the Parties could reach agreement on a more formal document, Defendants are entitled to enforce the Term Sheet.

Further, Plaintiffs' successor-in-interest, Natalie Pitre, has repeatedly admitted that the Term Sheet is binding and enforceable. Under the 2025 changes to Patricia's trust and estate documents, Natalie Pitre is the sole beneficiary to the entirety of the trust and estate.[5] On November 10, 2025, less than one week after Patricia's death, Natalie texted Mark "confirming, on the record, that the three-page handwritten agreement signed by all parties in the judge's chambers remains binding" and indicating her belief that the signatories could enforce it.[6] MFB Decl.; ¶ 16; As all of the interested parties are in agreement that the Binding Term Sheet is enforceable, it should be enforced.

Nor could Natalie disavow the Term Sheet at this late date, after she has accepted the benefits of it for months. *See Hawai'i Hous. Auth. v. Uyehara*, 77 Haw. 144, 151, 883 P.2d 65, 72 (1994) (one cannot simultaneously claim the

---

[5] In order to put this matter behind them, for purposes of this motion, Movants assume *arguendo* that the January 2025 changes to Patricia's trust and estate documents are valid and uncontested – but Movants reserve all their legal rights to challenge these documents.

[6] In this same text, Natalie also confirmed that she is communicating and working with Richard Wilson on this case.

15

benefit of, and seek to repudiate, the agreement); *Chun Ming v. Ho*, 45 Haw. 521, 524, 371 P.2d 379, 404, reh'g denied, 46 Haw. 13, 373 P.2d 141 (1962) (same).

From the time that the parties signed the Term Sheet, Mark made payments to Natalie, via Zelle, to help defray the costs of Patricia's care as specified in the Term Sheet. Natalie accepted these payments each month, including the full payment for November 2025, even though Plaintiff died on November 2. (MFB Decl.; ¶ 10(A).) Mark also delayed collection of the promissory note for more than 3 months after Patricia's death, as the Term Sheet stated the "Note and Mtg stay." (MFB Decl.; ¶ 20.)

A negotiated agreement reached at a court settlement conference may be binding, even if a party has a change of heart after agreeing to its terms. *Doi v. Halekulani*, 276 F.3d 1131, 1141 (9th Cir. 2002). As the *Doi* Court stated, "[W]e cannot countenance a plaintiff's agreeing to settle a case in open court, then subsequently disavowing the settlement when it suits her. The courts spend enough time on the merits of litigation; we need not (and therefore ought not) open the flood gates to this kind of needless satellite litigation." *Id*.

Since counsel were unable to reach agreement on a more formal document memorializing the agreement before Plaintiff died, the Parties all admit that the

16

Binding Term Sheet is enforceable, and Natalie has accepted the benefits under the

Term Sheet, the Court should enforce the Term Sheet.

**B.      The Court Should Order Plaintiffs and Their Successors in Interest to Dismiss This Case against Mark and Jennifer, with Prejudice, and Release the Lis Pendens Against the Back House**

The Term Sheet requires that Plaintiffs dismiss this case against Mark and

Jennifer and thus requires the release of lis pendens on the Back House. However,

Plaintiffs' counsel Mr. Wilson has indicated repeatedly that he will not take these

actions unless Defendants also agree to dismiss Tamara Buchwald, Matt Buckman,

Manoa Buckman, and Kimberly Buckman, with prejudice, from the related case.

That has never been the agreement and is contrary to the Term Sheet.

Messrs. Wilson's and Bush's demands, made on Natalie's behalf, to include

additional material terms as a condition of finalizing or signing a more formal

document to memorialize an agreement must be rejected.  A party and its counsel

cannot hold a formal settlement agreement hostage to extort additional terms. *See*

*Forte Sports, Inc. v. Toy Airplane Gliders of Am., Inc.*, 371 F. Supp. 2d 648, 650

(E.D. Pa. 2004).[7] And the expansion of a release to include additional persons or

claims certainly would alter the terms of the parties' original agreement. *See*

---

[7] Mr. Wilson's conduct in this case is even more egregious than the conduct disapproved by the Court is *Forte Sports*, since Mr. Wilson continues to press positions in the name of the Plaintiff *long after his client has died and his authority terminated*. See Fed. R. Civ. Pro. 25(a).

17

*Boskoff v. Yano*, 217 F. Supp. 1077 (D. Haw. 2001) (finding that inclusion of a provision for the release of counter and cross claims would alter the terms of the written agreement, and rejecting that proposed addition).

The Term Sheet calls for "Full releases of everyone - Patricia, Mark, Jeni, Natalie, and Carl." By specifying that "everyone" meant the signatories of the Term Sheet, it is clear and unambiguous. Thus, on its face, this release provision does not apply to anyone else, such as Tamara Buchwald, Matt Buckman, Manoa Buckman, or Kimberly Buckman. Not only were these individuals not present at the Mandatory Settlement Conference, they did not provide any consideration and Mark still has unresolved issues with them, including, without limitation, occupancy of the Back House.

The Term Sheet is entirely silent as to Tamara Buchwald, and not by mistake. (See, Rule 11 Motion) She is not a party to this case, did not participate in the Mandatory Settlement Conference, and she neither bargained for nor received a release from either Defendant.

This is not Patricia's ask; she never discussed this issue with Mark. Rather, this appears to be Mr. Wilson's ask, because he, Natalie, and Ms. Buchwald made up facts in order to file a SAC, ostensibly for Patricia, after Jennifer's Motion to Dismiss was granted. (See, Rule 11 Sanctions Motion concurrently filed, which

18

details the extensive misconduct and provides documents and non-privileged communications between Mr. Wilson and Ms. Buchwald evidencing this misconduct.)

The Term Sheet likewise does not include Matt, Manoa, or Kimberly Buckman within the scope of the release. The Term Sheet does not resolve any claims that Mark asserted against these parties in the Pitre Case, nor does it call for a dismissal of those claims. To the contrary, the Term Sheet specifically calls for Mark to be able to pursue his claims to evict Matt from the Back House if Matt fails to sign a rental agreement and pay rent – both of which he has failed to do - when it states "If Matt doesn't pay monthly costs, then he has to move out - evicted if not out w/i 2 months.  Mark will then pay Matt the net rental income. . ."  (MFB Decl.; ¶ 10(C); Exhibit 1, page 1.)  Notably, the 12th Count of the Pitre Case is against Matt, Kimberly, and Manoa for Ejectment as all three of them moved into the Back House after this case was filed without Mark's permission,[8] have refused to pay rent, and instead claim they should get to live in the Back House for free. (MFB Decl.; ¶ 10(C);)

---

[8]  Patricia and Natalie evicted Matt from the Front House by court action shortly after this case was filed (in March 2024), whereupon Natalie encouraged Matt to move into the Back House.  (Exhibit 8)  All signatories to the Term Sheet agree that Matt is financially irresponsible, can be difficult, and is unwilling meet his financial obligations or pay rent.  (MFB Decl. ¶¶ 11, 21, Exhibit 8)

19

"Where parties agree to the material terms of a contract, they cannot avoid the formation of a valid and binding agreement by silently reserving an issue and later claiming that it was material to their willingness to enter into a contract. *See Core-Vent, supra*, 53 F.3d at 1256 ("If that was Mr. Beaty's understanding of the settlement, he should not have indicated his agreement with the settlement as stated in court, but should have insisted that it include a provision providing for a separate patent licensing agreement and defining its terms. Instead, he accepted the settlement without equivocation. . . . 'Since contractual obligations are to be ascertained from objective manifestations of intent, plaintiff's mental reservations are legally irrelevant'")." *Inamed Corp. v. Kuzmak*, 275 F. Supp. 2d 1100, 1122 (C.D. Cal. 2002), cited with approval in *Roaring Lion, Ltd. Liab. Co. v. Exclusive Resorts PBL1, Ltd. Liab. Co.,* Nos. 30152, CAAP-12-0000003, 2013 Haw. App. LEXIS 232, at *9 (Ct. App. Apr. 24, 2013).

Here, as shown above, the parties who signed the Term Sheet all agreed to its material terms, including the terms reciting that it fully and finally resolved all claims between the parties. Mr. Wilson's attempt to impose additional terms – none of which was included in the Term Sheet – as a condition of documenting the Parties' agreement necessarily fails when none of these terms was included in the signed, binding Term Sheet. No matter how much Natalie may wish that she had

20

the ultimate say on the terms of the Settlement Agreement, that authority belonged to *Patricia*, not her, and she has no authority to change those terms. Accordingly, Plaintiffs and Mr. Wilson should be ordered to comply with the Term Sheet as written, and he should be required to dismiss the case against Mark Buckman and Jennifer Buckman, with prejudice, and to remove the lis pendens from the Back House.

Similarly, Mr. Bush's belated and unsupported request to change the interest rate specified in Patricia's Promissory Note must be rejected. Patricia and Mark agreed to the terms of the Note so that Patricia could repay Mark for the debt she has owed him since 2016. The Note states its discounted interest rate on its face ("with interest on the unpaid principal balance. . . at the rate of Five Percent (5.00%) per year"). (Exhibit "3", page 17 (Promissory Note).)

The Binding Term Sheet explicitly states that the Note will remain in place and Plaintiffs' counsel's draft explicitly validates it. Even if it were appropriate for Mr. Bush, who represents Natalie Pitre in another case, to negotiate the interest rate that Patricia would pay Mark for the debt Patricia owed, Mr. Bush cannot - 3 months after the MSC - add material terms of the settlement by imposing an interest rate that Patricia and Mark never agreed to. Natalie cannot accept the benefit of Mark's $78,000.00+ plus reduction from the payoff balance of the loan,

$1,500.00 monthly payments to her, Mark's agreement to pay her children $20,000.00, and Mark's delaying Natalie and Carl's payment on the Promissory Note for 3+ months, while at the same time pushing to further reduce Patricia's debt.  This was not the bargain that the parties reached in the Term Sheet.  Quite simply, parties cannot pick and chose which parts of the agreement to honor, and which to ignore.  Because she ratified and accepted the benefits of the Term Sheet by word and deed, Natalie cannot now disavow or avoid her and Patricia's obligations.

C. **Although No Hearing Should Be Necessary for the Court to Enforce the Term Sheet, the Court Should Hold a Hearing and Allow Live Testimony to Address Any Unresolved Issues**

When the parties have placed their settlement on the record in court, there is "no need for an evidentiary hearing on whether an agreement existed, or what its terms were." *See Doi v. Halekulani Corp.*, 276 F.3d 1131, 1139 (9th Cir. 2002).  Here, the agreement was written and signed by Plaintiff, Defendants, and Natalie Pitre and Carl Pitre in front of the Magistrate Judge, and the Binding Term Sheet should be enforced as written.

To the extent that any dispute remains regarding the terms of the agreement, the Movants request the Court conduct an evidentiary hearing to resolve the issue with live testimony.  See *Callie v. Near,* 829 F.2d 888, 890 (9th Cir. 1987).

22

## III.    CONCLUSION

For all the reasons set forth above, Jennifer Buckman and Mark Buckman respectfully request that the Court grant their motion and enter judgment as set forth in the Binding Term Sheet attached as Exhibit 1, and in either event, dismiss Plaintiffs' case against Defendants with Prejudice and enter Judgment in Mark Buckman's favor on his Amended Counterclaim against Counterdefendants, their successors and assigns.

DATED:  Hagatna, Guam and Elk Grove, CA February 26, 2026.

/s/ Louise K.Y. Ing
LOUISE K.Y. ING
Attorneys for Defendants
MARK  F.  BUCKMAN,  individually and  as  Trustee  of  the  MARK  F. BUCKMAN TRUST, and
JENNIFER BUCKMAN

/s/ Mark F. Buckman
MARK F. BUCKMAN

Attorney for Defendant
JENNIFER BUCKMAN

23