## SETTLEMENT AGREEMENT

This Settlement Agreement and Mutual General Release ("**Agreement"**) is entered into as of August 28, 2025 by and between Mark F. Buckman, individually and as Trustee of the Mark F. Buckman Trust dated August 9, 2022 ("**Mark**" which includes his trust) and Jennifer Buckman ("**Jeni**"), on the one hand, and Patricia W. Buckman, individually and as Trustee of the Patricia W. Buckman Revocable Trust dated July 25, 2019, as amended ("**Patricia**" or "**Mom**" which includes her trust), Natalie Pitre ("**Natalie**"), and Carl Pitre ("**Carl**"), on the other hand (collectively the "Signatories"), and is specifically intended to inure to the benefit of Matthew Buckman, Kimberly Buckman, and Duke (Manoa) Buckman (collectively the "Parties").

In consideration for the promises made by the Signatories and recited herein, the Signatories agree as follows:

**I.      Recitals**

a.      *Whereas*, in 1991 Mark  purchased the real property located at 714 16th Avenue, Honolulu, Hawaii ("**16th Ave House**");

b.      *Whereas*, in 2003, Patricia purchased real property that is now known as a two-unit condominium, identified as (i) 3010 Kaunaoa Street, Honolulu, Hawaii 96815, also known as Unit Diamond of the Cottages at Diamond Head, Tax Map Key No. (1) 3 1 024 043 CPR 0001 ("**3010 Kaunaoa**" or the "**Front House**") and (ii) 3010A Kaunaoa Street, Honolulu, Hawaii 96815, also known as Unit Ewa of the Cottages at Diamond Head, Tax Map Key No. (1) 3 1 024 043 CPR 0002 ("**3010A Kaunaoa**" or the "**Back House**");

c.      *Whereas*, Patricia signed and notarized that certain Warranty Deed on August 10, 2023, which conveyed 100% fee simple ownership of the Back House from Patricia to Mark's Trust, and which was recorded in the State of Hawaii Bureau of Conveyances on August 11, 2023 as Document No. A-86230897 ("**Back House Deed**");

f.      *Whereas*, on or about September 24, 2023, Patricia signed and notarized that certain Promissory Note (dated September 18, 2023) to Mark in the principal amount of Two Hundred Thirty-Five Thousand Six Hundred Ninety-Five Dollars ($235,695.00) ("**Promissory Note**").   Patricia also signed that certain Agreement Regarding Note and Mortgage on or about September 24, 2023 ("**ARNM**").   Patricia signed and notarized that certain Mortgage on September 24, 2023, to Mark, which secured the Promissory Note and encumbered the Front House, and which was recorded in the State of Hawaii Bureau of Conveyances on September 25, 2023, as Document No. A-86680413 ("**Mortgage**");

g.      *Whereas*, certain disputes arose between the Parties regarding the validity of the aforementioned transfers and encumbrances;

1

**EXHIBIT 9**

h.      *Whereas* on January 19, 2024, Patricia filed an action in against Mark and Jeni in circuit court, Civil No. 24-0000095 ("Suit I");

i.      *Whereas* on March 18, 2024, Mark removed the case to federal court, Civil No. CV:24-00129 (MWJS-KJM);

j.      *Whereas* on March 27, 2024, Mark answered the complaint and filed a counterclaim;

k.      *Whereas* on January 8, 2025, Mark filed an action against Natalie, Carl, Duke Buckman, Matthew Buckman, Kimberly Buckman, and Tamara Buchwald Civil No. CV:25-000010 ("Suit II");

l.      *Whereas* the complaint and counterclaim in Suit I were amended on multiple occasions;

m.      *Whereas* Mark amended his complaint in Suit II on March 5, 2025;

n.      *Whereas* extensive discovery was undertaken in Suit I;

o.      *Whereas*, on July 17, 2025, a Mandatory Settlement Conference in Suit I was held.  Patricia participated and was represented by attorney Richard Wilson. Mark and Jeni participated and were represented by Mark and Louise Ing.  Natalie and Carl also participated and they were not represented by counsel; and

p.      *Whereas*, Patricia, Mark, Jeni, Natalie and Carl have agreed that it is in their best interests of the Parties to resolve all disputes among them arising from or related to Suit I, Suit II,, and all other matters at issueas set forth below.

*NOW THEREFORE*, in consideration of the foregoing premises and the mutual promises, covenants, and releases set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which is acknowledged by the Signatories hereto, and intending to be legally bound hereby, they agree as follows:

II.   <u>MATERIAL TERMS</u>

A.      **<u>Front House Promissory Note and Mortgage Valid & Enforceable</u>**.  Patricia hereby represents, warrants, and confirms that she voluntarily signed the Promissory Note, ARNM, and Mortgage, and they are valid, effective, and legally binding according to their terms.

B.      **<u>Back House Deed Valid & Transferred 100% Fee Simple Title</u>**.  Patricia hereby represents, warrants, and confirms that she voluntarily signed the Back House Deed and it is valid, effective, and legally binding according to its terms.

C.   **<u>Promissory Note Reduction</u>**.  Mark has agreed to reduce the amount required to pay off the Promissory Note after Patricia's passing.  The discount shall be an amount equal to one-third (1/3) of the original  principal balance of $235,695.00, such that the total discount to be deducted from the pay-off amount will be Seventy-Eight Thousand, Five Hundred Sixty-Three Dollars ($78,563.00)

   **i.**   **<u>Extended Payoff</u>**.  Mark agrees to extend the Maturity Date of the Promissory Note by up to three (3) months after Patricia's passing so Natalie and Carl have extra time to pay off the Promissory Note.

   **ii.**   **<u>Natalie and Carl Agree to Promissory Note and Mortgage</u>**.  Natalie and Carl acknowledge and agree with the terms set forth above regarding the Promissory Note and Mortgage.  Natalie and Carl specifically agree that the Promissory Note, ARNM, and Mortgage are valid and legally binding obligations enforceable pursuant to their terms and that the Promissory Note is secured by the Mortgage, which is a valid encumbrance on the Front House.  Further, Natalie and Carl represent and warrant that they will not challenge or dispute the Promissory Note, ARNM, or Mortgage in any way whatsoever and expressly and irrevocably waive any and all rights, claims, or defenses to challenge, contest, dispute, or hinder the enforcement of the Promissory Note, ARNM, or Mortgage for any reason whatsoever.

D.   **Matt's Occupancy of the Back House** Matt shall have the option to live in the back house for life if, and only if, i) he signs a standard form rental agreement; ii) he pays carrying costs of $500.00 per month for the first year, $750.00 per month for the second year, $1,000.00 per month for the third year, and carrying costs (plus $350.00 maintenance reserve fund) to be estimated at $1,200.00 per month thereafter.  If Matt fails to pay rent, he shall move out.  If he fails to vacate within 60 days, Mark shall have the right and option to evict him.  If Matt leaves or is otherwise evicted, Mark shall pay Matt the net monthly rental income from the back house (minus $350.00 maintenance reserve fund) for the rest of his life.  Upon Matt's death, Mark shall sell the back house, and from the proceeds shall give Manoa $200,000.00 as follows: $10,000.00 in cash, and $190,000.00 in the form of real estate.

E.   **<u>Release of Claims</u>**.   Patricia, Mark, Jeni, Natalie, and Carl shall, on their own behalf and on behalf of spouses, dependents, children, heirs, estates, executors, representatives, administrators, agents, successors and assigns, fully release and forever discharge each other from all claims of any nature whatsoever which they now have or assert to have, or which they at any time heretofore had, or asserted to have against each other arising out of or in any way

related to any acts, circumstances, facts, transactions, omissions, or other subject matters, based on facts occurring prior to the date the execution this Agreement.  The term "claims" includes any claim or cause of action, regardless of the forum in which it may be brought, and includes, but is not limited to, any alleged breach of express or implied contract, breach of the covenant of good faith and fair dealing, intentional or negligent infliction of emotional distress, fraud, misrepresentation, defamation, interference with contract or other interests, or any other claims or causes for damages of any nature, including without limitation, actual, compensatory, punitive, and liquidated damages, penalties, and attorneys' fees, costs, and expenses.  Patricia, Mark, Jeni, Natalie, and Carl represent that they have not assigned all or any part of the claims which each is releasing.

### Back House .

F.    **If the Back House is Sold or Transferred by Mark**. Mark has the right and discretion to sell the Back House. If the Back House is sold, Mark remains obligated to, and shall pay Matt the NMRI for the remainder of his life. Nothing herein will prevent or restrict the sale, transfer, foreclosure, or other disposition of the Back House by Mark.  In such a sale, Mark shall have the right to immediately evict Matt, if he is still occupying the Back House, .  However, Mattwould continue to receive an amount equivalent to NMRI for his lifetime, as provided herein.
 Upon the earlier of Matt's death or Mark having sold the back house, from the proceeds or any such sale , Mark shall give Manoa $200,000.00 as follows: $10,000.00 in cash, and $190,000.00 in the form of real estate.

G.    **Life Insurance**.  Patricia has a policy of life insurance for One Hundred Twenty Thousand Dollars ($120,000.00) with Resolution Life, Policy No SC2342392D    ("**Life Insurance**").   Patricia shall maintain her life insurance policy as is – $40,000.00 to Natalie, $80,000.00 to Mark (who is holding $40,000.00 in trust for Matt).  Mark shall immediately give Matt $10,000.00 upon Patricia's death, and he shall provide the remaining funds to Matt on an as-needed basis over time.  Mark shall give Manoa any remaining and undistributed funds upon Matt's death.

H.    **Mark to pay Natalie $1,500.00 per Month for Patricia's care**.  As long as Patricia is living with Natalie and her family, Natalie is providing care to Patricia, , Mark will provide Natalie One Thousand Five Hundred Dollars ($1,500.00) per month for Patricia's care.

I.    **Dismissals of Litigation**.    Within seven (7) days of executing this Agreement, Patricia, Mark, and Jeni (in their individual and representative capacities) shall submit a stipulation to dismiss Suit I (Civil No. CV:24-00129 (MWJS-KJM)) with prejudice.  Mark shall engage in good faith and use all reasonable efforts to negotiate a settlement with Natalie, Carl, Duke Buckman, Matthew Buckman, Kimberly Buckman, and Tamara Buchwald, and shall

4

submit a stipulation to dismiss Suit II (Civil No. CV:25-000010) with prejudice on or before
_____.  Dismissal of Suit II is a material condition to this Agreement.

        **J.**     **<u>Costs and Fees</u>**.   As between the Signatories to this Agreement, each shall be responsible for his or her own attorney fees and costs incurred in all matters described herein.

        **K.**     **<u>Unknown Facts and Changed Circumstances</u>**.   The Signatories hereto acknowledge and understand that there is a risk that at the present time or subsequent to the execution of this Agreement, that facts, claims or causes of action may be discovered or that facts, claims or causes of action presently known may obtain meaning which is different from or in addition to that which are now known or believed to be true with respect to them, and that in the future circumstances will change, many in unpredictable ways, but that it is the intention of the Signatories to settle and release each other as specifically set forth above and that this Agreement shall be and remain in effect in all respects regardless of such additional or different facts, discoveries, or changed circumstances.

        **L.**     **<u>Authority and Non-Assignment</u>.**   Each Signatory represents and warrants to the others that they have full authority and legal capacity to enter into this Agreement and to perform the obligations herein, including releasing the claims described in this Agreement. Each Signatory further warrants that none of the claims released herein has previously been assigned or transferred to any other person or entity, by operation of law or otherwise.

        **M.**     **<u>Successors and Assigns</u>.**   This Agreement is and shall be binding upon and shall inure to the benefit of the Signatories hereto and their respective spouses, children, heirs, estates, representatives, trustees, directors, officers, managers, members, administrators, affiliates, employees, agents, insurers, successors and assigns.

        **N.**     **<u>Governing Law</u>.**   This Agreement shall be construed and enforced in accordance with Hawaii law.

        **O.**     **<u>No Waiver</u>**.   The failure of any Party to this Agreement to insist on strict adherence to one or more of the terms stated herein, on one or more occasions, shall not be construed as a waiver, nor shall it operate to limit, impair, preclude, cancel or otherwise affect such Party's rights or remedies.

        **P.**     **<u>Interpretation/Advice of Counsel</u>**.   All Signatories acknowledge and agree that this Agreement was jointly negotiated and drafted by them, each of whom had the opportunity to propose, review, and revise its terms.  Patricia has been represented by attorney Richard Wilson, Natalie and Carl have been represented by attorney Thomas Bush, Mark has been represented by attorney Louise Ing, and Jeni has been represented by Mark and Ms. Ing.  Therefore, each term

or provision hereof shall be given a neutral and fair interpretation in all respects, and any ambiguity, dispute, or question of interpretation shall not be construed in favor of or against anyoneon account of authorship. The section and paragraph headings in this Agreement are for convenience and reference only and will not affect the meaning, interpretation, or construction of any provision of this Agreement. Each Signatory further represents and warrants that, in executing this Agreement, they have relied solely on their own independent judgment, belief, and knowledge, as well as the advice and recommendations of counsel of their own choosing, regarding the nature, extent, duration, and consequences of their rights, obligations, and claims. Each Signatory states that they have not, in any respect, been induced or influenced to execute this Agreement by any statement, representation, promise, or assurance of any kind regarding any matter, whether made by another, counsel for another, or any other representative, unless expressly and specifically set forth in this Agreement. Each Signatory understands and agrees that this Agreement fully, finally, and exclusively expresses their entire understanding and agreement as to the subject matter hereof.

**Q.** **Severability**. If a court of competent jurisdiction holds any provision of this Agreement to be illegal, unenforceable, or invalid in whole or in part for any reason, the validity and enforceability of the remaining provisions, or portions thereof, will not be affected, unless the essential purpose of this Agreement would be defeated by striking the illegal, unenforceable, or invalid provision.

**R.** **Reasonable Cooperation**. The Signatories shall at their own cost and expense execute and deliver such further documents and instruments and shall take such other actions as may be required or appropriate to evidence or carry out the intent and purposes of this Agreement..

**S.** **Dispute Resolution**. All claims, controversies, or disputes arising out of or relating to this Agreement or the breach thereof, shall be fully and finally resolved by Judge Mansfield. The Parties shall not waive any substantive rights or remedies provided by law, including the recovery of attorneys' fees and other costs, to the extent permitted by applicable law and awarded by the Court. The Parties further agree that the decision made by Judge Mansfield shall be binding upon them, and not subject to appeal or further review.

**T**. **Good Faith Settlement**. This settlement is based upon a good faith determination of the Parties to resolve a disputed claim. The Signatories resolved this matter in compliance with both state and federal law. This Agreement contains the entire agreement between them. The Signatories acknowledge that each has read the terms of the Agreement, that each fully understands its provisions, that each executes this Agreement voluntarily, and that the Signatories' signatures constitute acceptance of the terms and conditions of this Agreement.

**U.** **Counterparts**. This Agreement may be executed in any number of counterparts, each of which shall be an original, but all of which together shall constitute but one instrument.

**V.**  **Enforceability**.  The Signatories agree that this Agreement is admissible for the purposes of proving up and or enforcing the terms of the Agreement.  The Signatories further agree that this Agreement may be pleaded as a full and complete defense to, and may be used as the basis for any injunction against, any action, suit, administrative investigation or other proceeding which may be instituted, prosecuted or attempted in breach of this Agreement.

**W.**  **Modification**.  No provision hereof may be waived, modified or amended except by a written agreement signed by all Signatories.

**X.**  **Entire Agreement**.  This Agreement constitutes the final, complete, and exclusive statement of the terms of the agreement between the Signatories  pertaining to the subject matter hereof and supersedes all prior and contemporaneous understandings or agreements.  All Signatories had full opportunity to investigate the facts and law related to this matter, and  no Signatory has been induced to enter into this Agreement by, nor is any Signatory relying on, any representation or warranty except those expressly set forth herein.

IN WITNESS WHEREOF, the Signatories hereto have executed this Agreement as of the date first set forth above.

_____
Mark F. Buckman,
Individually

_____
Patricia W. Buckman,
Individually

_____
Mark F. Buckman,
Trustee of the Mark F. Buckman
Trust dated August 9, 2022

_____
Patricia W. Buckman,
Trustee of the Patricia W. Buckman
Revocable Trust dated July 25, 2019, as amended

_____
Jennifer Buckman

_____
Natalie Pitre

_____
Carl Pitre

APPROVED AS TO FORM

_____
Louise Ing,
DENTONS US LLP
Attorney for Mark Buckman
and Jennifer Buckman

_____
Richard Wilson,
Law Office of Richard E.
Wilson, LLC
Attorney for Patricia
Buckman, Individually and as
Trustee of the Patricia W.

_____
Thomas Bush,
Thomas Bush Law Office,
LLC
Attorney for Natalie Pitre and
Carl Pitre

7

Buckman Revocable Trust

Buckman Revocable Trust