LOUISE K.Y. ING        2394
TIM PARTELOW          10218
DENTONS US LLP
1001 Bishop Street, Suite 1800
Honolulu, HI  96813
Telephone: (808) 524-1800
Facsimile: (808) 524-4591
Email:    louise.ing@dentons.com
          tim.partelow@dentons.com

Attorneys for Defendants
MARK F. BUCKMAN, individually
and as Trustee of the MARK F. BUCKMAN TRUST,
and JENNIFER BUCKMAN

MARK F. BUCKMAN   SBN 7080
Law Offices of Mark F. Buckman
8359 Elk Grove Florin Rd., Suite 103-320
Sacramento, CA  95829
Email: markfbuckman@sbcglobal.net

Attorney for Defendant
JENNIFER BUCKMAN

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI‘I

| | |
|---|---|
| PATRICIA W. BUCKMAN, PATRICIA W. BUCKMAN REVOCABLE TRUST, <br><br> Plaintiffs, <br><br> v. <br><br> MARK F. BUCKMAN, ET. AL. <br><br> Defendants. | Civil No. 1:24-CV-00129-MWJS-KJM <br><br> **DEFENDANTS' MOTION FOR RULE 11 SANCTIONS AGAINST PLAINTIFF AND PLAINTIFF'S ATTORNEY RICHARD WILSON; MEMORANDUM OF LAW; DECLARATION OF MARK F. BUCKMAN** <br><br> Trial Date: November 3, 2025 <br> Judge: Hon. Micah Smith |

**TABLE OF CONTENTS**

I.     INTRODUCTION AND SUMMARY OF ARGUMENT.............................1

II.    STATEMENT OF PERTINENT FACTS .......................................................3

      A.    To Increase Settlement Pressure on Mark and to Intimidate Jennifer, Plaintiff and Her Attorney Knowingly Made False Allegations Against Jennifer in the Second Amended Complaint ...........................3

      B.    At Deposition, Plaintiff Had "No Idea" Where Her Attorney Got the Facts Alleged in the Complaint and Could Not Identify Any Basis Why Jennifer Was Named as a Defendant..........................................11

III.   ARGUMENT.................................................................................................12

      A.    Rule 11 Sanctions Are Properly Awarded Against Plaintiff and Her Attorney.....................................................................................12

          1.    Because the Claims Against Jennifer Were Brought for Improper Purposes of Creating Pressure on Mark and Trying to Embarrass and Intimidate Jennifer, Rule 11 Sanctions Are Warranted Against Plaintiff and Her Attorney. ................................................................................12

      B.    Plaintiff and Her Attorney Are Also Subject to Sanctions Because the Allegations in the SAC Lack Factual Support. ..................................17

IV.   CONCLUSION ..........................................................................................25

## TABLE OF AUTHORITIES

**Cases**

*Alston v. Speigel (In re Ames)*, 993 F.3d 27, 37 (1st Cir. 2021)...............................13

*Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995) ....................................................................................................................16

*Clark v. Mortenson*, 93 F. App'x 643, 652 (5th Cir. 2004) .....................................14

*Goldman v. Bequai*, No. 93-7200, 1994 U.S. App. LEXIS 37419, at *1 (D.C. Cir. Dec. 28, 1994)...........................................................................................24

*Holley v. Guiffrida*, 112 F.R.D. 172, 173 (D.D.C. 1986) .......................................18

*Lake v. Gates*, 130 F.4th 1064, 1068 (9th Cir. 2025) ....................................... 17, 24

*Scott v. Vantage Corp.*, 64 F.4th 462, 472-73 (3d Cir. 2023) .................................13

*Union Planters Bank v. L & J Dev. Co.*, 115 F.3d 378, 384-85 (6th Cir. 1997).....17

**Statutes**

Haw. Rev. Stat. § 554D-816(24) ................................................................................1

**Rules**

Fed. R. Civ. P. 11 ........................................................................................... passim

Fed. R. Civ. P. 11(b)(1).............................................................................................13

Fed. R. Civ. P. 11(b)(3).............................................................................................17

Fed. R. Evid. 801(d)(2)(C)-(E) .................................................................................15

Hawa'i Rules of Evid., Rule 503(a)(2)......................................................................14

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR RULE 11 SANCTIONS AGAINST PLAINTIFF AND PLAINTIFF'S ATTORNEY RICHARD WILSON**

PLEASE TAKE NOTICE that as soon as the matter may be heard in the above-entitled court, in the courtroom of Judge Micah W.J. Smith, at the United States Courthouse for the District of Hawaii, located at 300 Ala Moana Blvd, Honolulu, Hawaii 96850, with oral argument to be held on a date and time to be designated by the Court, Defendants Jennifer Buckman and Mark Buckman, individually and as Trustee of the Mark F. Buckman Trust, will, and hereby do, move this Court, pursuant to Rule 11 of the Federal Rules of Civil Procedure, for sanctions against Plaintiff and her counsel of record in these proceedings, Richard Wilson. Specifically, Defendants ask the Court to: (1) dismiss the claims against Jennifer, with prejudice, (2) dismiss the conspiracy claim, with prejudice, since conspiracy requires at least two Defendants, and only one Defendant has been properly named, and (3) award monetary sanctions against Plaintiff and her attorney in the amount of the attorneys' fees and costs incurred by Jennifer to defend herself against these improperly brought claims.

This Motion is based upon Rule 11 of the Federal Rules of Civil Procedure, the facts and pleadings in this case, Mark Buckman's Declaration in Support of this

Motion, Jennifer Buckman's Declaration in Support of this Motion, the arguments

of counsel, and such other evidence as may be properly before the Court.


Dated:  July 7, 2025.

/s/ Louise K.Y. Ing

LOUISE K.Y. ING
TIMOTHY C. PARTELOW
Attorneys for Defendants
MARK F. BUCKMAN, individually
and as Trustee of the MARK F.
BUCKMAN TRUST, and
JENNIFER BUCKMAN

/s/ Mark F. Buckman

MARK F. BUCKMAN

Attorney for Defendant
JENNIFER BUCKMAN

iv

**DEFENDANTS' MOTION FOR RULE 11 SANCTIONS AGAINST
PLAINTIFF AND PLAINTIFF'S ATTORNEY RICHARD WILSON**

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

This case is a travesty, but not for the false reasons set forth in the

Complaint. In 2022, after moving in next door to Plaintiff, getting Plaintiff[1] to

form a new trust, and assuming increasing financial and social control over

Plaintiff (including taking over as Plaintiff's trustee), Natalie Pitre convinced her

80+ year-old mother to amend that trust in favor of herself and her husband. The

2022 amendment changed the beneficiary of the Front House at 3010 Kaunaoa St.

from Duke Manoa Buckman to Natalie and Carl Pitre, and the Back House at

3010A Kaunaoa St. from Matt Buckman to Duke Manoa Buckman. Unlike all of

Plaintiff's prior trusts, which date back to 2006, the 2022 amendment made no

provision regarding housing for Matt Buckman – though Plaintiff has repeatedly

stated that her intent to provide this for Matt "never changed."

When Defendant Mark Buckman learned of his sister's perfidy in July 2023,

he informed his mother and discussed the situation with her. Then, at Plaintiff's

request, Mark helped her deed the Back House from her trust to his, with the

---

[1] Although the Second Amended Complaint ("SAC") purports to be brought on behalf of both Plaintiff and her 2019 Trust, a trust is not a separate legal entity and does not have standing to sue. *See* Haw. Rev. Stat. § 554D-816(24) [trustee, not trust, has the power to "prosecute or defend an action, claim, or judicial proceeding in any jurisdiction to protect trust property . . . ."] Because the Trust is not a valid legal Plaintiff, Defendants refer to Plaintiff in the singular.

1

understanding that Mark would hold it for the benefit of Matt Buckman, and Matt would have the benefit of this house during his lifetime pursuant to the Brother's Agreement. Mark and his mother also worked out the terms of her repayment of a significant debt she owed him from the sale of a 16ᵗʰ Avenue Property that they had co-owned. At Plaintiff's request, Mark did not inform Natalie of these transactions.

When Natalie learned of these changes several months after they occurred, she immediately increased her control over Plaintiff, blocked Mark from talking to Plaintiff, took advantage of Plaintiff's memory lapses to feed her false narrative, and ultimately pressured Plaintiff to file this suit – in which Natalie has served as Plaintiff's agent and the "primary client contact" for Plaintiff's counsel.

Those are the essential facts that gave rise to the Second Amended Complaint (SAC). Given this background, it is perhaps unsurprising that the SAC violates two fundamental aspects of Rule 11. First, the SAC names Jennifer as a Defendant for the improper purposes of putting pressure on Mark and harassing Jennifer. Second, Plaintiff and her counsel included factual allegations in the SAC for which they knew they had no evidentiary support. This latter problem stems largely from the "factual" allegations for the SAC being supplied to Plaintiff's counsel by Natalie – despite Natalie's lack of any knowledge of the now-disputed transactions and the discussions and events that led to them.

2

## II.    STATEMENT OF PERTINENT FACTS

### A.    To Increase Settlement Pressure on Mark and to Intimidate Jennifer, Plaintiff and Her Attorney Knowingly Made False Allegations Against Jennifer in the Second Amended Complaint

Plaintiff named Jennifer Buckman as a Defendant in this lawsuit when it was initially filed in November 2023. ECF #1-1. After removing the case to federal court based on diversity jurisdiction, Jennifer filed a Motion to Dismiss the Complaint on the grounds that it failed to allege facts against her sufficient to state a claim. ECF #8.

On May 10, 2024, the Court issued an order dismissing the Complaint, in part, for failure to state a claim against Jennifer, but granted Plaintiff leave to amend. ECF #24. The Court found the Complaint "is completely bereft of factual allegations against Defendant Jennifer." ECF #24, p. 10. In granting Plaintiff leave to amend, the Court directed Plaintiff as follows:

> Any amended complaint—which should be titled "First Amended Complaint"—must be filed by June 10, 2024, and must cure the deficiencies identified above; that is, Plaintiffs must provide sufficient facts to plausibly support their claims, under the pleading standards discussed above.

ECF #24, p. 19. That same day, Plaintiff's attorney Richard Wilson sent an email to Natalie Pitre and Tamara Buchwald stating, among other things, "We need to add more facts to Jennifer's involvement in the scheme." Declaration of Mark Buckman

3

in Support of Rule 11 Motion ("MFB Decl."), ¶ 4 & Exh. 1, at p. N000686.

Plaintiff was not copied on the email. *Id.*

The following week, on May 16, 2024, Plaintiff's attorney sent another email

to Natalie and Tamara (but not Plaintiff) reiterating the need for the First Amended

Complaint to add facts sufficient to state a claim against Jennifer:

Ladies,

We need to allege facts that tie in Jennifer as part of the conspiracy to defraud Pat. **She was not there, did not prepare the deed and mortgage, and did not call the mobile notary.** But she did come to Hawaii with Mark, butter Mom up, *et cetera.* Things she had never done in the prior several years. Natalie – so I need facts, when did she come to Hawaii the last time prior to August 2023. [*sic*] What did she do differently with Pat? We need to tell the story. Let's get on this sooner rather than later.

Rich

MFB Decl., ¶ 5 & Exh. 1, at p. N000687, emphasis added.

Neither Natalie nor Tamara has any personal knowledge of the transactions

that are now disputed in the Complaint. MFB Decl., ¶ 6 & Exh. 3, Natalie Depo.,

vol. 2, 227:2-230:10 [admitting Natalie "wasn't there"], ¶ 9, Exh. 4, Tamara Depo.,

141:3-10 [admitting Tamara has no personal knowledge of the disputed

transactions]; 71:4-72:9, 83:12-20 [admitting Tamara has no personal knowledge

of Mark's agreement with Plaintiff regarding the ownership of the 16th Avenue

property], 123:2-8 [admitting she has no personal knowledge of whether Plaintiff

wanted Mark to hold Matt's share of Plaintiff's life insurance proceeds]. Neither

4

Natalie nor Tamara was present for any of the meetings or discussions that gave rise to these transactions. MFB Decl., ¶ 6, Exh. 3, Natalie Depo., vol. 2, 226:1-227:23; *see also* ¶ 9, Exh. 4, Tamara Depo., 141:3-10.

Four days later, on May 20, 2024, Natalie sent a text to Kimberly Katsarsky Buckman ("Kimi") seeking facts "to make the case against Jeni." MFB Decl., ¶ 10, Exh. 5, at p. N000224. In this text, Natalie told Kimi:

> Unless we have Jeni involved, Mark will have no pressure to settle the case. Jeni cannot afford to be debarred.

*Id.*

The following day, May 21, 2024, Natalie sent Kimi a text speculating that Jennifer must have participated in the transactions because "Jenny [*sic*]" "supports" Mark, and stating Natalie's opinion that Mark could not accomplish such things "without Jeni keeping him focused and on track." *Id.*, at p. N000225.

Like Natalie and Tamara, Kimi was not present on August 10, the only day on which Jennifer was present for signing of any of the disputed documents. Nor was Kimi present for any of the other transactions disputed in the Complaint, or the meetings or discussions that gave rise to those transactions. MFB Decl., ¶ 11, Exh. 6, Kimi Depo., 276:13-277:3 [Kimi admits she was not present when Matt and Mark negotiated the Brothers' Agreement; "that was between you and Matt"].

5

While Plaintiff's counsel was searching for "facts" to allege against Jennifer, on May 24, 2024, Mark sent Plaintiff's counsel an email suggesting that Plaintiff should drop her claims:

> One option is that PWB could just drop Jennifer because Jennifer did nothing wrong.
> [¶]
> But, maybe the reason that my mom hasn't alleged anything against Jennifer is that there is nothing to honestly allege against her.

MFB Decl., ¶ 13, Exh. 7.

Plaintiff's counsel paid no heed to this warning. Instead, on June 9, 2024, Plaintiff's attorney sent a revised draft of the First Amended Complaint to Natalie and Tamara. MFB Decl., ¶ 14, Exh. 8, at p. N00692. In his cover email, Plaintiff's attorney stated, "Check this one out. It is starting to sing." *Id.*[2]

The next day, Plaintiff filed the First Amended Complaint (FAC), ECF #33, which contained new allegations against Jennifer and a new count for conspiracy against both Mark and Jennifer. After Jennifer filed a Motion to Dismiss the FAC, Plaintiff sought and obtained leave of Court to file the Second Amended Complaint (SAC). ECF #71.

Whereas the initial Complaint "alleged that Mark carried out this plan largely on his own, the SAC sets forth factual allegations that Mark acted in

---

[2] There is no evidence that Plaintiff herself provided these "singing" facts to counsel; on the contrary, Plaintiff testified she "had no idea" where the facts in the Complaint came from and could not back them up. *See* Section B, p. 11, *infra*.

concert with his wife." ECF #82, p. 4. The problem with these new allegations, though, is that Plaintiff has never had any evidentiary support for them.[3]

For example, the SAC added new allegations claiming that Jennifer "prepared various documents" as part of a "plan" she "concocted" with Mark:

> In furtherance of their plan, the Defendants prepared various documents, *e.g.,* a deed, mortgage, power of attorney, and amendments to both the Plaintiff's trust and will. These documents would essentially place both Defendants in total control of the Plaintiff and her assets.

SAC, ¶ 23. As shown in the May 16, 2024 email from Plaintiff's attorney to Natalie and Tamara, though, **Plaintiff's attorney knew these allegations against Jennifer were false when he presented them to the Court on June 10** – as Plaintiff's attorney had previously admitted: "She [Jennifer] . . . did not prepare the deed and mortgage." MFB Decl., ¶ 5 & Exh. 1, at p. N000687.

Likewise, the conspiracy count against Jennifer was based on statements allegedly quoted from a videotaped conversation with Plaintiff. ECF #61, ¶¶ 67, 68. Plaintiff and her attorney could have, with the exercise of reasonable diligence – by merely reviewing the videotape in Natalie's possession – discovered the "dear son" statement incorrectly attributed to Jennifer was actually made by Natalie. MFB Decl., ¶ 15 & Exh. 9 [thumb drive with video of November 15, 2023 events]. Disregarding this objective fact, the SAC misattributed this statement to Jennifer,

---

[3] With the exception of paragraphs 3 and 28, none of the allegations in the SAC were made on information and belief.

then relied on this misquote to provide the factual basis for the conspiracy allegations set forth in Paragraph 68: "The purpose of the November 15th meeting was clear - J. Buckman tried to cover up their conspiracy by attempting to convince the Plaintiff that she was merely 'confused' about what happened, and that MFB was her 'dear son'."[4]

Although the SAC, like its predecessors, contained numerous unsupported statements, Jennifer again brought a focused motion to dismiss. Among other things, this motion noted some of the allegations in the SAC directly contradicted allegations Plaintiff had made in her prior pleadings and merely pluralized previous allegations in an attempt to draw Jennifer into them. Jennifer's motion to dismiss urged the Court to disregard these pleadings under the "sham pleading" rule. ECF #70, pp. 9-11.

In its ruling on this motion, the Court acknowledged, "Plaintiffs . . . do not offer an explanation for these differences" in the allegations of the SAC as compared to its predecessors. ECF #82, p. 13. Although the Court found that the factual inconsistencies were "minor" and did not fall afoul of the sham pleading rule, ECF #82, p. 15, n. 3, the Court also noted, "**Jennifer is undoubtedly correct that it is impermissible to amend a complaint's allegations without a good**

---

[4] This misattribution to Jennifer is especially egregious as Jennifer's Motion to Dismiss noted that this factual allegation was incorrect. ECF #36, n. 2, pp. 6-7.

8

**faith basis for doing so or for the sole purpose of withstanding a motion to dismiss**," and explicitly cited Rule 11. ECF #82, p. 14, emphasis added.

On October 30, 2024, Plaintiff's attorney sent a copy of the Order to Natalie and Tamara along with an email entitled, "**haha Jenn is still in full play**," and the message, "Enjoy the read." MFB Decl., ¶ 10, Exh. 10, at p. N000821. The tone and tenor of Mr. Wilson's email support the inference that he found it funny that he had convinced the Court to accept his false allegations against Jennifer.

Later, in an apparent attempt to increase the pressure on Jennifer, Natalie anonymously mailed copies of the First Amended Complaint, and then the Second Amended Complaint, to the attorneys in the law firm where Jennifer works. MFB Decl., ¶ 17, Exh. 2, Natalie Depo., vol. 1, 171:10-15, 172:16-22. Natalie also sent texts defaming Jennifer and Mark to Jennifer's parents. MFB Decl., ¶ 17. While Natalie did attempt to embarrass Jennifer through moves such as these, tellingly, Plaintiff never served any written discovery on Jennifer. MFB Decl., ¶ 18.

After the close of discovery, Natalie's attorney finally produced some of the documents that Natalie had been withholding from production for months.[5] These

---

[5] In bringing this motion, Defendants do not intend to impugn the reputation or integrity of Natalie's counsel Tom Bush in any way. From what Defendants have observed, Mr. Bush has conducted himself professionally and ethically in this case. Only after he became involved in the case in April 2025 did Ms. Pitre begin to produce responsive documents. Mr. Bush's June 2025 production included emails between Plaintiff's counsel, Natalie, and Tamara Buchwald that Mr. Bush had concluded were not subject to the attorney-client privilege, even though Natalie

9

late-produced documents provided confirmation of Defendants' suspicions that the

Complaint was filed without adherence to Rule 11's standards.[6] Defendants

prepared this motion, consistent with the Court's direction that a Rule 11 motion

was serving as Plaintiff's representative, because those communications included Tamara, a third party. See MFB Decl., ¶ 24, Exh. 16 [Mr. Bush's email explaining his rationale].

[6] The SAC is not the only document that Mr. Wilson has filed in violation of the Rule 11 standards in this case. The settlement conference statement he filed in October 2024 (and shared with Natalie and Tamara) contained a number of demonstrably false statements, such as Plaintiff "has lived with [Natalie, her husband, and two kids for the last several years." *See* MFB Decl., ¶ 25, Exh. 17, at p. N000790, n. 3. Mr. Wilson represents Natalie and her husband in the state court proceedings related to her eviction, for failure to pay rent, and subsequent failure to turn over possession, of the Back House. *See* MFB Decl., ¶ 26, Exh. 18, at p. N000733. Thus, when Mr. Wilson filed the settlement conference statement in October 2024, he knew that Plaintiff did not live with Natalie before February 2024. *Id.* [Pleading filed by Mr. Wilson in the state court action acknowledges Natalie and Carl were residing at "4837 Kolohala Street, where she and her husband had relocated . . . in February 2024."]. While Defendants could attack many of Mr. Wilson's filings for similarly blatant violations of Rule 11, they have focused this motion on the violations in the SAC (though they reserve their right to supplement this motion should Rule 11 violations occur in Plaintiff's filings related to Defendants' Motion for Summary Judgment).

To be clear, though, Defendants are appalled by Mr. Wilson's settlement conference statement, which, among other things, refers to Mark as an "f'ing jackass" (MFB Decl., ¶ 25, Exh. 17, p. N000789), uses a racial slur – "mainland haoles" – to refer to both Defendants (*id.* at p. N000791), suggests this racial prejudice will make Mark "suck as a witness" and "turn the jury against him" (*id.*), and implies that Mr. Wilson would like to murder Mark and leave his body in a sugarcane field. (*id.* at p. N00790 ["Since there are no cane fields on Oahu, I guess that obvious option is off the table."].) Even if these statements are deemed to comply with the "Civility in All Proceedings" requirements of Hon. Micah W. J. Smith's *Individual Rules of Practice*, https://www.hid.uscourts.gov/judges/15, which Defendants sincerely hope is not the case, they are inflammatory to the point where they raise significant concerns. *See, e.g.*, *Bird v. Glacier Elec. Coop., Inc.*, 255 F.3d 1136, 1151 (9th Cir. 2001).

provides the appropriate vehicle for determining whether pleadings have been improperly brought. *See* ECF # 82, p. 14.

    **B.**    **At Deposition, Plaintiff Had "No Idea" Where Her Attorney Got the Facts Alleged in the Complaint and Could Not Identify Any Basis Why Jennifer Was Named as a Defendant**

At deposition, Plaintiff testified she does not remember reading the Complaint and has "no idea" where the facts for it came from:

> Q.· Okay.· Do you remember reading the
> complaint that is, like, the lawsuit paperwork
> that's been filed in this case?
> A.· No.
> Q.· Okay.· Do you know where the facts in the
> complaint came from?
> A.· No idea.
> Q.· Okay.· Do you know if Natalie provided the
> facts for the complaint?
> A.· No idea.· I just told you no idea.

MFB Decl., ¶ 20, Exh. 12, Plaintiff's Depo., v. 2, 16:5-14. Plaintiff also responded "Am I suing someone?" and "Not that I am aware of" when asked if she was suing anyone in this case. MFB Decl., ¶ 22, Exh. 14, Plaintiff's Depo., v. 4, 6:12-19. Plaintiff stated she "think[s] you're [Mark] suing me," but she was unable to state whether or not she had sued Jennifer. MFB Decl., ¶ 22, Exh. 14, Plaintiff's Depo., v. 4, 6:20-21; ¶ 19, Exh. 11, v. 1, 24:25-25:7; ¶ 20, Exh. 12, v. 2, 8:16-17.

Nor is Plaintiff able to identify any reason why she would be suing Jennifer Buckman. MFB Decl., ¶ 22, Exh. 14, Plaintiff's Depo., v. 4, 7:15-19. Plaintiff testified the reason she sued Jennifer Buckman is "because Jennifer is behind Mark

11

100 percent." MFB Decl., ¶ 19, Exh. 11, Plaintiff's Depo., v. 1, 25:8-13. Plaintiff

cannot identify anything bad that Jennifer Buckman has done to her. MFB Decl.,

¶ 19, Exh. 11, Plaintiff's Depo., v. 1, 25:15-20. Plaintiff is unable to identify

anything that Jennifer has done wrong to Plaintiff or to hurt Plaintiff, other than

that Jennifer supports her husband, Defendant Mark Buckman. MFB Decl., ¶ 19,

Exh. 11, Plaintiff's Depo., v. 1, 27:5-11. Plaintiff does not even remember Jennifer

being present on August 10, 2023. MFB Decl., ¶ 23, Exh. 15, Plaintiff's Depo., v.

5, 36:1-20.

After the close of discovery, Natalie's attorney produced documents showing

that Plaintiff planned to submit to a factual interview, conducted before a court

reporter, in early January 2024. MFB Decl., ¶ 27, Exh. 19, at pp. N000559,

N000570-574. Plaintiff did not produce any documents revealing the contents of

this factual interview; it is unclear to Defendants whether it occurred.

## III.   ARGUMENT

### A.   Rule 11 Sanctions Are Properly Awarded Against Plaintiff and Her Attorney

#### 1.   Because the Claims Against Jennifer Were Brought for Improper Purposes of Creating Pressure on Mark and Trying to Embarrass and Intimidate Jennifer, Rule 11 Sanctions Are Warranted Against Plaintiff and Her Attorney.

Rule 11 requires that the party and the party's attorney certify that litigation

"is not being presented for any improper purpose, such as to harass, cause

unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1).

In violation of Rule 11, Plaintiff and her attorney named Jennifer Buckman as a party in this lawsuit for the improper purposes of increasing pressure on Mark to settle the case and harassing and embarrassing Jennifer. Filing a complaint against a party for the purpose of trying to force a settlement violates Rule 11. *Scott v. Vantage Corp.*, 64 F.4th 462, 472-73 (3d Cir. 2023); *see also Alston v. Speigel (In re Ames)*, 993 F.3d 27, 37 (1st Cir. 2021) [leave to amend does not authorize attorney to file amended pleading lacking evidentiary support; "[w]hen — as in this case — the pleader avails himself of the opportunity to amend . . . , he does so at his peril and under the watchful eye of Rule 11."].

In *Scott*, Plaintiffs expressly stated that their "strategy was to file these complaints to force a settlement." *Id.* at 468, 471. Plaintiff Carter testified "admitting he sought the return of [his Vantage investment] to make a separate real estate transaction," and plaintiff Scott testified "she did not even know whether her [Vantage] investment had declined in value at the time she filed [the securities] suit." *Id.* at 472-73. Plaintiffs' express statement that they were seeking a settlement coupled with the lack of factual support for two out of their three claims supported the Court's imposition of Rule 11 sanctions. *Id.*

13

Through Plaintiff's agent Natalie, Plaintiffs here have committed the same missteps as the Plaintiffs who were sanctioned in *Scott*. In such cases, Rule 11 provides for sanctions against both the attorney and the party or agent of a party. *Clark v. Mortenson*, 93 F. App'x 643, 652 (5th Cir. 2004).

Natalie qualifies as Plaintiff's agent in this litigation. According to Natalie and her counsel as well as Mr. Wilson, Natalie has authority to act on Plaintiff's behalf on these legal matters, as contemplated by Hawa'i Rules of Evid., Rule 503(a)(2). MFB Decl., ¶ 24, Exh. 16; *see also id.*, ¶ 25, Exh. 17, at p. N000790 [Mr. Wilson admits Natalie "is [his] main client contact"]; ¶ 8, Exh. 3, Natalie Depo., vol 2, 201:10-202:1 [in response to questions about Natalie's communications with Mr. Wilson in this case, Mr. Wilson interposed the attorney-client privilege and instructed Natalie not to answer]. Thus, Plaintiff has conceded that Natalie serves as Plaintiff's agent in this case.

Natalie has admitted that Plaintiff sought to keep Jennifer in the case for two improper purposes: her May 20, 2024 text explicitly tied Jennifer's "involvement" to a desire to put "pressure" on Mark "to settle the case," and implied Jennifer would encouragement settlement because the case poses significant risks for her – "Jeni cannot afford to be debarred." MFB Decl., ¶ 10, Exh. 5, at p. N000224. Natalie also admitted in her deposition that Jennifer was named as a Defendant in this case in order to "put pressure on" Defendants:

14

Q. And you wanted Jennifer to be in the case because she couldn't afford to be disbarred; correct?

A. Yes.

Q. And you did that because you wanted to get leverage over [Mark]; correct?

A. Yes.

Q. And you thought it would be better for settlement if you had Jenny [*sic*] in the case; correct?

A. I don't know if I was thinking settlement. I don't know what we were thinking.

Q. Was it to apply more pressure to me?

A. Yeah, it was to apply pressure.

Q. On me?

A. Yeah.

Q. Because I wouldn't want my wife to be sued; correct?

A. Well, I mean, anybody who wasn't a narcissist and cared about their wife would be worried about that.

Q. So that's a yes?

A. Yes.

MFB Decl., ¶ 8 & Exh. 3, Natalie Depo., vol. 2, 330:9-331:4. Thus, Plaintiff's agent Natalie admits that Plaintiff and her lawyer were bringing claims against Jennifer for the improper purposes of (1) trying to gain settlement (or other) leverage on Mark, and (2) harassing and intimidating Jennifer by threatening her law practice and her livelihood.

An admission made by a party's authorized representative or agent on a matter within the scope of the relationship may be offered into evidence by the opposing party. Fed. R. Evid. 801(d)(2)(C)-(E). Natalie's admissions that Plaintiffs sought to keep Jennifer in the case for two improper purposes are therefore binding on Plaintiff.

15

For her part, in her deposition, Plaintiff admitted that she had no basis to sue Defendant Jennifer Buckman. Plaintiff could not identify any reason why she would be suing Jennifer, anything bad Jennifer has done to her, or anything that Jennifer has done wrong to Plaintiff or to hurt Plaintiff, other than that Jennifer supports her husband, Defendant Mark Buckman. MFB Decl., ¶ 22, Exh. 14, Plaintiff's Depo., v. 4, 7:15-19; Exh. 11, v. 1, 25:15-20, 27:5-11.

As the Court has already found in this case, Rule 11 precludes a party from adding allegations without "a good faith basis for doing so or for the sole purpose of withstanding a motion to dismiss." ECF #82, p. 14. Yet that is exactly what Plaintiff and her attorney did here. The facts compel the conclusion Plaintiff and her attorney made unfounded allegations against Jennifer in the SAC to keep her as a Defendant for the improper purposes of trying to put pressure on Mark to settle and to harass and embarrass Jennifer.

"It is well settled that dismissal is warranted where, as here, a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings: courts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice." *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995). A complaint that violates Rule 11 also gives grounds for imposing monetary sanctions. *Lake v. Gates*, 130 F.4th 1064,

16

1068 (9th Cir. 2025) [upholding award of $122,200 in attorneys' fees as sanctions to reimburse defendants for costs incurred in defending themselves against improperly brought suit].

Based on the conduct of Natalie, as Plaintiff's agent, both Plaintiff and her counsel are liable to Jennifer for Rule 11 sanctions, as the claims against Jennifer were both baseless and improperly brought. Appropriate sanctions include: (1) dismissal of the Complaint, with prejudice, as to Jennifer, (2) dismissal of the conspiracy count, with prejudice, as to Mark, as one party cannot form a conspiracy, as a matter of law, and (3) restitution in the amount of the attorneys' fees and litigation costs that Jennifer Buckman has incurred defending herself.

### B.    Plaintiff and Her Attorney Are Also Subject to Sanctions Because the Allegations in the SAC Lack Factual Support.

Rule 11 requires that the party and the party's attorney certify that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). Under this Rule, sanctions are appropriately imposed against parties who knowingly brought and pursued claims devoid of evidentiary support and misrepresented key facts. *Union Planters Bank v. L & J Dev. Co.*, 115 F.3d 378, 384-85 (6th Cir. 1997) [upholding sanctions imposed against parties "for misrepresenting key facts during both deposition and trial testimony, and knowingly bringing and pursuing claims devoid of evidentiary

17

support"], reh'g denied. When the plaintiff actively participated in lawsuit and was not merely a passive victim of her attorney's bad judgment, the sanctions are properly awarded against both the plaintiff and her counsel. *Holley v. Guiffrida*, 112 F.R.D. 172, 173 (D.D.C. 1986) [plaintiff who "obviously crafted and fully participated in the litigation strategy" of the case and its predecessor was not "a passive victim of counsel's bad judgment," and sanctions were appropriately imposed on her for her misconduct].

With the exception of paragraphs 3 and 28, the Complaint does not qualify its factual allegations with the standard "on information and belief" caveat for allegations that a party believes "will likely have evidentiary support" once discovery is completed. Rather, the Complaint presents all of its factual allegations (other than paragraphs 3, related to Jennifer being Mark's wife,[7] and 28, related to when Mark prepared the Deed transferring the Back House) as if Plaintiff had competent evidence to support them.

Not so. Indeed, the SAC contains numerous allegations for which Plaintiff has <u>never</u> had any factual support. As shown above, Plaintiff admits she has "no idea" where the facts stated in the Complaint came from. MFB Decl., ¶ 20, Exh. 12, Plaintiff's Depo., v. 2, 16:5-14; *see also* MFB Decl., ¶ 29, Exh. 20 [Email from

---

[7] Oddly, in paragraph 3 of the Complaint, Plaintiff alleges "on information and belief" that Jennifer is Mark's wife, though Plaintiff has <u>actual</u> knowledge of this fact, as she attended their May 30, 1998 wedding. JTB Decl., ¶ 4.

Mr. Wilson claiming the facts sought by Defendants' interrogatories were "way above [Plaintiff's] pay grade . . . She is 90 [*sic*], and is not going to be able to answer them." even when the Interrogatories were seeking basic facts regarding Plaintiff's contentions]. The evidence supports an inference that Plaintiff's agent Natalie, not Plaintiff, provided Plaintiff's counsel the unsupported "facts" alleged in the Complaint. MFB Decl., ¶ 8, Exh. 3, Natalie Depo., vol. 2, 329:17-22 [Natalie added "facts" to the Complaint, that were not provided by Plaintiff], 331:13-25 [Natalie was the "sole conduit" of facts provided to Plaintiff's attorney]; *see also* ¶ 30, Exh. 21, Natalie CA Depo., 70:2-4 [Natalie played a part in providing facts for lawsuit].

The obvious problem with this is that Natalie admitted in her deposition she "wasn't there," the transactions were "between you [Mark] and Mom," she has no personal knowledge of anything that Plaintiff and Mark discussed about any of the documents that are at issue, and the information about what happened during each of the transactions challenged in the Complaint could only "come from either you [Mark] or Mom." MFB Decl., ¶ 8, Exh. 3, Natalie Depo., vol. 2, 227:4-25, 228:7-8, 15-19, 228:23-229:1, 229:18-230:10.[8] Yet the Complaint simply alleged as "facts,"

---

[8] While Natalie attributes an evil motive to the fact the transactions at issue between Plaintiff and Mark occurred in Natalie's absence, Natalie also lacks any personal knowledge of what motivated Plaintiff not to inform Natalie of the transactions. In fact, Plaintiff asked Defendants not to inform Natalie about the August 10, 2023 transaction concerning the Back House. JTB Decl., ¶ 6; MFB

without Plaintiff's counsel undertaking any investigation, false narratives supplied

by Natalie.

The chart below compares some of the SAC's false allegations with the

undisputed facts that were known or readily available to Plaintiff and her attorney:

| False Allegation in SAC | Undisputed Evidence Known or Available to Plaintiff |
|---|---|
| The SAC alleges "The Plaintiff never intended for MFB to receive any of her real property after her death," but the paragraph also cites Plaintiff's 2006 and 2011 trusts. SAC, ¶ 8. | Both Plaintiff's 2006 and 2011 Trusts designated MFB as one of the heirs of Plaintiff's real property. MFB Decl., ¶ 31, Exh. 22, at ¶ 5.1(d), Exh. 23, at ¶ 5.01(g)-(j). |
| The SAC alleges: "Since approximately 2016, MFB and J. Buckman have been essentially estranged from MFB's family. They live in California, and rarely come to Hawaii or contact the Plaintiff," | Defendants' family spent approximately 3 months in Hawaii in summer 2016, during which time they stayed at Plaintiff's house in Hawaii Kai. Thereafter, Defendants' family visited with Plaintiff and other Hawaii-based Buckman family in July 2017, April |

Decl., ¶ 32. Plaintiff's correspondence shows she sometimes made deliberate decisions not to inform Natalie of Plaintiff's financial transactions because Natalie is "tough and can be mean and very greedy". For example, in March 2023, Plaintiff sent the following texts to Qunyh Vu. the bookkeeper for her company (Island Properties),:

> Legally, I still own this company. Do not breathe one word of this to Natalie. Do you understand not one word this is not hers this is mine. I have built this with blood, sweat and tears. It is my company I have not given it to her I do not want her to know anything about Tomoko is that clear !!!!!
> I know I sound tough and mean but I can tell you from experience that my darling daughter is tough and can be mean and very greedy. Keep this between you and me. She has nothing to do with it. Nothing nothing nothing thank you dear Quynh.

MFB Decl., ¶ 32 & Exh. 24.

| | |
|---|---|
| "MFB had little further contact with the Plaintiff or his siblings" after June 2, 2017 and "both MFB and J. Buckman told her they wanted nothing to do with the Hawaii Buckmans, and that they had no intention of being further involved with the Plaintiff." SAC, ¶¶ 7, 12. | 2018, June 2018, July 2018, July 2019, December 2019, March 2020, May 2021, June 2021, September 2021, October 2021, December 2021, January/February 2022, December 2022, and July 2023. Natalie participated in many of these visits. JTB Decl., ¶ 7.<br><br>In her deposition, Natalie testified she "[doesn't] know" the dates that Defendants and their family were in Hawaii or when they visited Plaintiff; Natalie acknowledged Defendants "might have" come and visited with Plaintiff. MFB Decl., ¶ 8, Exh. 3, Natalie Depo., vol. 2, 332:1-334:15. |
| The SAC alleges that, as of September 2022, "For some time, Plaintiff Patricia had been receiving '24-hour care and assistance' from her daughter Natalie, who had moved into the Rear House." SAC, ¶ 15. | Natalie testified she was not Plaintiff's primary caregiver from 2020-23; it was a "group effort," and she would be "speculating" if she had to identify who filled that role:<br>Q. So in the time period 2020/2023, who was your mom's primary caregiver?<br>MR. SCIACCA: Object. Calls for speculation.<br>Q. You can answer.<br>THE WITNESS: Yeah, I would be speculating. I think it was a group effort. Matt would occasionally make her breakfast. Kimi would do some things. I would do some things.<br>MR. BUCKMAN: Q. Would Manoa do some things?<br>A. Occasionally.<br>Q. And so there was [*sic*] times when Mom just drove herself to the doctor though; correct?<br>A. Yes.<br>MFB Decl., ¶ 30, Exh. 21, Natalie CA Depo., 74:1-13; *see also id.*, at 92:3-10 [Natalie was "not responsible" for Plaintiff's |

21

| | |
|---|---|
| | medical care or dental care]; *id.*, Exhs. 25 [letter from Plaintiff to Natalie discussing how Natalie treats Plaintiff], 26 [same, email from Plaintiff to Natalie]. |
| The SAC alleges "Over the years, the Plaintiff appreciated Natalie's care, and reciprocated by offering her and her family front house at 3010 Kaunaoa Street when she passed. ¶ 15. In September 2022, the Plaintiff amended the 2019 Trust to reflect her feelings towards Natalie." SAC, ¶¶ 14, 15. | Plaintiff has admitted that she changed her trust in 2022 because Natalie and Carl had told Plaintiff that Carl had life-threatening conditions: Mom: … And the reason that I want to give her this house is that Carl's health is very, he has had three life-threatening... Mark: I get it. I'm not arguing with you on any of those. Mom: They said he has to take very good care of himself or he could die at any time. And then he told me [he has] some blood disease or some blood thing that could affect him and take him out in a minute. And that terrified me. MFB Decl., ¶ 35 & Exh. 25 (Sept. 19, 2023 video), Exh. 26 (Sept. 19, 2023 audio). |
| The SAC alleges August 10, 2023 "was the first time that J. Buckman accompanied MFB to spend time with the Plaintiff at her home." SAC, ¶ 26. | Jennifer visited with Plaintiff at Kaunaoa in April 2018, July 2019, October 2019, March 2020, June 2021, September 2021, and December 2022. Natalie had seen Jennifer at Kaunaoa on at least some of these visits. JTB Decl., ¶ 8. |
| "The outing lasted an astonishing nine hours." SAC, ¶ 28. | The August 10, 2023 "outing" lasted approximately 5 hours total and included lunch and waiting for medical tests and prescriptions to be filled. MFB Decl., ¶ 36. Defendants were still at the house when Natalie left for her doctor's appointment. *See* SAC, ¶ 27. Natalie admitted in her deposition that Jennifer called Natalie when Defendants and Plaintiff left the house. MFB Decl., ¶ 30, Exh. 21, Natalie CA Depo., 82:7-11. This call occurred between 11:30 and 12:00 pm. JTB Decl., ¶ 5. |

22

| | Defendants and Plaintiff returned to Kaunaoa around 5 PM, and Natalie was there. MFB Decl., ¶ 34; JTB Decl., ¶ 5. |
|---|---|
| "MFB . . . did not inform his siblings of the deed. The Plaintiffs would only find out about the Deed two months later through an anonymous source." SAC, ¶ 30.[9] | Mark did inform Matt Buckman that Plaintiff had signed the Deed the next day. MFB Decl., ¶ 32.<br><br>The source was never "anonymous." Natalie testified she learned of the deed from Carolyn Watanabe in fall 2023. MFB Decl., ¶ 30, Exh. 21, Natalie CA Depo., 79:21-24. |
| Defendant Mark "took the Plaintiff on an all-day outing." SAC, ¶ 39. "Late in the afternoon, he told the Plaintiff that she had to sign several additional documents." SAC, ¶ 39. | SAC, ECF #61, p. 47 contains the notarization of this document. Plaintiff's attorney had a duty to inquire before filing allegations representing to the Court that Plaintiff signed this document "late in the afternoon" after an "all-day outing." (In fact, the documents were signed in late morning, and Plaintiff, in a celebratory mood, and Mark then went for lunch at an Italian restaurant of her choosing near the Royal Hawaiian. MFB Decl., ¶ 35, Exh. 27. |
| Paragraph 67 of the SAC purports to quote Jennifer's participation in a recorded conversation, as follows:<br><br>J. Buckman - "Mom, do you want them to come back, or would you .... it's your dear son, don't you want him here?<br>Plaintiff - "No."<br>J. Buckman - "Why not?"<br>Plaintiff - "He tried to take my things."<br>Natalie - "What things is he trying | The video recording of this conversation reveals that the only statement made by Jennifer was "Let's sit down and talk about what actually happened. I think you're confused, we're happy ..... " All of the other quoted statements attributed to Jennifer were actually made by Natalie. MFB Decl., ¶ 15, Exh. 9. |

---

[9] While Defendants also dispute the allegation that "The Plaintiffs would only find out about the Deed two months later," and other false allegations of the SAC, this Rule 11 Motion focuses on the allegations that contradict the *undisputed* evidence.

23

| to take?"<br>Plaintiff - "My houses."<br>Natalie - "Okay."<br>J. Buckman - "Let's sit down and talk about what actually happened. I think you're confused, we're happy ....."<br>Natalie - "Do you think you're confused?"<br>Plaintiff- "I don't think I'm confused."<br>Natalie - "So, do you want to talk to them alone? Would that make you less confused?"<br>Plaintiff - "No."<br>ECF #61, ¶ 67. | |

Thus, as shown above, Natalie knew many of the allegations in the SAC were untrue when they were made. With reasonable investigation, such as reviewing the videotape and reading the 2006 and 2011 trust documents cited in the SAC, Mr. Wilson also would have discovered the falsity of the allegations. Because Plaintiff and her attorney recklessly disregarded this evidence, and have continued to maintain those allegations for months after learning they had no factual support, both Plaintiff and her counsel are subject to Rule 11 sanctions. *Lake*, 130 F.4th at 1060-61; *Goldman v. Bequai*, No. 93-7200, 1994 U.S. App. LEXIS 37419, at *1 (D.C. Cir. Dec. 28, 1994) [upholding Rule 11 sanctions when plaintiff's "own deposition testimony squarely contradicts the factual allegations set forth in her complaint."].

24

## IV.   CONCLUSION

For all the reasons set forth above, Defendants respectfully ask the Court to: (1) dismiss the claims against Jennifer, with prejudice, (2) dismiss the conspiracy claim, with prejudice, and (3) award monetary sanctions against Plaintiff and her attorney in the amount of the attorneys' fees and costs incurred by Jennifer to defend herself against these improperly brought claims.

Dated:  July 7, 2025.

/s/ Louise K.Y. Ing
LOUISE K.Y. ING
TIMOTHY C. PARTELOW
Attorneys for Defendants
MARK F. BUCKMAN, individually
and as Trustee of the MARK F.
BUCKMAN TRUST, and
JENNIFER BUCKMAN

/s/ Mark F. Buckman
MARK F. BUCKMAN

Attorney for Defendant
JENNIFER BUCKMAN

25