IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII


PATRICIA W. BUCKMAN, et al.,

      Plaintiffs,

  v.

MARK F. BUCKMAN, et al.,

      Defendants.

_____

Case No.:  1:24-cv-00129-MWJS-KJM



Thursday, June 5 2025

2:06 p.m.

Conducted Virtually




Job:  44980

Pages:  1 - 254

Reported by: Garrett Lorman

**EXHIBIT 4**

Patricia W. Buckman v. Mark F.Buckman                                    6/23/2025

Page 2

A P P E A R A N C E S


On behalf of the Defendant:

       Mark F. Buckman, ESQ.

       Law Offices of Mark F. Buckman

       8953 Elk Grove Florin Road, Suite 103-302

       Sacramento, California 95828

       Phone:  916-442-8300

       E-mail:  markfbuckman@sbcglobal.net



On behalf of the Plaintiff:

       Louise K.Y. Ing, ESQ.

       Dentons US, LLP

       1001 Bishop Street, Suite 1800

       Honolulu, Hawaii 96813

       Phone:  808-524-1800

       E-mail:  louise.ing@dentons.com

Job 44580 Buchwald Depo

Patricia W. Buckman v. Mark F.Buckman                                      6/23/2025

Page 3

A P P E A R A N C E S - continued


        Richard E. Wilson, ESQ.

        Law Office of Richard E. Wilson

        Dillingham Transportation Building

        735 Bishop Street, Suite 306

        Phone:  808-545-1311

        E-mail:  rewilson_law@yahoo.com

Job 44980 Buchwald Depo
Patricia W. Buckman v. Mark F.Buckman                                6/23/2025

Page 71

A.  I did document review.

Q.  Anything else?

A.  No.

Q.  Okay.  Do you have any personal knowledge of my agreement with my mom regarding the ownership of 16th Avenue?

A.  No.

Q.  You say that pretty strongly.  Have you ever heard anything about it at all?

A.  No.  Your mom owns 16th Avenue.

Q.  And how do you know that?

A.  Because I was -- that's just my recollection.  I don't know it.  That was my recollection.

Q.  Did I ever tell you that?

A.  No, but it was your mom's house.  I used to go there.

Q.  Well, you can live at a house and be a renter, or you can live at a house and you're living with family.  So, I'm asking about the ownership specifically.  Did my mom or I ever tell you about the ownership of 16th Avenue?

Job 44986 Buchwald Depo

Patricia W. Buckman v. Mark F.Buckman                                    6/23/2025

Page 72

A.  No, but Mark, you weren't the most stable of individuals when your mom built 16th Avenue.  I can't imagine you would have the money to own a house.

Q.  Okay.  So, thank you for the ad hominem attack, but I'm asking you about the ownership of 16th Avenue.  Did myself or my mother ever tell you about the ownership of 16th Avenue between us?

A.  No.

Q.  Do you have any reason that you know from personal knowledge that I wouldn't be the 40% owner of 16th Avenue?

A.  I knew you back then, Mark.  I would just assume living life the way you did, there's no possible way you could have been.

Q.  Okay.

A.  16th Avenue was a house, and you were how old, 20-something?  Doesn't make any sense.

Q.  So, you're just speculating on that.  Is that correct?

A.  My understanding.  I knew you.

**Olender Reporting**                                    (866) 420-4020
**A Boutique Litigation Support Firm**           Schedule@OlenderReporting.com

Job 44980 Buchwald Depo

Patricia W. Buckman v. Mark F.Buckman                                    6/23/2025

Page 83

Q.  Okay.  So, it makes no sense that I'm owning real estate before that time, correct?

A.  I have no idea.

Q.  And it makes no sense that I could purchase 16th Avenue and obtain the loan from Bank of Hawaii for it, correct?

A.  Yeah, that just makes no sense.

Q.  Could it be that you don't understand what's going on in my life, five, six years after we ended our relationship?

A.  Could be.

Q.  Okay.  So, I just want to confirm.  Have you told me everything you know about the ownership or co-ownership of 16th Avenue?

A.  Yes.

Q.  Okay.  So, it sounds like your information is confined to what you think -- what you suppose from the years ago relationship, but not any personal knowledge.  Is that correct?

A.  Correct.

Q.  Okay.  Well, in Hawaii, they like to take deposition breaks.  So, we'll probably take like a

**Job 44980 Buchwald Depo**

**Patricia W. Buckman v. Mark F.Buckman**

Job 44980 Buchwald Depo

**Patricia W. Buckman v. Mark F.Buckman**                                    **6/23/2025**

Page 122

saw him, which was, I don't even know when he was not all there.

Q. What do you mean by that?

A. I just don't think he's -- I don't think he's -- he's all there. I think he's done serious damage to his brain doing whatever he does, whether it be him being in an accident, whether it be him -- his strokes, his heart issues. He's not all there.

Q. Okay. And does that mean he -- you don't think he can think properly?

A. I don't think he can think properly. Absolutely not.

Q. Uh-huh. Have you ever thought to -- have you ever talked about his condition with my mom and thought about like getting a guardian or something like that for him?

A. No, it's not my job. No.

Q. Uh-huh. Has my mom ever expressed concern that Matt's incapacitated and he can't think for himself or?

A. We don't -- we don't talk about Matt. We

Page 123

only talk about you.

Q. Okay. So, has my mom ever said that she wanted me or did not want me to hold Matt's $40,000 life insurance for him?

A. We never talked about it.

Q. So, it would be fair to say you have no personal knowledge of that?

A. I don't.

Q. Okay. So, we'll go back to the E-mail. Was there a reason you didn't respond to my two E-mails that I had sent you there?

A. Yeah. Mark, I want nothing to do with you.

Q. Okay. So, I sent you another E-mail. Good morning, Tammy. I have not received any response to my E-mails to you, nor do my texts asking for confirmation or receipt of the E-mail. That makes me concerned. Do you remember receiving such an E-mail from me?

A. Actually, I really don't recall that at all. That's a couple of years ago.

Q. Uh-huh. In either case, please ensure

Page 124

that you preserve all records in any way related to the work and/or advice you performed for my mother, Patricia Buckman and/or Natalie Petrie. Do you recall getting that from me?

A. Actually, I don't recall specifically that one sitting here today.

Q. Uh-huh. This, of course, includes all E-mails, texts, or any other documents. So, please make sure not only that you do not delete any of these materials, but they are preserved. Do you remember getting such an E-mail from me?

A. No, but boy were you -- yeah. No, it's just -- why did you send that to me? What were you planning, Mark?

Q. I was planning for you to not delete further E-mails. Did that seem unfair to you in a litigation?

A. Yeah, it does. Like that's a very odd request for you to reach out to someone you have nothing to do with to ask that. That is very -- yeah, it's an odd request.

Q. So you think it's odd for me to ask you

Page 125

to preserve electronic evidence?

A. Yeah, for what regard? Yeah, sure. I think it's very odd.

Q. Did you think you had the obligation to preserve that evidence once you'd been put on notice?

A. I probably didn't read it, actually. I saw your name and I probably deleted it because I don't want anything to do with you.

Q. Uh-huh. And it goes on to say, I'm sure you can see the need for this given the situation and would probably already understand this, but I want you to confirm explicitly that you will honor your obligation to preserve these materials, including electronic files, electronically stored and retained information, or ESRI. If any documents, files, or materials have been deleted or no longer exist, please inform me immediately. Do you recall receiving that from me?

A. No, not sitting here today. I do not recall that.

Q. If you had read that at the time, would

**Olender Reporting**                                         **(866) 420-4020**

**A Boutique Litigation Support Firm**          **Schedule@OlenderReporting.com**

Page 141

three of you and the estate attorney.  You did

none of that.  You took her out.

Q.  **How do you know that?**

A.  Because I don't -- I know that you didn't

take -- she never told me you went to Steve Reese

with your --

Q.  **How do you know that?  Is that from**

**personal knowledge or just hearsay?**

A.  It's hearsay from your mother, but I

trust her.  She's trustworthy.

Q.  Got it, okay.  So, then it says in your

E-mail to Steve Reese on September 24th, 2023, I

forwarded the E-mail below to Pat. Huh.  Do you

remember forwarding that E-mail to Pat?

A.  No, I don't recall that sitting there

today.

Q.  Would you have ever said something untrue

in an E-mail that you sent to Steve Reese?

A.  No, I tell the truth.

Q.  Okay.  So, you -- you -- if -- if your E-

mail says that you forwarded to Pat, you did in

fact forward the E-mail to Pat, correct?

Job 44980 Buchwald Depo

Patricia W. Buckman v. Mark F.Buckman                                    6/23/2025

Page 254

CERTIFICATE OF TRANSCRIPTIONIST


I, Pamela Ann Flutie, do hereby certify that the

foregoing proceeding was transcribed from a

digital audio recording provided to me by Olender

Reporting and thereafter was reduced to

typewriting by me or under my direction.


I am not related to any of the parties in this

matter, and this transcript is a true and accurate

record of said audio recording to the best of my

ability.  The above information has been

transcribed by me with a pledge of confidence, and

I do hereby certify that I will not discuss or

release the content or any information contained

herein.


Pamela A.

Flutie

Pamela A. Flutie

Transcriptionist

Central Valley Transcription