IN THE SUPERIOR COURT, STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF PLACER

--oOo--

**CERTIFIED TRANSCRIPT**

MARK F. BUCKMAN,

       Plaintiff,          No. SCV 0051637

  vs.

NATALIE B. PITRE, CARL T.
PITRE and Does 1 Through 10,
inclusive,

       Defendants.        /
---------------------------------------

DEPOSITION OF

NATALIE B. PITRE

VOLUME 1, PAGES 1 - 311

Monday, January 27, 2025

MARY BARDELLINI & ASSOCIATES
920 Blitz Lane
Auburn, CA 95603
530.823.2950

STENOGRAPHICALLY REPORTED BY: CHRISTINE BEDARD, CSR #10709



**Mary Bardellini & Associates**

INTERACTIVE REALTIME REPORTING

**(530) 823-2950**

920 Blitz Lane • Auburn, California 95603
Roseville and Sacramento Locations Available

**EXHIBIT 21**

BE IT REMEMBERED that, pursuant to Notice and on Monday, January 27, 2025 at the hour of 9:00 AM thereof, at the HOLIDAY INN, 120 Grass Valley Highway, Second Floor Conference Room, Auburn, California, before me, CHRISTINE BEDARD, a Certified Shorthand Reporter in and for the County of Nevada, State of California, there personally appeared

NATALIE B. PITRE

called as a witness by the Plaintiff; who, being by me first duly sworn, was examined and testified as is hereinafter set forth.

--o0o--

APPEARANCES OF COUNSEL

FOR THE PLAINTIFF:

    LAW OFFICES OF MARK F. BUCKMAN
    BY:  MARK F. BUCKMAN
    8359 Elk Grove Florin Road, Suite 103-320
    Sacramento, CA 95829
    T: (916) 442-8300
    Email:  Markfbuckman@sbcglobal.net


FOR THE DEFENDANTS:

    POWERS MILLER
    BY:  JOHN P. SCIACCA
    3500 Douglas Boulevard, Suite 100
    Roseville, CA 95661
    T: (916) 924.7900
    Email: Jps@powersmiller.com


ALSO PRESENT:  Jennifer Buckman

                    ---o0o---

2

A.  No.

Q.  Did you play any part in providing any facts of that lawsuit to Mom or her attorney?

A.  Yes.

Q.  And did Richard Wilson represent you in that matter at all?  In the Federal lawsuit.

A.  How could he?

Q.  Does Richard Wilson represent you in regards to the Federal lawsuit and the claims made therein by either your mother or Mark?

A.  The Federal lawsuit is her suing you for stealing her property.

Q.  Does Richard Wilson represent you or Carl with respect to any claims being made in the Federal lawsuit either by your mother or Mark?

A.  How is that relevant to this?

Q.  Please answer the question.

MR. SCIACCA:  Do you know if he represents you?

THE WITNESS:  I don't know.

MR. BUCKMAN:  Q.  You don't know if -- if an attorney represents you in a legal matter?  Is that what you're saying, ma'am?

A.  Yes.

Q.  Why are you unsure?  Had you ever signed any retainer?

70

Q.   So in the time period 2020/2023, who was your mom's primary caregiver?

MR. SCIACCA:  Object.  Calls for speculation.

You can answer.

THE WITNESS:  Yeah, I would be speculating.  I think it was a group effort.  Matt would occasionally make her breakfast.  Kimi would do some things.  I would do some things.

MR. BUCKMAN:  Q.  Would Manoa do some things?

A.   Occasionally.

Q.   And so there was times when Mom just drove herself to the doctor though; correct?

A.   Yes.

Q.   Okay.  Let's go back to when you thought, you know, giving Mark 100,000 or 120,000 was fair.  Why did you think it was fair?

A.   Because you seemed very, like -- you felt very strongly about it.  Clearly strongly enough to orchestrate all of this.

Q.   What did Mark tell you about it?  This is before the 2022 trust change.  We want to focus your mind on that.  What did Mark tell you about it?

A.   Just that he felt that he was entitled.

Q.   And did you ask him why he felt he would be, supposedly, entitled to 100 or $120,000?  I'm trying to

10:29:09
10:29:13
10:29:15
10:29:17
10:29:21
10:29:23
10:29:26
10:29:31
10:29:32
10:29:36
10:29:41
10:29:44
10:29:46
10:29:47
10:29:54
10:29:58
10:29:59
10:30:05
10:30:08
10:30:10
10:30:12
10:30:16
10:30:19
10:30:21
10:30:25

A.  I thought, "Wow, he's really reaching."    10:34:46

Q.  Why do you think reaching?    10:34:50

A.  I didn't feel like it carried any weight.  I guess    10:34:57
that's the definition of flimsy.    10:35:04

Q.  Did you do anything to investigate that?    10:35:07

A.  Mark, you're more concerned --    10:35:13

Q.  I'm asking did you do anything to investigate it?    10:35:14

A.  -- that I am.  I'm concerned with my life.  And    10:35:18
no.  I mean, how much do you want me to focus on you?    10:35:20

Q.  Well, I think it's a legal standard that you focus    10:35:27
before you accuse people of things.  You go and    10:35:30
investigate if it's true or not, and whether it's    10:35:32
responsible for you to be making accusations against    10:35:36
people.  That seems to be the legal standard when you    10:35:38
defame people.    10:35:40

Are you aware of that ma'am?    10:35:42

MR. SCIACCA:  I'm going to object.  Calls for a    10:35:43
legal contention question.    10:35:45

MR. BUCKMAN:  Q.  What did you do to investigate    10:35:46
the claims you made to Sue Thompson about Mark?    10:35:47

A.  Carolyn contacted me when I was in Yosemite on the    10:35:54
family vacation and told me that you had taken the front    10:35:59
house -- or the back house.  And then she put that    10:36:06
information in the mailbox for me.  And I saw your name    10:36:10
on there.  And I also saw that you got a $500,000    10:36:16

79

How do you know that Mom was out all day that day?

A.   Because you guys took her in the morning.

Q.   How do you know that?

A.   Because you guys left with her in the car to go to the Outrigger.

Q.   You left before -- you left the house while we were still there; correct?

A.   Jenny texted me -- did she text me?  Or Jenny called me and said, "Oh, Tutu's worried.  Please close the door," or something like that.

Q.   Okay.  So were you worried we took her somewhere to have lunch?

A.   No.  You were going to the Outrigger.  But when it gets to be eight hours, all day, that's not good for an old person.

Q.   Do you know that -- that Mom did not come home after the Outrigger?

A.   I know that I looked for her when I came home, and she wasn't there.

Q.   When did you come home?

A.   I don't know.  Maybe noon.

Q.   And how long were you at the house?

A.   I don't know.  I'm there mostly.  Maybe I was there for the rest of the day.  Or maybe I went and got

82

check on her.  And all that day I was looking for her.  So if that's being caretaker, absolutely.

Q.  Were you responsible for her medical care?

A.  No.

Q.  At any time before that were you responsible for Mom's medical care?

A.  No.

Q.  At any time before that were you responsible for Mom's dental care?

A.  No.

Q.  At any time before that, and "that" being August 10, 2023 --

A.  Do you mean medical care, like responsible for her medical care?  Like, did I take her to Dr. Bell?  Because that's been established.  Did I check on her and make sure that she was safe and comfortable?  Yes.

Q.  Were you responsible for paying any of her bills before that time?

A.  Before what time?

Q.  August 10, 2023.  At any time.

A.  I had set up a bill pay account that you then put your name on and closed.

Q.  Were you responsible for your mother having food in the house, like shopping?

A.  I shopped for her occasionally, but Matt always

10:48:38
10:48:41
10:48:44
10:48:46
10:48:49
10:48:51
10:48:53
10:48:54
10:48:56
10:49:01
10:49:02
10:49:05
10:49:07
10:49:10
10:49:13
10:49:16
10:49:22
10:49:24
10:49:26
10:49:27
10:49:31
10:49:34
10:49:39
10:49:41
10:49:46

STATE OF CALIFORNIA    ]

COUNTY OF NEVADA       ]

I, the undersigned, a Certified Shorthand Reporter in the State of California, hereby certify that the witness (if applicable) in the foregoing deposition was by me duly sworn to testify to the truth, the whole truth, and nothing but the truth in the within-entitled cause; that said proceeding was taken at the time and place therein stated; that the testimony of said witness was reported by me, a disinterested person, and was thereafter transcribed under my direction into typewriting; that the foregoing is a full, complete, and true record of the said testimony; and that the witness (if applicable) was informed of his/her opportunity to read and, if necessary, correct said deposition and to subscribe the same.

I further certify that I am not of counsel or attorney for either or any of the parties in the foregoing proceedings and caption named, or in any way interested in the outcome of the cause named in said caption.

Dated this 13th day of February, 2025

_____

CHRISTINE BEDARD, CSR NO. 10709

311

**MARY BARDELLINI & ASSOCIATES**
920 Blitz Lane
Auburn, CA 95603
530.823.2950

Date:  February 13, 2025

Natalie B. Petri
c/o John Sciacca
Powers Miller
3500 Douglas Boulevard, Suite 100
Roseville, CA 95661

Case:   Buckman vs. Petri
Deposition of NATALIE B. PITRE, Volume I
Deposition taken:  January 27, 2025

Dear NATALIE B. PITRE,

        Please be advised the original transcript of your deposition is ready for your review.

        You may either call my office to make arrangements with me to read and sign the original transcript, or you may contact your attorney or the attorney who arranged for you to be present at your deposition.  If they have ordered a copy of the transcript, you may review their copy and make corrections by indicating on a separate sheet of paper the page and line number and the word or words you wish to correct.  Please then sign your correction sheet at the bottom and return it to the above address.

        As this is a civil action, you have 35 days from the date of this letter to read, correct, if necessary and sign your transcript.  It will then be sealed and sent to the examining attorney pursuant to the applicable law.

                        Sincerely,


                        Christine Bedard
                Certified Shorthand Reporter #10709

cc:  All Counsel